# EXHIBIT B

**Gibbs Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| TRICOLOR HOLDINGS, LLC, *et al.*,[1] | ) | Case No. 25-33487 (MVL) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**DECLARATION OF CHARLES R. GIBBS IN SUPPORT OF**
**TRUSTEE'S APPLICATION FOR ENTRY OF ORDER**
**AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**MCDERMOTT WILL & SCHULTE LLP AS COUNSEL FOR**
**THE CHAPTER 7 TRUSTEE, EFFECTIVE AS OF SEPTEMBER 12, 2025**

I, Charles R. Gibbs, being duly sworn, state the following under penalty of perjury and that the following is true and correct to the best of my knowledge, information, and belief:

1.     I am an attorney at law admitted to practice before the Supreme Court of Texas, the United States District Courts for the Northern, Southern, Eastern, and Western Districts of Texas and the United States Courts of Appeals for the First, Third, Fourth, Fifth, Eighth, and Eleventh Circuits.  I am a partner of the law firm of McDermott Will & Schulte LLP ("McDermott" or the "Firm"), which maintains offices at, among other places, 2801 North Harwood Street, Suite 2600, Dallas, Texas 75201.

2.     I submit this declaration (the "Declaration") in support of the *Trustee's Application for Entry of Order Authorizing the Retention and Employment of McDermott Will & Schulte LLP*

---

[1]     The Debtors in these chapter 7 cases are as follows: Tricolor Holdings, LLC, TAG Intermediate Holding Company, LLC, Tricolor Auto Group, LLC, Tricolor Auto Acceptance, LLC, Tricolor Insurance Agency, LLC, Tricolor Home Loans LLC dba Tricolor Mortgage, Tricolor Real Estate Services, LLC, TAG California Holding Company, LLC, Flexi Compras Autos, LLC, TAG California Intermediate Holding Company, LLC, Tricolor California Auto Group, LLC, Tricolor California Auto Acceptance, LLC, Risk Analytics LLC, Tricolor Tax, LLC, Tricolor Financial, LLC, Tricolor Auto Receivables LLC, Tricolor Asset Funding, LLC, and Apoyo Financial, LLC.

*as Counsel for the Chapter 7 Trustee, Effective as of September 12, 2025* (the "Application").[2]
The facts set forth in this Declaration are based upon my personal knowledge, discussions with
other McDermott attorneys and staff professionals, and the Firm's client/matter records that were
reviewed by me or other McDermott attorneys acting under my supervision and direction.

3.      On September 10, 2025 the Office of the United States Trustee for Region 6 (the
"U.S. Trustee") appointed the Trustee to serve in the Chapter 7 Cases (the "Chapter 7 Cases").

## MCDERMOTT'S DISCLOSURE PROCEDURES

4.      To prepare this declaration, I, or someone under my supervision, reviewed the
names set forth on a list of potential parties in interest. From this list, McDermott created a search
list (the "Search List") of relevant parties consistent with the U.S. Trustee's requirements, a copy
of which is attached hereto as **Schedule 1**. McDermott then compared the Search List with the
information contained in the conflicts check systems and indexes of adverse parties currently
maintained by McDermott (the "Conflicts System").

5.      The Conflicts System is designed to include every matter on which the Firm is now
engaged, as well as previous matters on which the Firm was engaged that were closed over the last
approximately five (5) years, sorted by the entity which has engaged the Firm and, in each instance,
listing the identity of the clients, related parties and adverse parties, and the attorneys in the Firm
who are knowledgeable about each matter.  It is McDermott's policy that a new matter may be
opened within the Firm only after completing and submitting to those charged with maintaining
the Conflicts System the information necessary to check each such matter for conflicts, including
the identity of the prospective client and related adverse parties.  McDermott maintains and

---

[2]     Capitalized terms used but not defined herein shall have the meanings given to such terms in the Application.

systematically updates the Conflicts System in the regular course of the Firm's business, and it is the regular practice of the Firm to make and maintain these records.

6.      Further, an e-mail was sent to the entire Firm requesting that individuals disclose whether they (a) hold stock or any options to purchase stock in the Debtors or their affiliates, (b) hold a claim of any kind against the Debtors or their affiliates, (c) were a director, officer, or employee of the Debtors or their affiliates within the past three years, (d) are a close relative of a director or officer of the Debtors or their affiliates, or (e) have a close personal relationship with or are related to (i) any of the Judges of the United States Bankruptcy Court for the Northern District of Texas or (ii) any employee of the Office of the United States Trustee for the Northern District of Texas or the United States Bankruptcy Court for the Northern District of Texas.

## MCDERMOTT'S CONNECTIONS WITH PARTIES IN INTEREST IN MATTERS UNRELATED TO THE CHAPTER 7 CASES

7.      I, or a person under my supervision, reviewed any client connections to the Chapter 7 Cases to determine whether McDermott has an adverse interest to the Debtors' estates. McDermott ran the names of all parties in interest on **Schedule 1** hereto through its Conflicts System, and McDermott does not represent, or have any other connection with, any of the parties in interest listed on **Schedule 1**, subject to the disclosures set forth on **Schedule 2**, which is incorporated herein by reference.

8.      McDermott's conflicts search resulted in the disclosures set forth on **Schedule 2** to this Declaration.  The Trustee is aware that McDermott has previously represented or currently represents certain creditors or parties in interest and/or their affiliates in matters unrelated to the Debtors and, unless noted otherwise, the Chapter 7 Cases.

9.      To the best of my knowledge and information, the annual fees for each of the last three years paid to McDermott by any party on **Schedule 1** or its affiliates did not exceed 1% of

3

McDermott's annual gross revenue.  To the extent that issues arise that would cause the Trustee to be adverse to any of McDermott's clients such that it would not be appropriate for McDermott to represent the Trustee with respect to any such matters, the Trustee will retain conflicts counsel to represent the Trustee with respect to those matters.

