Vincent Renda, Esq. (TX Bar #24087061)
PINNACLE LEGAL P.C.
9565 Waples Street, Suite #200
San Diego, CA 92121
Tel: 858-868-5000
Fax: 866-303-8383
Email: vr@pinlegal.com
Attorneys for Gary Lewis Polakoff, Trustee of the Gary and Diane Polakoff 2401 Trust

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## (DALLAS DIVISION)

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TRICOLOR HOLDINGS, LLC, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Case No: 25-33487 (MVL) |
| | ) | |
| GARY LEWIS POLAKOFF, | ) | |
| TRUSTEE OF THE GARY AND | ) | |
| DIANE POLAKOFF 2401 TRUST, | ) | |
| | ) | |
| Movant | ) | Hearing Date: November 18, 2025 |
| | ) | Hearing Time: 1:30pm |
| vs. | ) | |
| | ) | |
| Anne Elizabeth Brunes, | ) | WEBEX DOCKET |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Chapter 7 Trustee/Respondent | ) | |

MOTION OF GARY LEWIS POLAKOFF, TRUSTEE OF THE GARY AND DIANE
POLAKOFF 2401 TRUST, FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT
LANDLORD TO FILE AND PROSECUTE FORCIBLE DETAINER ACTION

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS
REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY
BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT
MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE
UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF
TEXAS AT EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE STREET,
ROOM 1254, DALLAS, TEXAS, 75242 BEFORE CLOSE OF BUSINESS ON
NOVEMBER 3, 2025, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF
SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE
MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE**

**CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Gary Lewis Polakoff, Trustee of the Gary and Diane Polakoff 2401 Trust ("Landlord"), by and through undersigned counsel, and respectfully moves this Court for an order granting relief from the automatic stay pursuant to 11 U.S.C. §362(d), and in support thereof would show the Court as follows:

### STATEMENT OF FACT

1. On September 10, 2025 (the "Petition Date"), TriColor Holding, LLC (the "Debtor") along with various affiliates filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code.

2. Anne Elizabeth Burnes was appointed Chapter 7 Trustee (the "Trustee").

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding under 28 U.S.C. §157(b)(2)(G).

4. Landlord is the owner of the commercial real property located at 2401 National City Blvd, National City, CA 91950 (the "Premises").

5. Tricolor California Auto Group, LLC ("Tenant"), a Delaware limited liability company, is a tenant of the Premises pursuant to a written lease agreement (the "Lease"). A copy of the lease agreement is attached hereto as Appendix 1.

6. The Lease has been breached by Tenant due to nonpayment of rent and/or other defaults.

7. Landlord seeks relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) "for cause," to permit Landlord to file and prosecute a forcible detainer action in state court to recover possession of the Premises, terminate the Lease, and require Tenant to vacate the Premises, and seek such other relief as may be warranted.

## ARGUMENT AND AUTHORITIES

Commercial landlords can obtain relief from the automatic stay under 11 U.S.C. §362(d) through two primary avenues: (1) demonstrating cause under §362(d)(1), including debtor default and lack of adequate protection, or (2) proving both that the debtor lacks equity in the property and that the property is not necessary for effective reorganization under §362(d)(2). In Chapter 7 liquidation cases, courts consistently hold that commercial property is per se not necessary for effective reorganization since Chapter 7 does not contemplate reorganization, making the §362(d)(2) standard particularly favorable to landlords.

### A.  Cause Exists to Grant Relief from Stay

Section 362(d)(1) provides that the Court shall grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1).

"Cause" is not defined in the Bankruptcy Code and is determined on a case-by-case basis, considering the totality of the circumstances. See *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998); *In re Mendoza*, 111 F.3d 1264 (5th Cir. 1997).

The Landlord's interest in the Premises is not adequately protected, as Tenant has failed to pay post-petition rent and is in a Chapter 7 liquidation case. See 11 U.S.C. §362(d)(1).

The balance of harms favors granting relief, as the Landlord is deprived of the use of its property and the estate has no equity or reorganization prospects in the Premises.

### B.  The Lease is not Necessary to An Effective Reorganization

In Chapter 7 liquidation cases, courts have consistently held that property is per se not necessary for effective reorganization. As one court explained, since a Chapter 7 petition does not contemplate reorganization, the only issue in a Chapter 7 case under 362(d)(2) would be whether a tenant's lease gave him equity in the property. *B.N. Realty Associates v. Lichtenstein*, 238 B.R. 249 (S.D.N.Y. 1999). Similarly, another court noted that in a Chapter 7 liquidation

case, effective reorganization is irrelevant for purposes of § 362(d)(2). *Powers v. America Honda Finance Corp.*, 216 B.R. 95 (1997).

C. **The *Sonnax* Factors Support Stay Relief**

The factors considered by courts in determining whether to grant stay relief in favor of a landlord include: (1) whether relief would result in a resolution of the issues; (2) lack of interference with the bankruptcy case; (3) whether litigation in another forum would prejudice other creditors; (4) judicial economy; and (5) the balance of harms. See *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re Tr.,* 526 B.R. 668, 682 (Bankr. N.D. Tex. 2015).

Here, permitting the Landlord to proceed with a forcible detainer action will resolve the dispute regarding possession, will not prejudice other creditors, and will not interfere with the administration of the estate.

<u>**CONCLUSION**</u>

WHEREFORE, Gary Lewis Polakoff, Trustee of the Gary and Diane Polakoff 2401 Trust, respectfully requests that the Court enter an order granting relief from the automatic stay to permit Landlord to file and prosecute a forcible detainer action in state court to recover possession of the Premises, terminate the Lease, and require Tenant to vacate the Premises, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

PINNACLE LEGAL P.C.
Attorneys for Movant

By: /s/ Vincent Renda
   Vincent Renda, Esq. (TX Bar #24087061)
   PINNACLE LEGAL P.C.
   9565 Waples Street, Suite #200
   San Diego, CA 92121
   Tel: 858-868-5000
   Fax: 866-303-8383
   Email: vr@pinlegal.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2025, I have caused copies of the foregoing ***MOTION OF GARY LEWIS POLAKOFF, TRUSTEE OF THE GARY AND DIANE POLAKOFF 2401 TRUST, FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT LANDLORD TO FILE AND PROSECUTE FORCIBLE DETAINER ACTION*** to be served upon all parties registered to receive CM/ECF notices in this case.

<u>/s/ Vincent Renda</u>
Vincent Renda, Esq.


Parties requesting notice:

Gary Lewis Polakoff, Trustee of the Gary and Diane Polakoff 2401 Trust
c/o Pinnacle Legal P.C.
9565 Waples Street, Suite #200
San Diego, CA 92121




<u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that on the 7th day of October, 2025:

\_\_\_\_\_    1 (a) The Creditor

<u>XXX</u>    (b) The Creditor's attorney

<u>XXX</u>    (c)  made a good faith effort to negotiate a settlement of the dispute with debtor(s)
            Counsel

_____ (d) attempted to contact debtor(s) counsel, but debtor(s) counsel failed to respond to our communication by the same time on the second business day after such communication.

<u>XXX</u>  2(a)  The Motion is opposed

\_\_\_\_\_    (b) The Motion is unopposed.


<u>/s/ Vincent Renda</u>
Vincent Renda, Esq.

**APPENDIX 1**

DocuSign Envelope ID: 7424375A-11B8-4BF4-9F0E-4CD1A414B909

**COMMERCIAL LEASE**
**[Triple Net]**

### 1.    PARTIES

This Lease is made and effective as of **July 31, 2023** ("Effective Date"), and is by and between, **Gary Lewis Polakoff, Trustee of the Gary and Diane Polakoff 2401 Trust**, (herein called "Landlord") and **Tricolor California Auto Group, LLC, a Delaware limited liability company** (herein called "Tenant"), individually sometimes referred to herein as a "party" and collectively as the "parties". Concurrently with the execution and delivery of this Lease, **TRICOLOR HOLDINGS, LLC, a Delaware limited liability company** ("Guarantor"), has executed and delivered to Landlord that certain Lease Guaranty dated July 31, 2023 ("Guaranty") wherein the Guarantor unconditionally guarantees, as a primary obligor and not as a surety, without deduction by reason of setoff, defense or counterclaim, the full and punctual payment of all sums of rent and other amounts payable under this Lease and the full and punctual performance of all terms, covenants and conditions in the Lease to be kept, performed and/or observed by Tenant.

### 2.    PREMISES

Subject to the satisfaction of the Existing Lease Termination Contingency as specified in Section 3.2 below, Landlord hereby leases to Tenant and Tenant leases from Landlord for the Term, at the rental, and upon all of the conditions set forth herein, that certain real property situated in the City of **NATIONAL CITY** County of **SAN DIEGO** State of **CALIFORNIA** commonly known as 2401 National City Blvd. National City, CA 91950 and described in **Exhibit A** attached hereto and incorporated herein by this reference**.** Said real property, including the land (consisting of approximately 11,500+/- square feet) and all improvements thereon (consisting of a two (2) story building and parking lot, etc.), is herein called the "Premises".

### 3.    TERM

**3.1    Permits.** Prior to its execution of this Lease, Tenant has confirmed to its complete satisfaction (i) that the legal permitted and zoned use for the Premises is for Used Automobile Display and Sales, and (ii) that Tenant will be able to obtain from applicable governmental authorities (including but not limited to California DMV and the City of National City) any and all applicable approvals, authorizations and permits it requires to be able to operate Used Automobile Display and Sales from the Premises.

**3.2    Existing Lease Termination Contingency.** The Premises are presently leased ("Existing Lease") by a tenant ("Existing Tenant") pursuant to an oral lease which is terminable by either Landlord or the Existing Tenant with ninety (90) days prior notice. The Commencement Date of this Lease is contingent upon the vacation of the Premises by the Existing Tenant under the Existing Lease ("Existing Lease Termination Contingency"). Upon execution of this Lease, Landlord will deliver a notice to terminate the Existing Lease. The Existing Tenant may vacate the Premises prior to the ninety (90) day period, and Landlord will deliver written notice to Tenant upon vacation of the Premises by the Existing Tenant to confirm that the Existing Lease Termination Contingency has been satisfied. The Commencement Date of this Lease will occur ten (10) days after Landlord's delivery of notice to Tenant confirming that the Existing Lease Termination Contingency has been satisfied.

**3.3    Commencement Date**. The commencement date of the Term of the Lease shall be ten (10) days after Landlord's delivery of notice to Tenant confirming that the Existing Lease Termination Contingency has been satisfied at which time Landlord will deliver occupancy of the Premises to Tenant ("Commencement Date"). Possession of the Premises shall be deemed tendered to Tenant on the Commencement Date. As of the Commencement Date the parties agree to execute and deliver a written confirmation of the Commencement Date.

**3.4    Term.** The "Initial Term" of this Lease shall be for **TEN (10) YEARS** commencing on the Commencement Date, and ending ten (10) years thereafter, unless sooner terminated to any provision

Initials: Landlord ___  Tenant ___

hereof.

**3.5    Rent Commencement Date**. The "Rent Commencement Date" is the date ninety (90) days following the Commencement Date because rent for the first three (3) months of the Initial Term is abated. The Initial Term, together with any properly exercised Option Period (defined in Section 3.6 below shall be collectively referred to herein as the "Term."

