IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In Re: | **Case No. 25-33487-mvl-7** |
| TRICOLOR HOLDINGS, LLC, | Dallas, Texas<br>October 15, 2025<br>9:30 a.m. Docket |
| Debtor. | EMERGENCY MOTION FOR ENTRY OF ORDER APPROVING STIPULATION BETWEEN CHAPTER 7 TRUSTEE AND AND VERVENT, INC. (53) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MICHELLE V. LARSON,
UNITED STATES BANKRUPTCY JUDGE.

APPEARANCES:

| | |
|---|---|
| For Anne Elizabeth Burns, Trustee: | Charles Brackett Hendricks<br>CAVAZOS HENDRICKS POIROT, P.C.<br>900 Jackson Street, Suite 570<br>Dallas, TX 75202<br>(214) 573-7302 |
| For Anne Elizabeth Burns, Trustee: | Charles R. Gibbs<br>Grayson Williams<br>MCDERMOTT WILL & SCHULTE, LLP<br>2801 North Harwood Street, Suite 2600<br>Dallas, TX 75201<br>(214) 295-8063 |
| For JPMorgan Chase Bank, as Administrative Agent: | Nicholas E. Baker<br>SIMPSON THACHER & BARTLETT, LLP<br>425 Lexington Avenue<br>New York, NY 10017<br>(212) 455-2032 |
| For Vervent, Inc.: | Scott D. Lawrence<br>WICK PHILLIPS GOULD & MARTIN, LLP<br>3131 McKinney Avenue, Suite 500<br>Dallas, TX 75204<br>(214) 420-4449 |

APPEARANCES, cont'd.:

| | |
|---|---|
| For Vervent, Inc.: | Adam R. Prescott<br>BERNSTEIN SHUR<br>100 Middle Street<br>P.O. Box 9729<br>Portland, ME 04104-5029<br>(207) 228-7178 |
| For TBK Bank, SSB: | Matthew W. Moran<br>Bradley Roland Foxman<br>VINSON & ELKINS, LLP<br>2001 Ross Avenue, Suite 3900<br>Dallas, TX 75201<br>(214) 220-7723 |
| For Wilmington Trust: | Gerard S. Catalanello<br>ALSTON & BIRD, LLP<br>90 Park Avenue, 15th Floor<br>New York, NY 10016<br>(212) 210-9509 |
| Recorded by: | Bryon A. Robinson<br>UNITED STATES BANKRUPTCY COURT<br>1100 Commerce Street<br>Dallas, TX 75242<br>(214) 753-2011 |
| Transcribed by: | Kathy Rehling<br>311 Paradise Cove<br>Shady Shores, TX 76208<br>(972) 786-3063 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

DALLAS, TEXAS - OCTOBER 15, 2025 - 9:32 A.M.

THE COURT: Please be seated. Good morning, everyone. We're here on our 9:30 docket. We have one matter on the docket remaining, and that is Case No. 25-33487, Tricolor Holdings, LLC.

I'll take appearances for the record, and I'll start with those folks in the courtroom.

MR. GIBBS: Good morning, Your Honor. Chuck Gibbs with McDermott Will & Schulte. With me is my colleague, Grayson Williams, and my co-counsel, Chuck Hendricks, for the Trustee.

THE COURT: Thank you very much. Good morning.

MR. LAWRENCE: Good morning, Your Honor. Scott Lawrence at Wick Phillips appearing on behalf of Vervent, Inc. And I believe on the WebEx with me is co-counsel Adam Prescott of Bernstein Shur.

THE COURT: Okay. Thank you very much.

MR. FOXMAN: Good morning, Your Honor. Brad Foxman and Matt Moran of Vinson & Elkins appearing on behalf of TBK Bank.

THE COURT: Good morning. All right. Is there anyone on WebEx who would like to make an appearance? If you're on the phone, you can press *6 to unmute.

Mr. Catalanello?

MR. CATALANELLO: Good morning, Your Honor. Gerard

Catalanello from Alston & Bird on behalf of Wilmington Trust as Indenture Trustee and in various related capacities.

THE COURT: All right. Thank you very much.

MR. CATALANELLO: Thank you, Your Honor.

THE COURT: Mr. Baker, would you like to make an appearance?

MR. BAKER: Yes, thank you, Your Honor. Nicholas Baker; Simpson Thacher & Bartlett; on behalf of JPMorgan Chase Bank, N.A., as Administrative Agent under the SPE 4 Warehouse Facility.

THE COURT: Thank you very much.

Anyone else wish to make an appearance this morning?

All right. Easy enough. Mr. Gibbs?

