Jennifer F. Wertz (TX Bar No. 24072822)
Beau H. Butler (TX Bar No. 24132535)
**JACKSON WALKER LLP**
100 Congress Avenue, Suite 1100
Austin, TX 78701
Telephone: (512) 236-2000
Facsimile: (512) 236-2002
Email: jwertz@jw.com
Email: bbutler@jw.com

*COUNSEL FOR CICF III TX1B01, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| TRICOLOR HOLDINGS, LLC, *et al[1]*., | § | Case No. 25-33487-mv17 |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## CICF III TX1B01, LLC'S MOTION FOR ORDER DIRECTING THE TRUSTEE TO PAY POST-PETITION RENT OR ALTERNATIVELY TO COMPEL THE TRUSTEE TO REJECT THE NONRESIDENTIAL WILMER LEASE

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE STREET, ROOM 1254, DALLAS, TEXAS, 75242 BEFORE CLOSE OF BUSINESS ON NOVEMBER 11, 2025, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

---

[1] The Debtors and their bankruptcy case numbers are: Tricolor Holdings, LLC (25-33487), TAG Intermediate Holding Company, LLC (25-33495), Tricolor Auto Group, LLC (25-33496), Tricolor Auto Acceptance, LLC (25-33497),Tricolor Insurance Agency, LLC (25-33512), Tricolor Home Loans LLC (25-33511), Tricolor Real Estate Services (25-33514), TAG California Holding Company, LLC (25-33493), Flexi Compras Autos, LLC (25-33490), TAG California Intermediate Holding Company, LLC (25-33494), Tricolor California Auto Group, LLC (25-33502), Tricolor California Auto Acceptance, LLC (25-33501), Risk Analytics LLC (25-33491), Tricolor Tax, LLC (25-33515), Tricolor Financial, LLC (25-33510), Tricolor Auto Receivables LLC (25-33498), TAG Asset Funding, LLC (25-33492), Apoyo Financial, LLC (25-33489).

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

To The Honorable Michelle V. Larson, U.S. Bankruptcy Judge:

CICF III TX1B01, LLC (the "Landlord") files this *Motion for Order Directing the Trustee to Pay Post-Petition Rent or Alternatively to Compel the Trustee to Reject the Nonresidential Wilmer Lease* (the "Motion"). In support of the Motion, the Landlord respectfully states as follows:

## INTRODUCTION

Section 365(d)(3) of the Bankruptcy Code means exactly what it says; the Trustee must pay post-petition rental obligations within sixty (60) days of the Petition Date and continue to pay such obligations as they become due. Here, absent payment in full of all post-petition rent by November 9, 2025, the Lease must be rejected.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Northern District of Texas (the "Court") possesses jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The Court has authority to grant the relief requested pursuant to Title 11 of the United States Code (the "Bankruptcy Code"). The bases for relief requested herein are sections 11 U.S.C. §§ 105, 365, and 503 of the Bankruptcy Code.

2

## **FACTS**

4. On September 10, 2025 (the "Petition Date"), the Debtors filed their petition for relief under Chapter 7 of Title 11 of the Bankruptcy Code.  On the Petition Date, Anne Elizabeth Burns (the "Trustee") was appointed as the Chapter 7 Trustee.

5. Prior to the Petition Date, Tricolor Auto Group, LLC (the "Tenant") and the Landlord entered into that certain Commercial Lease Agreement dated July 9, 2021 (the "Lease"), for certain real property located at 3800 N. Interstate 45, Wilmer, Texas 75172 (the "Premises"). A true and correct copy of the Lease is attached hereto as **Exhibit 1** and is incorporated herein by reference as if fully set forth at length.

6. The Landlord has not received rent payments for September 2025.

7. In addition, no rent has been paid on a post-petition basis for October 2025.

8. In September 2025, the undersigned, retained by the Landlord, contacted Trustee's counsel to commence discussions with respect to the Landlord's request for the Trustee to immediately reject the Lease, and alternatively, pay any post-petition rent obligations as they became due. As of the filing of this Motion, the Trustee has not rejected the Lease, and it is not clear whether these chapter 7 estates have sufficient funds to pay the September, October, and the forthcoming November Rent.

9. On October 6, 2025, the Court entered an order *Granting Trustee's Motion for Limited Authorization to Operate the Debtors' Business Pursuant to 11 U.S.C. § 721* [Docket No. 158] (the "Operations Order"), which granted the Trustee authorization to operate the Debtors' business for a period of ninety-five (95) days, through and including, January 9, 2026.

10. Section 365(d)(3) requires that the Trustee must timely perform the Lease's obligations "arising from and after the order for relief … within 60 days after the date of the order

3

for relief." Here, timely performance requires that the Trustee pay the Lease's rent obligations for the months of October and November by November 9, 2025 (the "Post-Petition Rent"). Absent payment of the Post-Petition Rent, the Court should compel the immediate rejection of the Lease.

## ARGUMENT

### A. The Trustee is Required to pay all Post-Petition Rent.

11.     The Bankruptcy Code provides numerous protections for commercial landlords to ensure that they are not involuntarily compelled to serve as lenders to the estate. Primarily relevant to this Motion is section 365(d)(3) of the Bankruptcy Code.  It provides that the estate must "timely perform" all post-petition obligations arising under unexpired leases of nonresidential real property. 11 U.S.C. § 365(d)(3). The Court may extend the time for performing obligations arising within the first 60 days of a bankruptcy case for cause, but the Court cannot extend the time for performance beyond those first 60 days of the case. *Id.*

12.     On its face, the statute "entitles lessors to immediate payment of their claims." *In re C.Q., LLC*, 343 B.R. 915, 917 (Bankr. W.D. Wis. 2005). *See also In re Hitz Restaurant Group*, 616 B.R. 374, 376 (Bankr. N.D. Ill. 2020); *In re Compuadd Corp.*, 166 B.R. 862, 864 (Bankr. W.D. Tex. 1994) (finding that the statute is unambiguous and requires timely payments of rent). Further, other courts have granted immediate payment of administrative claims in cases where "there is a significant risk or likelihood of administrative claims not being paid." *In re Steepologie, LLC*, 2024 WL 117525, *7 (Bankr. W.D. Tex. Jan. 10, 2024); *see e.g., In re Bella Logistics LLC*, 583 B.R. 674, 681 (Bankr. W.D. Tex. 2018); 11 U.S.C. § 105(a).

13.     Thus, the September and October Rent arose from and after the order for relief in the instant case, and should be immediately paid, while the November 2025 rent due under the

4

Lease, and subsequent post-petition, pre-rejection accruing rent and other lease obligations should

be paid as each monthly rental amount comes due pursuant to sections 365(d)(3) and 503(b)(1).

## MOTION

### A.  Section 365(d)(3) Unambiguously Requires the Trustee to Timely Pay Post-Petition Rent

14.     The Court should hold that section 365(d)(3) unambiguously requires the Trustee

to timely pay post-petition rent to the Landlord.

15.     The statue is clear: a debtor must timely perform all obligations under commercial

leases. 11 U.S.C. § 365(d)(3). The phrase "timely perform" refers to "obligations […] under any

unexpired lease of nonresidential real property." Thus, the Trustee must pay all rent obligations

when they come due.

16.     To treat these obligations, as some courts have, as general administrative claims

under section 503(b) that do not have to be paid by the Debtors until plan confirmation (absent a

court order otherwise) reads the "obligations under any unexpired lease of nonresidential real

property" language out of the statute. 11 U.S.C. § 1129(a)(9)(A). Performance will not occur as

provided in the Lease, which the statute requires, but instead in accordance with section 1129 of

the Bankruptcy Code, and here, provides no relief to it. This is contrary to section 365(d)(3)'s clear

dictate that the Trustee must timely perform all obligations under the Lease.

17.     Moreover, section 365(d)(3) mandates that the Trustee's time for performing the

obligations under the Lease cannot be extended more than 60 days beyond the petition date.

Treating these obligations as general administrative claims that do not have to be paid until plan

confirmation would often extend the time for performance well beyond the 60 days that section

365(d)(3) plainly states the Court cannot do and is wholly inapplicable to this proceeding.

18.     Accordingly, the Court should hold that section 365(d)(3) of the Bankruptcy Code
requires the Trustee to immediately pay the Landlord all post-petition amounts that come due
under the Lease on or before the date of a hearing on this Motion, by November 9, 2025, and
require all future payments under the Lease to be paid as they become due.

**B.     Alternatively, the Court Should Order the Trustee to Pay the Landlord's
    Administrative Expense Claim Immediately**

19.     To the extent the Court disagrees with the Landlord's analysis and instead holds
the effect of section 365(d)(3) is to give the Landlord an automatic administrative expense claim
under section 503(b)(1), the Court should order the Trustee to pay the Landlord's administrative
expense claim immediately given the present risk factors that the estates will be unable to pay
administrative claims.

20.     Where there is a clear risk of administrative insolvency in a chapter 7 case,
expedited payment of administrative claims may be warranted. *See In re Steepologie, LLC*, 2024
WL 117525 at *7 (Bankr. W.D. Tex. Jan. 10, 2024); *see e.g., In re Bella Logistics LLC*, 583 B.R.
674, 681 (Bankr. W.D. Tex. 2018); 11 U.S.C. § 105(a). Here, as of the filing of this Motion, the
Trustee has no access to funds to pay for the ongoing and increasing expenses of the estate which
are accruing, including but not limited to monthly rent payments.  Moreover, although Schedules
and Statements of Financial Affairs have not yet been filed, upon information and belief, the
chapter 7 estates are either currently administratively insolvent, or will be rendered such by
accruing administrative claims, including growing legal and professional fees and unpaid
administrative rents owed to many other landlords.

21.     As further cause to compel immediate payment of the administrative rent claim in
this case, the Trustee has not provided any evidence to assure the Landlord that the Premises (i) is
being properly maintained, (ii) is covered by sufficient insurance policies securing the real estate

6

or the personal property located therein to protect the Landlord, or (iii) is being supplied with the necessary services to prevent any damage (especially given the coming seasonal changes and cooler weather).

22.     Accordingly, if the Court does not hold that section 365(d)(3) mandates immediate payment of the post-petition rental obligations due under the Lease, the Court should require that the Trustee pay all Post-Petition Rent obligations due under the Lease immediately based upon the risks that administrative claims will not be paid in full in these likely administratively insolvent estates and take all necessary measures to ensure that the Premises is being properly maintained, insured and supplied with sufficient utility services to prevent damage to the Premises.

**C. If the Court Does Not Compel the Immediate Payment of Post-Petition Rent, the Trustee Should be Compelled to Immediately Reject the Lease.**

23.     If the Court does not hold that (a) section 365(d)(3) mandates immediate payment of the Post-Petition Rent obligations due under the Lease, or (b) that the Trustee should be compelled to pay the Post-Petition rent obligations immediately as they become due given the risks that administrative claims will not be paid, then the Court should compel the Trustee to reject the Lease.

24.     Allowing the Trustee to presumably continue to market the Lease without the Trustee's compliance with payment obligations under the Lease squarely forces the Landlord to become an unwilling financier of the Trustee's efforts to operate the Debtors' business while preventing the Landlord from taking steps to protect the Premises and mitigate damages through re-letting to a new tenant. Compelling the Trustee's rejection of the Lease is warranted for the same reasons that support the Landlord's request for immediate payment pursuant to 365(d)(3) or as administrative expenses.

25.    Denying the relief requested herein would impermissibly allow the Trustee to continue to gamble with the Landlord's property in an attempt to generate funds that, if realized, will in large part be used to pay professional fees, while the Landlord involuntarily bears the disproportionate risk of loss in the event of the Trustee's failure to successfully market the Lease.

## PRAYER FOR RELIEF

The Landlord prays that the Court (i) grant the relief requested, (ii) order the Trustee to timely pay the Landlord all Post-Petition Rent amounts due under the Lease by November 9, 2025; (iii) grant the Landlord a claim under section 503(b)(1) of the Bankruptcy Code for all Post-Petition Rent that continues to accrue. Alternatively, the Court should compel the Trustee to immediately reject the Lease effective as of November 9, 2025.

Dated: October 21, 2025.

/s/ *Jennifer F. Wertz*

**JACKSON WALKER LLP**
Jennifer F. Wertz (TX Bar No. 24072822)
Beau H. Butler (TX Bar No. 24132535)
100 Congress Avenue, Suite 1100
Austin, TX 78701
Telephone: (512) 236-2000
Facsimile: (512) 236-2002
Email: jwertz@jw.com
Email: bbutler@jw.com

*COUNSEL FOR CICF III TX1B01, LLC*

## **CERTIFICATE OF SERVICE**

The is to certify that on the 21st day of October, 2025, a true and correct copy of the foregoing was served upon all parties receiving notice pursuant to the Court's ECF notification system.