10.    I believe the connections disclosed on **Schedule 2** and herein have not and will not affect McDermott's representation of the Trustee in the Chapter 7 Cases.  McDermott's representation of these parties does not comprise a material component of McDermott's practice, nor does McDermott currently represent such parties on any issue relating to the Debtors or the Chapter 7 Cases.

11.    McDermott is not presently acting as direct counsel for the Debtors or any of their affiliates, partners or subsidiaries in the Chapter 7 Cases, and McDermott will not undertake any such representation during this engagement.

12.    Based upon the information available to me, McDermott is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), and neither represents nor holds an interest materially adverse to the interests of the Trustee, the Debtors, or their estates with respect to the matters on which McDermott is to be employed.  To the extent McDermott discovers any connection with any party or enters into any new relationship with any party that otherwise would have been required to be disclosed in the Application, McDermott will promptly supplement its disclosures to the Court.

13.    While employed by the Trustee, McDermott will not represent any other entity having an adverse interest in connection with the Chapter 7 Cases.

14.    Insofar as I have been able to ascertain, neither I, McDermott, nor any McDermott attorneys:

(a)     are creditors, equity security holders, or insiders of the Debtors;

(b)     are, or were within three years before the date of the filing of the petitions, a director, officer, or employee of the Debtors; or

(c)     have an interest materially adverse to the interests of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in, the Debtors or for any other reason.

15.     As part of its diverse practice, McDermott appears in numerous cases, proceedings, and transactions involving many different professionals (both aligned with and adverse to McDermott), including other attorneys, financial advisors, and investment bankers, some of whom may be or represent parties in interest in the Chapter 7 Cases.  McDermott does not, and will not, represent any such professional in connection with the Chapter 7 Cases.  Moreover, from time to time, McDermott has referred work to other professionals that may be retained in the Chapter 7 Cases.  Likewise, certain such professionals may have referred work to McDermott.

16.     Except as otherwise set forth herein, insofar as I have been able to ascertain, the partners, counsel, and associates of McDermott do not have any connection with the Debtors, the Debtors' officers and directors, the Debtors' creditors, the Debtors' equity security holders, and other known parties in interest or their respective attorneys and accountants.  To the best of my knowledge, information and belief formed after reasonable inquiry, neither I, nor any partner, counsel, associate, paraprofessional, or staff member of McDermott, insofar as I have been able to ascertain, is related to the bankruptcy judge assigned to the Chapter 7 Cases.

17.     McDermott will review its files periodically during the pendency of the Chapter 7 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, McDermott will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).  If necessary, McDermott will arrange for an "ethical wall" with

respect to any McDermott attorney who worked on a matter giving rise to a conflict or arrange for representation of the Debtors by conflicts counsel.

### **MCDERMOTT'S RATES AND BILLING PRACTICES**

18.     No promises have been received by McDermott or any McDermott attorney as to payment or compensation in connection with the Chapter 7 Cases other than in accordance with the provisions set forth herein.  McDermott has no agreement with any other entity to share with such entity any compensation received by McDermott or by such entity.  McDermott has received no retainer in the Chapter 7 Cases to represent the Trustee.

19.     McDermott intends to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any further orders of this Court for all services performed and expenses incurred since September 12, 2025.  McDermott expressly reserves the right to seek compensation for services and reimbursement of expenses incurred by defending challenge(s) to this Application and/or any fee applications filed by McDermott in the Chapter 7 Cases.

20.     McDermott's standard hourly rates for work of this nature for attorneys and paraprofessionals that may work on this matter, subject to annual adjustment each January to reflect economic and other conditions, are set forth below.

| Title | 2025 Standard Rates |
|---|---|
| Partners/Counsels | $1,500 - $2,400 |
| Associates | $895 - $1,485 |
| Non-Lawyer Professionals | $395 - $820 |

21.     The Application requests, pursuant to Bankruptcy Code section 328(a), approval of the Trustee's retention of McDermott as its counsel.  The hourly rates set forth above and in the

Application are the Firm's standard hourly rates for work of this nature.  The Firm's standard rates are set at a level designed to compensate the Firm fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.

22.    McDermott has advised the Trustee that the hourly rates set forth above are subject to annual increases in the normal course of McDermott's business.  In the event of any such increase, McDermott will provide the U.S. Trustee, the Trustee and any statutory committee appointed in these Chapter 7 Cases with written notice of any such increase and file a supplemental declaration (a "Supplemental Declaration") with the Court. Any Supplemental Declaration will explain the basis for the requested rate increase in accordance with Bankruptcy Code section 330(a)(3)(F).

23.    McDermott will charge for expenses in a manner and at rates consistent with charges made generally to its other clients in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders of this Court. Such expenses include, among other things, mail and express mail charges, special or hand delivery charges, travel expenses, expenses for computerized research, and transcription costs.

24.    The foregoing constitutes the verified statement of the person to be employed, required under Bankruptcy Rule 2014.

**<u>AFFIRMATIVE STATEMENT OF DISINTERESTEDNESS</u>**

25.    Based on the conflicts search conducted to date and described herein, to the best of my knowledge and insofar as I have been able to ascertain, (a) McDermott does not hold or represent any interest adverse to the Debtors' estates, (b) McDermott is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as required by Bankruptcy Code section 327(a), and (c) McDermott has no connection with any of the Debtors, their creditors, or any other

party in interest, their respective attorneys and accountants, the U.S. Trustee or any person employed in the office of the same, or any judge in the United States Bankruptcy Court or District Court for the Northern District of Texas, except as disclosed or otherwise described herein.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: October 7, 2025

        */s/ Charles R. Gibbs*
        Charles R. Gibbs
        Partner
        McDermott Will & Schulte LLP

## **EXHIBIT 1**

**Engagement Letter**



Chuck Gibbs
Attorney at Law
crgibbs@mwe.com
+1 214 295 8063

September 26, 2025

VIA EMAIL
Ms. Anne Elizabeth Burns
900 Jackson Street
Suite 570
Dallas, TX 75202
aburns@chfirm.com

Dear Ms. Burns:

Thank you for selecting McDermott Will & Schulte LLP ("McDermott") to represent you in your role as Chapter 7 Trustee ("you") in connection with the bankruptcy of *Tricolor Holdings, LLC* and its affiliated debtor entities (the "Debtors"), Case No. 25-33487 (NDTX). McDermott is a limited liability partnership registered in the State of Illinois. The terms of our representation are set forth in this letter and in the Additional Terms of Engagement ("Additional Terms") that accompany this letter. Our attorney-client relationship will commence when the Client and McDermott have agreed to the material terms of our engagement.