**3.6    Option to Renew.** Tenant shall have and is hereby granted two (2) options (individually an "Option") to extend this Lease beyond the Initial Term for an additional period of five (5) years each (individually an "Option Period", upon the same terms, covenants, conditions, and rental as set forth herein, except the Base Rent shall increase as provided herein. Tenant may exercise each such Option successively by giving written notice to Landlord not less than six (6) months prior to the expiration of the Initial Term of this Lease or expiration of the then current Option Period, as applicable. Notwithstanding the foregoing, Tenant shall not be entitled to extend the Term of this Lease if, at the time of exercise of an Option or at the time of commencement of an Option Period, Tenant is in default under any provision of this Lease as to which default Landlord has given notice to Tenant in accordance with Article 13 hereof and such default remains uncured after the expiration of any applicable cure period. If Tenant fails or shall not be entitled pursuant to the preceding sentence, to extend the Term of this Lease for an additional Option Period, all remaining rights of renewal shall automatically expire and no grace period shall be implied or granted in the event Tenant does not timely exercise either Option.

## 4.    RENT

**4.1**    Tenant shall pay to Landlord as base rent equal monthly installments in advance, on the first day of each month as follows: Beginning on the Rent Commencement Date, and continuing for 120 months, Tenant shall pay as follows:

| | |
|---|---|
| Month 1-12 | $20,000 [rent for months 1-3 is abated] |
| Month 13-24 | $20,000 |
| Month 25-36 | $20,000 |
| Month 37-48 | $20,000 |
| Month 49-60 | $20,000 |
| Month 61-120 | $20,000 + Rent Increase Adjusted for Increase in CPI Index |

Commencing in month 61 of the Initial Term, the above base rent shall be increased by the total increase in the Consumer Price Index, San Diego Area as published by the Bureau of Labor Statistics U.S. Department of Labor that occurred in the prior five (5) years ("Increase in CPI Index"). By way of example, assume that the total Increase in CPI Index for the first five (5) years of the initial Term was fifteen percent (15%) then the base rent for years 6 through 10 of the Initial Term would increase by fifteen percent (15%) ($3,000) to a new base rent of $23,000 each month. If the Term of the lease is extended through the exercise of an Option, base rent will once again increase by an amount equal to the Increase in CPI Index at the beginning of the first year of the first Option Period, and also the first year of the second Option Period. In no event shall the base rent ever decrease below the immediately preceding base rent.

**4.2    Additional Rent.** This Lease is what is commonly called a "Triple Net Lease," it being understood that Landlord shall receive the base rent set for in Section 4.1 and the following all of which are defined as "additional rent". Tenant shall also pay any and all impositions, taxes, real estate taxes, liens, charges or expenses of any nature whatsoever in connection with the Landlord's ownership and Tenant's operation of the Premises. In addition, Tenant shall pay to the parties respectively entitled thereto all impositions, insurance premiums, operating charges, maintenance charges, construction costs, and any other charges, costs and expenses which arise or may be contemplated under any provisions of this Lease during the Term hereof. It is the intention of the parties hereto that this Lease shall not be terminable for any reason by the Tenant (except as otherwise expressly set forth herein) and that the Tenant shall in no event be entitled to any abatement of or

Initials: Landlord _GP_    Tenant _____

reduction in rent payable hereunder, except as herein expressly provided. Any present or future law to the contrary shall not alter this agreement of the parties. Specifically, if through no fault of Landlord the Premises becomes untenable, Tenant is still obligated to pay rent and may not surrender possession based upon the property becoming untenable except as provided herein.

**4.3     Late Charges**. Tenant hereby acknowledges that late payment by Tenant to Landlord of rent and other sums due hereunder will cause Landlord to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult to ascertain. Such costs include, but are not limited to, processing and accounting charges, and late charges which may be imposed on Landlord by the terms of any mortgage or trust deed covering the Premises. Accordingly, if any installment of rent or any other sum due from Tenant shall not be timely received by Landlord within five (5) days when due, then Tenant shall pay to Landlord a late charge which shall be additional rent hereunder equal to five percent (5%) of such overdue amount. The parties hereby agree that such late charge represents a fair and reasonable estimate of the cost Landlord will incur by reason of late payment by Tenant. Acceptance of such late charge by Landlord shall in no event constitute a waiver of Tenant's default with respect to such overdue amount, nor prevent Landlord from exercising any of the other rights and remedies granted hereunder.

**4.4     Interest on Past Due Obligations.**     Any amount owed by Tenant to Landlord which is not paid when due shall bear interest from the due date of such amount at the rate of the greater of ten percent (10%) per annum or five percent (5%) over the rate then charged by the Federal Reserve Bank of San Francisco for advances to member banks ("Default Rate") as set from time to time, or such substitute index as provided by California law. Such increased or decreased Base Rate shall be effective as to any unpaid monetary obligation as of the date of each change in the Base Rate without notice or demand of any kind. However, interest shall not be payable on late charges to be paid by Tenant under this Lease. The payment of interest on such amounts shall not excuse or cure any default by Tenant under this Lease. If the interest rate specified in this Lease is higher than the rate permitted by law, the interest rate is hereby decreased to the maximum legal interest rate permitted by law notwithstanding any present or future law to the contrary.

**4.5     Net Income.**  This Lease is entered into by Landlord for the express purpose of providing Landlord with net income from rent, free and clear of any and all expenses, fees, assessments, charges, and real property taxes (see Article 9 below) attributable to the Premises. In addition to the rent, Tenant shall pay all insurance premiums, operating and maintenance charges, and any other charges, costs and expenses arising out of, or in any way connected with the Premises, occurring during the Term, unless otherwise expressly provided in this Lease. In the event of the non-payment of all or any portion of such charges, costs and expenses, Landlord shall have the same rights and remedies as provided in this Lease for failure of Tenant to pay rent. The parties agree that this Lease is not terminable for any reason by the Tenant, except as specifically provided herein. Tenant shall in no event be entitled to any abatement or reduction of rent or other monetary sums payable hereunder, except as expressly herein provided.

**4.6     Security Deposit.**  Concurrently with Tenant's execution of this Lease, Tenant will deposit with Landlord a security deposit ("Security Deposit") **in the amount of Twenty Thousand Dollars ($20,000.00)**. If Tenant defaults with respect to any of the terms, provisions, covenants and conditions of this Lease, Landlord may use, apply or retain the whole or any part of the Security Deposit for the payment of any Rent in default or any other sum which Landlord expends by reason of Tenant's default. Tenant is not entitled to any interest on the Security Deposit. It is expressly agreed that the Security Deposit is not an advance rental deposit or a measure of Landlord's damages in the case of Tenant's default. Upon application of all or any part of the Security Deposit, Tenant must upon demand restore the Security Deposit to its original amount. Any application of the Security Deposit by Landlord will not be deemed to have cured Tenant's default. Tenant hereby waives the provisions of Section 1950.7 of the California Civil Code, and all other provisions of Law, now or hereinafter in force, which imposes upon a landlord (or its successors) any obligation with respect to the handling or return of security deposits. The Security Deposit will be released to Tenant within forty-five (45) days of the surrender of the Premises to Landlord subject to any deductions made by Landlord pursuant to the terms of this Lease.

Initials: Landlord ___  Tenant ___

### 5.   USE

**5.1   Use.** The Premises shall be used and occupied only for Used Automotive Display and Sales ("Permitted Use") and will not use the Premises for any other use without the prior consent of the Landlord to be given, withheld or conditioned in Landlord's sole and absolute discretion. It was a material inducement and consideration to Landlord to agree to lease to Tenant, that Tenant is an experienced operator of used car sales with forty retail dealerships across twelve markets in Texas and California, and as such is familiar with any and all Applicable Requirements that would apply to the operation of the Tenant's Used Automobile Display and Sales from the Premises consistent with Applicable Requirements. It was a material inducement and consideration to Landlord to agree to lease to Tenant, that Tenant has agreed (i) that the current zoning for the Premises to allow for Used Automobile Display and Sales is a grandfathered use that would no longer be allowed today, (ii) that the current zoning allowing the legal operation for Used Automobile Display and Sales from the Premises to be an authorized and legal use is of major value to the Landlord and the rental value of the Premises, and (iii) that Tenant shall never do anything to jeopardize the existing zoning.

**5.2   Compliance with the Law.** Tenant shall, at Tenant's expense, comply promptly with any and all existing and future laws, building codes, regulations, laws, covenants or restrictions of record, regulations, zoning requirements, condition use permits and ordinances, Americans with Disabilities Act ("ADA") or any similar laws whether local, state or federal (collectively "Applicable Requirements") in effect during the Term or any part of the Term hereof regulating the use by Tenant of the Premises. Tenant shall not use or permit the use of the Premises in any manner that will tend to create waste or nuisance. Tenant agrees to be solely responsible for compliance with Applicable Requirements at its sole expense. Any failure of Tenant to comply with the requirements of any Applicable Requirements shall be a material default by Tenant.

**5.3   Condition of Premises.** Tenant confirms that it has had adequate time to inspect the physical conditions of the Premises including the building, and except as otherwise expressly set forth herein, Tenant hereby accepts the Premises in their condition existing as of the Effective Date of this Lease, subject to all Applicable Requirements governing and regulating the use of the Premises and accepts this Lease subject thereto and to all matters disclosed thereby and by any exhibits attached hereto. Tenant further acknowledges the Premises will need to be repainted, resurfaced, and repairs made, and will be subject to the terms and conditions of the ADA. The tenant further agrees and acknowledges that it shall be the sole responsibility of the tenant to comply with any and all provisions of the ADA as such compliance may be required to operate the Premises. The Tenant further agrees to indemnify, defend, protect and to hold Landlord harmless against any claims which may arise out of tenant's failure to comply with the ADA and any Applicable Requirements. Such indemnification shall include, but not necessarily be limited to reasonable attorney's fees, court costs and claims. Except as otherwise expressly set forth herein, Tenant acknowledges that neither Landlord nor Landlord's agent has made any representation or warranty as to the suitability or habitability of the Premises for the conduct of Tenant's business. Tenant and the owners of Tenant (i) accept the Premises "As-Is;" and (ii) acknowledge and agree that Landlord has not made, and does not intend to make, any representations as to the commercial suitability, physical condition, layout footage, expenses, operation or any other matters affecting or relating to the Premises and the Lease, except as specifically set forth or referred to herein, and Tenant and the owners of Tenant hereby expressly acknowledge that no such representations have been made.

**5.4   Landlord's Rule and Regulations.** Tenant shall faithfully observe and comply with the rules and regulations that Landlord shall from time to time promulgate. Landlord reserves the right from time to time to make all reasonable modifications to said rules and regulations. The additions and modifications to those rules and regulations shall be binding upon Tenant upon delivery of a copy to Tenant. Landlord shall not be responsible to Tenant for the nonperformance of any of said rules and regulations by any other tenants or occupants.

### 6.   MAINTENANCE, REPAIRS, AND ALTERATIONS

**6.1   Tenant's Obligations.** Tenant shall, during the Term of this Lease, keep in good order, condition, and repair, the Premises and every part thereof, structural or nonstructural, and all sidewalks,

Initials: Landlord _GP_   Tenant

landscaping, driveways, parking lots, fences, and signs located within the Premises. Landlord shall incur no expense nor have any obligation of any kind whatsoever in connection with maintenance of the Premises, and Tenant expressly waives the benefits of any statute now or hereafter in effect which would otherwise afford Tenant the right to make repairs at Landlord's expense or to terminate this Lease because of Landlord's failure to keep the Premises in good order, condition, and repair.