MR. GIBBS: Good morning again, Your Honor. Chuck Gibbs on behalf of the proposed counsel for the Chapter 7 Trustee, Anne Burns.

We're here on one matter, which is a continued hearing on the motion to approve an order -- well, Motion for Order Approving the Stipulation between the Trustee and Vervent, Inc. Your Honor entered at Docket 79 the original order at the conclusion of the prior hearing after hearing evidence at same. That order was negotiated to resolve concerns that were raised by various parties in interest. And that order provided for a further hearing today, which is why we're here. And to kind of bury the lede, that what we're asking the Court

to do is continue that exact order with a couple of minor changes I will walk the Court through. And we've had it set up to now expire a week from Friday.

THE COURT: Okay.

MR. GIBBS: I think, just from scheduling purposes, we're fine with carrying the effectiveness of this proposed second order through Monday, I believe it's the 27th, assuming the Court has time on the 27th to hear us then. And I'll go in a minute through kind of what's happened since we were last in front of you, just to keep the Court up to speed and also the thought process behind what we're asking the Court for today.

THE COURT: Excellent. In the meantime, we'll have the calendar pulled so we can see where we go from here.

MR. GIBBS: Okay. Right. And just by way of update for the Court and anyone listening in, the creditor matrix that it took a while to get to the Court is now on file. The Clerk of the Court has indicated they have an adequate creditor matrix, just so the Court knows.

THE COURT: Small victories.

MR. GIBBS: Small victories. It contains some 26,000 names. Unfortunately, it only contains some 3,000 email addresses. So noticing to the entire creditor body is going to be old-school and expensive, to a certain degree. Or to a significant degree, rather.

We filed an application to retain Verita as our claims and noticing agent. And that's on negative notice, that objection. Excuse me, Your Honor.

THE COURT: Take your time.

MR. GIBBS: That objection deadline is October 28th. So, until that order is entered, I doubt if anybody is going to object. They're not going to be able to receive the matrix and do any mailing.

THE COURT: Okay. No, I appreciate that. And, again, I'm not begging for expedited hearings because I've got plenty of them. But if that's something that we need to look at on shortened notice, perhaps we can do that, obviously. The Court has been very open to hybrid appearances --

MR. GIBBS: Sure.

THE COURT: -- thus far, given the circumstances. So if that's something that we need to do, I'm happy to.

MR. GIBBS: Okay. A 341 Meeting was originally scheduled for today. And in correspondence between Ms. Burns and the Clerk of the Court, the decision was made, given the delay in getting --

THE COURT: Of course.

MR. GIBBS: -- the matrix to the Clerk of the Court, that that meeting would be commenced and then immediately adjourned, with notice given at the 341 that it's adjourned until November 18th at 1:00 p.m. Hopefully, to the extent

there is going to need to be a notice sent out, it will reflect the new revised 341 time.

THE COURT: And likewise, given the reset of the 341 and the notice that's necessary, it may make sense to expedite the Verita employment application, just to be able to get folks the notice necessary for that.

MR. GIBBS: Sure. Just by way of case general update, not a lot of soundbites, but let me just make sure the Court is aware.

We continue to work diligently in cooperation with the various governmental agencies that are conducting investigations. We've compiled, frankly, an incredible amount of data over the last few weeks, which we are in the process of coordinating and turning over to the appropriate agencies.

Your Honor may be aware of or recall that there was one WARN Act class action filed shortly after the case was filed. We've been in negotiations and contact with counsel for the Plaintiffs in that class action, and they've agreed to hold that in abeyance while we continue to investigate potential assets of the estate.

So, just so the Court knows, there's not going to be an upcoming answer date --

THE COURT: Okay.

MR. GIBBS: -- and scheduling conference in the very immediate future.

We continue to do significant internal investigations of our own into the allegations of fraud. And as I indicated in prior hearings, the initial findings do indicate, frankly, a significant fraud that was perpetrated, the complete scope of which and nature of which we're still investigating. And we are trying to coordinate and confirm our initial findings with that being conducted by the governmental agencies. And our intention is to bring causes of action where we find appropriate, based on our investigation, to try to maximize recovery to the creditors.

We are in the final stages of discussions with parties about the source of funding for this estate, for the Trustee to do what Your Honor ordered and allowed her to do under 721. It's our hope and anticipation we'll have a motion for funding. It's contemplated it will be a funding that seeks to prime existing lenders.

And so we will come in and ask on shortened notice for that initial draw for what is necessary to avoid irreparable harm, and then full notice, obviously, after that. But the nature and the identity -- I mean, the nature of the discussions and identity of the proposed lender are not ready for prime time yet.