/s/ Jennifer F. Wertz
_____
Jennifer F. Wertz

## EXHIBIT 1

**LEASE**

## LEASE AGREEMENT

THIS LEASE AGREEMENT (this "Lease") is made and entered into by and between Interpoint Distribution Center, LLC (hereinafter referred to as "Landlord") and Tricolor Holdings, LLC (hereinafter referred to as "Tenant") to be effective on the date set forth above the signatures of Landlord and Tenant on the last page of this Lease (the "Effective Date").

1.      PREMISES.  For good and valuable consideration, including, without limitation, the obligation of Tenant to pay rent as herein provided, and the other terms, provisions and covenants hereof, the receipt and sufficiency of which are acknowledged, Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord certain premises consisting of approximately 196,818 square feet and designated as Suite 100, as well as the adjacent truck court as set forth on Exhibit "A-1" (the "Premises") within the 349,963 square foot office and warehouse building (the "Building") which is part of the property located at 3800 N. Interstate 45, Wilmer, TX 75172, County of Dallas, State of Texas and described by metes and bounds on Exhibit "A" attached hereto and incorporated herein by reference (collectively with the Building, and all appurtenant parking facilities, landscaping, fixtures and other common areas and improvements, the "Property").  A site plan of the Property showing the location of the Building and the Premises within the Building is attached hereto and incorporated herein by reference as Exhibit "A-1".

2.      TERM.

(a)      The term of this Lease (the "Term") shall commence on the "Commencement Date", as hereinafter defined, and shall end one hundred twenty-one (121) months thereafter on the last day of the last calendar month of the Term; provided, however, that in the event the "Commencement Date" is a date other than the first day of a calendar month, the Term shall also include the number of days remaining in the month during which the Commencement Date occurs.

(b)      The "Commencement Date" shall be September 1, 2021.  Within five (5) days after the Commencement Date Tenant shall, upon demand, execute and deliver to Landlord a letter of acceptance of delivery of the Premises.  Notwithstanding the foregoing, Tenant, subject to Landlord's and existing tenant's prior approval, shall have the right to enter the Premises from and after the Effective Date in connection with its preparation of Plans and Specifications.

(c)      Except as otherwise acknowledged herein, Tenant acknowledges that Tenant has examined the Premises prior to the commencement of the Term, that Tenant accepts the premises "AS-IS" subject to tenant improvements to be constructed pursuant to the Plans and Specifications. Tenant further acknowledges that Landlord has made no representations or warranties, express or implied, as to the condition of the Premises, including, but not limited to, the cost of operations, the condition of its fixtures, improvements and systems, and the suitability of the Premises for Tenant's use.

3.      USE OF PREMISES AND COMMON AREAS.

(a)      The Premises shall be used only for automotive repair and storage and subject to Landlord's approval of the location and construction plans and specifications of such ancillary uses, including the installation and operation of car washing facilities ("Car Wash") and paint booth, and for no other use or purpose.  Except as described in the attached Exhibit "B", Tenant shall not, at any time, use or occupy or permit anyone to use or occupy the Premises, or do or permit anything to be done in the Premises or the Property, in any manner that may (i) violate any Certificate of Occupancy for the Premises or the Property; (ii) cause, or be liable to cause, damage to or in any way impair the value or proper utilization of any facilities or systems therein; (iii) constitute a violation of the laws and requirements of any public authority governing the Property, including any covenant, condition or restriction affecting the Property; (iv) exceed the load bearing capacity of the floor of the Premises; (v) impair the character, reputation or

45663714.3

appearance of the Property; or (vi)  unreasonably annoy, inconvenience or disrupt the operations or quiet enjoyment of other tenants or users of the Property. Tenant shall at its own cost and expense obtain any and all licenses and permits necessary for its use of the Premises to the extent such licenses or permits are unique to Tenant's use of the Premises and not a license or permit common to Landlord's Building, including, but not limited to, obtaining a City of Wilmer Certificate of Occupancy in the name of Tenant for the Premises.  Tenant shall comply with all governmental laws, ordinances and regulations applicable to the use of the Premises, including, without limitation, all Environmental Laws (hereinafter defined), and shall promptly comply with all governmental orders and directives for the correction, prevention and abatement of nuisances in or upon or connected with the Premises, all at Tenant's sole cost and expense.   Tenant shall not permit any objectionable or unpleasant odors, smoke, dust, gas, noise or vibrations to emanate from the Premises.  Subject to Paragraph 27.A.(i) hereof, without Landlord's prior written consent, Tenant shall not receive, store or otherwise handle any product, material or merchandise which is explosive or highly flammable, and shall not store any product or material outside the Premises. Tenant shall not permit the Premises to be used for any purpose which would render the casualty or liability insurance on the Property void or increase the cost of Landlord's insurance.

(b)      As used herein, "Common Areas" shall mean all areas within the Property that are made available by Landlord for the common use of tenants of the Property and that are not leased or held for the exclusive use of Tenant or other tenants including, but not limited to, parking areas, driveways, sidewalks, loading areas, access roads, landscaping and planted areas. Tenant shall have the nonexclusive right to use Common Areas for Tenant's use and the purposes intended, subject to such reasonable rules and regulations as Landlord may uniformly establish from time to time. Tenant shall not interfere with the rights of Landlord, other tenants or any other person entitled to use the Common Areas.  Landlord, from time to time, may change the size, location, nature and use of any of the Common Areas which may result in inconvenience to Tenant, provided such changes do not materially and adversely affect Tenant's use of the Premises. Landlord may, at any time, close or suspend access to any Common Areas to perform any repair, maintenance or modification in the Common Areas as, in Landlord's reasonable judgment, are desirable to improve or maintain the Common Areas, the Premises and/or the Property, or are required to satisfy Landlord's obligations under this Lease; provided, however, that Landlord shall use reasonable efforts to limit any disruption of Tenant's use and operation of the Premises in connection therewith.

4.      SECURITY DEPOSIT.  Tenant agrees to deposit with Landlord on the date hereof the sum of One Hundred Thousand and No/100 Dollars ($100,000.00) (the "Security Deposit"), which sum shall be held by Landlord as security for the performance of Tenant's covenants and obligations under this Lease, it being expressly understood and agreed that such deposit is not an advance rental deposit or a measure of Landlord's damages in case of Tenant's default.  Landlord shall have no obligation to pay interest on such sum and may commingle such deposit with any other funds of Landlord.  Upon the occurrence of any Event of Default (hereinafter defined) by Tenant, Landlord may, from time to time, without prejudice to any other remedy provided herein or provided by law, use such funds to the extent necessary to pay any arrearage of Rent (hereinafter defined) or other payments due Landlord hereunder, and any other damage, injury, expense or liability caused by such Event of Default; and Tenant shall pay to Landlord on demand the amount so applied in order to restore the security deposit to its original amount. Although the security deposit shall be deemed the property of the Landlord, any remaining balance of such deposit shall be returned by Landlord to Tenant once all of Tenant's obligations under this Lease have been fulfilled after the expiration or earlier termination of this Lease.

4843-2912-1520, v. 1

5.     RENT.

(a)     Tenant shall pay Landlord Base Rent during the Term as follows, in accordance with the terms and conditions of this Lease:

| Months of Term | Base Rent Per Square Foot of Premises | Monthly Base Rent | Annual Base Rent |
|---|---|---|---|
| 9/1/2021 – 9/30/2021 | $0.00 | $0.00 | $0.00 |
| 10/1/2021 – 9/30/2022 | $4.15 | $68,066.23 | $816,794.70 |
| 10/1/2022 – 9/30/2023 | $4.27 | $70,108.21 | $841,298.54 |
| 10/1/2023 – 9/30/2024 | $4.40 | $72,211.46 | $866,537.50 |
| 10/1/2024 – 9/30/2025 | $4.53 | $74,377.80 | $892,533.62 |
| 10/1/2025 – 9/30/2026 | $4.67 | $76,609.14 | $919,309.63 |
| 10/1/2026 – 9/30/2027 | $4.81 | $78,907.41 | $946,888.92 |
| 10/1/2027 – 9/30/2028 | $4.96 | $81,274.63 | $975,295.59 |
| 10/1/2028 – 9/30/2029 | $5.10 | $83,712.87 | $1,004,554.45 |
| 10/1/2029 – 9/30/2030 | $5.26 | $86,224.26 | $1,034,691.09 |
| 10/1/2030 – 9/30/2031 | $5.41 | $88,810.99 | $1,065,731.82 |
| 10/1/2031 – 9/30/2036 (Renewal Term, if applicable, pursuant to Paragraph 31) | Fair Market Rental Rate, as determined pursuant to Paragraph 31 | Fair Market Rental Rate, as determined pursuant to Paragraph 31 | Fair Market Rental Rate, as determined pursuant to Paragraph 31 |

(b)     Tenant agrees to pay to Landlord, as additional rent (collectively, the "Additional Rent"), all charges for (i) any service, goods, or materials furnished by Landlord at Tenant's request which are not required to be furnished by Landlord under this Lease; (ii) Tenant's Pro Rata Share (as hereinafter defined) of all of Landlord's operating expenses in connection with the ownership, operation, maintenance, management and repair of the Building and the Property (collectively, the "Operating Expenses"), including, without limitation, the following: owner's association and/or business park assessments of any kind or nature levied against the Building or the Property, all taxes (both general and special), assessments or governmental charges of any kind and nature, including margin tax, levied or assessed against the Property, the Building or the Premises or any part thereof (collectively, the "Taxes"), property tax consulting services, water and sewer service, gas (if applicable), building service electricity used for exterior purposes including lighting and irrigation, paving repair and maintenance, landscape and irrigation system repair and maintenance including replacement of dead plant material and replacement of seasonal color plants, flag replacements, fire sprinkler system inspections, maintenance and monitoring, annual exterior window glass cleaning, exterior building maintenance, repair and painting, security lighting repair and maintenance, utility and sewer line maintenance, repair and maintenance of the roof and common utility service lines inside or outside the Building, provided however, that the cost of any repair or maintenance which includes additions, alterations, or replacements that are required to be capitalized for federal income tax purposes shall be amortized over a period equal to the lesser of the useful life thereof for federal income tax purposes or ten (10) years at Landlord's cost of capital, Landlord's administrative expenses and management fees, the cost of all insurance maintained by Landlord in connection with the ownership and operation of the Property specifically including business interruption or rental insurance and the cost of all licenses, permits and inspection fees required for Landlord to comply with applicable laws.

(c)     The first installment of Additional Rent shall be due and payable on the Commencement Date and each subsequent installment of Additional Rent shall be due and payable in advance, without demand, deduction or set off, on or before the first day of each calendar month following the first full month after the Commencement Date.  The first installment of Base Rent and Additional Rent (collectively, "Rent") shall be due and payable on the first day following one (1) full

month after the Commencement Date, and each subsequent installment of Rent shall be due and payable in advance, without demand, deduction or set off, on or before the first day of each calendar month thereafter. The amount owed by Tenant for Additional Rent shall be based on Landlord's good faith estimate of Operating Expenses for such calendar year multiplied by Tenant's Pro Rata Share. Landlord's good faith estimate of the Operating Expenses shall be provided on or before the Effective Date for the calendar year in which the Commencement Date occurs, and prior to the commencement of each calendar year thereafter. In the event the Commencement Date occurs on a date other than the first date of the month, the Rent due and owing for any partial month at the commencement of the Term shall be prorated and shall be payable on the first day of the first full month of the Term. In the event Tenant fails to pay any installment of Rent hereunder within five (5) days of the date such installment is due, to help defray the additional cost to Landlord for processing such late payments Tenant shall pay to Landlord on demand a late charge in an amount equal to five percent (5%) of such installment; and the failure to pay the late charge within ten (10) days after demand therefor shall be an Event of Default hereunder. The provision for such late charge shall be in addition to all of Landlord's other rights and remedies hereunder or at law and shall not be construed as liquidated damages or as limiting Landlord's remedies in any manner. In addition to the late charge, all past due installments of Rent shall bear interest from the date due until paid at the rate of 12% per annum. Additionally, if Landlord reasonably incurs any expenses or costs as a result of Tenant's failure to pay any installment of Rent when due, then Tenant shall immediately upon receipt of notice of such expense or cost from Landlord, reimburse Landlord for such amount.