**Scope of Engagement**

This matter will involve the representation of you as the Chapter 7 Trustee of the estates of *Tricolor Holdings, LLC* and its affiliated debtor entities, effective as of September 12, 2025. This engagement is expressly limited to providing general restructuring services, including the winddown and liquidation of the Debtors business, as well as the investigation of potential litigation claims and causes of action belonging to the estates. The services to be provided by McDermott in connection with this engagement will encompass those legal services normally and reasonably associated with this type of engagement that McDermott has been requested and is able and has agreed to provide and that are consistent with its ethical obligations.

You expressly reserve the right to seek separate court approval of McDermott under a subsequent engagement agreement should you determine that prosecution of litigation is warranted under separate engagement terms.

The engagement may involve: advice as to corporate transactions; negotiations and other agreements with creditors, equity holders, and potential acquirers; review of documents; analysis of potential claims and causes of action; preparation of agreements; preparation and review of pleadings; court appearances; and

Ms. Anne Elizabeth Burns
September 26, 2025
Page 2

such other actions as both you and McDermott deem necessary and desirable. The engagement also will include advice to, and representation of, you, as Chapter 7 Trustee, subject to the approval of McDermott's retention by the Bankruptcy Court.

It is important that all information provided to us is complete, accurate and up to date so that we can represent your interests fully. Accordingly, please ensure that we are notified of any changes or variations to that information which may arise after the date it is provided to us, as well as any new circumstances which might be relevant to the work we are undertaking for you. McDermott shall be entitled to rely upon information provided to McDermott by the Client, may assume the accuracy and completeness of such information, and shall have no duty to independently verify such information.

**Engagement Personnel**

I will be principally responsible for services provided to you. As circumstances warrant, other lawyers or non-lawyer professionals will be assigned to work on your matter. Of course, I will check with you in advance of any personnel assignment which involves a material amount of work.

Our fees reflect the value of our services and are based on hourly billing rates that take into account the complexity of the matter, the skill and experience required to perform the services, the time constraints imposed by the circumstances, the size of the matter, and the efficiencies we bring to bear on the matter, among other factors. As a result, a professional's rate may vary from one assignment to another. My time for this matter will be billed at $2,125.00 per hour. The rates of others who may work on your matters range from $395.00 to $820.00 for non-lawyer professionals, $895.00 to $1,485.00 for associates, and $1,500.00 to $2,400.00 for partners. Our time is ordinarily recorded in tenths of an hour. Our rates are reviewed at least annually and may be increased during the course of our representation of you. We will provide you annually with a schedule of rates presently in effect for all the lawyers, paralegals, and legal assistants who may be performing work for you and notify you as promptly as reasonably practicable of any changes in such rates during the course of our representation of you. To the extent possible, we will endeavor to have associates, paralegals, and/or legal assistants, at lower rates, handle appropriate tasks.

As you know, we often work closely with law firms in other jurisdictions or in foreign countries. Those firms are separate legal entities and are solely responsible for the services they provide to you. Our business arrangement with you does not cover your retention of those firms for legal services, even in situations in which the other firm is recommended by us and/or the other firm's services are provided in connection with a matter which we are handling. Accordingly, each of those firms will issue invoices for the services they render. We do not consider the clients of those firms to be clients of McDermott for purposes of clearing conflicts or for any other purpose.

**McDermott Will & Schulte**

Ms. Anne Elizabeth Burns
September 26, 2025
Page 3

**Other Terms of the Engagement**

To avoid misunderstandings concerning potential conflicts of interest, it is our policy to clarify the identity of our clients and the circumstances under which we may represent other clients with interests that are or may be adverse to you or the Debtors. Our representation of you does not extend to the Debtors, their parents, subsidiaries, employees, officers, directors, shareholders, partners, members, entities in which you own an interest (even a substantial interest), beneficiaries or other affiliates.

McDermott represents, and in the future will represent, many other clients. During the time we are working for you, one or more existing or future clients may ask McDermott to represent them in an actual or potential transaction or contested matter, including litigation or other dispute resolution proceedings, adverse to the your interests. By entering into this engagement, you agree that McDermott can accept all such representations, even if the other client's interests are or may become directly adverse to your interests, unless the matter is substantially related to a matter in which we are representing you, or will require disclosure of your confidential information. (All such representations are referred to as "Permitted Representations"). You waive all actual and potential conflicts of interest that might exist because of any Permitted Representations undertaken by McDermott and will not assert that any engagement of McDermott for you is a basis to challenge or to disqualify McDermott from undertaking or continuing any Permitted Representation.

Unless we are otherwise instructed by you in writing at or prior to the completion of the matter for which you have engaged us, we may, after a reasonable period of time has passed, at our discretion, destroy all documents and data (including hard copies, electronically stored information and any other data stored on other forms of media) and any other materials that we have stored or otherwise remain in our possession relating to a matter for which our services have been completed or terminated.

When we complete the services you have retained us to perform, our attorney-client relationship will be terminated. If the you later retain us to perform further or additional services, our attorney-client relationship will be revived subject to these terms of engagement unless we change the terms in writing at that time.

The Supreme Court of Texas has issued the Texas Lawyer's Creed (attached) to which I and all McDermott attorneys working on your matters intend to abide.