      **6.2    Surrender.** On the last day of the term hereof, or on any sooner termination, Tenant shall surrender the Premises to Landlord in good condition, broom clean, ordinary wear and tear, casualty and condemnation excepted. Tenant shall repair any damages to the Premises occasioned by its use thereof, or by the removal of Tenant's trade fixtures, furnishings, and equipment pursuant to Section 6.4.2, which repair shall include the patching and filling of holes and repair of structural damage.    Prior to the expiration or earlier termination of this Lease, Tenant, at its sole cost and expense, shall perform a Phase I Environmental Site Assessment Report of the Premises that complies with the latest ASTM standards in effect at the time between the last one hundred eighty (180) days of the Term and the last ninety (90) days of the Term to determine that there is no presence of any Hazardous Materials described above in violation of any applicable environmental laws and regulations, and shall deliver copies of all such reports to Landlord.

      **6.3    Landlord's Rights.** If Tenant fails to perform Tenant's obligations under this Article 6, Landlord may at its option (but shall not be required to) enter upon the Premises after ten (10) days prior written notice (except in the case of an emergency) to Tenant and put the same in good order, condition, and repair, and the cost thereof together with interest thereon at the rate of ten percent (10%) per annum shall become due and payable as additional rental to Landlord together with Tenant's next rental installment.

      **6.4    Alterations, Additions, and Improvements**

      **6.4.1    Tenant** shall not, without Landlord's prior written consent, make any alterations, improvements, or additions in, on, or about the Premises, which consent shall not be unreasonably withheld or conditioned; provided however, Tenant may undertake alterations, improvements, additions in, on, or about the Premises individually costing less than Two Hundred Fifty Thousand Dollars ($250,000.00) without Landlord's prior written consent. However, under no circumstances is tenant allowed to construct or install any type of underground storage tank on the Premises.  Any contractor hired by Tenant shall provide liability insurance, and workman's compensation insurance, in amount and form acceptable to Landlord in its sole and absolute discretion.

      **6.4.2    All** alterations, improvements, or additions which may be made on the Premises shall become the property of Landlord and remain upon and surrendered with the Premises at the expiration of the term. Notwithstanding the provisions of this Section 6.4.2, Tenant's machinery, equipment and shall remain the Property of Tenant and may be removed by Tenant subject to the provisions of Section 6.2. All alterations, improvements or additions shall be properly permitted, built in conformance with all Applicable Requirements, and be promptly completed by Tenant and approved by the jurisdiction having permitting authority. If a building permit is required for any alteration, improvement or addition, Tenant shall deliver a copy of the permit to Landlord prior to commencement of any such work. Tenant shall give Landlord at least fifteen (15) days' written notice of the nature of any such work and the proposed date of the commencement of any such work, to afford Landlord an opportunity to post appropriate notices of non-responsibility.

      **6.4.3    Tenant** shall pay, when due, all claims for labor or materials furnished or alleged to have been furnished to or for Tenant at or for use in the Premises, which claims are or may be secured by any mechanic's or materialmen's lien against the Premises, or any interest therein. If Tenant shall, in good faith, contest the validity of any such lien, Tenant shall furnish to Landlord a surety bond satisfactory to Landlord in an amount equal to not less than one and one-half times the amount of such contested lien claim indemnifying Landlord against liability arising out of such lien or claim. Such bond shall be sufficient in form and amount to free the Premises from the effect of such lien. In addition, Landlord may require Tenant to pay Landlord's reasonable attorneys' fees and costs incurred as a result of any such lien.

Initials: Landlord _GP_    Tenant _____

DocuSign Envelope ID: 742477EA-11B8-4BF4-9F0E-4CD1A414B909

**6.5 Signs.** Except for signage requiring structural changes to the Premises, the Tenant shall have the right to place or affix any signs or other objects on or about the Premises, including the roof or exterior walls of the Premises. Any signs installed by Tenant shall conform with applicable laws and deed and other restrictions. Tenant shall remove all signs at the termination of this Lease and shall repair any damage and close any holes caused or revealed by such removal.

**7. INSURANCE, INDEMNITY**

**7.1 Insuring Party.** As used in this Article 7, the term "insuring party" shall mean the party who has the obligation to obtain the insurance required hereunder. The insuring party in this case shall be designated in Article 19. Whether the insuring party is the Landlord or the Tenant, Tenant shall, as additional rent for the Premises, pay the cost of all insurance required hereunder. If Landlord is the insuring party, Tenant shall, within ten (10) days following demand by Landlord reimburse Landlord for the cost of the insurance so obtained.

**7.2 Liability Insurance.** The Tenant shall obtain and keep in force during the term of this Lease a policy of comprehensive public liability insurance insuring Landlord and Tenant against any liability arising out of the ownership, use, occupancy, or maintenance of the Premises and all areas appurtenant thereto. Such insurance shall be in an amount of not less than Five Million Dollars ($5,000,000.00) for injury to or death of one person in any one accident or an amount of not less than One Million Dollars ($ 1,000,000.00) for injury to or death of more than one person in any one accident or occurrence. Such insurance shall further insure Landlord and Tenant against liability for property damage of at least One Million Dollars ($1,000,000.00). The limits on the amount of insurance coverage provided above shall not, however, limit the liability of Tenant hereunder. Tenant shall also obtain and keep in force an umbrella liability coverage policy providing for Ten Million Dollars ($10,000,000.00) in additional liability coverage. If the Tenant shall fail to procure and maintain said insurance the Landlord may, but shall not be required to procure and maintain the same, but at the expense of the Tenant. Landlord shall be named as an additional insured and deductible for these liability coverages shall be no more than Two Thousand Five Hundred Dollars ($2,500). Tenant is responsible for covering loss subject to deductible or uninsured loss.

**7.3 Property Insurance.** The insuring party shall obtain and keep in force during the term of this Lease a policy or policies of insurance covering loss or damage to the Premises in the amount of the full replacement value thereof providing against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, special extended perils (all risk) and sprinkler leakage. Said insurance shall provide for payment for loss thereunder to Landlord and to the holder of a first mortgage on the Premises. If the insuring party shall fail to procure and maintain said insurance, the other party may, but shall not be required to, produce and maintain the same, but at the expense of the Tenant. Tenant shall also obtain business income insurance with coverage amount of at least One Million Dollars ($1,000,000.00) per occurrence. Landlord shall be named as an additional insured and deductible for this coverage shall be no more than Ten Thousand Dollars ($10,000.00). Tenant is responsible for covering loss subject to deductible.

**7.4 Insurance Policies.** Insurance required hereunder shall be in companies licensed to do business in the state in which the Premises are located having a Best's Rating of A- or better. In addition, all insurance policies carried by either party shall expressly waive any right on the part of the insurer against the other party for damage to or destruction of the Premises or portions thereof resulting from the acts, omissions or negligence of the other party. **THE INSURING PARTY SHALL DELIVER PRIOR TO POSSESSION TO THE OTHER PARTY COPIES OF POLICIES OF SUCH INSURANCE OR CERTIFICATES EVIDENCING THE EXISTENCE AND AMOUNT OF SUCH INSURANCE WITH LOSS PAYABLE CLAUSES SATISFACTORY TO LANDLORD.** No such policy shall be cancelable or subject to reduction of coverage or other modification except after ten (10) days prior written notice to Landlord. If Tenant is the insuring party, Tenant shall within ten (10) days prior to the expiration of such policies furnish Landlord with renewals or "binders" thereof, or Landlord may order such insurance and charge the cost thereof to Tenant, which amount shall be payable by Tenant upon demand. Tenant shall not do or permit to be done anything which shall invalidate the insurance policies referred to in Section 7.3. Tenant shall forthwith, upon Landlord's demand, reimburse Landlord for any additional

Initials: Landlord _____ Tenant _____

premiums attributable to any act or omission or operation of Tenant causing such increase in the cost of insurance. Failure of Landlord to demand such certificate or other evidence of full compliance with these insurance requirements or failure of Landlord to identify a deficiency from evidence that is provided shall not be construed as a waiver of Tenant's obligation to maintain such insurance. If Tenant fails to maintain the insurance as set forth herein, Landlord shall have the right, but not the obligation, to purchase said insurance at Tenant's expense. Tenant shall provide all certificates of insurance required above within ten (10) business days of Landlord's written request for said certificates. All required insurance shall be placed with insurers acceptable to Landlord. By requiring insurance herein, Landlord does not represent that coverage and limits will necessarily be adequate to protect Tenant, and as such coverage and limits shall not be deemed as a limitation of Tenant's liability under the indemnities granted to Landlord in this contract.

**7.5      Waiver of Subrogation.** Tenant and Landlord each waives any and all rights of recovery against the other, or against the officers, employees, agents, and representatives of the other, for loss of or damage to such waiving party or its property or the property of others under its control, when such loss or damage is insured under any insurance policy in force at the time of such loss or damage. Tenant and Landlord shall, upon obtaining the policies of insurance required hereunder, give notice to the insurance carriers that the foregoing mutual waiver of subrogation is contained in this Lease.

**7.6      Hold Harmless.** Tenant shall indemnify, defend and hold Landlord harmless from any and all claims arising from Tenant's use of the Premises or from the conduct of its business or from any activity, work, or things which may be permitted or suffered by Tenant in or about the Premises and shall further indemnify, defend, and hold Landlord harmless from and against any and all claims arising from any breach or default in the performance of any obligation on Tenant's part to be performed under the provision of this Lease or arising from any negligence of Tenant of any of its agents, contractors, employees, or invites and from any and all costs, attorney's fees, expenses, and liabilities incurred in the defense of any such claim or any action or proceeding brought thereon. Tenant hereby assumes all risk of damage to property or injury to persons in or about the Premises from any cause, and Tenant hereby waives all claims in respect thereof against Landlord, excepting where said damage arises out of negligence of Landlord.

**7.7      Workman's Compensation**. To the extent required by law, Tenant shall maintain workers' compensation insurance covering its employees in statutory limits.

**7.8      Automobile Insurance.**  If Tenant uses any vehicles in connection with Tenant's business operations, Tenant shall maintain automobile liability and, if necessary, commercial umbrella liability insurance with a limit of not less than One Million Dollars ($1,000,000) each accident.

## 8.      DAMAGE OR DESTRUCTION

**8.1      Restoration and Repair**. If, during the Term of this Lease, the Improvements shall be destroyed or damaged in whole or in part by fire, windstorm or any other cause whatsoever, Tenant shall give Landlord immediate notice thereof and shall repair, reconstruct or replace the Improvements, or the portion thereof so destroyed or damaged (whichever is reasonably required). All work shall be started and completed as soon as reasonably practicable, at Tenant's sole cost and expense. Tenant shall, however, immediately take such action as is necessary to assure that the Premises (or any portion thereof) do not constitute a nuisance or otherwise present a health or safety hazard. Tenant is not entitled to any abatement of or reduction in Rent during or resulting from any casualty affecting the Premises.