We are also finalizing a bid procedures motion which I hope to have on file by the end of the week. And we will be filing a supplemental retention application for Capstone to

act as the banker running the sale process.

In real broad strokes, Your Honor, our proposal -- and we've socialized this with the various parties in interest -- is to have them run a process to receive inbound interest in the assets of the Debtor, which would be those vehicles that belong to the Debtor as opposed to nondebtor third parties, as well as the leasehold locations, so that we could hopefully assume and assign those leases and have those defaults cured by the assignee and reduce the rejection damage claims to the estate.

And then there are -- and this isn't a final number at all -- but in order of magnitude, the Debtor was selling roughly $20 million of cars a week. The warehouse lending functions essentially ceased on or around the 25th of August, and the Debtor continued to sell cars up through September 5. So that -- again, and subject to examination and testing -- would lead us to conclude that there's roughly, face value, $40 million worth of retail installment contracts that hadn't been -- I'll call it sold for now --

THE COURT: Sure.

MR. GIBBS: -- sold into nondebtor SPEs and then out to the warehouse lenders.

And pursuant to the stipulation that was approved, Vervent has authority and responsibility to service those contracts. It could be as many as 8,000 loans. And the first payments,

obviously, on those new contracts would be coming in, since they were all entered into sometime between August 25 and September 5. And that is a workstream that Vervent has, in addition to the hundreds of other workstreams that they have in connection with their replacement of TAA as the servicer for all the loans.

Vervent has been extraordinarily busy since Your Honor approved the stipulation, and before, but since you approved the stipulation on the 19th. They've retained, I think, 24 employee -- former employees of the Debtor to help them in loan and title and inventory operations. They've completed the integration of the PayNearMe funding mechanism that was in place for the customers to pay it on their loans. They've integrated the remaining TriColor payment systems. They've completed transition or are essentially complete in transitioning the TriColor systems of records, which are the loan origination and servicing-related information. And they continue to answer calls, which are now into the thousands and thousands from customers.

So we need to and they need to have this stipulation continued. We continue to need information from them to do our job. They need to continue to get information from us to do their job. So the desire of the Trustee is to extend this stipulation by agreed order from the Court through and including the 27th of October. I am happy to hand up a

redline --
THE COURT: Okay. Excellent.
MR. GIBBS: -- of the proposed order.
THE COURT: I know one was sent ahead of the hearing. I appreciate that. Thank you. For the sake of everyone on the highway, I didn't look at it that quickly.
(Pause.)
THE COURT: Okay. So you mentioned the 27th earlier. I was speaking with Ms. Harden on the way in. I understood that you wanted -- that the automatic termination was going to be the 24th?
MR. GIBBS: It was until we walked in today, and then we were looking at calendars and thinking it made more sense to carry it through the 27th.
THE COURT: Okay.
MR. GIBBS: The redline order that I just handed up says the 24th. We can send up a new -- if Your Honor is inclined to approve this request today, we can upload a new one that says through the 27th, rather than marking through it and writing.
THE COURT: Okay. And some of that might be based on what we have available in terms of hearing dates.
MR. GIBBS: Uh-huh.
THE COURT: So we'll talk about the termination date that make sense based upon the hearing dates --

MR. GIBBS: Okay.

THE COURT: -- that we have available. And we do have some. I think originally you had asked about the 22nd or 23rd. We do have some time in the afternoon on the 23rd. Is that correct, Mr. Williams? Did Ms. Harden communicate that to you? Okay. Yes.

MR. WILLIAMS: Yes, Your Honor.

THE COURT: Thursday afternoon, the 23rd, I think we have a 3:00 o'clock available in the afternoon there. So we can look at some other dates if you want to extend this out a little bit. I think that we have time on the 28th. I'm not sure about the 27th.

MR. GIBBS: And, again, the 23rd was problematic for Trustee's counsel, which is in part why we were looking to carry this out a day or two further.

THE COURT: Okay.

MR. GIBBS: I don't have any problem with carrying it through the 28th --

THE COURT: Yes.

MR. GIBBS: -- if the Court has time on the docket on the 28th.

THE COURT: Okay. So, yes, the 28th, we do have available as well.

Mr. Williams is approaching.

(Counsel confer.)

MR. GIBBS: Thank you. Yeah. Mr. Williams reminded me there is a lift stay preliminary hearing on the 28th, so we could slide into that --

THE COURT: Okay.

MR. GIBBS: -- setting on the 28th.