(d)      "Pro Rata Share" shall mean a fraction which shall be calculated using the total number of square feet in the Building or 349,963 square feet as the denominator and the total number of square feet in the Premises or 196,818 square feet as the numerator. The Pro Rata Share fraction is 56.24%.

(e)      As soon as practicable after the end of the calendar year, Landlord shall furnish Tenant a statement of actual Operating Expenses for such calendar year. Provided there is no uncured Event of Default, Landlord shall promptly refund any overpayment to Tenant for the prior calendar year or provide Tenant with an invoice for any amount still owing to cover any underpayment. Within twenty (20) days of Landlord's invoice, Tenant shall pay Landlord the Additional Rent still owing due to such underpayment.

6.      TAXES AND OTHER ASSESSMENTS.

(a)      Tenant agrees to pay to Landlord, Tenant's Pro Rata Share of all Taxes. If at any time during the Term, the present method of taxation shall be changed so that in lieu of the whole or any part of any taxes, assessments, levies or charges levied, assessed or imposed on the Property, the Building or the Premises thereon there shall be levied, assessed or imposed on Landlord a capital levy or other tax directly on the rents received therefrom and/or a franchise tax, assessment, levy or charge measured by or based, in whole or in part upon such rents for the Building or Premises, then all such taxes, assessments, levies or charges or the part thereof so measured or based, shall be deemed to be included within the term "Taxes" for the purposes hereof.

(b)      Landlord shall have the right to employ a tax consulting firm to attempt to assure a fair tax burden on the Property, the Building or the Premises within the applicable taxing jurisdictions. Tenant shall pay Landlord, as the Additional Rent, its Pro Rata Share of the cost of such service.

7.      REPAIRS AND MAINTENANCE.

(a)      Tenant shall throughout the Term at its own cost and expense keep the Premises and all furnishings, fixtures equipment and leasehold improvements therein in good condition and repair, including all necessary repairs and replacements, interior and exterior, structural and non-structural, ordinary and extraordinary. If Tenant fails to perform such maintenance and repair within fifteen (15) days of notice from Landlord, Landlord may perform any necessary maintenance or make any necessary repairs, and Tenant shall reimburse Landlord upon demand for all costs incurred by Landlord in connection with such repairs or maintenance. At the end of the Term or earlier termination of Tenant's right to possession of the Premises, subject to the following sentence, Tenant shall

- 4 -



surrender the Premises with all improvements thereon in good repair and condition subject only to reasonable wear and tear.  Notwithstanding any other provision hereof, unless Landlord notifies Tenant otherwise prior to expiration of the Term, then prior to expiration of the Term or earlier termination of Tenant's right to possession of the Premises, Tenant shall remove all of Tenant's Work and any alterations made to the Premises by Tenant during the Term, other than Tenant Work that Landlord specifically agrees in writing  may be left in place and shall repair, to the satisfaction of Landlord, any damage to the Premises or Property caused by such removal, and shall deliver the Premises to Landlord in the same condition the Premises was in on the Commencement Date, reasonable wear and tear excepted. Upon the expiration or earlier termination of this Lease, and prior to Tenant vacating the Premises, Tenant shall pay to Landlord any amount reasonably estimated by Landlord as necessary to put the Premises, including, without limitation, all heating and air conditioning systems and equipment therein, in good condition and repair and in the condition otherwise required by the immediately preceding sentence. This Paragraph 7(a) shall survive expiration of the Term or earlier termination of this Lease.

(b)      Tenant shall keep the parking areas and driveways surrounding the Premises and the whole of the Premises inside the Building in a clean and sanitary condition.

(c)      Tenant shall, at its own cost and expense, enter into a regularly scheduled preventive maintenance service contract with a maintenance contractor for servicing all heating and air conditioning systems and equipment serving the Premises. The maintenance contractor and the contract must be approved by Landlord. The service contract must include all services suggested by the equipment manufacturer within the operation/maintenance manual and must become effective (and a copy thereof delivered to Landlord) within thirty (30) days of the date Tenant takes possession of the Premises.

(d)      Tenant shall be responsible for the installation, repair, maintenance and monitoring of any security and fire alarm systems within the Premises. Tenant shall, at its own cost and expense, enter into a contract for the off-premises monitoring of the fire sprinkler system within the Premises.

(e)      Landlord shall be responsible for only the repair and maintenance costs associated with the maintaining the structural integrity of the Building, which includes only the concrete tilt-wall panels (excluding doors, windows, downspouts, and truck door bumpers), and steel columns, beams, bar-joists, steel roof deck, and the roof membrane, subject to reimbursement as part of Operating Expenses. Any replacement of the roof membrane deemed necessary by Landlord during the initial Term shall be completed by Landlord at its sole cost and expense, and thereafter, it shall be completed by Landlord, but subject to reimbursement as part of Additional Rent pursuant to Paragraph 5(b).

8.      ALTERATIONS AND TENANT'S WORK.

(a)      Tenant shall not make any alterations, additions or improvements to the Premises without the prior written consent of Landlord.  If Landlord consents to Tenant's contractors doing the work, Landlord may require, at Landlord's sole option, that Tenant provide, at Tenant's expense, a lien and completion bond in an amount equal to one and one half (1-1/2) times any and all estimated costs of improvements, additions or alterations in the Premises to insure Landlord against any liability or mechanic's and materialmen's liens which may arise in connection with any alterations, additions or improvements made by Tenant.  Tenant may, without the consent of Landlord but at its own cost and expense and in a good workmanlike manner, make such minor alterations, additions or improvements or erect, remove or alter such partitions, or erect such shelves, bins, machinery and trade fixtures as it may deem advisable, without altering the basic character of the Premises, the Building or improvements and without overloading or damaging the Premises, the Building or improvements, and in each case complying with all applicable governmental laws, ordinances, regulations, and other requirements. All shelves, bins, machinery and trade fixtures installed by Tenant may be removed by Tenant prior to the termination of this Lease if Tenant so elects and no Event of Default has occurred which remains uncured and shall be removed if required by Landlord; and upon any removal Tenant shall restore the Premises to their original condition, reasonable wear and tear excepted.  All such

- 5 -

removals and restoration shall be accomplished in good workmanlike manner so as not to damage the primary structure or structural qualities of the Building and other improvements situated on the Premises. In the event Tenant fails to remove any items required by Landlord, Landlord may (i) remove such items at Tenant's expense, and Tenant shall immediately upon demand reimburse Landlord for the cost of such removal, including any restoration occasioned thereby, and (ii) treat any property not removed by Tenant as abandoned by Tenant with full rights of ownership in Landlord, and may sell or dispose of such property without delivering the proceeds to Tenant. Tenant waives any and all claims against Landlord restricting Landlord's rights provided in this Paragraph 8 or resulting from Landlord's exercise of such rights.

(b)       Tenant shall commence construction of the "Tenant's Work", as described in Exhibit "B" attached hereto and incorporated herein, immediately upon the Commencement Date and shall diligently prosecute the same to completion.

9.       SIGNS. Tenant shall have the right to install signs upon the Building monument sign and/or the Building only when first approved in writing by Landlord and subject to any applicable restrictive covenants, laws, ordinances, regulations, building or property criteria, and other requirements. Tenant shall remove all such building mounted signs upon the termination of this Lease. Such installations and removals shall be made in a manner to avoid injury to or defacement of the monument sign, the Building and other improvements. Tenant shall repair any injury or defacement, including without limitation discoloration, caused by such installation and/or removal, if so required by Landlord.

10.       INSPECTION. Landlord and Landlord's agents and representatives shall have the right to enter and inspect the Premises at any reasonable time during business hours, for the purpose of ascertaining the condition of the Premises, subject to Tenant's reasonable security requirements. During the period that is six (6) months prior to the end of the Term, Landlord and Landlord's agents and representatives shall have the right to enter the Premises at any reasonable time during business hours for the purpose of showing the Premises and shall have the right to erect on the Premises a suitable sign indicating that the Premises are available. Tenant shall give written notice to Landlord at least thirty (30) days prior to vacating the Premises and shall arrange to meet with Landlord for a joint inspection of the Premises prior to vacating. In the event of Tenant's failure to give such notice or arrange such joint inspection, Landlord's inspection at or after Tenant's vacating the Premises shall be conclusively deemed correct for purposes of determining Tenant's liability for repairs and restoration and the amount to be deducted from the Security Deposit to reimburse Landlord therefor.

11.       UTILITIES. Landlord agrees to provide at its cost, water, electricity, gas (if applicable) and telephone service connections to the Building and the Premises; but Tenant shall pay all charges incurred for any utility services used on or from the Premises, and any maintenance charges for utilities, and shall furnish all electric light bulbs and tubes. Landlord shall in no event be liable for any interruption or failure of utility services on the Premises. The utilities not metered for Tenant's exclusive use shall be billed to Tenant as part of the Additional Rent.

12.       ASSIGNMENT AND SUBLETTING. Tenant shall not have the right to assign this Lease or to sublet the whole or any part of the Premises without the prior written consent of the Landlord, which shall not be unreasonably withheld, conditioned or delayed. Any change in the majority ownership of Tenant or Tenant's assets shall constitute an assignment of this Lease. In the event Landlord approves the assignment or subletting of the Premises or a portion thereof, Tenant shall at all times remain directly, primarily and fully responsible and liable for the payment of the Rent herein specified and for compliance with all of Tenant's other obligations under the terms, provisions and covenants of this Lease. Upon the occurrence of an "Event of Default" as hereinafter defined, if the Premises or any part thereof are then assigned or sublet, Landlord, in addition to any other remedies herein provided or provided by law, may at its option collect directly from such assignee or subtenant all rents becoming due to Tenant under such assignment or sublease and apply such rent against any sums due to Landlord from Tenant hereunder, and no such collection shall be construed to constitute a novation or a release of Tenant from the further performance of Tenant's obligations hereunder. Landlord and Tenant agree (by way of example and without limitation) that it shall be reasonable for Landlord to withhold its consent to an assignment of this Lease or sublease of the Premises if any of

- 6 -

the following situations exist or may exist: (i) the proposed transferee's use of the Premises conflicts with or is different from the permitted use as set forth in Paragraph 3(a); (ii) the proposed transferee or its business is subject to compliance with additional requirements of law beyond those requirements which are applicable to Tenant; (iii) in Landlord's reasonable business judgment, the proposed transferee lacks sufficient business reputation or experience to operate a successful business of the type and quality permitted under this Lease; (iv) Tenant is in default under this Lease; (v) in Landlord's reasonable business judgment, the present net worth of the proposed transferee is less than the greater of Tenant's net worth as of the date of this Lease or Tenant's net worth at the date of Tenant's request for consent; (vi) in Landlord's reasonable business judgment, the creditworthiness of the proposed transferee is less than the creditworthiness of Tenant; (vii) in the event of a proposed transfer to an assignee that is not a natural person, the principals of such assignee refuse to execute Landlord's standard Guaranty of Lease, prior to or contemporaneously with Landlord's consent to the assignment and/or (viii) the transfer would breach any covenant of Landlord respecting radius, location, use or exclusivity in any other lease, financing agreement or other agreement relating to the Property.

13.    INSURANCE; FIRE AND CASUALTY.

(a)    Landlord shall maintain during the Term "Special Form – Causes of Loss" insurance coverage ("Insurance") insuring the Building and the Premises (excluding Tenant's goods, furniture or property placed in the Premises and non-Building standard improvements) against damage or loss from fire or other casualty normally insured against under the terms of standard special form (all risks) coverage policies of insurance including liability and loss of rents coverage, or as reasonably would be required by a holder of mortgage against the Property.    If the annual premiums to be paid by Landlord shall exceed the standard rates because Tenant's operations, contents of the Premises or improvements with respect to the Premises result in extra-hazardous exposure, Tenant shall promptly pay the excess amount of the premium upon request by Landlord.    Subject to the obligations of Landlord to Tenant in this Paragraph 13(a), such insurance shall be for the sole benefit of Landlord.