Accompanying this letter are the Additional Terms, which are incorporated herein. If you have questions concerning any of the information presented here, or should you have a concern or question at any time during our representation, please call me.

**McDermott Will & Schulte**

Ms. Anne Elizabeth Burns
September 26, 2025
Page 4

You have the right to consult with other counsel concerning the terms of this engagement letter. By executing this engagement letter, you are confirming that you understand and accept all of the terms set forth in this letter and in the Additional Terms and that this letter has been signed by you voluntarily and with the benefit of the information necessary to make a fully informed decision to agree to these terms.

You intend for your consent to be effective and fully enforceable and to be relied upon by McDermott in accepting this representation. If you have outside counsel guidelines, billing guidelines, or other engagement terms (collectively, "Guidelines"), those Guidelines only apply if accepted by us in writing. Accepting Guidelines through an e-billing system as a condition of submitting a bill will not constitute acceptance of those Guidelines. In addition, you agree and acknowledge that in the case of inconsistency between your outside counsel Guidelines, proposed terms, or billing instructions and the terms of this engagement letter, this engagement letter takes precedence and controls the terms of our engagement. These terms may not be modified unilaterally. Any amendment or modification shall be effective only upon execution of a written agreement signed by individuals within both you and McDermott who have the authority to approve such changes.

Please sign and return to us a copy of this letter. Note that your request for McDermott to proceed, or acquiescence in McDermott proceeding, will constitute your full acceptance of the terms set forth herein and in the attached.

Sincerely,

Charles R. Gibbs

CRG

**McDermott Will & Schulte**

Ms. Anne Elizabeth Burns
September 26, 2025
Page 5

Agreed to and accepted (including the Additional Terms) on behalf of Anne Elizabeth Burns:

By: _____

Name: Anne Elizabeth Burns
Title: Chapter 7 Trustee
Date: October 7, 2025

# ADDITIONAL TERMS

*This document sets forth McDermott Will & Schulte LLP's additional standard terms of engagement for providing legal services. These terms are an integral part of our agreement with you. You should review this document carefully and retain it for your files. If you have any questions, please contact us promptly.*

**OUR SERVICES TO YOU** ~ In our engagement letter with you, we specify the matter in which we will be representing you. It is important that you have a clear understanding of the legal services we will provide. If at any time you have questions regarding the scope of our services, please communicate with your principal contact at McDermott.

We will represent you zealously and act on your behalf to the best of our ability. Whenever we provide you with an expression regarding the potential outcome of your matter, we will use our best professional judgment. However, we cannot guarantee the outcome of any matter. Any expression of our professional judgment regarding your matter or the potential outcome is limited by our knowledge of the facts and based on the law at the time. It is also subject to any unknown or uncertain factors or conditions beyond our control.

**WHO IS OUR CLIENT?** ~ It is our policy to represent only the person or entity identified in our engagement letter. Unless specifically stated to the contrary in that letter, our representation of you does not extend to any of your affiliates.

For example, if you are a corporation, our representation does not include any of your parents, subsidiaries, employees, officers, directors, shareholders, or any entities in which you own an interest (even a substantial interest). If you are a partnership, our representation does not extend to the individual partners of the partnership. If you are a trade association, our representation excludes members of the trade association. If you are an individual, our representation does not include your spouse, siblings, or other family members, successors in interest, or any entities in which you own an interest (even a substantial interest). If you are a trustee or other fiduciary, our representation does not include beneficiaries or other persons to whom you owe a duty.

When we deal with a representative or agent of an entity, we represent only the entity and not the representative or agent.

The advice and communications which we render on your behalf are not intended to be disseminated to or relied upon by any other parties without our written consent. We sometimes include a specific disclaimer in correspondence or other work product to this effect, but the absence of such a disclaimer does not create an exception or otherwise entitle others to rely on our work or advice.

**FEE ESTIMATES** ~ Clients frequently ask us to estimate the total fees and other charges they are likely to incur in connection with a particular matter. We are pleased to respond to such requests whenever possible with an estimate based on our professional judgment. This estimate always carries the

**McDermott Will & Schulte**

understanding that, unless we agree otherwise in writing, it does not represent a maximum, minimum, or fixed-fee quotation. The ultimate cost frequently is more or less than the amount estimated.

**OTHER CHARGES ~** As an adjunct to providing legal services, we may incur and pay a variety of charges on your behalf or charge for certain ancillary support services. When we incur such charges on your behalf or charge for such ancillary support services, we will include them in our billing statements. These charges may include, among other things, telephone, messenger, courier, express delivery services, facsimile communications (which typically include a per page charge in addition to the cost of the telephone usage), document printing, reproduction, scanning and imaging, data storage and processing (which typically include per gigabyte charges based on the volume of data), filing fees, deposition and transcript fees, witness fees, travel expenses, computer research, and charges by outside experts and consultants. Certain of these services, particularly those that involve significant technology and/or support services such as imaging and storing electronic data and documents and the use of specialized software for legal research and data processing, may be provided by McDermott at a profit.

It is our general policy to arrange for outside providers of services (such as the fees of outside consultants, expert witnesses and court reporters) to bill you directly. You agree to pay those bills promptly and to provide us notice that such payment has been made.

**BILLING ARRANGEMENTS, TERMS OF PAYMENT AND RETAINERS ~** We will bill you on a regular basis—normally, each month—for both fees and other charges. You agree to make payment upon receipt of our statement. If you have outside counsel guidelines, billing guidelines, or other engagement terms (collectively, "Guidelines"), those Guidelines only apply if accepted by us in writing. Accepting Guidelines through an e-billing system as a condition of submitting a bill will not constitute acceptance of those Guidelines.

Sometimes we ask for an advance retainer which will be credited towards your legal fees and expenses on a monthly basis, unless we agree to a different arrangement. If the retainer proves insufficient to cover current fees and other charges on a regular basis, we may ask you to replenish or increase it, and you agree to do so if asked.