**8.2      Escrow of Insurance Proceeds.** In the event of a casualty resulting in a loss payment for the Improvements in an amount greater than Two Hundred Thousand Dollars ($200,000.00), the proceeds of all insurance policies received by Tenant, and the proceeds of all insurance policies received by Landlord, if any, shall be deposited in Landlord's name in an escrow account at a bank or other financial institution which is mutually acceptable to Landlord and Tenant, and shall be used by Tenant for the repair, reconstruction or restoration of the Improvements. Landlord shall timely disburse such funds in accordance with this Section as

needed by Tenant for all restoration work. Such proceeds shall be disbursed periodically by Landlord upon certification of the architect or engineer having supervision of the work that such amounts are the amounts paid or payable for the repair, reconstruction or restoration. Tenant shall, at the time of establishment of such escrow account and from time to time thereafter until said work shall have been completed and paid for, furnish Landlord with adequate evidence that at all times the undisbursed portion of the escrowed funds, together with any funds made available by Tenant, is sufficient to pay for the repair, reconstruction or restoration in its entirety. Tenant shall obtain and make receipted bills available to Landlord and, upon completion of said work, full and final waivers of mechanics or materialmen liens. In the event of a casualty resulting in a loss payment for the Improvements in an amount equal to or less than the amount stated above, the proceeds shall be paid to Tenant, and shall be applied towards repair, reconstruction and restoration.

       **8.3**      **Uninsured Losses.** Nothing contained herein shall relieve Tenant of its obligations under this Article if the destruction or damage is not covered, either in whole or in part, by insurance.

## 9.    REAL PROPERTY TAXES

       **9.1**      **Payment of Taxes.** Commencing on the Rent Commencement Date of this Lease and continuing throughout the Term, Tenant shall reimburse Landlord within thirty (30) days after billing or fifteen days prior to delinquency, whichever is later for all Real Property Taxes (as hereinafter defined) which (i) are a lien upon the Premises or any part thereof and (ii) become due during the Lease Term. Landlord will pay directly any and all Real Property Taxes prior to delinquency after receipt of bills and will provide an invoice to the Tenant for the Real Property Taxes for the Tenant to reimburse the Landlord. If any such real estate tax paid by Tenant shall cover any period of the time prior to or after the expiration of the term hereof, Tenant's share of such real estate tax shall be equitably prorated to cover only the period of time within the tax fiscal year during which this Lease shall be in effect, and Landlord shall promptly reimburse Tenant any amounts paid by Tenant for periods of time prior to or after the expiration of the term. If Tenant shall fail to pay any such real property taxes, Landlord shall have the right to pay the same, in which case Tenant shall repay such amount to Landlord with Tenant's next rent installment.

       **9.2**      **Definition of "Real Property" Taxes.** As used herein, the term "real property tax" shall include any form of assessment, license fee, rent tax, levy, penalty, or tax (other than inheritance or estate taxes), imposed by any authority having the direct or indirect power to tax, including any city, county, state, or federal government, or any school, agricultural, lighting, drainage, or other improvement district thereof, as against any legal or equitable interest of Landlord in the Premises or in the real property of which the Premises are a part, as against Landlord's right to rent or other income therefrom, or as against Landlord's business of leasing the Premises; and Tenant shall pay any and all charges and fees which may be imposed by the EPA or other similar government regulations or authorities.

       **9.3**      **Joint Assessment.** If the Premises are not separately assessed, Tenant's liability shall be an equitable proportion of the real property taxes for all of the land and improvements included with the tax parcel assessed, such proportion to be reasonably and in good faith determined by Landlord from the respective valuations assigned in the assessor's work sheets or such other information as may be reasonably available. Landlord's reasonable determination thereof, in good faith, shall be conclusive.

       **9.4**      **Personal Property Taxes.** Tenant shall pay prior to the delinquency all taxes assessed against and levied upon leasehold improvements, trade fixtures, furnishings, equipment, and all other personal property to be assessed and billed separately from the real property of Landlord.

## 10.    LANDLORD'S INTEREST NOT SUBJECT TO LIENS

       **10.1**      **Liens, Generally.** Tenant shall not create or cause to be imposed, claimed or filed upon the Premises, or any portion thereof, or upon the interest of Landlord therein, any lien, charge or encumbrance whatsoever. If, because of any act or omission of Tenant, any such lien, charge or encumbrance whatsoever.

Initials: Landlord _GP_   Tenant _____

DocuSign Envelope ID: 7424375A-11B8-4BE4-9E0E-4CD4A414B909

If, because of any act or omission of Tenant, any such lien, charge or encumbrance shall be imposed, claimed or filed, Tenant shall, at its sole cost and expense, causes the same to be fully paid and satisfied or otherwise discharged of record (by bonding or otherwise) and Tenant shall indemnify and save and hold Landlord harmless from and against any and all costs, liabilities, suits, penalties, claims and demands whatsoever, and from and against any and all reasonable attorney's fees, at both trial and all appellate levels, resulting or on account thereof and therefrom. In the event that Tenant shall fail to comply with the foregoing provisions of this Section 10.1, Landlord shall have the option of paying, satisfying or otherwise discharging (by bonding or otherwise) such lien, charge or encumbrance and Tenant agrees to reimburse Landlord, upon demand and as Additional Rent, for all sums so paid and for all costs and expenses incurred by Landlord in connection therewith, together with interest thereon as provided in this Lease, until paid.

## 11.    UTILITIES

**11.1**    Tenant shall pay for all water, sewer, gas, heat, light, power, telephone, trash removal and other utilities and services supplied to the Premises, together with any taxes thereon. If any such services are not separately metered to Tenant, Tenant shall pay a reasonable proportion of all cost of utilities to be determined by Landlord of all charges for jointly metered utilities with other premises. In addition, Tenant if required by Landlord shall pay its proportionate cost of sub-metering utilities. Tenant shall dispose of all trash in or on the Premises or generated by the business conducted thereon, at Tenant's sole cost and expense and in accordance with all applicable law.  All trash enclosures shall be maintained on the Premises in a neat and clean appearance at all times. Landlord does not represent or warrant that any such utilities are or will be available to service the Premises.

## 12.    ASSIGNMENT AND SUBLETTING

**12.1    Landlord's Consent Required.** Except for transfers made pursuant to Section 12.2 below, Tenant shall not voluntarily or by operation of law assign, transfer, mortgage, sublet, or otherwise transfer or encumber all or any part of Tenant's interest in this Lease or in the Premises (each a "Transfer") without Landlord's prior written consent, which Landlord may grant or withhold in its reasonable discretion. Any attempted assignment, transfer; mortgage, encumbrances, or subletting (except for those made pursuant to Section 12.2 below) without such consent shall be void and shall constitute a breach of the Lease.

**12.2    Assignments to Related Entities**. Notwithstanding anything to the contrary, Landlord's consent to an assignment or subletting shall not be required if the assignee or subtenant is (a) an "affiliate" (as defined below) of the Tenant, or (b) an entity which acquires all or substantially all the assets or outstanding stock of the Tenant through a merger or acquisition, and the assignee or subtenant agrees to be bound by the terms of the Lease and to use the Premises for the Permitted Use. For purposes hereof, the term "affiliate" means any person or entity which now owns at least 51% voting control of the Tenant and any entity in which the Tenant or Tenant's current owners own at least 51% voting control.

**12.3    No Release of Tenant.** Regardless of Landlord's consent, no subletting or assignment shall release Tenant of Tenant's obligations to pay the rent and to perform all other obligations to be performed by Tenant hereunder for the term of this Lease. The acceptance of rent by Landlord from any other person shall not be deemed to be a waiver by Landlord of any provision hereof. Consent to one assignment or subletting shall not be deemed consent to any subsequent assignment of subletting.

**12.4    Bonus Rent**. If Landlord consents to any Transfer, Tenant will pay to Landlord, as Additional Rent, fifty percent (50%) of any amount Tenant receives on account of the Transfer in excess of the amounts this Lease otherwise requires Tenant to pay.

**12.5    Landlord's Consent; Standards**. In determining whether to grant its consent to the Tenant's sublet or assignment request, Landlord may consider any reasonable factor. Landlord and Tenant agree that failure to satisfy any one of the following factors, or any other reasonable factor, will be reasonable grounds for denying Tenant's request:

Initials: Landlord _GP_    Tenant _____

**12.5.1** financial strength of the proposed subtenant/assignee, as evidenced by financial statements certified by an independent public accountant, must be at least equal to that of the existing Tenant (including the Guarantor) as of the date hereof and as of the date of assignment;

**12.5.2** business reputation of the proposed subtenant/assignee must be satisfactory to Landlord;

**12.5.3** use of the Premises by the proposed subtenant/assignee (i) will not violate or create any potential violation of any Laws and will be for only the Permitted Use; (ii) will not violate any other agreements affecting the Premises, Landlord; and (iii) will not constitute a nuisance; ~~and~~

**12.5.4** The Guarantor of the proposed subtenant/assignee has a financial statement certified by an independent public accountant, must be at least equal to that of the existing Tenant as of the date hereof and as of the date of assignment; and

12.5.5 the managerial and operational skills of the proposed subtenant/assignee must be at least substantially equal to those of the existing Tenant or have the approval by an auto manufacturer to serve as a replacement operator for that manufacturer.

Tenant agrees that its personal business skills and philosophy were an important inducement to Landlord for entering into this Lease and that Landlord may reasonably object to the transfer of the Premises to another tenant whose proposed use, while permitted by this Lease, would involve a materially different quality, manner or type of business skill than that of Tenant as determined in Landlord's sole discretion.

## 13.    DEFAULTS, REMEDIES

**13.1    Defaults.** It shall constitute a Default of the Tenant if any Guarantor fails or refuses, upon request to provide: (a) evidence of the execution of the Guaranty, including the authority of the party signing on Guarantor's behalf to obligate Guarantor, (b) current financial statements, (c) an Estoppel Certificate, or (d) written confirmation that the guaranty is still in effect. Additionally, the occurrence of any one or more of the following events shall constitute a default and breach of this Lease by Tenant:

**13.1.1** The vacating or abandonment of the Premises by Tenant unless Tenant continues to timely pay rent and other amounts due hereunder.

**13.1.2** The failure by Tenant to make any payment of rent or any other payment required to be made by Tenant hereunder and such failure to pay continues for more than five (5) days following Tenant's receipt of written notice by Landlord of such non-payment by the due date.

**13.1.3** The failure by Tenant to observe or perform any of the covenants, conditions, or provisions of this Lease to be observed or performed by Tenant, other than described in Section 13.1.2, above, where such failure shall continue for a period of thirty (30) days after written notice thereof from Landlord to Tenant; provided, however, that if the nature of Tenant's default is such that more than thirty (30) days are reasonably required for its cure, the Tenant shall not be deemed to be in default if Tenant commenced such cure within said thirty (30) days period and thereafter diligently prosecutes such cure to completion.

**13.1.4** The making by Tenant of any general assignment, or general arrangement for the benefit of creditors.

**13.1.5** The filing by or against Tenant of a petition to have Tenant adjudged a bankrupt or a petition for reorganization or arrangement under any law relating to bankruptcy (unless, in the case of a petition filed against Tenant, the same is dismissed within sixty (60) days).

Initials: Landlord _GP_    Tenant _____

DocuSign Envelope ID: 742477FA-11B8-4BF4-9F0E-4CD144414B909

**13.1.6** The appointment of a trustee or receiver to take possession of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease, where possession is not restored to Tenant within thirty (30) days.

**13.1.7** The attachment, execution, or other judicial seizure of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease, where such seizure is not discharged within thirty (30) days.

**13.1.8** The discovery that any financial statement of Tenant or of any Guarantor given to Landlord was materially false.