THE COURT: So we could probably just set this maybe like at 2:00 o'clock. Because if there's a lift stay hearing, I'm assuming it's going to be on our regular lift stay docket, which will be at 1:30, --

MR. GIBBS: Uh-huh.

THE COURT: -- which will be -- I'm not going to use the term that Judge Abramson used to use that's in my head, but those are obviously a bunch of five-minute hearings that could all be set at one time. So if we set this at 2:00, we could roll right into it from the preliminary docket.

MR. GIBBS: Okay.

THE COURT: Ms. Harden just gave me the right word.

MR. GIBBS: And Your Honor can see -- you can see what I uploaded. Or handed up, rather. Paragraph 5 is the only -- contains the only change where we've added specifically -- just a minute. I'm looking at the wrong -- I handed you my only redline. Paragraph 5 added TBK or ACV --

THE COURT: Right.

MR. GIBBS: -- in addition to the original parties that were named in Paragraph 5.

So that's the only change, other than the date. And we're happy to upload a clean amended order, carrying it through the 28th. Or you can strike through the 24th on the one that --

THE COURT: Okay.

MR. GIBBS: Whichever --

THE COURT: Well, let me see what -- let me hear from anyone else, and then we'll talk hearing dates after that time.

MR. GIBBS: Thank you.

THE COURT: Is there anyone else who wishes to be heard with respect to the Vervent stipulation?

All right. Hearing no other takers. I recognize that the parties had reached an agreement prior to the hearing. From the Court's perspective, the problem was that the form of stipulation set a hearing. And so, --

MR. GIBBS: Here we are.

THE COURT: -- given the docket says a hearing was set, we didn't feel comfortable, even if there was no opposition by the primary, let's just say, affected parties to the stipulation, to not hold the hearing. So that's why we're here today.

So let me let you know what we have in terms of dates. We've got the time on the 23rd that I spoke about. We have the 28th wide open in the morning. So I've got the 27th after 2:30. The 28th, I have the morning docket available. Ms.

Harden just informed me that the 2:00 o'clock docket is pretty stacked. I would have to put you later in the afternoon, which I don't know that it would be helpful to you with your lift stay. Given that you're asking for an hour of time, I don't have an hour at 1:30, because that is my preliminary lift stay docket.

And then if you want to go out farther than that, unless Ms. Harden corrects me, I think we have the morning of the 30th. And other than that, you'd be messing with trick-or-treaters. And I certainly wouldn't want anybody to fly in and miss Halloween with their kids.

MR. GIBBS: I think the preference from the Trustee, unless it's a big problem for scheduling purposes with parties in interest, would be to hold the hearing on Monday afternoon. I think you said you had 2:30 or later available Monday, the 27th.

THE COURT: Yes.

MR. GIBBS: And then we would have the proposed order be effective through midnight of the 28th.

THE COURT: Okay. All right.

Is there anyone else who wants to be heard with respect to the hearing time? Monday, the 27th, I've got anything from 2:30 Central on.

MR. GIBBS: My hope is it won't be long, so whatever works for the Court, we'll take.

THE COURT: All right. Let me be safe. I have a meeting in Irving that day, so let me say 3:00 p.m.

MR. GIBBS: Okay.

THE COURT: And then that way we'll have the time there. We'll put you down for an hour. If you hear through the grapevine it's going to be contested, just let us know.

MR. GIBBS: Okay.

THE COURT: All right. And then we'll book a little bit more time. But if we do October 27th at 3:00 p.m., I know we'll have plenty of time that day.

MR. GIBBS: All right.

THE COURT: All right? And then so we'll look for the order and the stipulation to come from your office. And other than that, I think we're all set.

MR. GIBBS: That's all we had, Judge.

THE COURT: Thank you very much, Mr. Gibbs. Appreciate the update.

MR. GIBBS: Uh-huh.

THE COURT: And anyone else wish to be heard?

All right. So, for sake of the record, again, the Court will continue the amended stipulation between the Chapter 7 Trustee and Vervent. It'll terminate on October 28th, but we'll have a hearing on any further extension on October 27 at 3:00 p.m.

You guys have a great day.

MR. GIBBS: You, too.

THE COURT: And Court will stand in recess.

(Proceedings concluded at 9:52 a.m.)

--oOo--

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

**/s/ Kathy Rehling** **10/17/2025**

_______________________________________ ________________

Kathy Rehling, CETD-444 Date
Certified Electronic Court Transcriber

INDEX

PROCEEDINGS 3

WITNESSES

-none-

EXHIBITS

-none-

RULINGS 14

END OF PROCEEDINGS 17

INDEX 18