(b)    Tenant shall provide, at Tenant's own expense, all insurance coverage for the full protection against loss or damage from fire or other casualty of any non-Building standard improvements within the Premises and Tenant's goods, furniture or other property placed in the Premises, including, without limitation, special form (all risks) coverage (including water damage and sprinkler leakage) insurance.  Tenant shall further maintain, with insurers licensed to do business in the State of Texas, (i) Worker's Compensation with the statutory limits, and Employer's Liability with limits of not less than Five Hundred Thousand and 00/100 Dollars ($500,000.00) (which policies will include a waiver of subrogation in favor of Landlord, Landlord's partners, venturers, directors, officers, agents, employees, invitees, visitors, and contractors), and (ii) commercial general liability insurance to include coverage for Premises-Operations, Independent Contractors, Broad Form Contractual and Products coverage (specifically in support of, but not limited to, the indemnity provisions of this Lease), with limits for bodily injury and property damage liability of not less than Two Million and 00/100 Dollars ($2,000,000.00) per occurrence, with a General Aggregate of nor less than Three Million and 00/100 Dollars ($3,000,000.00), or such other limits as may reasonably be established from time to time by Landlord.  All such insurance policies shall (1) include Landlord and Landlord's managing agent as an additional insured by endorsement form CG 20-26, (2) contain a cross-liability endorsement, and (3) state that such insurance is primary and non-contributing coverage with any other insurance available to Landlord (or any other party indemnified under this Lease).  Tenant shall furnish Landlord with current certificates of all required insurance (form ACORD 25-S for liability) other than property coverage, for which evidence of property insurance (form ACORD 27) is required, which certificates shall provide for thirty (30) days advance written notice to Landlord of any cancellation thereof. Landlord shall not be obligated to insure any of Tenant's improvements to the Premises or any of goods, fixtures, furniture, or other property of Tenant or Tenant's partners, venturers, directors, officers, agents, employees, invitees, guests, subtenants, assignees, affiliates, or any contractors, placed in or incorporated in the Premises.

(c)    If the Premises or the Building is damaged or destroyed in whole or in part by fire or other casualty at any time during the Term and if after such damage or destruction Tenant is not able to use the Premises to substantially the same extent and for substantially the same purposes as Tenant used the Premises prior thereto, then, as soon as practicable and in any case within ninety (90) days

- 7 -



after delivery to Landlord by Tenant of written notice describing in reasonable detail such damage or destruction, Landlord shall give Tenant a written notice ("Landlord's Election Notice") setting forth Landlord's election either to (a) terminate this Lease, or (b) restore or replace the damaged or destroyed portion to its condition immediately prior to the casualty. If Landlord does not provide written notice of its election within such ninety(90) day period, Landlord shall be deemed to have elected to terminate this Lease pursuant to the foregoing subsection (a). If such damage or destruction occurs, then the Base Rent and Additional Rent shall be abated in accordance with business interruption and/or loss of rental insurance coverage included in property insurance policy maintained by Landlord for the period and at least proportionately to the extent that after such damage or destruction Tenant is not able to use the Premises to substantially the same extent and for substantially the same purposes as Tenant used the Premises prior thereto; provided, however, in no event shall the abatement continue beyond fifteen (15) days following the completion of restoration work. If Landlord elects to restore or replace the damaged or destroyed portions of the Premises or Building, this Lease shall continue in full force and effect in accordance with the terms hereof except for the abatement of Base Rent and Additional Rent hereinbefore referred to and except, at Tenant's option, that the Term shall be extended by a length of time equal to the period beginning on the date of such damage or destruction and ending upon completion of such restoration or replacement. If Landlord elects to restore or replace the damaged or destroyed portions of the Premises or Building, such restoration or replacement shall be made within a reasonable time, subject to delays arising from any conditions or events beyond the reasonable control of Landlord, including, without limitation, acts of God, shortages of labor or materials, war or other force majeure conditions or events beyond the reasonable control of Landlord (individually and collectively, "Force Majeure"). If Landlord elects to terminate this Lease, this Lease shall terminate on the last day of the month next following the end of the ninety (90) day period hereinbefore referred to. If such damage or destruction hereinbefore described is the result of the negligence or willful misconduct of Tenant, its agents, employees, invitees, visitors or contractors, then this Lease shall continue in full force and effect in accordance with the terms hereof, and with no abatement of Base Rent or Additional Rent, whether or not Landlord elects to restore or replace the damaged or destroyed portions of the Premises or Building (which Landlord shall have no obligation to do), unless Landlord shall voluntarily elect to terminate this Lease. Notwithstanding anything in this Paragraph 13(c), in the event the restoration is not substantially completed within two hundred seventy (270) days from the date the Landlord's Election Notice, as such period may be extended by delays arising from Force Majeure, then Tenant shall, as its exclusive remedy, have the right to terminate this Lease by delivering written notice to Landlord within ten (10) days after the expiration of such two hundred seventy (270) day period and prior to the restoration being substantially completed, and if such notice is not received by Landlord within said ten (10) day period and prior to the restoration being substantially completed, Tenant shall be deemed to have elected not to terminate this Lease. The restoration shall be deemed to have been "substantially completed" for purposes of this Paragraph 13(c) if the damaged portion of the Building or the Premises has been restored to the same or better condition than existed on the date of the casualty, subject to the completion of minor insubstantial details of construction that do not substantially interfere with Tenant's use of the same.

(d)      Notwithstanding anything herein to the contrary, in the event the holder of any indebtedness secured by a mortgage or deed of trust covering the Property requires that the insurance proceeds be applied to such indebtedness as a result of total loss or constructive total loss of the Property then Landlord shall have the right to terminate this Lease by delivering written notice of termination to Tenant within fifteen (15) days after such requirement is made by any such holder, whereupon all rights and obligations hereunder shall cease and terminate.

(e)      Anything in this Lease to the contrary notwithstanding, each party hereto hereby releases and waives all claims, rights of recovery, and causes of action that either such party or any party claiming by, through, or under such party by subrogation or otherwise may now or hereafter have against the other party or any of the other party's partners, venturers, directors, officers, agents, or employees for any loss or damage that may occur to the Building, Premises, any of Tenant's fixtures or improvements or any of the contents of any of the foregoing by reason of fire, act of God, the elements, or any other cause, including negligence of the parties hereto or their partners, venturers, directors, officers, agents, or employees, that could have been insured against in the State of Texas under the terms of standard special form (all risks) coverage insurance policies. Each party shall give its insurance carrier written notice of the terms of this mutual waiver and shall request its insurance carrier

4843-2912-1520, v. 1

to endorse all applicable policies to waive the carrier's right of recovery under subrogation or otherwise in favor of the other party.

14.    LIABILITY.

(a)    Landlord shall not be liable to Tenant, Tenant's partners, venturers, directors, officers, agents, employees, invitees, guests, subtenants, assignees, affiliates or contractors, for any inconvenience or loss sustained by Tenant or Tenant's partners, venturers, directors, officers, agents, employees, invitees, guests, subtenants, assignees, affiliates or contractors (including, without limitation, consequential damages, loss of profits or business opportunity, or any other losses or damages whatsoever attributable to, or resulting from, any interruptions in the operation of Tenant's business or the businesses of Tenant's partners, venturers, directors, officers, agents, employees, invitees, guests, subtenants, assignees, affiliates or contractors) in connection with any of the repair, maintenance, damage, destruction, restoration, or replacement referred to in this Lease. Except for the gross negligence or willful misconduct of Landlord, Landlord shall not be obligated to repair, maintain, restore or replace or otherwise be liable for the damage or destruction of any fixtures or improvements, or any goods, furniture or other property, or any goods, furniture or other property of Tenant or Tenant's partners, venturers, directors, officers, agents, employees, invitees, guests, subtenants, assignees, affiliates or contractors placed in or incorporated in the Premises.

(b)    Except for the gross negligence or willful misconduct of Landlord, Landlord, its agents and employees, shall not be liable for any damage of any kind or for any damage to property, death or injury to persons from any cause whatsoever by reason of the use and occupancy of the Premises by Tenant or Tenant's partners, venturers, directors, officers, agents, employees, invitees, guests, subtenants, assignees, affiliates or contractors. Except for the gross negligence or willful misconduct of Landlord, Landlord shall not be liable to Tenant, Tenant's partners, venturers, directors, officers, agents, employees, invitees, guests, subtenants, assignees, affiliates or contractors, and Tenant, for itself and each of Tenant's partners, venturers, directors, officers, agents, employees, invitees, guests, subtenants, assignees, affiliates or contractors, hereby waives all claims against Landlord, Landlord's partners, venturers, directors, officers, agents, employees, invitees, visitors or contractors for any damages, consequential damages, loss of profits or business opportunity, business interruption, and for any damage to property, death or injury to persons from any cause whatsoever including, but not limited to, acts of other tenants, vandalism, theft, misappropriation, loss of trade secrets or other confidential information, any damage, loss or injury caused by a defect in the Premises, the Building, or the pipes, air conditioning, heating, plumbing or by water leakage of any kind from the roof, walls, windows, or other portion of the Premises or the Building, or caused by electricity, gas, oil, fire, interruption of Landlord's services or any cause whatsoever in, on, or about the Premises, the Building, the Property generally, or any part thereof.

(c)    **IT IS THE EXPRESS INTENTION OF LANDLORD AND TENANT THAT THE WAIVERS CONTAINED IN THIS PARAGRAPH 14 APPLY TO ALL MATTERS DESCRIBED HEREIN, INCLUDING, WITHOUT LIMITATION, ANY OF THE SAME THAT ARE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OF LANDLORD, TENANT OR THEIR RESPECTIVE PARTNERS, VENTURERS, DIRECTORS, OFFICERS, AGENTS, EMPLOYEES, INVITEES, GUESTS, SUBTENANTS, ASSIGNEES, AFFILIATES OR CONTRACTORS.**

(D)    **EXCEPT FOR THE CLAIMS, RIGHTS OF RECOVERY AND CAUSES OF ACTION THAT LANDLORD HAS RELEASED AND WAIVED PURSUANT TO PARAGRAPHS 14(A) AND (B) HEREOF, TENANT SHALL BE LIABLE TO LANDLORD FOR AND SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS LANDLORD AND LANDLORD'S PARTNERS, VENTURERS, DIRECTORS, OFFICERS, AGENTS, EMPLOYEES, INVITEES, VISITORS AND CONTRACTORS FROM ALL CLAIMS, LOSSES, COSTS, DAMAGES OR EXPENSES (INCLUDING BUT NOT LIMITED TO ATTORNEY'S FEES) RESULTING OR ARISING OR ALLEGED TO RESULT OR ARISE FROM ANY AND ALL INJURIES TO OR DEATH OF ANY PERSON OR DAMAGE TO OR LOSS OF ANY PROPERTY CAUSED BY ANY ACT, OMISSION OR NEGLECT OF TENANT OR TENANT'S PARTNERS, VENTURERS, DIRECTORS, OFFICERS, AGENTS, EMPLOYEES, SUBTENANTS, ASSIGNEES, AFFILIATES, INVITEES, GUESTS OR CONTRACTORS RELATING TO THE PREMISES, THE BUILDING, OR THE PROPERTY GENERALLY OR BY ANY BREACH, VIOLATION**

4843-2912-1520, v. 1



OR NON-PERFORMANCE OF ANY COVENANT OF TENANT UNDER THIS LEASE.  IF ANY ACTION OR PROCEEDING SHOULD BE BROUGHT BY OR AGAINST LANDLORD IN CONNECTION WITH ANY SUCH LIABILITY OR CLAIM, TENANT, ON NOTICE FROM LANDLORD, SHALL DEFEND SUCH ACTION OR PROCEEDING, AT TENANT'S EXPENSE, BY OR THROUGH ATTORNEYS REASONABLY SATISFACTORY TO LANDLORD.   THE PROVISIONS OF THIS PARAGRAPH 14(D) SHALL APPLY TO ALL ACTIVITIES OF TENANT, TENANT'S PARTNERS, VENTURERS, DIRECTORS, OFFICERS, AGENTS, EMPLOYEES, SUBTENANTS, ASSIGNEES, AFFILIATES, INVITEES, GUESTS AND CONTRACTORS WITH RESPECT TO THE PREMISES, THE BUILDING OR THE PROPERTY GENERALLY, WHETHER OCCURRING BEFORE OR AFTER THE EXPIRATION OR TERMINATION OF THIS LEASE.  TENANT'S OBLIGATIONS UNDER THIS PARAGRAPH 14(D) SHALL NOT BE LIMITED TO THE LIMITS OF COVERAGE OF INSURANCE MAINTAINED OR REQUIRED TO BE MAINTAINED BY TENANT UNDER THIS LEASE.