Should your account become delinquent and satisfactory payment terms are not arranged, we may withdraw, or seek to withdraw, from the representation consistent with the applicable rules and pursue collection of the amounts owed. You will remain responsible for payment of our legal fees rendered and charges incurred prior to such withdrawal.

We look to you, the client, for payment regardless of whether you are insured to cover the particular risk or have the right to be reimbursed from someone else. You are responsible to pay us in accordance with the terms agreed to in this engagement, even if you engage us to collect or seek reimbursement from an insurer or other third party pursuant to contracts, statutes or insurance policies.

**TERMINATION ~** You may terminate our representation at any time, with or without cause, by notifying us, and subject to court approval when required for matters in litigation. We will return your papers and

**McDermott Will & Schulte**

other property to you promptly upon receipt of your request for those materials unless they are subject to a lien under applicable law. We will retain our own files pertaining to the matter or case, including our drafts, notes, internal memos, and work product. Your termination of our services will not affect your responsibility for payment of legal services rendered and other charges incurred before termination and in connection with an orderly transition of the matter.

We have the right to withdraw from our representation of you if, among other things, you fail to honor the terms of our engagement letter and/or the Additional Terms, you fail to make payment of any of our statements in a timely manner, you fail to cooperate or to follow our advice on a material matter, or any fact or circumstance occurs that would, in our view, render our continuing representation unlawful or unethical, or we determine that we are otherwise permitted under applicable law and rules to withdraw from the representation. If we elect to withdraw, you will take all steps necessary to free us of any obligation to perform further services, including the execution of any documents necessary to complete our withdrawal. Notwithstanding such termination, you will remain obligated to pay us for all services provided and to reimburse us for all costs and expenses paid or incurred on your behalf, including those required for the orderly transition of the engagement.

Our representation of you will be considered terminated at the earlier of (a) your termination of our representation and the completion of any work that may be required incidental to withdrawal from an ongoing matter, such as work that is appropriate to accomplish an orderly transition to other counsel, work required to obtain permission to withdraw from a court or other tribunal, and work that is required to be performed prior to the time that such permission is granted, (b) our withdrawal from our representation of you or (c) the completion of our work for you. In addition, in the event there has been no work performed by us on your behalf for six consecutive months, and no more work is contemplated, our attorney-client relationship will have been terminated.

**CONFIDENTIALITY AND PRIVILEGE ~** We have a duty of confidentiality to our clients. As a result of acting for you, we may be in receipt of your confidential information. We similarly may have confidential information of other clients from work for such other clients. We will not disclose your confidential information unless you consent or we are legally compelled to do so. You agree that the possession of your confidential information will not prevent us from acting for another client. If necessary or requested by you, we will set up ethical screens or similar measures to protect your confidential information.

You also agree that we are permitted to share your confidential information with other McDermott Firms for client-intake and administrative purposes and for checking for conflicts of interest. In addition, you agree that we may, for the sole purpose of addressing potential or actual conflicts of interest, disclose to others that we represent you and the publicly known facts of the representation or the subject matter of the representation. Notwithstanding the foregoing, we will reveal no confidential information without your consent.

We may outsource certain of our business-support services (e.g., word processing, telephone-call handling, video-conferencing, photocopying, archiving, etc.) to external vendors. When we do so, we

**McDermott Will & Schulte**

obtain agreements to ensure your information is kept confidential and only processed in accordance with our instructions.

Under the principle of legal-professional (or attorney–client) privilege, communications between clients and their lawyers may enjoy special protection from later disclosure in litigation or in other circumstances. A necessary element of privilege is confidentiality. Legal-professional privilege can therefore be lost if advice is circulated beyond the client. This can occur by written or oral communication of the advice beyond the client. As artificial intelligence tools are increasingly used, to the extent legal advice is captured within the output of those tools, dissemination of that output beyond the client may also result in loss of legal-professional privilege. Although the law in this area is complex, our general advice to you is that you and anyone else involved in this matter should treat all information and communications relating to it as confidential and avoid circulation more widely than necessary. You should take reasonable steps to protect our advice from disclosure to others to maintain privilege and protection. Accordingly, you should not disclose or make available our advice without being advised as to the risks of doing so. All sensitive or confidential information physically sent to us should be marked as such on the exterior of the package or envelope.

These terms of engagement are confidential and may not be disclosed to third parties (except your other professional advisers or as required by law or regulation) without our consent in writing.

**TAX-REPORTING OBLIGATIONS ~** Laws in some jurisdictions require individuals and entities who engage in certain transactions to disclose details of the transaction and their participation in them to the local taxation authority. These laws may also impose an obligation on an advisor to make a disclosure. During the course of our engagement, we may determine that one or more transactions on which we advise you require disclosure to a taxation authority. If that occurs, we will advise you with respect to any reporting obligations you may have. Penalties for noncompliance can be severe for both you and us. If you can make the disclosure yourself or through another advisor, we will encourage either to occur. If neither you nor any other advisor is willing to make the disclosure or we are not satisfied that a disclosure will or has been made and, in each case, we are under a legal obligation to make a disclosure, we reserve the right to make the disclosure in our absolute discretion, and notwithstanding our duty of confidentiality owed to you, we are accepting this engagement on the basis that you consent to us making such disclosure in these circumstances. We reserve the right to charge you for time incurred for fulfilling our obligations under this paragraph in accordance with the normal arrangements we have with you.

**MCDERMOTT'S PRIVILEGE ~** From time to time, issues may arise that raise questions as to our duties to you. We believe that it is in our clients' interest, as well as our interest, that in the event legal ethics or related issues arise during a representation, we receive experienced legal advice concerning our obligations. Accordingly, you agree that if we determine in our sole discretion during the course of the representation that it is necessary or appropriate to consult with McDermott lawyers designated to render legal advice to us and our lawyers or to consult with outside lawyers, we have your consent to do so and any communications among lawyers working on the matter and McDermott lawyers or outside lawyers designated to render legal advice to us and our lawyers will be privileged.