**13.1.9** If the performance of Tenant's obligations under this Lease is guaranteed: (i) the termination of a Guarantor's liability with respect to this Lease other than in accordance with the terms of such guaranty, (ii) a Guarantor's becoming insolvent or the subject of a bankruptcy filing, (iii) a Guarantor's refusal to honor the guaranty, or (iv) a Guarantor's breach of its guaranty obligation on an anticipatory basis,

**13.2** **Remedies in Default.** If Tenant defaults beyond any applicable notice and cure periods, Landlord is entitled to:

**13.2.1** Landlord may terminate this Lease and forthwith repossess the Premises and be entitled to recover forthwith as damages a sum of money equal to the total of:

**13.2.1.1** The cost of recovering the Premises,

**13.2.1.2** The unpaid rent earned at the time of termination, plus interest thereon at the maximum applicable lawful interest rate from the due date,

**13.2.1.3** The balance of the rent for the remainder of the term of the Lease, less the fair market rental value of the Premises for said period, and

**13.2.1.4** Any other sum of money and damages owed by Tenant to Landlord.

**13.2.2** Landlord may terminate Tenant's right of possession (but not the Lease) and may repossess the Premises by forcible entry or detainer suit or otherwise, without demand or notice of any kind to Tenant and without terminating this Lease, in which event Landlord may, but shall be under no obligation to, relet the same for the account of Tenant for such rent and upon such terms as shall be satisfactory to Landlord. For the purpose of such reletting Landlord is authorized to decorate or to make any repairs, changes, alterations, or additions in or to the Premises that may be necessary or convenient; and if Landlord shall fail or refuse to relet the Premises, or if the same are relet and a sufficient sum shall not be realized from such reletting after paying the unpaid rent and additional rent due hereunder earned but unpaid at the time of reletting plus interest thereon at the maximum lawful interest rate, the cost of recovering possession, and all of the costs and expenses of such decorations, repairs, changes, alterations, and additions and the expense of such reletting and of the collection of the rent accruing therefrom to satisfy the rent provided for in the Lease to be paid, Tenant shall pay to Landlord as damages a sum equal to the amount of the rental reserved in this Lease for such periods; or, if the Premises have been relet, the Tenant shall satisfy and pay any such deficiency upon demand therefor from time to time; and Tenant agrees that Landlord may file suit to recover any sums falling due under the terms of this Article 13 from time to time, and that no delivery to or recovery of any portion due Landlord hereunder shall be any defense in any action to recover any amount not theretofore reduced to judgment in favor of Landlord nor shall such reletting be construed as an election of the part of Landlord to terminate this Lease unless a written notice of such intention be given to Tenant by Landlord. Notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this Lease for any such previous breach.

**13.2.3** In the event of default by Tenant in any of the terms or covenants of this Lease, or in the event the Premises are abandoned by Tenant, Landlord shall have the right but not the obligation to relet same for the remainder of the term provided for herein; and if the rent received through reletting does not

Initials: Landlord _GP_   Tenant _____

at least equal the rent provided for herein, Tenant shall pay and satisfy the deficiency between the amount of the rent so provided for and that received through reletting, including, but not limited to, the cost of renovating, altering, and decorating for a new occupant. Nothing herein shall be construed as in any way denying Landlord the right, in the event of abandonment of the Premises or other breach of this Agreement by Tenant, to treat the same as an entire breach and at Landlord's option to terminate this Lease and/or immediately seek recovery for the entire breach of this Lease and any and all damages which Landlord suffers thereby.

13.2.4    Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided or any other remedies provided by law, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any rent of other sums due to Landlord hereunder or of any damages accruing to Landlord by reason of the violation of any term, provision, and covenant herein contained. No waiver by Landlord of any violation or breach of any of the terms, provisions, and covenants herein contained shall be deemed or construed to constitute a waiver of any other violation or breach of any of the terms, provisions, and covenants herein contained. Forbearance by Landlord to enforce one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of such default.

13.2.5    If Tenant defaults beyond any applicable notice and cure periods, Landlord is entitled to, in addition to other remedies available to Landlord, Landlord at its option shall be entitled, and is hereby authorized, without any notice to Tenant whatsoever, to enter into and upon the Premises by use of a master key, a duplicate key, or any other peaceable means, and to change, alter, and/or modify the door locks on all entry doors of the Premises, permanently excluding Tenant and its officers, principals, agents, employees, representatives, and invites therefrom. In the event that Landlord has either permanently repossessed the Premises as aforesaid or has elected to terminate this Lease by reason of Tenant's default, Landlord shall not thereafter be obligated to provide Tenant with a key to the Premises at any time, regardless of any amounts subsequently paid by Tenant; provided, however, that in any such instance, during Landlord's normal business hours and at the convenience of Landlord and upon receipt of a written request from Tenant accompanied by such written waivers and releases as Landlord may require, Landlord may, at its option:

13.2.5.1    Escort Tenant or its authorized representatives to the Premises to retrieve any personal belongings or other property of Tenant not subject to the Landlord's lien or security interest described herein, or,

13.2.5.2    Obtain a list from Tenant of such personal property as Tenant intends to remove, whereupon Landlord shall remove such property and make it available to Tenant at a time and place designated by Landlord. In the event Landlord elects option 13.2.5.1, above, Tenant shall pay in cash and in advance all costs and expenses estimated by Landlord to be incurred in removing such property and making it available to Tenant, including, but not limited to, all moving and/or storage charges theretofore incurred by Landlord with respect to such property. If Landlord elects to exclude Tenant from the Premises without permanently repossessing the Premises or terminating this Lease pursuant to the foregoing, then Landlord shall not be obligated to permit Tenant entry into the Premises or provide Tenant with a key to re-enter the Premises until such time as all delinquent rental and other sums, including interest and late charges thereon, if any, due under this Lease have been fully paid, and all other defaults, if any, have been completely and timely cured to Landlord's satisfaction (if such occurs prior to actual permanent repossession or termination), and Landlord has been given assurances by Tenant reasonably satisfactory to Landlord evidencing Tenant's ability to satisfy its remaining obligations under this Lease. Landlord's remedy hereunder shall be in addition to, and not in lieu of, any of its other remedies set forth in this Lease or otherwise available to Landlord at law or in equity.

13.3    **Default by Landlord.** Landlord shall be in default if Landlord fails to (a) make any payment of money due Tenant hereunder within fifteen (15) days after the receipt of written notice from Tenant that same is overdue (in which event the delinquent amount shall accrue interest at the Default Rate); or (b) perform an obligation required of Landlord, where such failure shall continue for a period of thirty (30) days after written notice by Tenant to Landlord and specifying wherein Landlord has failed to perform such obligation; provided, however, that if the nature of Landlord's obligation is such that more than thirty (30) days are required for performance then Landlord shall not be in default if Landlord commences performance within such thirty (30)

DocuSign Envelope ID: 74243756A-11B8-4BF4-9E9E-4CD1A414B909

day period and thereafter diligently prosecutes the same to completion. In no event shall Tenant have the right to terminate this Lease as a result of Landlord's default, and Tenant's remedies shall be limited to general and consequential damages and/or an injunction. Provided however, Tenant hereby waives its right to recover any consequential damages including lost profits or punitive damages arising out of a Landlord default. This Lease and the obligations of Tenant hereunder shall not be affected or impaired because Landlord is unable to fulfill any of its obligations hereunder or is delayed in doing so, if such inability or delay is caused by reason of a Force Majeure Event, and the time for Landlord's performance shall be extended for the period of any such delay. Any claim, demand, right or defense by Tenant that arises out of this Lease or the negotiations which preceded this Lease shall be barred unless Tenant commences an action thereon, or interposes a defense by reason thereof, within twelve (12) months after the date that Tenant obtains actual knowledge of the inaction, omission, event or action that gave rise to such claim, demand, right or defense.

### 14. CONDEMNATION

If the Premises or any portion thereof are taken under the power of eminent domain or sold by Landlord under the threat of the exercise of said power (all of which is herein referred to as "condemnation"), this Lease shall terminate as of the date the condemning authority takes title or possession, whichever occurs first. All awards for the taking of any part of the Premises or any payment made under the threat of the exercise of power of eminent domain shall be the property of Landlord, whether made as compensation for diminution of value of the leasehold or for the taking of the fee or as severance damages; provided, however, that Tenant shall be entitled to any award for loss of or damage to Tenant's trade fixtures and removable personal property.

### 15. GENERAL PROVISIONS

#### 15.1 Offset Statement

**15.1.1** Tenant shall at any time upon not less than ten (10) days prior written notice from Landlord execute, acknowledge, and deliver to Landlord a statement in writing (1) certifying that, to Tenant's current, actual knowledge, this Lease is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying that this Lease, as so modified, is in full force and effect) and the date to which the rent, security deposit, and other charges are paid in advance, if any; and (2) acknowledging that there are not, to Tenant's current, actual knowledge, any uncured defaults on the part of Landlord hereunder, or specifying such defaults, if any, which are claimed. Any such statement may be conclusively relied upon by any prospective purchaser or encumbrance of the Premises.

**15.1.2** Tenant failure to deliver such statement within such time shall be conclusive upon Tenant (1) that this Lease is in full force and effect, without modification except as may be represented by Landlord, (2) that there are no uncured defaults in Landlord's performance, and (3) that not more than one (1) month's rent has been paid in advance.

**15.1.3** If Landlord desires to finance or refinance the Premises, or any part thereof, Tenant hereby agrees to deliver to any lender designated by Landlord such financial statements of Tenant as may be reasonably required by such lender. Such statements shall include the past two (2) years financial statements of Tenant. All such financial statements shall be received by Landlord in confidence and shall be used only for the purposes herein set forth.

Initials: Landlord _GP_ Tenant

DocuSign Envelope ID: 742477EA-41B8-4BF4-9F0E-4CD1A414B909

**15.2 Landlord's Interests.** During the Term, Owner may at any time in its sole and absolute discretion sell, convey or contract to sell or convey all, and only all, of the Premises, provided that any such sale, conveyance, or contract to sell, or convey shall be subject to the terms and conditions of this Lease, and shall expressly provide that, the new Owner/Landlord of the Premises shall assume all rights, duties and obligations of this Lease, and any amendments or modifications thereto. In the event of any transfer of such title of interest, Landlord herein named (and in case of any subsequent transfers the then grantor) shall be relieved from and after the date of such transfer of all liability as respects Landlord's obligations thereafter to be performed provided that any funds in the hands of Landlord or the then grantor at the time of such transfer, in which Tenant has an interest, shall be delivered to the grantee. The obligations contained in this Lease to be performed by Landlord shall, subject as aforesaid, be binding on Landlord's successors and assigns, only during their respective periods of ownerships.

**15.3 Severability.** The invalidity of any provision of this Lease, as determined by a court of competent jurisdiction, shall in no way affect the validity of any other provision hereof.

**15.4 Interest on Past-Due Obligations.** Except as expressly herein provided, any amount due to Landlord not paid when due shall bear interest at ten percent (10%) per annum from the date due. Payment of such interest shall not excuse or cure any default by Tenant under this Lease.

**15.5 Time of Essence.** Time is of the essence and each and all of its provisions in which performance is a factor.

**15.6 Captions.** Article and paragraph captions are not part hereof.

**15.7 Incorporation of Prior Agreements; Amendments.** This Lease contains all agreements of the parties with respect to any matter mentioned herein. No prior agreement or understanding pertaining to any such matter shall be effective. This Lease may be modified in writing only, signed by the parties in interest at the time of the modification.