(E)     EXCEPT FOR THE CLAIMS, RIGHTS OF RECOVERY AND CAUSES OF ACTION THAT TENANT HAS RELEASED AND WAIVED PURSUANT TO PARAGRAPHS 14(A) AND (B) HEREOF, LANDLORD SHALL BE LIABLE TO TENANT FOR AND SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS TENANT AND TENANT'S PARTNERS, VENTURERS, DIRECTORS, OFFICERS, AGENTS, EMPLOYEES, INVITEES, VISITORS AND CONTRACTORS FROM ALL CLAIMS, LOSSES, COSTS, DAMAGES OR EXPENSES (INCLUDING BUT NOT LIMITED TO ATTORNEY'S FEES) RESULTING OR ARISING OR ALLEGED TO RESULT OR ARISE FROM ANY AND ALL INJURIES TO OR DEATH OF ANY PERSON OR DAMAGE TO OR LOSS OF ANY PROPERTY CAUSED BY ANY ACT, OMISSION OR NEGLECT OF LANDLORD OR LANDLORD'S PARTNERS, VENTURERS, DIRECTORS, OFFICERS, AGENTS, EMPLOYEES, SUBTENANTS, ASSIGNEES, AFFILIATES, INVITEES, GUESTS OR CONTRACTORS RELATING TO THE PREMISES, THE BUILDING, OR THE PROPERTY GENERALLY OR BY ANY BREACH, VIOLATION OR NON-PERFORMANCE OF ANY COVENANT OF LANDLORD UNDER THIS LEASE. IF ANY ACTION OR PROCEEDING SHOULD BE BROUGHT BY OR AGAINST TENANT IN CONNECTION WITH ANY SUCH LIABILITY OR CLAIM, TENANT, ON NOTICE FROM LANDLORD, SHALL DEFEND SUCH ACTION OR PROCEEDING, AT LANDLORD'S EXPENSE, BY OR THROUGH ATTORNEYS REASONABLY SATISFACTORY TO TENANT.  THE PROVISIONS OF THIS PARAGRAPH 14(E) SHALL APPLY TO ALL ACTIVITIES OF LANDLORD, LANDLORD'S PARTNERS, VENTURERS, DIRECTORS, OFFICERS, AGENTS, EMPLOYEES, SUBTENANTS, ASSIGNEES, AFFILIATES, INVITEES, GUESTS AND CONTRACTORS WITH RESPECT TO THE PREMISES, THE BUILDING OR THE PROPERTY GENERALLY, WHETHER OCCURRING BEFORE OR AFTER THE EXPIRATION OR TERMINATION OF THIS LEASE.  LANDLORD'S OBLIGATIONS UNDER THIS PARAGRAPH 14(E) SHALL NOT BE LIMITED TO THE LIMITS OF COVERAGE OF INSURANCE MAINTAINED OR REQUIRED TO BE MAINTAINED BY LANDLORD UNDER THIS LEASE.

15.    CONDEMNATION.

(a)     If the whole or any substantial part of the Premises should be taken for any public or quasi-public use under governmental law, ordinance or regulation, or by right of eminent domain, or by private purchase in lieu thereof, and the taking would prevent or materially interfere with the use of the Premises for the purpose for which they are being used, this Lease shall terminate and the Rent shall be abated for the remainder of the Term, effective when the physical taking of said Premises shall occur.

(b)     If less than a substantial part of the Premises shall be taken for any public or quasi-public use under any governmental law, ordinance or regulation, or by right of eminent domain, or by private purchase in lieu thereof, this Lease shall not terminate, but the Rent payable hereunder during the remainder of the Term shall be reduced to such extent as may be fair and reasonable under all of the circumstances.

(c)     In the event of any such taking or private purchase in lieu thereof, Landlord and Tenant shall each be entitled to receive and retain such separate awards and/or portion of lump sum awards as may be allocated to their respective interests in any condemnation proceedings.

4843-2912-1520, v. 1

16.    HOLDING OVER.  Tenant will, at the termination of this Lease by lapse of time or otherwise, yield up immediate possession to Landlord.  If Landlord agrees in writing that Tenant may hold over after the expiration or termination of this Lease, unless the parties hereto otherwise agree in writing on the terms of such holding over, the hold over tenancy shall be deemed a tenancy at sufferance and shall be subject to termination by Landlord at any time upon not less than five (5) days advance written notice, or by Tenant at any time upon not less than thirty (30) days advance written notice, and all of the other terms and provisions of this Lease shall be applicable during that period, except that Tenant shall pay Landlord from time to time upon demand, as Rent for the period of any hold over, Additional Rent and an amount equal to one and one-half (1-1/2) times Base Rent in effect on the expiration or termination date, computed on a daily basis for each day of the hold over period. No holding over by Tenant, whether with or without consent of Landlord, shall operate to extend this Lease except as otherwise expressly provided.  The preceding provisions of this Paragraph 16 shall not be construed as Landlord's consent for Tenant to hold over, and Tenant shall pay Landlord upon demand for all damages incurred by Landlord as a result of Tenant's holding over.

57.    QUIET ENJOYMENT.  Landlord covenants that it has good title to the Property, the Building and the Premises, free and clear, of all liens and encumbrances, excepting only the lien for current taxes not yet due, such mortgage or mortgages as are permitted by the terms of this Lease, zoning ordinances (if applicable) and other building and fire ordinances and governmental regulations relating to the use of such property, and easements, restrictions and other conditions of record. Landlord represents and warrants that it has full right and authority to enter into this Lease and that Tenant upon paying the Rent herein set forth and performing its other covenants and agreements herein set forth, shall peaceably and quietly enjoy the Premises for the term hereof without hindrance or molestation from Landlord, subject to the terms and provisions of this Lease.

68.    EVENTS OF DEFAULT.  The following events shall be deemed to be "Events of Default" by Tenant under this Lease:

(a)    Tenant shall fail to pay any installment of the Rent hereby reserved when due, or any other payment or reimbursement to Landlord required herein, and such failure shall continue for a period of five (5) days from the date such installment was due.

(b)    Tenant shall fail to comply with any term, provision or covenant of this Lease (other than the a failure to pay any amount owing under this Lease described in Paragraph 18(a) above), and shall not cure such failure, or if such failure cannot be cured within such time period, commence and diligently pursue a cure of such failure, within twenty (20) business days after written notice thereof to Tenant.  If such failure is not susceptible to cure, for example, without limitation, assignment or subletting the Premises without Landlord's prior written consent, then such failure shall immediately be deemed an Event of Default and Landlord shall have no obligation to provide notice of default and Tenant shall have no period for cure.

(c)    Tenant shall become insolvent, or shall make a transfer in fraud of creditors, or shall make an assignment for the benefit of creditors.

(d)    Tenant shall file a petition, voluntary or involuntary, under any section or chapter of the National Bankruptcy Act, as amended, or under any similar law or statute of the United States or any State thereof, or Tenant shall be adjudged bankrupt, or insolvent in proceedings filed against Tenant thereunder.

(e)    A receiver or trustee shall be appointed for all or substantially all of the assets of Tenant.

(f)    Tenant shall abandon or vacate the Premises.

19.    REMEDIES.  Upon the occurrence of any Events of Default, Landlord shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever:

4843-2912-1520, v. 1

(a)      Terminate this Lease by giving Tenant written notice thereof, in which event Tenant shall immediately surrender the Premises to Landlord, and if Tenant fails so to do, Landlord may, without prejudice to any other remedy which it may have for possession or arrearages in rent, enter upon and take possession of the Premises and expel or remove Tenant or any other person who may be occupying such Premises or any part thereof, without being liable for prosecution or any claim of damages therefor.  In the event Landlord terminates this Lease, Tenant shall immediately become liable to Landlord for damages for the entire breach in the amount equal to the amount the Rent, which would be payable by Tenant during the remainder of the Term and all other payments due from Tenant for the balance of the Term exceeds the fair market rent value of the Premises for the remainder of the Term as of the time of default, both discounted at the rate of six percent (6%) per annum to the then present value.  Such amount shall be due and payable upon Landlord's notice to Tenant of termination of the Lease and shall bear interest until paid at the maximum annual rate permitted by law.

(b)      Terminate possession of the Premises, and enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying such Premises or any part thereof, without being liable for prosecution or any claim of damages therefor; and relet the Premises and receive the rent therefor; and Tenant agrees to pay to the Landlord on demand any deficiency that may arise by reason of such reletting.  In the event Landlord is successful in reletting the Premises at a rental in excess of that agreed to be paid by Tenant pursuant to the terms of this Lease, Landlord and Tenant each mutually agree that Tenant shall not be entitled, under any circumstances, to such excess rental, and Tenant does hereby specifically waive any claim to such excess rental.

(c)      Enter upon the Premises, without being liable for prosecution or any claim of damages therefor; and do whatever Tenant is obligated to do under the terms of this Lease; and Tenant agrees to reimburse Landlord on demand for any expenses which Landlord may incur in thus effecting compliance with Tenant's obligations under this Lease, and Tenant further agrees that Landlord shall not be liable for any damages resulting to the Tenant from such action, whether caused by the negligence of Landlord or otherwise.

(d)      Landlord shall have the right, in its sole discretion, without additional notice and without court or judicial proceedings, to alter the locks and/or other security devices providing Tenant access to the Premises and repossess the Premises and remove all persons and property therefrom and Tenant hereby agrees to surrender possession of the Premises and waives any claim arising by reason thereof or by reason of the issuance of any distress warrant or writ of sequestration, and agrees to hold Landlord harmless from any such claims.  If Landlord alters the locks and/or other security devices to the Premises, Tenant shall pay to Landlord the cost incurred in change the locks. The terms and conditions of this subsection shall supersede the terms and conditions of the Texas Property Code to the extent of any conflict.

(e)      Receive payment from Tenant, in addition to any sum provided to be paid above, for any and all actual damages incurred by Landlord, including, but not limited to, the following expenses for which Tenant shall be considered liable:

1. Reasonable broker fees incurred by Landlord in connection with reletting the whole or any part of the Premises;

2. The cost of removing and storing Tenant's or other occupant's property;

3. The cost of repairing, altering, remodeling or otherwise putting the Premises into condition, acceptable to a new tenant or tenants, plus a reasonable charge to cover overhead; and

4. All reasonable expenses incurred by Landlord in enforcing Landlord's remedies.

(f)      Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided or any other remedies provided by law, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any rent due to Landlord hereunder or of any damages accruing to Landlord by reason of the violation of any of the terms, provisions and covenants herein contained.  No act or thing done by the Landlord or its agents during the Term shall be deemed a

- 12 -

4843-2912-1520, v. 1

termination of this Lease or an acceptance of the surrender of the Premises, and no agreement to terminate this Lease or to accept a surrender of said Premises shall be valid unless in writing and signed by Landlord. No waiver by Landlord of any violation or breach of any of the terms, provisions and covenants herein contained shall be deemed or construed to constitute a waiver of any other violation or breach of any of the other terms, provisions and covenants herein contained. Landlord's acceptance of the payment of rental or other payments hereunder after the occurrence of an Event of Default shall not be construed as a waiver of such default, unless Landlord so notifies Tenant in writing. Forbearance by Landlord to enforce one or more of the remedies herein provided upon an Event of Default shall not be deemed or construed to constitute a waiver of such default or of any subsequent default. If, on account of any breach or default by Tenant in Tenant's obligations under the terms and conditions of this Lease, it shall become necessary or appropriate for Landlord to employ or consult with an attorney concerning any of Landlord's rights or remedies hereunder or to enforce or defend any of the Landlord's rights or remedies hereunder, Tenant agrees to pay any reasonable attorney's fees so incurred.

(g)     Notwithstanding anything in this Paragraph 19, to the extent that the laws of the State of Texas require that a landlord take reasonable measures to mitigate damages recoverable against a defaulting tenant, Tenant agrees that if Landlord, within a reasonable time after Landlord becomes aware of a default by Tenant, notifies its leasing agent of the availability of the Premises for lease, requests that the Premises be marketed, and Landlord or its leasing agent advertises the Premises in the same manner as it advertises any comparable premises in the Building for lease, then Landlord will be deemed to have satisfied any obligation to mitigate damages. Landlord shall have no obligation to re-let the Premises (i) to a prospect that does not meet Landlord's usual leasing criteria, including, without limitation, credit requirements; (ii) before Landlord leases other vacant space in the Building; (iii) if another tenant of the Building (who is not in default) tenders to Landlord (for Landlord's consent) a prospective tenant for a sublease or an assignment of the existing tenant's space; (iv) if the nature of the substitute tenant's business would violate the use provisions of this Lease, or would, in Landlord's reasonable judgment, not be consistent with the current operation of the Building, or would violate any exclusive use provisions in any Building leases; or (v) under terms and conditions that have the effect of materially altering Landlord's obligations under this Lease or are substantially below the fair rental value. All rentals actually received by Landlord from any such reletting shall be applied, first, to the payment of any cost and expense of reletting, including brokerage commissions, attorneys' fees and cost of alterations and repairs; second, to the payment of any Rent due and unpaid hereunder; and finally, the residue, if any, shall be held by Landlord and applied in payment of future Rent, as the same may become due and payable hereunder.