**McDermott Will & Schulte**

**SECURE COMMUNICATIONS AND DATA STORAGE** ~ Our email server is configured to encrypt emails if your email system supports it.    We recommend that encryption be used to protect communications with us that include confidential information.  You should discuss with your principal contact at McDermott any special measures that you require regarding email encryption. In addition, we have available solutions to facilitate our collaboration and document sharing with you that we can discuss with you when appropriate.  If you prefer to use a solution other than those provided by us, we recommend that you carefully assess the data security offered by that solution.  We discourage you from using text, instant messaging or similar programs to communicate with us.  These forms of communication may not be encrypted and may be vulnerable to interception.  We use cloud computing with servers located in a facility other than our offices. Some of our electronic data, including emails and documents, are stored in this manner.

**USE OF GENERATIVE ARTIFICIAL INTELLIGENCE** ~ We anticipate that during the course of this engagement, we will use generative artificial intelligence ("GenAI") to enhance and streamline certain aspects of our services. Like any technology, GenAI carries some degree of risk, which may include the risk of errors in GenAI-generated content, data security vulnerabilities, and system malfunctions. We have implemented reasonable measures to safeguard against these risks, and our lawyers maintain oversight of GenAI-generated outputs. We prohibit the use of any publicly accessible GenAI platforms or systems, and utilize secure, enterprise-grade or private instances with stringent security protocols designed to protect. Accordingly, we believe and, by signing this letter or accepting our services, you agree that the benefits of using this technology outweigh the related risks, and you consent to the use of this technology.

**ANTI-BRIBERY AND ANTI-CORRUPTION** ~ We do not engage in bribery or corruption of any kind, and do not tolerate bribery or corruption by others to further the goals and objectives of our representations.  We reserve the right to terminate our engagement if we learn of such improper conduct.

**PRIVACY**~ Our Privacy Policy is available at https://www.mwe.com/legal/privacy-policy/. It defines Personal Information and describes how we may collect, use and disclose the Personal Information that we collect from you or about you in the context of your relationship with us; the choices you have regarding our use of your Personal Information; and how to contact us regarding our privacy practices. Please refer individuals whose information you provide to us to our Privacy Policy.

**EUROPEAN ECONOMIC AREA (EEA) AND UNITED KINGDOM DATA PROTECTION** ~ In providing legal services in the United States, we and third parties we engage on your behalf, may receive from you, or from third parties acting under your direction, data which relates to an identified or identifiable individual in the EEA or UK ("EEA Personal Data").

To the extent applicable to us, we will comply with the provisions of the General Data Protection Regulation (EU) 2016/679 as well as any implementing, amending or supplemental regulation under EEA member state or UK data protection laws ("EEA Data Protection Laws") as an independent data controller (i.e., we will each separately be responsible for our own processing of any EEA Personal Data).  You shall ensure that any such EEA Personal Data is provided in compliance with EEA Data Protection Laws and

**McDermott Will & Schulte**

any other data protection or privacy laws that apply to you. To the extent that you seek to defend or settle any claim in relation to EEA Personal Data which we are, or may in the future be, fully or partially responsible or liable for under EEA Data Protection Laws you shall keep us fully informed on a timely basis of such claim and shall take reasonable steps to mitigate the liability to you and us in relation to such claim. Our EEA/UK Privacy Policy, available at https://www.mwe.com/legal/european-economic-area-eea-and-uk-privacy-policy/, will apply to all EEA Personal Data.

Please refer individuals whose EEA Personal Data that you provide to us to our EEA/UK Privacy Policy. As an international law firm, we may transfer data internationally. If your work is being handled by a McDermott Firm outside the United States, any EEA Personal Data will also be processed in accordance with our EEA/UK Privacy Policy, and also the law which applies in the jurisdiction of that McDermott Firm.

Under EEA Data Protection Laws and subject to any contrary legal or regulatory provisions, EEA and UK data subjects have the right to access, modify, limit, transfer or delete their EEA Personal Data, if any, and to object to the processing of EEA Personal Data for any legitimate and compelling reasons as described in the EEA/UK Privacy Policy. We will comply with such requests insofar as we are able under EEA Data Protection Laws, and other laws and binding regulatory guidance, to which we are subject. All correspondence in relation to data protection, including any request to exercise rights under the EEA Data Protection Laws, should be in writing to your principal contact at McDermott.

We may use the EEA Personal Data that you provide to contact you or appropriate persons within your organization about our legal services that may be of interest to you or your organization. This may include legal updates, seminars, and/or hospitality events. If at any time you or any member of your organization no longer wishes to receive this information directly from us, you or they should contact your principal contact at McDermott and we will make sure you no longer receive the information.

**McDermott Will & Schulte**

## THE TEXAS LAWYER'S CREED

### A MANDATE FOR PROFESSIONALISM

Promulgated by
The Supreme Court of Texas and the Court of Criminal Appeals
November 7, 1989

I am a lawyer, I am entrusted by the People of Texas to preserve and improve our legal system. I am licensed by the Supreme Court of Texas. I must therefore abide by the Texas Disciplinary Rules of Professional Conduct, but I know that professionalism requires more than merely avoiding the violation of laws and rules. I am committed to this creed for no other reason that it is right.

## I. OUR LEGAL SYSTEM

A lawyer owes to the administration of justice personal dignity, integrity, and independence. A lawyer should always adhere to the highest of principles of professionalism.

1.    I am passionately proud of my profession. Therefore, "My word is my bond."

2.    I am responsible to assure that all persons have access to competent representation regardless of wealth or position in life.