**15.8 Waivers.** No waiver by Landlord of any provision hereof shall be deemed a waiver of any other provision hereof or of any matter subsequent breach by Tenant of the same or any other provision. Landlord's consent to or approval of any act shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act by Tenant requiring Landlord's consent or approval hereunder. The acceptance of rent hereunder by Landlord shall not be a waiver of any preceding breach by Tenant of any provision hereof, other than the failure of Tenant to pay the particular rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such rent.

**15.9 Recording.** Tenant shall not record this Lease. Any such recordation shall be a material default and breach under this Lease.

**15.10 Holding Over.** Tenant shall vacate the Premises upon the expiration or earlier termination of this Lease. Tenant shall reimburse Landlord for, and indemnify Landlord against, all damages that Landlord incurs from Tenant's delay in vacating the Premises. If Tenant does not vacate the Premises upon the expiration or earlier termination of the Lease and Landlord thereafter accepts rent from Tenant, Tenant's occupancy of the Premises shall be a "month-to-month" tenancy, subject to all of the terms of this Lease applicable to a month-to-month tenancy, and the base rent then in effect shall be increased by one hundred percent (100%) so that it will be two hundred percent (200%) of the then applicable base rent. If Tenant fails to vacate and deliver possession of the Premises to Landlord on expiration or termination of the Term, in the manner and in the condition required by the terms of this Lease, Tenant shall hold Landlord, and its trustees and beneficiaries, harmless from all claims, liabilities, and damages resulting from Tenant's failure to vacate and deliver possession of the Premises, including, without limitation, claims made by a succeeding tenant resulting from Tenant's failure to vacate and deliver possession of the Premises and rental loss which Landlord suffers. The provisions of this Section shall survive the expiration or sooner termination of this Lease with respect to any claims or liability arising in connection with any event occurring prior to such expiration or termination.

Initials: Landlord _GP_ Tenant _[signature]_

DocuSign Envelope ID: 742477FA-11B8-4BF4-9E9E-4CD1A414B909

**15.11 Cumulative Remedies.** No remedy or election hereunder shall be deemed exclusive but shall whenever possible be cumulative with all other remedies at law or in equity.

**15.12 Covenants and Conditions.** Each provision of this Lease performable by Tenant shall be deemed both a covenant and a condition.

**15.13 Binding Effect; Choice of Law.** Subject to any provisions hereof restricting assignment or subletting by Tenant and subject to provisions of Section 15.2, this Lease shall bind the parties, their personal representatives, successors and assigns. This Lease shall be governed by the laws of the state where the Premises are located. Venue shall be in the Superior Court of San Diego County.

**15.14 Subordination.** This Lease, at Landlord's option, shall be subordinate to any ground lease, mortgage, or any other hypothecation for security now and hereafter placed upon the real property of which the Premises are a part and to any and all advances made on the security thereof and to all renewals, modifications, consolidations, replacements, and renewals thereof; provided, however, and notwithstanding anything to the contrary, such subordination shall extend only to such mortgages under which the mortgagee by agreement in a separate instrument contracts in substance that Tenant's right to quiet possession of the Premises shall not be disturbed so long as Tenant is not in default and so long as Tenant performs its obligations under the Lease on condition that Tenant, when requested by the mortgagee, shall execute an attornment agreement to the mortgagee should the mortgagee succeed to the rights of the landlord under the Lease. If any mortgagee, trustee, or ground lessor shall elect to have this Lease prior to the lien of its mortgage or ground lease and shall have given written notice thereof to Tenant, this Lease shall be deemed prior to such mortgage or ground lease whether this Lease is dated prior or subsequent to the date of said mortgage or ground lease or the date of recording thereof.

**15.15 Attorney's Fees.** If either party named herein brings an action to enforce the terms hereof or declare rights hereunder, the prevailing party in any such action, on trial or appeal, shall be entitled to all of its costs and expenses, including reasonable attorneys' and other fees, incurred by the prevailing party in connection with such action or proceeding as fixed by the Court. The term "attorneys' and other fees" shall mean and include attorneys' fees, accountants' fees, expert witness fees and any and all other similar fees incurred in connection with the action or proceeding and preparations therefore. The term "action or proceeding" shall mean and include actions, proceedings, suits, arbitrations, appeals and other similar proceedings. The court shall determine which party is the "prevailing party," whether or not the dispute or controversy proceeds to final judgment.

**15.16 Landlord's Access.** Landlord and Landlord's agents shall have the right to enter the Premises at reasonable times for the purpose of inspecting the same, showing the same to prospective purchasers or lenders, and making such alterations, repairs, improvements, or additions to the Premises, or to the building of which they are a part, required hereunder. Landlord may at any time place on or about the Premises any ordinary "For Sale" signs; and Landlord may at any time during the last one hundred twenty (120) days of the term hereof place on or about the Premises any ordinary "For Sale or Lease" signs, all without rebate of rent or liability to Tenant.

**15.17 Auctions.** Tenant shall not place any auction sign upon the Premises or conduct any auction thereon without Landlord's prior written consent; provided, however, and notwithstanding the forgoing, Tenant shall, without Landlord's consent, be entitled to (i) place signs upon the Premises regarding automobile auctions, and (ii) conduct automobile auctions on the Premises.

**15.18 Merger.** The voluntary or other surrender of this Lease by Tenant, or a mutual cancellation thereof, shall not work a merger, and shall, at the option of Landlord, terminate all or any existing subtenancies or may, at the option of Landlord, operate as an assignment to Landlord of any or all of such subtenancies.

Initials: Landlord _GP_ Tenant _____

DocuSign Envelope ID: 74247E5A-21B8-4BF4-9F0E-4CD344414B909

**15.19   Limited Liability Company Authority.** Tenant represents and warrants that each individual executing this Lease on behalf of Tenant, is duly authorized to execute and deliver this Lease on behalf of Tenant, in accordance with the Operating Agreement of Tenant, and that this Lease is binding upon Tenant.

**15.20   Liability of Landlord.** Landlord shall not be liable to Tenant, its employees, agents, invitees, licensees, assignees, sublessees, customers, clients, contractors, or guests for any damage, injury, loss, compensation or claim, including, but not limited to, claims for the interruption of or loss to Tenant's business, based on, arising out of or resulting from any cause whatsoever (except the negligence or intentional acts of Landlord and its employees, agents, invitees, licensees, and contractors), including, but not limited to: (i) repairs to any portion of the Premises; (ii) interruption in Tenant's use of the Premises: (iii) any accident or damage resulting from the use or operation of any equipment within the Premises, including without limitation, heating, cooling, electrical or plumbing equipment or apparatus: (iv) any fire, robbery, theft, mysterious disappearance or other casualty; and (v) any leakage or seepage in or from any part or portion of the Premises, whether from water, rain or other precipitation that may leak into, or flow from, any part of the Premises, or from drains, pipes or plumbing fixtures in the Improvements.  The liability of Landlord to Tenant for any default by Landlord under this Lease or arising in connection with any other matter relating to the Premises shall be limited solely and exclusively to Landlord's interest in the Premises (including without limitation, all rents, insurance, condemnation and/or sale proceeds and/or other income or profits generated by the Premises).  The limitations of liability contained in this Section shall inure to the benefit of Landlord's present and future trustees and beneficiaries, and Landlord's successors and assigns.  Under no circumstances shall any present or future trustee or beneficiary have any personal liability for the performance of Landlord's obligations under this Lease.

**15.21   INDEMNIFICATION OF LANDLORD.** TO THE FULLEST EXTENT PERMITTED BY LAW, TENANT SHALL PAY, PROTECT, DEFEND, INDEMNIFY AND SAVE AND HOLD LANDLORD, ITS TRUSTEES OR BENEFICIARIES (COLLECTIVELY THE "INDEMNIFIED PARTIES") HARMLESS FROM AND AGAINST ANY AND ALL LIABILITIES, OBLIGATIONS, LOSSES, DAMAGES, INJUNCTIONS, SUITS, ACTIONS, FINES, PENALTIES, CLAIMS, DEMANDS, COSTS AND EXPENSES OF EVERY KIND OR NATURE (WHETHER OR NOT CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF LANDLORD AND ITS EMPLOYEES, AGENTS, INVITEES, LICENSEES, AND CONTRACTORS BUT EXCLUDING CAUSED BY THE GROSS BEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH PARTIES), INCLUDING REASONABLE ATTORNEYS' FEES AND COURT COSTS, INCURRED BY LANDLORD, ARISING DIRECTLY OR INDIRECTLY FROM OR OUT OF (COLLECTIVELY THE "INDEMNIFIED MATTERS"): (I) ANY FAILURE BY TENANT TO PERFORM ANY OF THE TERMS, PROVISIONS, COVENANTS OR CONDITIONS OF THIS LEASE ON TENANT'S PART TO BE PERFORMED; (II) ANY ACCIDENT, INJURY OR DAMAGE WHICH SHALL HAPPEN AT, IN OR UPON THE PREMISE, HOWEVER OCCURRING; (III) ANY MATTER OR THING GROWING OUT OF THE CONDITION, OCCUPATION, MAINTENANCE, ALTERATION, REPAIR, USE OR OPERATION BY ANY PERSON OF THE IMPROVEMENTS OR THE PREMISES, OR ANY PART THEREOF, OR THE OPERATION OF THE BUSSINESS CONTEMPLATED BY THIS LEASE TO BE CONDUCTED THEREON, THEREAT, THEREIN, OR THEREFROM; (IV) ANY FAILURE OF TENANT TO COMPLY WITH ANY LAWS, ORDINANACES, REQUIREMENTS, ORDERS, DIRECTIONS, RULES OR REGULATIONS OF ANY GOVERNMENTAL AUTHORITY, INCLUDING, WITHOUT LIMITATION, THE ACCESSIBILITY LAWS; OR (V) ANY OTHER ACT OR OMISSION OF TENANT, ITS EMPLOYEES, AGENTS, INVITEES, LICENSEES, ASSIGNEES, SUBLESSEES, CONTRACTORS OR CUSTOMERS. TENANT'S OBLIGATIONS HEREUNDER SHALL INCLUDE, BUT SHALL NOT BE LIMITED TO (A) COMPENSATING THE INDEMNIFIED PARTIES FOR DAMAGES ARISING OUT OF INDEMNIFIED MATTERS WITHIN TWENTY (20) DAYS AFTER WRITTEN DEMAND FROM AN INDEMNIFIED PARTY AND (B) PROVIDING A DEFENSE, WITH COUNSEL REASONABLY SATISFACTORY TO THE INDEMNIFIED PARTY, AT TENANT'S SOLE EXPENSE, WITHIN TWENTY (20) DAYS AFTER WRITTEN DEMAND FROM THE INDEMNIFIED PARTY, OF ANY CLAIMS, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO AN INDEMNIFIED MATTER WHETHER OR NOT LITIGATED OR REDUCED TO JUDGMENT AND WHETHER OR NOT WELL FOUNDED. IF TENANT IS OBLIGATED TO COMPENSATE AN INDEMNIFIED PARTY FOR DAMAGES ARISING OUT OF AN INDEMNIFIED MATTER, LANDLORD SHALL HAVE THE IMMEDIATE AND UNCONDITIONAL RIGHT, BUT NOT THE OBLIGATION, WITHOUT NOTICE OR DEMAND TO TENANT, TO PAY THE DAMAGES, AND