20.    ***Intentionally deleted.***

21.    MORTGAGES. This Lease is subordinate to all liens, encumbrances, easements, and deeds of trust encumbering the Property, and all refinancings, replacements, modifications, extensions or consolidations thereof. Tenant shall attorn to any mortgagee or purchaser at foreclosure sale as "landlord" under this Lease. Within five (5) business days after Landlord's request, Tenant shall execute and deliver to Landlord in recordable form whatever true and correct instrument may be required to evidence such subordination and attornment. If Tenant fails to execute and deliver such instrument as required, the statements therein shall be deemed to be true, and Tenant hereby appoints Landlord as its Attorney-in Fact to execute and acknowledge such instruments on its behalf.

22.    LANDLORD'S DEFAULT.

(a)    In the event Landlord should default in any of its obligations hereunder, Tenant shall simultaneously give Landlord and, if address information has been provided to Tenant, Landlord's mortgagee written notice specifying such default, and Landlord shall thereupon have thirty (30) days (plus such additional period as may be reasonably required) in which to cure any such default. In addition, Landlord's mortgagee shall have the right (but not the obligation) to cure or remedy such default during the period that is permitted to Landlord hereunder, plus an additional period of thirty (30) days, and Tenant will accept such curative or remedial action taken by Landlord's mortgagee with the same effect as if such action had been taken by Landlord.

- 13 -



(b)    Upon the failure of Landlord or Landlord's mortgagee to cure such default in accordance with the provisions of Paragraph 22(a) hereof, Tenant's exclusive remedy shall be an action for damages against Landlord, and Tenant hereby waives the benefit of any laws granting it a lien upon the property of Landlord and/or upon rent due Landlord.

23.    ASSIGNMENT BY LANDLORD.  Landlord shall have the right to assign or transfer, in whole or in part every feature of its rights and obligations hereunder and the Property, the Building or the Premises provided such assignee or transferee recognizes and agrees to be bound by the terms of this Lease.   Such assignments or transfers may be made to a corporation, trust, trust company, individual or group of individuals, and howsoever made shall be in all things respected and recognized by Tenant.

24.    DISCLAIMER.  This Lease and the obligation of Tenant to pay Rent hereunder and perform all of the other covenants and agreements hereunder on the part of the Tenant to be performed shall not be affected, impaired or executed because Landlord is unable to fulfill any of its covenants and obligations under this Lease, expressly or impliedly to be performed by Landlord, if Landlord is prevented or delayed from doing so by reason of Force Majeure.

25.    MECHANIC'S LIENS.  Tenant shall have no authority, express or implied, to create or place any lien or encumbrance, of any kind or nature whatsoever, upon, or in any manner to bind, the interest of Landlord in the Property, the Building or the Premises for any claim in favor of any person dealing with Tenant, including those who may furnish materials or perform labor for any construction or repairs, and each such claim shall affect and each such lien shall attach to, if at all, only the leasehold interest granted to Tenant by this instrument. Tenant covenants and agrees that it shall not permit any liens against the Property, the Building or the Premises, and Tenant shall pay or cause to be paid all sums legally due and payable by it on account of any labor performed or materials furnished in connection with any work performed on the Premises on which any lien is or can be validly and legally asserted against its leasehold interest in the Building or Premises or the improvements thereon. Tenant shall cause any lien filed against the Property, the Building or the Premises to be removed within thirty (30) days of notice from Landlord, and shall save and hold harmless Landlord from any and all loss, cost or expense based on or arising out of asserted claims or liens against the leasehold estate or against the right, title and interest of the Landlord in the Property, the Building or the Premises or under the terms of this Lease.

26.    NOTICES.  Each provision of this instrument or of any applicable governmental laws, ordinances, regulations and other requirements with reference to the sending, mailing or delivery of any notice or the making of any payment by Landlord to Tenant or with reference to the sending, mailing or delivery of any notice or the making of any payment by Tenant to Landlord shall be deemed to be complied with when and if the following steps are taken:

(a)    All Rent and other payments required to be made by Tenant to Landlord hereunder shall be payable to Landlord at the address hereinbelow set forth or at such other address as Landlord may specify from time to time by written notice delivered in accordance herewith. Tenant's obligation to pay Rent and any other amounts to Landlord under the terms of this Lease shall not be deemed satisfied until Rent and other amounts owing have been actually received by Landlord.

(b)    All payments required to be made by Landlord to Tenant hereunder shall be payable to Tenant at the address hereinbelow set forth, or at such other address within the continental United States as Tenant may specify from time to time by written notice delivered in accordance herewith.

(c)    Any notice or document required or permitted to be delivered hereunder shall be deemed to be delivered whether actually received or not when deposited in the United States Mail, postage prepaid, Certified or Registered Mail, or by overnight courier with required signature by recipient, addressed to the parties hereto at the respective addresses set out below, or at such other address as they have theretofore specified by written notice delivered in accordance herewith:

4843-2912-1520, v. 1

LANDLORD:     Interpoint Distribution Center, LLC
c/o Peter H. Billipp
6925 Portwest Drive, Suite 130
Houston, TX 77024
Phone: 713-426-5000

TENANT:     Tricolor Holdings, LLC
c/o Daniel Chu
6021 Connection Drive, 4th Floor
Irving, TX 75039
Phone: 424-290-2200

If and when included within the term "Landlord", as used in this instrument, there are more than one person, firm or corporation, all shall jointly arrange among themselves for their joint execution of such a notice specifying some individual at some specific address for the receipt of notices and payments to Landlord; if and when included within the term "Tenant", as used in this instrument, there are more than one person, firm or corporation, all shall jointly arrange among themselves for their joint execution of such a notice specifying some individual at some specific address within the continental United States for the receipt of notices and payments to Tenant. All parties included within the terms "Landlord" and "Tenant", respectively, shall be bound by notices given in accordance with the provisions of this Paragraph to the same effect as if each had received such notice.

27.   ENVIRONMENTAL ASSURANCES.

A.   Covenants.

(i)   Tenant shall not cause any Hazardous Materials (as defined in Paragraph 27[C]) to be used, generated, stored or disposed of on, under or about, or transported to or from, the Premises unless the same are in compliance with all applicable laws, including, but not limited to, Environmental Laws.  Tenant shall not conduct any operation within the Premises which could result in a Hazardous Materials Contamination (as defined in Paragraph 27[C]) without complying with all safety procedures set forth by all applicable laws, including, but not limited to, Environmental Laws. Notwithstanding the foregoing, Tenant shall be permitted to store, use and dispose of de minimis amounts of Hazardous Materials which are incidental to Tenant's business so long as such amounts does not increase the Landlord's insurance or change the occupancy class of the Premises. Such Hazardous Materials and all containers therefor, shall be stored, used and disposed of in a manner that complies with all applicable Environmental Laws and other Laws or regulations applicable to such Hazardous Materials. Tenant shall be liable for all costs and expenses related to the storage, use and disposal of such de minimis amounts of Hazardous Materials incidental to Tenant's business and shall indemnify, defend and hold Landlord harmless from any claims or liabilities relating thereto.

(ii)   Tenant shall comply with all obligations imposed by Environmental Laws, and all other restrictions and regulations upon the use, generation, storage or disposal of Hazardous Materials at, to or from the Premises or the Property and upon any Hazardous Materials Contamination which occurs at the Premises or the Property. Tenant shall not commence or alter any operations at the Premises or Property prior to: (A) obtaining all permits, registrations, licenses, certificates and approvals from all governmental authorities required pursuant to any Environmental Laws or other applicable laws; and (B) delivering a copy of each permit, registration, license, certificate and approval to Landlord, together with a copy of the application upon which such permit, registration, license, certificate and approval is based.  Tenant shall not install any underground or above ground storage tanks ("Tanks") at the Premises or Property without the prior written consent of Landlord, and upon demand of Landlord, shall, prior to the expiration

- 15 -

4843-2912-1520, v. 1

or sooner termination of the Term, remove, at Tenant's own expense, all Tanks installed at the Premises or Property during the Term, and in so doing, Tenant shall comply with all closure requirements and other requirements of applicable Environmental Laws and other applicable laws.

(iii)   Tenant shall deliver promptly to Landlord true and complete copies of all notices received by Tenant from any governmental authority with respect to the use, generation, storage or disposal by Tenant of Hazardous Materials at, to or from the Premises and shall immediately notify Landlord both by telephone and in writing with a full description thereof of any unauthorized discharge of Hazardous Materials, any Hazardous Materials Contamination or of any condition that poses an imminent hazard to the Property, the public or the environment. Landlord shall have the right, but not the obligation, without in any way limiting Landlord's other rights and remedies under this Lease, to enter onto the Premises and the Property or to take such other actions as it deems necessary or advisable to cleanup, remove, resolve or minimize the impact of, or otherwise deal with, any Hazardous Materials or Hazardous Materials Contamination on the Premises or Property following receipt of any notice from any person or entity asserting the existence of any Hazardous Materials or Hazardous Materials Contamination pertaining to the Premises or Property which, i f true, could result in an order, suit, imposition of a lien on the Premises or Property, or other action and/or which, in Landlord's sole opinion, could jeopardize Landlord's security under the Lease.

(iv)   Tenant shall complete fully, truthfully and promptly any questionnaires sent by Landlord with respect to Tenant's use of the Premises and its use, generation, storage and disposal of Hazardous Materials and any Hazardous Materials Contamination at, to or from the Premises. Landlord shall have the right, from time to time, during the Term, and upon the expiration or sooner termination of the Term, to require that Tenant hire, and in such event Tenant shall, at Tenant's own expense, hire an environmental consultant satisfactory to Landlord to undertake sampling at the Property sufficient to determine whether Hazardous Materials have been discharged or whether a Hazardous Materials Contamination has occurred, during the Term.

(v)   Tenant shall permit entry onto the Premises by Landlord or Landlord's representatives at any reasonable time after advance notice to Tenant to verify and monitor Tenant's compliance with its covenants set forth in this Paragraph 27 and to perform other environmental inspections of the Premises. Without limiting any other remedy available to Landlord under this Lease or by applicable Laws, Tenant's failure to abide by the terms of this Paragraph 27 shall be restrainable or enforceable, as the case may be, by injunction. Tenant shall notify Landlord in advance of all meetings scheduled between Tenant or Tenant's representatives and any governmental authority pertaining to Hazardous Materials located at the Property or a Hazardous Materials Contamination, and Landlord and Landlord's agents, representatives and employees, including, but not limited to, legal counsel and environmental consultants and engineers, shall have the right, without the obligation, to attend and participate in all such meetings.

(vi)   If Landlord conducts any environmental inspections because it has reason to believe that Tenant's activities have or are likely to result in a violation of Environmental Laws or a release of Hazardous Materials on the Property or a Hazardous Materials Contamination, then Tenant shall pay to Landlord, as Additional Rent, the out of pocket costs incurred by Landlord for such inspections if such activities are confirmed and the disclosure on any violation or release will be an Event of Default.

4843-2912-1520, v. 1

(vii)    Tenant shall cease immediately upon notice from Landlord any activity which violates or creates a risk of violation of any Environmental Laws or which has caused a Hazardous Materials Contamination.

(viii)    After notice to and approval by Landlord, Tenant shall promptly remove, clean-up, dispose of or otherwise remediate, in accordance with Environmental Laws, other Laws, and good commercial practice, any Hazardous Materials or any Hazardous Materials Contamination, on, under or about the Property resulting from Tenant's activities on the Property and any failure to do so will be an Event of Default. Tenant shall, at Tenant's own expense, in accordance with all applicable laws, including Environmental Laws, undertake all action required by Landlord and any governmental authority, including, but not limited to, promptly obtaining and delivering to Landlord an unconditional written determination by the applicable environmental protection or conservation agency that there are no Hazardous Materials or a Hazardous Materials Contamination present at the Property or at any other site to which a discharge originating at the Property migrated, or that any Hazardous Materials Contamination present at the Property or that has migrated from the Property, have been remediated in accordance with all applicable requirements ("No Further Action Letter"). Promptly upon completion of all required investigatory and remedial activities, Tenant shall, at Tenant's own expense, and to Landlord's satisfaction, restore the affected areas of the Premises and the Property from any damage or condition caused by the investigatory or remedial work.