3.    I commit myself to an adequate and effective pro bono program.

4.    I am obligated to educate my clients, the public, and other lawyers regarding the spirit and letter of this Creed.

5.    I will always be conscious of my duty to the judicial system.

## II. LAWYER TO CLIENT

A lawyer owes to a client allegiance, learning, skill and industry. A lawyer shall employ all appropriate means to protect and advance the client's legitimate rights, claims, and objectives. A lawyer shall not be deterred by any real or imagined fear of judicial disfavor or public unpopularity, nor be influenced by mere self-interest.

1.    I will advise my client of the contents of this creed when undertaking representation.

2.    I will endeavor to achieve my client's lawful objectives in legal transactions and in litigation as quickly and economically as possible.

3.    I will be loyal and committed to my client's lawful objectives, but I will not permit that loyalty and commitment to interfere with my duty to provide objective and independent advice.

4.    I will advise my client that civility and courtesy are expected and are not a sign of weakness.

5.    I will advise my client of proper and expected behavior.

6.    I will treat adverse parties and witnesses with fairness and due consideration. A client has no right to demand that I abuse anyone or indulge in any offensive conduct.

7.    I will advise my client that we will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

8.    I will advise my client that we will not pursue tactics which are intended primarily for delay.

9.    I will advise my client that we will not pursue any course of action which is without merit.

10.    I will advise my client that I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect my client's lawful objectives. A client has no right to instruct me to refuse reasonable requests made by other counsel.

11.    I will advise my client regarding the availability of mediation, arbitration and other alternative methods of resolving and settling disputes.

## III.  LAWYER TO LAWYER

A lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, courtesy, candor, cooperation, and scrupulous observance of all agreements and mutual understandings. Ill feelings between clients shall not influence a lawyer's conduct, attitude, or demeanor toward opposing counsel. A lawyer shall not engage in unprofessional conduct in retaliation against other unprofessional conduct.

1.    I will be courteous, civil, and prompt in oral and written communications.

2.    I will not quarrel over matters of form or style, but I will concentrate on matters of substance.

3.    I will identify for other counsel or parties all changes I have made in documents submitted for review.

4.    I will attempt to prepare documents which correctly reflect the agreement of the parties. I will not include provisions which have not been agreed upon or omit provisions which are necessary to reflect the agreement of the parties.

5.    I will notify opposing counsel, and, if appropriate, the Court or other persons, as soon as practicable, when hearings, depositions, meetings, conferences or closings are cancelled.

6.    I will agree to reasonable requests for extensions of time and for waiver of procedural formalities, provided legitimate objectives of my client and will not be adversely affected.

7.    I will not serve motions or pleadings in any manner that unfairly limits another party's opportunity to respond.

8.    I will attempt to resolve by agreement my objections to matters contained in pleadings and discovery requests and responses.

9.    I can disagree without being disagreeable. I recognize that effective representation does not require antagonistic or obnoxious behavior. I will neither encourage nor knowingly permit my client or anyone under my control to do anything which would be unethical or improper if done by me.

10.    I will not, without good cause, attribute bad motives or unethical conduct to opposing counsel nor bring the profession into disrepute by unfounded accusations of impropriety. I will avoid disparaging personal remarks or acrimony towards opposing counsel, parties and witnesses. I will not be influenced by any ill feeling between clients. I will abstain from any allusion to personal peculiarities or idiosyncrasies of opposing counsel.

11.    I will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed.

12.    I will promptly submit orders to the Court. I will deliver copies to opposing counsel before or contemporaneously with submission to the Court. I will promptly approve the form of orders which accurately reflect the substance of the rulings of the Court.

13.    I will not attempt to gain an unfair advantage by sending the Court or its staff correspondence or copies of correspondence.

14.    I will not arbitrarily schedule a deposition, court appearance, or hearing until a good faith effort had been made to schedule it by agreement.

15.    I will readily stipulate to undisputed facts in order to avoid needless costs or inconvenience for any party.

16.    I will refrain from excessive and abusive discovery.

17.    I will comply with all reasonable discovery requests. I will not resist discovery requests which are not objectionable. I will not make objections nor give instructions to a witness for the purpose of delaying or obstructing the discovery process. I will encourage witnesses to respond to all deposition questions which are reasonably understandable. I will neither encourage nor permit my witness to quibble about words where their meaning is reasonable clear.

18.    I will not seek Court intervention to obtain discovery which is clearly improper and not discoverable.

19.    I will not seek sanctions or disqualifications unless it is necessary for protection of my client's lawful objectives or is fully justified by the circumstances.

## IV.  LAWYER AND JUDGE

Lawyers and judges owe each other respect, diligence, candor, punctuality, and protection against unjust and improper criticism and attack. Lawyers and judges are equally responsible to protect the dignity and independence of the Court and the profession.

1.    I will always recognize that the position of the judge is the symbol of both the judicial system and administration of justice. I will refrain from conduct that degrades this symbol.

2.    I will conduct myself in Court in a professional manner and demonstrate my respect for the Court and the law.

3.    I will treat counsel, opposing parties, the Court, and members of the Court staff with courtesy and civility.

4.    I will be punctual.

5.    I will not engage in any conduct which offends the dignity and decorum of proceedings.

6.    I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain an advantage.

7.    I will respect the rulings of the Court.

8.    I will give the issues in controversy deliberate, impartial and studied analysis and consideration.

9.    I will be considerate of the time constraints and pressures imposed upon the Court, Court staff and counsel in efforts to administer justice and resolve disputes.

## ORDER OF THE SUPREME COURT OF TEXAS
## AND THE COURT OF CRIMINAL APPEALS

The conduct of a lawyer should be characterized at all times by honesty, candor and fairness. In fulfilling his or her primary duty to a client, a lawyer must be ever mindful of the profession's broader duty to the legal system.

The Supreme Court of Texas and the Court of Criminal Appeals are committed to eliminating a practice in our State by a minority of lawyers of abusive tactics which have surfaced in many parts of our country. We believe such tactics are a disservice to our citizens, harmful to clients, and demeaning to our profession.