Initials: Landlord _GP_   Tenant _____

TENANT SHALL, UPON TWENTY (20) DAYS' ADVANCE WRITTEN NOTICE FROM LANDLORD, REIMBURSE LANDLORD FOR THE COSTS INCURRED BY LANDLORD. THE INDEMNIFIED PARTIES NEED NOT FIRST PAY ANY DAMAGES TO BE INDEMNIFIED HEREUNDER. TENANT'S OBLIGATIONS UNDER THIS SECTION SHALL NOT BERELEASED, REDUCED OR OTHERWISE LIMITED BECAUSE ONE OR MORE OF THE INDEMNIFIED PARTIES ARE OR MAY BE ACTIVELY OR PASSIVELY NEGLIGENT WITH RESPECT TO AN INDEMNIFIED MATTER OR BECAUSE AN INDEMNIFIED PARTY IS OR WAS PARTIALLY RESPONSIBLE FOR THE DAMAGES INCURRED. IN ADDITION, IF ANY PERSON NOT A PARTY TO THIS LEASE SHALL INSTITUTE ANY OTHER TYPE OF ACTION AGAINST TENANT IN WHICH LANDLORD, INVOLUNTARILY AND WITHOUT CAUSE, SHALL BE MADE A PARTY DEFENDANT, TENANT SHALL INDEMNIFY, HOLD LANDLORD HARMLESS FROM AND DEFEND LANDLORD FROM ALL LIABILITY BY REASON THEREOF. IT IS UNDERSTOOD AND AGREED THAT PAYMENT SHALL NOT BE A CONDITION PRECEDENT TO ENFORCEMENT OF THE FOREGOING INDEMNIFICATION OBLIGATIONS. TENANT'S DEFENSE OBLIGATIONS HEREUNDER SHALL INCLUDE THE OBLIGATION, UPON DEMAND, TO DEFEND LANDLORD AGAINST ANY CLAIM OR ACTION OF THE TYPES HEREIN SPECIFIED BY LEGAL COUNSEL SELECTED BY TENANT'S LIABILITY INSURANCE CARRIER OR OTHERWISE REASONABLY SATISFACTORY TO LANDLORD; PROVIDED, HOWEVER, THAT THIS SECTION 15.21 SHALL NOT EXTEND TO ANY DAMAGE OR INJURY WHICH TENANT ESTABLISHES IN A COURT OF COMPETENT JURISDICTION WAS SOLELY AND PROXIMATELY CAUSED BY THE NEGLIGENCE OR WILLFUL MISCONDUCT OF LANDLORD, ITS AGENTS, EMPLOYEES OR CONTRACTORS.

The indemnity obligations under this Article and elsewhere in this Lease arising prior to the expiration or earlier termination of this Lease shall survive any such expiration or termination of this Lease.

**15.22   Personal Property.** In the event Tenant does not remove Tenant's property when the lease terminates by its term or by any other provisions provided for in this lease and such failure to remove continues for more than seven (7) days following receipt of written notice by Landlord to Tenant, Tenant will be deemed to have abandoned any and all personal property left in the Premises at such time; provided, however, and notwithstanding the foregoing if Tenant holds over as set forth in Section 15.10 above, Tenant will not be deemed to have abandoned any of its personal property.

**15.23   Quiet Possession.** Upon Tenant paying the rent due hereunder, as applicable, Tenant shall have quiet possession of the Premises for the entire Term, subject to all the provisions of this Lease.

**15.24   Relationship.** This Lease does not create any agency, partnership, franchise, employment or joint venture relationship between Landlord and Tenant.

**15.25   No Third-Party Rights.** The covenants, agreements and other terms of this Lease are for the exclusive benefit of the parties to this Lease, and no other person, including the creditors of any party, is entitled to any right or claim against Landlord or Tenant by reason of any of the terms of this Lease or is entitled to enforce any of these terms against Landlord or Tenant.

## 16.   PERFORMANCE BOND

At any time Tenant either desires to or is required to make any repairs, alterations, additions, improvements, or utility installation thereon, pursuant to Sections 6.4 or 8.1 herein, or otherwise, Landlord may at his sole option require Tenant at Tenant's sole cost and expense to obtain and provide to Landlord a lien and completion bond in an amount equal to one and one-half (1 1/2) times the estimated cost of such improvements, to insure Landlord against liability for mechanics' and materialmen's liens and to insure completion of the work.

## 17.   BROKERS

Landlord and Tenant have both engaged Retail Investment Group, LLC to represent them in a dual agency capacity. Landlord is responsible for the payment of commission under a separate agreement.

Initials: Landlord _GP_   Tenant _____

DocuSign Envelope ID: 7424375A-11B8-4BF4-9E0E-4CD1A414B909

## 18.    NOTICES

Except as otherwise provided in this Lease, all notices, demands, requests, consents, approvals, offers, statements and other instruments or communications required or permitted to be given pursuant to the provisions of this Lease (collectively "Notice" or "Notices") shall be in writing and shall be deemed to have been given for all purposes upon the earlier of actual receipt by the party notified, or refusal of delivery by the party notified, or (i) three (3) days after having been sent by registered or certified United States mail, return receipt requested, postage prepaid, addressed to the other party at its address as stated below, (ii) one (1) day after having been sent overnight by Federal Express or other nationally recognized air courier service, or (iii) upon confirmed transmission by email, provided a confirming Notice is sent by one of the methods for which clauses (i) and (ii) provide, to the addresses set forth below:

To Landlord at:    **GARY L. POLAKOFF, Trustee**
**645 Front Street #303**
**San Diego, CA 92101**
**EMAIL: Garyp29@gmail.com**
**CELL: 619-889-2401**

To Tenant at:    **TRICOLOR CALIFORNIA AUTO GROUP, LLC**
**6021 CONNECTION DR, 4TH FLOOR**
**IRVING TX 75039**
**ATTN: DANIEL CHU**
**PHONE: 424-290-2200**
**CELL: 214-534-3600**
**EMAIL:  dchu@tricolor.com**

## 19.    INSURING PARTY

The insuring party under this Lease shall be the  **TENANT**.

## 20.    SURVIVAL OF OBLIGATIONS

In the event of any early termination of this Lease under and pursuant to any of the terms and provisions hereof or the normal expiration of the Term, all obligations of Landlord and Tenant accruing prior to such termination or expiration, and all obligations of Landlord and Tenant to be performed after such termination or expiration as set forth in this Lease, shall be fully performed by Landlord or Tenant, as the case may be, regardless of whether or not such performance is required to take place or does in fact take place subsequent to the date of expiration or termination.  No early termination nor the normal expiration of this Lease shall release Landlord or Tenant from any liabilities or obligations accruing prior to the date of termination or expiration, or obligations to be performed by each after the normal expiration or earlier termination of this Lease, nor shall the indemnity obligations of Landlord or Tenant as set forth in this Lease be released or terminated as to acts or omissions occurring prior to the termination date or pursuant to Article 23 hereof.

## 21.    WAIVER OF CALIFORNIA CODE SECTIONS

In this Lease, numerous provisions have been negotiated by the parties, some of which provisions are covered by statute. Whenever a provision of this Lease and a provision of any statute or other law cover the same matter, the provisions of this Lease shall control. Therefore, Tenant waives (for itself and all persons claiming under Tenant) the provisions of Civil Code Sections 1932(2) and 1933(4) with respect to the destruction of the Premises; Civil Code Sections 1941 and 1942 with respect to Landlord's repair duties and Tenant's right to repair; Code of Civil Procedure Section 1265.130, allowing either party to petition the Superior Court to terminate this Lease in the event of a partial taking of the Premises by condemnation as herein defined; and any right of redemption or reinstatement of Tenant under any present or future case law or statutory provision (including Code of Civil Procedure Sections 473 and 1179 and Civil Code Section 3275) in the event Tenant is

Initials: Landlord _GP_  Tenant

dispossessed from the Premises for any reason. This waiver applies to future statutes enacted in addition to or in substitution for the statutes specified herein.

### 22.    OFAC

Neither they nor the officers and directors controlling Landlord and Tenant, nor any person or entity that directly owns a 10% or greater equity interest in it, respectively, are or are acting, directly or indirectly, for or on behalf of any person, group, entity, or nation with whom U.S. persons or entities are restricted from doing business under the regulations of the Office of Foreign Asset Control ("OFAC") of the United States Treasury Department, including those named on the OFAC's Specially Designated National and Blocked Person List, or are or are acting directly or indirectly for or on behalf of any person, group, entity, or nation designated in Presidential Executive Order 13224 signed on September 24, 2001 ("Executive Order") or in the USA Freedom Act (enacted June 2, 2015) ("USA Freedom Act") as a person who commits, threatens to commit, or supports terrorism; or are or are acting directly or indirectly for a person, group, entity or nation in violation of the International Money Laundering Abatement and Financial Anti-Terrorism Act of 2001 or the regulations or orders promulgated thereunder (the "Money Laundering Act"); and that they are not engaged in this transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity or nation.  Each party agrees during the Term of this Lease to comply with the Executive Order, USA Freedom Act and the Money Laundering Act, and to defend, indemnify, and hold harmless the other party from and against any and all claims, damages, losses, risks, liabilities and expenses (including reasonable attorneys' fees and costs) arising from or related to any breach of the foregoing representation and warranty.

### 23.    ENVIRONMENTAL MATTERS

Tenant shall not use, generate, release, discharge, store, dispose, or transport any Hazardous Materials on, under, in, above, to, or from the Premises other than in strict compliance with all applicable federal, state, and local laws, regulations, and order. For the purposes of this Lease, "Hazardous Materials" shall refer to any substances, materials, and wastes that are or become regulated as hazardous or toxic substances under any applicable local, state, or federal law, regulation, or order. To the extent caused by Tenant's failure to comply with the immediately preceding sentence, Tenant shall indemnify, defend, and hold Landlord harmless from and against:

23.1    Any resulting loss, cost, expense, claim, or liability arising out of any investigation, monitoring, clean-up, containment, removal, storage, or restoration work ("Remedial Work") required by or incurred by Landlord or any nongovernmental entity or person in a reasonable belief that such work is required by any applicable federal, state, or local law, governmental agency, or political subdivision; and

23.2    Any claims of third parties for loss, injury, expense, or damage arising out of the presence, release, or discharge of any Hazardous Materials on, under, in, above, to, or from the Premises.  In the event any Remedial Work is so required under any applicable federal, state, or local law, Tenant shall perform or cause to be performed the Remedial Work in compliance with such law, regulation, or order.  All Remedial Work shall be performed by one or more contractors under the supervision of a consulting engineer, each selected by Tenant and approved in advance in writing by Landlord.  In the event Tenant shall fail to commence the Remedial Work in timely fashion or fail to prosecute diligently the Remedial Work to completion, Landlord may, but shall not be required to, cause the Remedial Work to be performed, subject fully to the indemnification provisions of this paragraph.  This Article shall survive the termination of said Lease.