(ix)    If prior to the expiration or earlier termination of the Term, Tenant fails to remediate all Hazardous Materials and any Hazardous Materials Contamination pursuant to this Paragraph 27 and deliver to Landlord an unconditional No Further Action Letter (the "Environmental Clearance"); then upon the expiration or earlier termination of this Lease, Landlord shall have the option either to consider the Lease as having ended or treat Tenant as a hold-over tenant in possession of the Premises. If Landlord considers the Lease as having ended, then Tenant shall nevertheless be obligated to promptly obtain and deliver to Landlord the Environmental Clearance, and otherwise fulfill all of the obligations of Tenant set forth in this Paragraph 27. If Landlord treats Tenant as a hold-over tenant in possession of the Premises, then Tenant shall pay, monthly to Landlord, on the first day of each month, in advance, double the Base Rent that Tenant would otherwise have paid under the Lease along with Additional Rent, until such time as Tenant delivers to Landlord the Environmental Clearance, and otherwise fulfills its obligations to Landlord under this Paragraph 27, and during the hold-over period, all other terms of this Lease shall remain in full force and effect.

B.    **INDEMNIFICATION. TENANT HEREBY AGREES THAT TENANT SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS LANDLORD, ITS AGENTS AND EMPLOYEES FROM AND AGAINST ANY CLAIMS, DEMANDS, PENALTIES, FINES, LIABILITIES, SETTLEMENTS, DAMAGES, COSTS OR EXPENSES (INCLUDING WITHOUT LIMITATION, ATTORNEYS' AND CONSULTANTS' FEES, COURT COSTS AND LITIGATION EXPENSES) AND INCLUDING, WITHOUT LIMITATION, ANY DECREASE IN THE VALUE OF THE PROPERTY, LOSS OR RESTRICTION OF ANY AREA OF THE PROPERTY, AND ADVERSE IMPACT OF THE MARKETABILITY OF THE PROPERTY OR PREMISES, OF WHATEVER KIND OR NATURE, KNOWN OR UNKNOWN, CONTINGENT OR OTHERWISE, ARISING OUT OF OR IN ANY WAY RELATED TO (A) THE PRESENCE, DISPOSAL, RELEASE OR THREATENED RELEASE AND SUBSEQUENT REMEDIATION OF ANY HAZARDOUS MATERIALS OR ANY HAZARDOUS MATERIALS CONTAMINATION FROM THE PREMISES OR PROPERTY CAUSED BY TENANT; (B) ANY PERSONAL INJURY (INCLUDING WRONGFUL DEATH) OR PROPERTY DAMAGE (REAL OR PERSONAL) ARISING OUT OF OR RELATED TO SUCH HAZARDOUS MATERIALS OR HAZARDOUS MATERIALS CONTAMINATION CAUSED BY TENANT; OR (C) THE APPLICABILITY**

4843-2912-1520, v. 1

OF ANY LAWS RELATING TO HAZARDOUS MATERIALS OR HAZARDOUS MATERIALS CONTAMINATION ON THE PREMISES OR THE PROPERTY OR CAUSED BY TENANT. THE PROVISIONS OF THIS SUBSECTION SHALL BE IN ADDITION TO ANY OTHER OBLIGATIONS AND LIABILITIES TENANT MAY HAVE TO LANDLORD AT LAW OR IN EQUITY AND SHALL SURVIVE THE EXPIRATION OF THIS LEASE OR THE TERMINATION THEREOF.

C. Definitions. "Hazardous Materials" shall include, but not be limited to, substances defined as "hazardous substances", "toxic substances", or "hazardous wastes" in the federal Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended; the federal Hazardous Materials Transportation Act, as amended; and the federal Resource Conservation and Recovery Act, as amended; those substances defined as "hazardous substances", "materials", or "wastes" under the law of the state in which the Premises is located, including, but not limited to, the Texas Commission on Environmental Quality; and as such substances are defined in any regulations adopted and publications promulgated pursuant to said laws ("Environmental Laws"); materials containing asbestos or urea formaldehyde; gasoline and other petroleum products; flammable explosives; radon and other natural gases; and radioactive materials, storage tanks, whether or not underground and whether empty, filled or partially filled with any substance any substance the presence of which in or about the Property is prohibited by any governmental authority or which is hereafter classified by any governmental authority as a hazardous or toxic waste, material, substance or similar phraseology, and any other substance which by any governmental authority requires special handling or notification of any governmental authority in its collection, storage, treatment, or disposal. "Hazardous Materials Contamination" shall mean the release, spillage, leakage, pouring, emptying, dumping, emission or disposal of Hazardous Materials (whether presently existing or hereafter occurring) in or about the Premises, facilities, soil, groundwater, air or other elements in or about the Property or any other property as a result of Hazardous Materials at any time emanating from the Premises.

D. Survival. The obligations of Tenant in this Paragraph 27 shall survive the expiration or termination of this Lease.

28. BROKERAGE. Tenant represents and warrants that it has dealt with no broker, agent or other person in connection with this transaction and that no broker, agent or other person brought about this transaction, other than agents with Compass, Inc., and Tenant agrees to indemnify and hold Landlord harmless from and against any claims by any other broker, agent or other person claiming a commission or other form of compensation by virtue of having dealt with Tenant with regard to this leasing transaction. The provisions of this Paragraph 28, in addition to all of Tenant's indemnities and covenants expressly set forth in this Lease, shall survive the termination of this Lease.

29. LIMITATIONS ON LANDLORD'S LIABILITY. Landlord's liability for failure to perform its obligations under this Lease shall be recoverable solely out of the proceeds from judicial sale upon execution and levy made against Landlord's interest in the Property. Except as provided in this Paragraph 29, Tenant waives all other rights of recovery against Landlord, Landlord's partners, members, shareholders, managers, officers or directors, Landlord's mortgagee, Landlord's employees, agents, or legal representatives (collectively, the "Landlord Parties"), and all claims against the Landlord Parties for consequential, special or punitive damages allegedly suffered by Tenant, including lost profits and business interruption. The Landlord Parties shall have no personal liability under this Lease.

4843-2912-1520, v. 1

30.   MISCELLANEOUS.

(a)      Words of any gender used in this Lease shall be held and construed to include any other gender and words in the singular number shall be held to include the plural, unless the context otherwise requires.

(b)      The terms, provisions, covenants and conditions contained in this Lease shall apply to, inure to the benefit of, and be binding upon, the parties hereto and upon their respective heirs, legal representatives, successors and permitted assigns except as otherwise herein expressly provided.

(c)      Because the Premises are on the market and are presently being shown, this Lease shall be treated as an offer to lease the Premises, and it is subject to prior lease of the Premises or withdrawal or non-acceptance by Landlord or to other use of the Premises without notice, and this Lease shall not be valid or binding unless and until executed by Tenant and accepted by Landlord and a fully executed copy delivered to both parties.

(d)      The captions inserted in this Lease are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Lease, or any provision hereof, or in any way affect the interpretation of this Lease.

(e)      Tenant agrees, from time to time, within ten (10) days after request of Landlord, to deliver to Landlord, or Landlord's designee, an estoppel certificate stating that this Lease is in full force and effect, the date to which Rent has been paid, the unexpired term of this Lease and such other matters pertaining to this Lease as may be reasonably requested by Landlord.

(f)      All obligations of Tenant hereunder not fully performed as of the expiration or earlier termination of the term of this Lease shall survive the expiration or earlier termination of the Term.

(g)      If any clause or provision of this Lease is illegal, invalid or unenforceable under present or future laws effective during the term of this Lease, then and in that event, it is the intention of the parties hereto that the remainder of this Lease shall not be affected thereby, and it is also the intention of the parties to this Lease that, in lieu of each clause or provision of this Lease that is illegal, invalid or unenforceable, there be added as a part of this Lease contract a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

(h)      This Lease may not be altered, changed or amended except by an instrument in writing signed by both parties hereto.

(i)      Landlord and Tenant acknowledge and agree that this Lease shall be interpreted and enforced in accordance with the laws of the State of Texas and all obligations and duties are performable exclusively in Dallas County, Texas.

(j)      Each party agrees to furnish to the other, promptly upon demand, a corporate resolution, proof of due authorization by partners, or other appropriate documentation evidencing the due authorization of such party to enter into this Lease.

(k)      At Landlord's request which shall be no more than two (2) times during any Lease year, Tenant shall furnish Landlord with true and complete copies of its most recent annual and quarterly financial statements prepared by Tenant or Tenant's accountants and any other financial information or summaries that Tenant typically provides to its lenders or shareholders.

(l)      Neither this Lease nor a memorandum of lease shall be filed by or on behalf of Tenant in any public record. Landlord may prepare and file, and upon request by Landlord Tenant will execute, a memorandum of lease.

(m)    This Lease may be signed in any number of counterparts, each of which shall be an original for all purposes, but all of which taken together shall constitute only one agreement.

(n)    In the event either Landlord or Tenant brings any legal or equitable proceeding (including any court action or arbitration proceeding) for enforcement of any of the terms or conditions of this Lease, or any alleged disputes, breaches, defaults or misrepresentations in connection with any provision of this Lease, the prevailing party in such proceeding, shall be entitled to recover its reasonable costs and expenses, including, without limitation, reasonable attorneys' fees and costs of defense paid or incurred in good faith.  The "<u>prevailing party</u>" for purposes of this Lease, shall be deemed to be that party who obtains substantially the result sought, whether by settlement, dismissal or judgment.

31.    <u>RENEWAL OPTIONS.</u> Provided no Event of Default, as defined in Paragraph 18, has occurred during the Term, Tenant shall have the option to extend the Term for one (1), sixty (60) month renewal term, by giving Landlord written notice of such Tenant intention to renew not sooner than twelve (12) months and not later than nine (9) months prior to expiration of the Term. In the event Tenant exercises its option to extend the Term of the Lease, the Base Rent shall be a fair market rental rate as mutually agreed by Tenant and Landlord on or before six (6) calendar months prior to expiration of the then-current Term. In no event will the Base Rent for the renewal term be less than the Base Rent in effect during the last month of the then-current Term. Upon agreement of the Base Rent for the renewal term, if any, Landlord and Tenant shall execute an amendment to this Lease to stipulate the Base Rent for the renewal term. If Tenant and Landlord are unable to mutually agree upon the Base Rent (and/or other terms or conditions) for the extension term and enter into an amendment to this Lease to stipulate such Base Rent on or before six (6) calendar months prior to expiration of the then-current Term, then neither party shall have any further rights or obligations after expiration of the initial Term. Except as otherwise provided herein, all other terms, covenants, and provisions of this Lease shall apply to the extended term of the Lease. If Tenant exercises its renewal option, then the word "Term" shall be deemed to include the renewal term.

32.    <u>RIGHT OF FIRST OFFER.</u>

(a)    "<u>Offered Space</u>" shall mean that certain 153,145 square foot premises located immediately adjacent to the Premises and currently occupied by Experior Global Warehouse, LLC.

(b)    Provided that as of the date of the giving of the Offer Notice (defined below), (w) Tenant is the Tenant originally named herein, (x) Tenant actually occupies all of the Premises originally demised under this Lease and any premises added to the Premises, (y) at least twelve (12) full calendar months are remaining in the Term, and (z) no event of default or event which but for the passage of time or the giving of notice, or both, would constitute an event of default has occurred and is continuing, if at any time during the Term any portion of the Offered Space is vacant and unencumbered by any rights of any third party, and if Landlord intends to market for lease all or a portion of the Offered Space to the general public (and specifically excluding any offer to any tenant then occupying such space [or its affiliates, subtenants or assignees]), then Landlord shall first offer to Tenant the right to lease such Offered Space upon the terms and conditions that Landlord intends to market the Offered Space to the public for, as determined in Landlord's sole discretion (the "<u>Market Terms</u>").  Notwithstanding anything to the contrary in the Lease, the right of first offer granted to Tenant under this Section 32 shall be subject and subordinate to (i) the rights of all tenants under existing leases in the Building, and (ii) the herein reserved right of Landlord to renew or extend the term of any lease with the tenant then occupying the Offered Space (or any of its affiliates, subtenants or assignees), whether pursuant to a renewal or extension option in such lease or otherwise.

(c)    Such offer shall be made by Landlord to Tenant in a written notice (hereinafter called the "<u>Offer Notice</u>") which offer shall designate the space being offered and shall specify the terms for such Offered Space which shall be the same as the Market Terms.  Tenant may accept the offer set forth in the Offer Notice only by delivering to Landlord an unconditional acceptance (hereinafter called "<u>Tenant's Notice</u>") of such offer within five (5) business days after delivery by Landlord of the Offer Notice to Tenant.  Time shall be of the essence with respect to the giving of Tenant's Notice.  In order to

4843-2912-1520, v. 1



send the Offer Notice, Landlord does not need to have negotiated a complete lease with any proposed tenant but may merely have the intent to market the Offered Space to the public for lease, and Tenant must make its decision with respect to the Offered Space as long as it has received a description of the Market Terms.