The abusive tactics range from lack of civility to outright hostility and obstructionism. Such behavior does not serve justice but tends to delay and often deny justice. The lawyers who use abusive tactics instead of being part of the solution have become part of the problem.

The desire for respect and confidence by lawyers from the public should provide the members of our profession with the necessary incentive to attain the highest degree of ethical and professional conduct. These rules are primarily aspirational. Compliance with the rules depends primarily upon understanding and voluntary compliance, secondarily upon reinforcement by peer pressure and public opinion, and finally when necessary by enforcement by the courts through their inherent powers and rules already in existence.

These standards are not a set of rules that lawyers can use and abuse to incite ancillary litigation or arguments over whether or not they have been observed.

We must always be mindful that the practice of law is a profession. As members of a learned art we pursue a common calling in the spirit of public service. We have a proud tradition. Throughout the history of our nation, the members of our citizenry have looked to the ranks of our profession for leadership and guidance. Let us now as a profession each rededicate ourselves to practice law so we can restore public confidence in our profession, faithfully serve our clients, and fulfill our responsibility to the legal system.

The Supreme Court of Texas and the Court of Criminal Appears hereby promulgate and adopt "**The Texas Lawyer's Creed – A Mandate for Professionalism**" as attached hereto and made a part thereof.

*In Chambers, this 7th day of November, 1989.*

| **The Supreme Court of Texas** | **The Court of Criminal Appeals** |
|---|---|
| Thomas R. Phillips, Chief Justice | Michael J. McCormick, Presiding Judge |
| Franklin S. Spears | W. C. Davis |
| C. L. Ray | Sam Houston Clinton |
| Raul A. Gonzales | Marvin O. Teague |
| Oscar H. Mauzy | Chuck Miller |
| Eugene A. Cook | Charles F. (Chuck) Campbell |
| Jack Hightower | Bill White |
| Nathan L. Hecht | M. P. Duncan, III |
| Lloyd A. Doggett | David A. Berchelmann, Jr. |
| Justices | Judges |

## **SCHEDULE 1**

**Potential Parties-in-Interest**

**Tricolor Holdings, LLC and Related Debtors and Non-Debtors**

Apoyo Financial, LLC
Flexi Compras Autos, LLC
Risk Analytics LLC
Tag Asset Funding, LLC
Tag California Holding Company, LLC
Tag California Intermediate Holding Company, LLC
Tag Intermediate Holding Company, LLC
Tricolor Auto Acceptance, LLC
Tricolor Auto Group, LLC
Tricolor Auto Receivables 2 LLC
Tricolor Auto Receivables LLC
Tricolor California Auto Acceptance, LLC
Tricolor California Auto Group, LLC
Tricolor Financial, LLC
Tricolor Funding SPV 2 LLC
Tricolor Funding SPV 3 LLC
Tricolor Funding SPV 4 LLC
Tricolor Funding SPV 5 LLC
Tricolor Funding SPV 6 LLC
Tricolor Funding SPV LLC
Tricolor Holdings, LLC
Tricolor Home Loans LLC Dba Tricolor Mortgage
Tricolor Insurance Agency, LLC
Tricolor Real Estate Services, LLC
Tricolor SPV 3 Holdings LLC
Tricolor Tax, LLC

**Lenders**

Acv Capital
AllianceBernstein Securitized Assets Master Fund, L.P.
Ares Management
Barclays Bank Plc
Boston Patriot Saint James Spe LLC
Falcon Asset Funding LLC
Fifth Third Bank, National Association
JPMorgan Chase Bank
JPMorgan Chase Bank, N.A.
LibreMax Pc Funds, LP
LibreMax Structured Income Master Fund III, LP
LibreMax Structured Opportunities (ECI) Master Fund I, LP
LibreMax Value Master Fund, Ltd
Origin Bank
Powerscourt Investments 63, LP
Renasant Bank
Sheffield Receivables Company LLC
TBK Bank, SSB

The Bank Of The West
Triumph Bank
Vervent Inc
Wilmington Trust, National Association

**Chapter 7 Trustee**
Anne Elizabeth Burns

**Northern District of Texas Bankruptcy Court Judges, Clerks of the Court, and Other Personnel**
Judge Scott W. Everett
Chief Judge Stacey G. C. Jernigan
Judge Brad W. Odell
Judge Michelle V. Larson
Judge Edward L. Morris
Judge Mark X. Mullin
Jenni Bergreen
Jennifer Calfee
Stephen J. Manz
Traci Ellison
Christi Graham
Dawn Harden
Karyn Rueter
Jennifer Speer
Shelby Wimberley
Hawaii Jeng

**Office of the United States Trustee**
Asher Bublick
Kara Croop
Fernando Garnica
Marie C. Goodier
Meredyth Kippes
Lisa L. Lambert
Felicia P. Palos
Nancy S. Resnick
Kendra M. Rust
Erin Schmidt
Lisa Smoot
Joseph W. Speranza
Rafay Suchedina
Steven Whitehurst
Cheryl H. Wilcoxson
Elizabeth Young

## **SCHEDULE 2**

**Disclosures**

**Current[1] Clients[2]**

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity that is a McDermott Client |
|---|---|
| AllianceBernstein Securitized Assets Master Fund, L.P. | AllianceBernstein |
| Ares Management | Ares Management LLC |
| Barclays Bank PLC | Barclays Bank PLC |
| Fifth Third Bank, National Association | Fifth Third Bank |
| JPMorgan Chase Bank | JPMorgan Chase Bank N.A. |
| LibreMax PC Funds, LP | LibreMax Capital, LLC |
| Wilmington Trust, National Association | Wilmington Trust, National Association |

---

[1]   The term "current client" means a client to whom time was posted in the 12 months preceding September 12, 2025, the date the Trustee selected McDermott as her proposed counsel.

[2]   McDermott may currently represent or have previously represented certain affiliates of the entities disclosed herein, and the disclosure is accordingly broad in scope.