### 24.    CERTAIN REPRESENTATION, WARRANTIES AND AGREEMENTS OF LANDLORD

Landlord, to the best of Landlord's actual knowledge, represents and warrants to Tenant as follows:

To the best of Landlord's actual knowledge, the building does not contain any material quantities of asbestos. To the best of Landlord's actual knowledge neither the Premises nor the land that the Premises are a part of contain Hazardous Materials other than negligible quantities of such Hazardous Materials as many

typically be found in commercial construction or cleaning products used and disposed of in accordance with applicable laws. There are no underground storage tanks for petroleum products or Hazardous Materials, active or abandoned, located on the land on which the building is located. There are no environmental liens on any of the real property comprising the building. Landlord agrees not to cause or permit any Hazardous Materials to be produced, stored, kept, discharged, or released in or about the building other than negligible quantities of such Hazardous Materials as may typically be found in commercial construction or cleaning products used and disposed on in accordance with applicable laws. Any provision in this Lease to the contrary notwithstanding, in no event shall Tenant be liable to Landlord for any Hazardous Materials stored, released or disposed of on the Premises prior to the commencement of the Lease by anyone other than the Tenant, or for any contamination due to Hazardous Materials in or about the Building which was not caused by Tenant or any agents, contractors or invitees of Tenant. The phrase "Landlord's actual knowledge" shall mean the actual knowledge of Gary L. Polakoff as the Effective Date, without any duty to inquire or investigate and without the knowledge of any other person being imputed to him including but not limited to any prior tenants. Reference to Gary L. Polakoff shall impose no personal liability on him, but rather is made only to limit the scope of Landlord's obligations and liabilities hereunder.

### 25. NO ORAL AGREEMENTS

This Lease represents the final agreement between the parties. There are no unwritten oral agreements between the parties. This Lease may not be altered, changed or amended except by an instrument in writing signed by Landlord and Tenant.

### 26. INTERPRETATION

If any clause or provision of this Lease is illegal, invalid or unenforceable under present or future laws effective during the term of this Lease, then and in that event, it is the intention of the parties hereto that the remainder of this Lease shall not be affected thereby, and it is also the intention of the parties of this Lease that in lieu of each clause or provision of this Lease that is illegal, invalid or unenforceable, there be added as a part of this Lease a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable. The parties agree that the terms and provisions of this Lease embody their mutual intent and that such terms and conditions are not to be construed more liberally in favor of, or more strictly against, either party.

### 27. COUNTERPARTS.
This Lease may be executed in counterparts, each of which is an original and all of which constitute one instrument. To facilitate execution of this Lease, the parties may exchange executed counterparts of the signature pages by facsimile or portable document format including but not limited to DocuSign (pdf).

### 28. ESTOPPEL CERTIFICATES.
Tenant (and Guarantor) shall from time to time, within ten (10) days after request by Landlord and without charge, give a Tenant Estoppel Certificate in the format attached hereto as **Exhibit B** and containing such other additional matters as may be reasonably requested by Landlord to any person, firm or corporation specified by Landlord. Landlord from time to time, within ten (10) days after request by Tenant and without charge, give a Landlord Estoppel Certificate confirming the Lease is in full force and effect, the date(s) to which Rent has been paid, whether the Lease has been amended or modified, except as specified in such estoppel, and that, to Landlord's knowledge, Tenant is not in default under this Lease, except as specified in such estoppel certificate and such other information as may reasonably be requested by Tenant.

### 29. RECORDS AND FINANCIAL STATEMENTS.
Tenant shall keep and maintain at all times during the Term complete and accurate books and records for the Tenant, its affiliates, and the Guarantor adequate to reflect clearly and correctly tenant's financial performance. Tenant, upon request of Landlord not to exceed four (4) times annually, shall furnish to Landlord a copy of its financial statement as produced by Tenant in its ordinary course of business. At least once annually Tenant's Manager or Managing Member shall certify that the financial statement produced is true and correct.

Initials: Landlord _GP_ Tenant _____

DocuSign Envelope ID: 7424375A-11B8-4BF4-9E0E-4CD1A414B909

30. **FORCE MAJEURE**

IF EITHER PARTY IS DELAYED, HINDERED OR PREVENTED FROM THE PERFORMANCE OF ANY NON-MONETARY OBLIGATION BECAUSE OF STRIKES, LOCKOUTS, LABOR TROUBLES, THE INABILITY TO PROCURE MATERIALS, POWER FAILURE, RESTRICTIVE GOVERNMENTAL LAWS OR REGULATIONS, RIOTS, INSURRECTION, WAR OR ANOTHER REASON NOT THE FAULT OF THE PARTY DELAYED, AND WHICH WAS UNAVOIDABLE AND COULD NOT HAVE BEEN PREVENTED OR AVOIDED BY THE PARTY DELAYED IN THE EXERCISE OF COMMERCIALLY REASONABLE EFFORTS, THE PERFORMANCE OF ANY SUCH NON-MONETARY OBLIGATIONS SHALL BE EXCUSED FOR THE PERIOD OF DELAY, AND THE PERIOD FOR THE PERFORMANCE SHALL ALSO BE EXTENDED FOR A PERIOD EQUAL TO THE PERIOD OF DELAY. NEITHER PARTY WILL BE LIABLE FOR FAILURE OR DELAY TO PERFORM ANY SUCH NON-MONETARY OBLIGATIONS UNDER THIS LEASE WHICH HAVE BECOME PRACTICALLY IMPOSSIBLE BECAUSE OF CIRCUMSTANCES BEYOND THE REASONABLE CONTROL OF THE APPLICABLE PARTY. SUCH CIRCUMSTANCES INCLUDE WITHOUT LIMITATION NATURAL DISASTERS OR ACTS OF GOD; ACTS OF TERRORISM; LABOR DISPUTES OR STOPPAGES; WAR; GOVERNMENT ACTS OR ORDERS; EPIDEMICS, PANDEMICS OR OUTBREAK OF COMMUNICABLE DISEASE; QUARANTINES; NATIONAL OR REGIONAL EMERGENCIES; OR ANY OTHER CAUSE, WHETHER SIMILAR IN KIND TO THE FOREGOING OR OTHERWISE, BEYOND THE PARTY'S REASONABLE CONTROL (EACH, AN EVENT OF "FORCE MAJEURE"). WRITTEN NOTICE OF A PARTY'S FAILURE OR DELAY IN PERFORMANCE DUE TO FORCE MAJEURE MUST BE GIVEN TO THE OTHER PARTY NO LATER THAN FIVE (5) BUSINESS DAYS FOLLOWING THE FORCE MAJEURE EVENT COMMENCING, WHICH NOTICE SHALL DESCRIBE THE FORCE MAJEURE EVENT AND THE ACTIONS TAKEN TO MINIMIZE THE IMPACT THEREOF. ALL DELIVERY DATES FOR ANY SUCH NON-MONETARY OBLIGATIONS UNDER THIS LEASE AFFECTED BY FORCE MAJEURE SHALL BE TOLLED FOR THE DURATION OF SUCH FORCE MAJEURE COMMENCING ONLY IN THE EVENT OF TIMELY NOTICE AND EFFECTIVE ONLY AS OF THE DATE OF SUCH NOTICE. THE PARTIES HEREBY AGREE, WHEN FEASIBLE, NOT TO CANCEL BUT RESCHEDULE THE PERTINENT NON-MONETARY OBLIGATIONS AND DELIVERABLES FOR MUTUALLY AGREED DATES AS SOON AS PRACTICABLE AFTER THE FORCE MAJEURE CONDITION CEASES TO EXIST.  NOTWITHSTANDING THE FOREGOING, THE PARTIES AGREE THAT NO ACT OF FORCE MAJEURE SHALL EXCUSE TENANT'S OBLIGATIONS TO PAY ALL MONETARY OBLIGATIONS DUE UNDER THIS LEASE, AND TENANT SHALL CONTINUE TO PAY ALL BASE RENT, AND OTHER AMOUNTS DUE HEREUNDER WHICH ARISE FROM AND AFTER ANY EVENT OF FORCE MAJEURE.

31. **COMMENCEMENT DATE**

Notwithstanding the fact that the "Commencement Date" of this Lease shall be a date subsequent to the effective date of this Lease, Landlord and Tenant intend and agree that each shall have vested rights immediately upon execution of this Lease; and it is intended that this Lease shall be fully binding upon the parties hereto and shall be in full force and effect from and after execution hereof by both Tenant and Landlord.

[Signatures on following page]

Initials: Landlord _GP_   Tenant _____

The parties hereto have executed this Lease as of the dates specified immediately adjacent to their respective names and intending this Lease to be effective as of the Effective Date specified on page 1 above.

**LANDLORD:**
**Gary and Diane Polakoff 2401 Trust**

By: _Gary Polakoff_

GARY LEWIS POLAKOFF, Trustee

Dated: 8/1/2023

**TENANT:**
**Tricolor California Auto Group, LLC,**
**a Delaware limited liability company**

By: _____

Daniel Chu, CEO

Dated: 8/1/2023

Initials: Landlord _GP_   Tenant

**EXHIBIT A**

**LEGAL DESCRIPTION OF THE LAND**

Lot 1, 2, 3 and 4 in Block 1 of SMITH AND PLANTE'S SUBDIVISION of the Westerly Half Ten Acre Lot 1 (Westerly 1/2 Acre Lot 1), in Quarter Section 152 of Rancho de la Nacion, in the City of National City, in the County of San Diego, State of California, according to Map thereof No. 1075, filed in the Office of the County Recorder of San Diego County August 24, 1907.





## EXHIBIT B

## <u>TENANT ESTOPPEL CERTIFICATE</u>

THIS TENANT ESTOPPEL CERTIFICATE <u>("Certificate")</u> is given, _____, 20__ by Tricolor California Auto Group, LLC a Delaware Limited Liability Company <u>("Tenant")</u> in favor of _____ <u>("Beneficiary")</u>.

## RECITALS:

A.      Pursuant to the terms and conditions of that certain Commercial Lease (Triple Net) ("Lease") with an Effective Date of July 31, 2023, between the Gary and Diane Polakoff 2401 Trust <u>("Landlord")</u> which has leased to Tenant certain real property commonly known as 2401 National City Blvd. National City, CA 91950 <u>("Premises"),</u> which Premises is more particularly described in the Lease.

B.      Pursuant to the terms and conditions of the Lease, the Beneficiary has requested that the Tenant execute and deliver this Certificate with respect to the Lease.

NOW, THEREFORE, in consideration of the above recitals, the Tenant hereby makes the following statements for the benefit of the Assignee:

1.   The copy of the Lease attached hereto and made a part hereof as <u>Exhibit A</u> is a true, correct and complete copy of the Lease, which Lease is in full force and effect as of the date hereof, and has not been modified or amended.

2.   The Lease sets forth the entire agreement between the Landlord and the Tenant relating to the leasing of the Premises, and there are no other agreements, written or oral, relating to the leasing of the Premises.

3.   There exists no uncured or outstanding defaults or events of default under the Lease, or events which, with the passage of time, and the giving of notice, or both, would be a default or event of default under the Lease.

4.   No notice of termination has been given by Landlord or Tenant with respect to the Lease.

5.   All payments due the Landlord under the Lease through and including the date hereof have been made, including the monthly installment of base rent (as defined in the Lease) for the period of _____ to in the amount of $ _____

6.   As of the date hereof, the annual base rent under the Lease is $ _____

7.   There are no disputes between the Landlord and the Tenant with respect to any rental due under the Lease or with respect to any provision of the Lease.

8.   The Tenant represents and warrants that (a) Tenant is in occupancy of the Premises pursuant to the Lease, and (b) Tenant has no offsets, counterclaims or defenses with respect to its obligations under the Lease.

9.   The Tenant understands and acknowledges that Beneficiary is relying upon the representations set forth in this Certificate, and may rely thereon in connection with the collateral assignment of the Lease to Beneficiary.

EXECUTED as of the day and year first set forth above.

TENANT:

By: Tricolor California Auto Group, LLC a Delaware
Limited Liability Company

_____

Name: _____

Its:_____