(d)     Tenant must accept all Offered Space offered by Landlord at any one time if it desires to accept any of such Offered Space and may not exercise its right with respect to only part of such space.

(e)     If Tenant does not accept (or fails to timely accept) an offer made by Landlord pursuant to the provisions of this Section 1 with respect to the Offered Space designated in the Offer Notice, then Landlord shall be under no further obligation with respect to such Offered Space by reason of this Section 32. Additionally, if Tenant timely accepts such offer and fails to execute the ROFO Amendment (defined below) within fifteen (15) days after the delivery of the Offer Notice, then, at Landlord's sole option, Landlord shall be under no further obligation with respect to such space by reason of this Section 32 and Landlord shall be free to market the Offered Space to the public including on terms other than the Market Terms.

(f)     In the event that Tenant exercises its rights to any Offered Space pursuant to this Section 32, then Landlord shall prepare, and Tenant shall execute, an amendment to this Lease which confirms such expansion of the Premises and the other provisions reasonably applicable thereto and consistent with the terms of this Lease(the "ROFO Amendment").

33.    AUTHORITY.

The person executing this Lease on behalf of Tenant warrants and represents unto Landlord that:

(a)     Tenant is a duly organized and validly existing limited liability company in good standing under the laws of its state of formation and the State of Delaware;

(b)     Tenant has the full right and authority to execute, deliver, and perform this Lease;

(c)     The person executing this Lease on behalf of Tenant is authorized to do so;

(d)     Upon request of Landlord, such person will deliver to Landlord satisfactory evidence of his or her authority to execute this Lease on behalf of Tenant; and

(e)     This Lease, when executed and delivered by Tenant and Landlord, will constitute the valid and binding agreement of both parties, enforceable against Tenant in accordance with its terms.

**[Signature Page to Follow]**

4843-2912-1520, v. 1



EXECUTED this 9th day of ~~June~~ July, 2021.

"TENANT"

**TRICOLOR HOLDINGS, LLC,**
a Delaware limited liability company

By: _____

Name: _____Daniel Chu_____

Title: _____CEO_____


"LANDLORD"

**INTERPOINT DISTRIBUTION CENTER, LLC,**
a Texas limited liability company

By: _____P.H. Billipp_____

Name: ____Peter H. Billipp_____

Title: _____Manager_____

4843-2912-1520, v. 1

Exhibit "A"

Lot 3R, Block G, Sunridge Business Park, located within the limits of the City of Wilmer, Texas, as recorded in Instrument No. 201800070026 of the Official Public Records of Dallas County, Texas

4843-2912-1520, v. 1



Exhibit "A-1"



4843-2912-1520, v. 1

Exhibit "B"
Tenant's Work

1. Tenant's Plans.

   a. Preparation and Delivery of Tenant's Plans. At Tenant's sole cost and expense, Tenant shall prepare, or cause to be prepared, and deliver to Landlord and any architect designated by Landlord, within twenty (20) days after the Effective Date, one (1) set of fully dimensioned one quarter inch (¼") scale drawings ("Tenant's Plans"), showing a complete floor plan and reflected ceiling plan for the Premises, including all of Tenant's Work described in Paragraph 2(b) below and the location of all utilities, lighting and electrical outlets, partitions, store fronts, trade fixture plans, exhaust plans, acoustical plans and any other specifications which would affect the construction or design of the Premises. Such Tenant's Plans must be signed and sealed by a registered architect and/or engineer.

   b. Landlord's Approval of Tenant's Plans. Tenant's Plans shall be subject to Landlord's prior written approval. In addition to approval of Tenant's Plans, Landlord shall have the right to approve all interior finishes, fixtures, furniture, equipment, materials and colors ("Interior Plans"). Landlord shall have twenty (20) days after receipt of Tenant's Plans and Interior Plans to approve or disapprove any of the same. If Landlord disapproves Tenant's Plans and/or Interior Plans, then Tenant shall make such changes to Tenant's Plans and/or Interior Plans as Landlord reasonably requires and shall again submit Tenant's Plans and/or Interior Plans to Landlord and Landlord's architect for approval within ten (10) days of receipt of same. The foregoing procedure shall be followed until Landlord and Tenant mutually approve a satisfactory set of Tenant's Plans and Interior Plans (such approved plans, the "Final Plans"). Review of Tenant's Plans and Interior Plans by Landlord or Landlord's architect (or other consultants) shall not be deemed a representation as to the sufficiency or quality of Tenant's Plans or Interior Plans or a representation that they comply with applicable law. Landlord shall in no event be responsible for any defects, deficiencies or inaccuracies in Tenant's Plans and/or Interior Plans. Tenant shall cause Tenant's Plans and Interior Plans to be prepared and signed by a licensed design professional.

2. Tenant's Work.

   a. Commencement and Performance of Tenant's Work. Upon the approval of the Final Plans but no earlier than the Commencement Date, Tenant, at its sole cost and expense, shall immediately proceed to perform Tenant's Work as described in Paragraph 2(b) below, all without interfering with any other work being done at the Property. Tenant's Work shall be performed in compliance with all reasonable rules established by Landlord or Landlord's architect or contractors. Upon final completion of Tenant's Work, Tenant shall furnish Landlord with all certificates, permits and approvals relating to any work or installations done by Tenant that may be required by any governmental authority or insurance company. Landlord shall have no responsibility for any loss of or damage to any of Tenant's property so installed or left on the Premises. Tenant's entry shall be subject to all of the provisions of the Lease, and at all times after such entry, Tenant shall maintain or cause to be maintained in effect insurance complying with the Lease. Tenant's contractor will be required to fully comply with Landlord's contractor's site safety requirements. Tenant's contractor cannot be assured that onsite parking will be available for its workers.

   b. Description of Tenant's Work. "Tenant's Work" includes all work, of any kind or nature whatsoever, required to complete the construction of, and improvements in, the Premises in accordance with the Final Plans and to permit Tenant to open for business and use the Premises for the purpose set forth in the Lease, including, without limitation, the purchase, installation and/or performance, as appropriate, of the following:

      i. All interior partitions and walls within the Premises.

- 25 -



    ii.   All electrical work.
   iii.   Light covers and special hung or furred ceilings.
   iv.   Internal communications systems and alarm systems.
   v.   Fixtures and furnishings, including those items listed in the attached Schedule 1.
   vi.   Plumbing and plumbing fixtures.
   vii.   Window display platforms and window backs.
  viii.   Heating, cooling and ventilating, including all distribution ducts.
   ix.   Special lighting fixtures.
   x.   Any signage.
   xi.   The finish of all walls, ceilings and columns.
   xii.   Any and all other items required by Tenant.
   xiii.   All permit fees, sewer hook-up fees and utility assessments, whether billed directly by governmental authorities or prepaid by Landlord (in which event such amount shall be reimbursed by Tenant to Landlord upon demand).
   xiv.   All construction related debris will be removed from the Property and Premises by Tenant.
   xv.   All gas lines required by Tenant.
   xvi.   Tenant's floor coverings.
  xvii.   Distribution of all sprinkler heads as required by local building codes.
 xviii.   Installation of doors.
   xix.   Installation of separate utility meters.
   xx.   All work other contemplated by the Final Plans.

3.   <u>Standards of Construction</u>.  Other than signage installed pursuant to the Section 9 of the Lease and the installation of the Car Wash and the completion of Tenant's Work described herein and in the attached Schedule 1 after approval by Landlord of construction plans and specifications for Tenant's Work. under no circumstances shall Tenant make any alterations or modifications to the exterior of the Premises or the Property.  Tenant shall not make any roof penetrations without Landlord's prior written consent. All of Tenant's Work shall be designed by a qualified, licensed architect and shall be performed under the supervision of such architect by financially sound and bondable contractors of good reputation, in accordance with Tenant's Plans as approved in writing by Landlord prior to commencement of Tenant's Work.  All contractors performing Tenant's Work shall be subject to Landlord's prior approval, and Tenant shall not use any contractor not approved in writing by Landlord.  In connection with giving its consent, Landlord may require that any contractor, or major subcontractors, provide payment and completion bonds in such amount and with sureties acceptable to Landlord.  All work shall be performed in a good and workmanlike manner and shall be diligently prosecuted to completion, using new materials of good quality.  Tenant shall notify Landlord at least ten (10) days prior to the commencement of any portion of Tenant's Work, so that Landlord may post, file and/or record a notice of non-responsibility or other notice required under applicable mechanics' lien laws.  Upon completion of Tenant's Work, Tenant shall record in the office of the County Recorder of the County in which the Property is located a notice of completion or any other notice required or permitted by applicable mechanics' lien laws to commence the running of, or terminate, any period for the filing of liens or claims, and shall deliver to Landlord any certificate of occupancy or other equivalent evidence of completion of Tenant's Work in accordance with the requirements of applicable law.  Tenant's Work shall be performed in compliance with all applicable laws, codes, rules and regulations of all governmental and quasi-governmental authorities with jurisdiction.  All contractors performing any portion of Tenant's Work shall maintain insurance which meets the requirements of Landlord.

4.   <u>Cost of Tenant's Work</u>.  Tenant shall pay all costs and expenses (including permit fees and other governmental fees and exactions) due for, or purporting to be due for, all work, labor, services, materials, supplies or equipment furnished, or claimed to be furnished, to or for Tenant in connection with the performance of Tenant's Work, and Tenant shall keep the Premises and the Property free of all mechanics', materialmen's and other liens arising therefrom.  Tenant may contest any such lien, but only if Tenant first procures and posts, records and/or files a bond or bonds issued by a financially sound, qualified corporate surety in conformance with the requirements of Landlord and Landlord's Lender. Tenant shall pay and fully discharge any

4843-2912-1520, v. 1

contested claim or lien within five (5) days after entry of final judgment adverse to Tenant in any action to enforce or foreclose such lien. However, notwithstanding any such contest, Landlord shall have the right at any time to pay any lien imposed hereunder if in Landlord's reasonable judgment such payment is necessary to avoid the forfeiture, involuntary sale or loss of any interest of Landlord in the Property. Tenant shall indemnify, defend, protect and hold Landlord harmless of and from any and all loss, cost, liability, damage, injury or expense (including attorneys' fees) arising out of or in connection with claims or liens for work, labor, services, materials, supplies or equipment furnished, or claimed to be furnished, to or for Tenant, in, upon or about the Premises or the Property.

4843-2912-1520, v. 1

Schedule 1 to Exhibit "B" Tenant's Work

- 200+ Automotive lifts.  Lifts will be anchored to the floor with bolts and support up to 6,000 lbs
- Automatic Car wash -- up to 2 semi-automated car washes will be added inside the Premises that will need water and drains added.  Materials used – Surfactant and water only
- Above grade Bulk Oil Container area will be set up to store new oil used in the maintenance process of the vehicles.
- Waste Oil Containment area will be set up to contain all the spent oil. No below grade pit will be permitted for waste oil containment or storage.  Waste services will be used to collect and recycle.
- Oil change area will be in one area and isolated.
- Subject to applicable laws, restrictive covenants, and Landlord's approval of the size thereof, a bulk gasoline tank will be set up outside and bolted to the ground.
- 2 large paint booths will be added inside and vented to the outside.  They will be bolted to the floor.  We use water based paints, no drains or other building modifications needed.
- Larger multi car lifts may be added in the future to support storage of WIP as the facility is fully released.
- Building Temperature controls will need to be evaluated to help improve the temperature inside the facility during hot and cold temperatures to create a better environment for the employee's.
- Compressors will be added to facility with localized tubing routed to tech workstations.
- 12+ Tire change / balancer equipment will be used in the reconditioning process and will be bolted to the floor
- 8-12 rotary lathes will be used to refurbish break rotors and will be bolted to the floor
- 100+ technicians will be on premise doing the mechanical repair with tool boxes and associate diagnostic tools used to refurbish vehicles
- Electrical wiring will need to be added and distributed throughout the building for various equipment noted below
- Computer CAT 5/6 will be routed from a IT center located in the office area to specified workstations throughout the building.  Wireless routers will also be added

All of Tenant's Work is subject to Landlord's prior approval of the construction plans and specifications as Final Plans as set forth in paragraph 1.b. above.

4843-2912-1520. v. 1

