**MCDERMOTT WILL & SCHULTE LLP**
Charles R. Gibbs (TX Bar No. 7846300)
Marcus A. Helt (TX Bar No. 24052187)
Grayson Williams (TX Bar No. 24124561)
Michael Wombacher (TX Bar No. 24120434)
2801 North Harwood Street, Suite 2600
Dallas, Texas 75201
Telephone: (214) 295-8000
E-mail: crgibbs@mwe.com
      mhelt@mwe.com
      gwilliams@mwe.com
      mwombacher@mwe.com

**MCDERMOTT WILL & SCHULTE LLP**
Darren Azman (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
E-mail: dazman@mwe.com

*Proposed Counsel to the Chapter 7 Trustee*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| TRICOLOR HOLDINGS, LLC, *et al.*, [1] | ) | Case No. 25-33487 (MVL) |
| | ) | |
| Debtors. | ) | |
| | ) | |

## CHAPTER 7 TRUSTEE'S <u>EMERGENCY</u> MOTION
## FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING
## THE USE CASH COLLATERAL AND GRANTING RELATED RELIEF

Anne Elizabeth Burns, the duly appointed chapter 7 trustee (the "Trustee") of the estates

of Tricolor Holdings, LLC and its various debtor affiliates (collectively, the "Debtors") in the

above-captioned chapter 7 cases (the "Chapter 7 Cases"), hereby moves (the "Motion") for entry

of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**

---

[1]   The Debtors in these chapter 7 cases are as follows: Tricolor Holdings, LLC, TAG Intermediate Holding Company, LLC, Tricolor Auto Group, LLC, Tricolor Auto Acceptance, LLC, Tricolor Insurance Agency, LLC, Tricolor Home Loans LLC dba Tricolor Mortgage, Tricolor Real Estate Services, LLC, TAG California Holding Company, LLC, Flexi Compras Autos, LLC, TAG California Intermediate Holding Company, LLC, Tricolor California Auto Group, LLC, Tricolor California Auto Acceptance, LLC, Risk Analytics LLC, Tricolor Tax, LLC, Tricolor Financial, LLC, Tricolor Auto Receivables LLC, Tricolor Asset Funding, LLC, and Apoyo Financial, LLC.

(the "Interim Order" and the "Final Order," respectively), granting the relief described below.  In support of the Motion, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Trustee was appointed to administer an estate comprised of, among other things, approximately 10,000 vehicles, many of which are subject to ongoing insurance obligations necessary to preserve their value and protect the estate from significant loss exposure.  Without prompt authority to use cash collateral, essential insurance coverage will lapse, jeopardizing the estates' most valuable assets and materially diminishing potential recoveries for creditors.

2.      The Trustee has acted diligently and in good faith since her appointment, moving swiftly to protect the estates' property and preserve its going-concern and liquidation value for the benefit of creditors.  The requested use of cash collateral is narrowly tailored to meet only the most immediate and critical needs of the estate—namely, maintaining insurance coverage and compensating key personnel necessary to carry out the Trustee's fiduciary obligations.  Absent immediate authorization, the estate risks severe and irreparable harm through losses that may result from the lack of insurance on the vehicle inventory.

3.      The Trustee has worked in a coordinated fashion with Vervent, Inc. ("Vervent") and the Secured Lenders (defined below) to ensure the protection of the vehicle inventory. Allowing for the payment of the Insurance Obligations (defined below) will ensure that the vehicle assets remain insured by the estate until November 16, the current date by which Vervent anticipates completing its vehicle relocation efforts.  The completion of such efforts will ensure that the vehicle inventory is then insured by either Vervent or the various auctioneers who currently store the Debtors' vehicle inventory.  Likewise, payment of the Consultant Obligations will ensure

that the former employees retained by the Trustee are compensated for their invaluable services to the Debtors' estates.

## RELIEF REQUESTED

4.      By the Motion, the Trustee respectfully requests authority to use cash collateral for the limited purposes of (a) maintaining certain critical insurance coverage and (b) paying certain consultants who are former employees of the Debtors and have provided essential services to the Trustee.  The Trustee seeks to use cash collateral in the amount of approximately $275,000.

## JURISDICTION

5.      The United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court") has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc,* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas. This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

6.      The legal predicates for the relief requested herein are sections 361, 363, 704, 721 and 552 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 9013-1 of the *Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas* (the "Local Rules").

7.      The Trustee confirms her consent to the entry of a final order by the Court in connection with this motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**BACKGROUND**

8.      On September 10, 2025 (the "Petition Date"), the Debtors commenced the Chapter 7 Cases by filing voluntary petitions for relief under chapter 7 of the Bankruptcy Code.  The Chapter 7 Cases are being jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

9.      On the Petition Date, the Office of the United States Trustee for Region 6 (the "U.S. Trustee") appointed Anne Elizabeth Burns as the duly qualified Trustee over the Chapter 7 Cases.

10.      On September 12 and 19, 2025, the Trustee engaged McDermott Will & Schulte LLP as her legal counsel and CRS Capstone Partners LLC as her proposed financial advisor, respectively.

11.      On October 6, 2025, the Court entered the *Order Granting Trustee's Motion for Limited Authorization to Operate the Debtors' Business Pursuant to 11 U.S.C. § 721* [Docket No. 158] (the "721 Order"), granting the Trustee authority to operate the Debtors' business on a limited basis, for a period of 95 days, to, among other things, preserve and locate essential assets, investigate the need for insurance related to such assets, gather and secure the Debtors' data and business records, and facilitate the orderly wind-down of remaining administrative functions pursuant to Bankruptcy Code section 721.

12.      Pursuant to the *Order Granting Chapter 7 Trustee's Motion for Entry of Order Approving Stipulation Between Trustee and Vervent Inc.* [Docket No. 53] entered by the Court on September 9, 2025 and the *Amended Order Granting Chapter 7 Trustee's Motion for Entry of Order Approving Stipulation Between Trustee and Vervent Inc.* [Docket No. 227] entered by the Court on October 17, 2025 (the "Vervent Orders"), Vervent has been securing the Vehicle Assets

(as defined in the Vervent Orders), including through securing and transporting to storage at third party locations all vehicles owed by the Debtors. Vervent expects it will have secured and removed all vehicles owned by the Debtors from the Debtors' various dealership locations and reconditioning facilities by approximately the middle of November.

## CONCISE STATEMENT PURSUANT TO BANKRUPTCY RULE 4001(b)

13.     In accordance with Bankruptcy Rule 4001, the Trustee provides this concise statement of relief requested in the Motion:

| Rule | Summary of Material Term |
|---|---|
| **Purpose of Cash Collateral Use** | The cash collateral will be used to maintain certain critical insurance coverage on the Debtors' vehicle inventory and pay two former employees of the Debtors who were retained by the Trustee as consultants for critical services. |
| **Entities with Interest in Cash Collateral** | Certain prepetition lenders and other parties in interest—including Wilmington Trust, N.A.; JPMorgan Chase Bank, N.A.; Fifth Third Bank, N.A.; TBK Bank, SSB; ACV Capital LLC; Manheim Remarketing, Inc.; and Origin Bank—have asserted a security interest in the cash collateral. |
| **Material Terms and Duration of Cash Collateral Use** | The Trustee proposes to use approximately $275,000 in cash collateral on deposit in the Trustee's trust account. At this time, the Trustee does not seek any further use of any cash collateral. |
| **Adequate Protection / Replacement Liens** | Any Secured Lender (defined below) with an interest in the cash collateral will receive customary adequate protection, including replacement first priority liens against all the Debtors' unencumbered assets, replacement second priority junior liens against all the Debtors' previously encumbered assets, and superpriority administrative claims with priority over all other administrative claims. |

## THE TRUSTEE'S CASH NEEDS

### I.     The Insurance and Consultant Obligations

### a. The Dealer Open Lot Policy

14.     Prepetition, the Debtors maintained a suite of insurance policies and premium financing agreements, which were paid in the ordinary course of business. The Trustee and her advisors are in the process of determining which of the Debtors' insurance policies are necessary to maintain to facilitate the liquidation of the Debtors' estates and preserve the estates' value pursuant to the 721 Order. As an initial matter, the Trustee and her advisors have determined that maintaining the Dealer Open Lot Policy (the "DOL Policy") carried by Amherst Specialty Insurance Company, Inc. and financed by AFCO Credit Corporation ("AFCO") is crucial to preserving the value of the Debtors' estates. The DOL Policy provides comprehensive coverage of the vehicle inventory for losses arising from non-collision events such as theft, vandalism, weather, floods, earthquakes, other accidental damages, and false pretenses, as well as collision coverage for damage resulting from a crash or impact. The Debtors' vehicle inventory represents a significant portion of the total value of the Debtors' estates. Accordingly, protecting the value of the vehicle inventory through maintaining insurance coverage is critical to preserving the overall value of the Debtors' estates for the benefit of all creditors. Moreover, the maintenance of necessary insurance is part of the Trustee's duties as chapter 7 trustee.

15.     The Debtors were current on their premium payments to AFCO as of the Petition Date, but have since missed two payments of $122,374.42 each, totaling $244,748.84. The Trustee, therefore, seeks to use cash collateral in the amount of $244,748.84 for the purpose of paying AFCO on account of past due postpetition premiums (the "Insurance Obligations").

### b. The Former Tricolor Employee Consultants

16.     When the Trustee assumed her duties on the Petition Date, she had no means by which to access the Debtors' books and records, online databases and cloud storage, or general

operational information.  To faithfully fulfill her duties in gathering and securing the Debtors' data

and business records pursuant to the 721 Order and begin an orderly liquidation of the Debtors'

assets, the Trustee retained two former employees of the Debtors as consultants (the

"Consultants").  The Consultants are intimately familiar with the Debtors' operations and have

facilitated critical access to the Debtors' books and records and numerous online databases and

information technology systems.  Each of the Consultants has been retained on an hourly basis.

As of the filing of the Motion, the Consultants are owed approximately $30,000 in the aggregate

on account of services rendered to the Trustee.  Without the assistance of the Consultants, the

Trustee would not have been able to carry out her duties, nor would she have made the substantial

progress that has been achieved in these Chapter 7 Cases.  The Consultants' services have been

instrumental to preserving the value of the Debtors' estates.  Accordingly, the Trustee seeks to use

cash collateral in an amount of approximately $30,000 to pay the Consultants on account of their

postpetition services to the Trustee (the "Consultant Obligations" and together with the Insurance

Obligations, the "Insurance and Consultant Obligations").  For the avoidance of doubt, the Trustee

does not seek to use cash collateral to pay go-forward Consultants' fees or insurance premiums.

The Trustee expects that any request for go-forward payment of Consultants' fees or insurance

premiums will be made in a motion seeking approval of postpetition financing.

## II.  The Cash Collateral

17.    The cash collateral the Trustee seeks authority to use is deposited in the Trustee's

trust account (the "Trust Account").  The Trust account currently holds approximately $2.6 million

in cash from deposited checks which were received at the Debtors' headquarters over the past

several weeks.  Upon information and belief, the checks received consist primarily of insurance

proceeds and payoffs or refinancings.

7

18.     Certain prepetition lenders and other parties in interest—including Wilmington Trust, N.A.; JPMorgan Chase Bank, N.A.; Fifth Third Bank, N.A.; TBK Bank, SSB; ACV Capital LLC; Cox Automotive, Inc.; and Origin Bank (together, the "Secured Lenders")—have asserted a security interest in the cash collateral deposited in the Trust Account.  The Trustee and her advisors are in the process of evaluating the Secured Lenders' potential security interests in the cash collateral and have been actively negotiating with the Secured Lenders to receive their consent to use the cash collateral.  In connection with a potential resolution, the Trustee has agreed to promptly perform a reconciliation of the deposited by the Trustee to date—an amount around $2.6 million—to ensure that any proceeds that are not estate property are returned to the appropriate owner.  Given the magnitude of the fraud present in these Chapter 7 Cases, the Trustee believes that such a reconciliation will take some amount of time to ensure that the proceeds are applied to the correct owner, particularly in the case of double-pledged assets.

19.     As of the filing of the Motion, the Trustee has not received the Secured Lenders' consent to use cash collateral as requested herein but is still actively engaging with the Secured Lenders with the goal of finding a mutually agreeable resolution.  However, the current form of proposed order contains the majority of the requested additions at the behest of the Secured Lenders, and the Trustee expects to continue negotiating with the Secured Lenders over the weekend. To the extent any additional revisions need to be inserted into a form of revised proposed order, the Trustee will file such order on the docket with a redline against the proposed order attached to this Motion.  The Trustee does not seek general authorization to use cash deposited in the Trust Account, rather she seeks to use cash collateral for the very limited purpose of fulfilling the Insurance and Consultant Obligations in the limited amount of approximately $275,000.

**BASIS FOR RELIEF**

20.     It is essential to the Trustee's administration of the Chapter 7 Cases that she obtain authority to use cash collateral for the limited purpose and in the limited amount requested. The Trustee cannot perform her duties under Bankruptcy Code sections 704(a) and 721 and other applicable laws without the use of cash collateral.

I.     **The Trustee's proposed adequate protection for the use of cash collateral is sufficient.**

21.     Bankruptcy Code section 363 defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property . . . subject to a security interest as provided in section 552(b) of [the Bankruptcy Code], whether existing before or after the commencement of the case under [the Bankruptcy Code]." 11 U.S.C. § 363(a). Under Bankruptcy Code section 363(c)(2), a trustee may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use . . . in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

22.     Bankruptcy Code section 363(b)(1) authorizes a trustee, following notice and a hearing, to use estate property outside the ordinary course of business. 11 U.S.C. § 363(b)(1). Further, Bankruptcy Code section 363(e) provides that, upon request of an entity that has an interest in property to be used by a trustee, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e).

23.     The Bankruptcy Code does not expressly define "adequate protection" or proscribe a particular form that it must take. *See In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 696–97 (Bankr. S.D. Tex. 2009) (noting that the Bankruptcy Code "contains no specific, definitive definition of

adequate protection") (citing *In re First S. Sav. Ass'n*, 820 F.2d 700, 710 (5th Cir. 1987)).

Bankruptcy Code section 361, however, provides a non-exhaustive list of potential forms of

adequate protection that a trustee or debtor-in-procession can provide, including "cash payment or

periodic cash payments, [] additional or replacement liens, or [] such other relief as will result in

the creditor's realization of the indubitable equivalent of the creditor's interest in the property." *In

re Energy Oilfield Servs., LLC*, No. 15-35003-H3-11, 2015 WL 6667458, at *2 (Bankr. S.D. Tex.

Oct. 30, 2015) (citing 11 U.S.C. § 361).

24.     Generally, courts decide what constitutes adequate protection on a case-by-case

basis.  *See, e.g., In re First S. Sav. Ass'n*, 820 F.2d at 710 (noting, with respect to adequate

protection, that "'[i]ts application is left to the vagaries of each case'") (quoting *In re Becker

Indus.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)); *Resolution Tr. Corp. v. Swedeland Dev. Group,

Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of

whether there is adequate protection is made on a case by case basis.") (citing *In re O'Connor*,

808 F.2d 1393, 1397 (10th Cir. 1987)); *In re Mosello,* 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996)

("The determination of adequate protection is a fact-specific inquiry.").  The goal of the adequate

protection requirement is to protect a secured creditor from diminution in the value of its interest

during the bankruptcy process.  *See, e.g., In re 495 Central Park Avenue Corp.,* 136 B.R. 626, 631

(Bankr. S.D.N.Y. 1992); *In re Hubbard Power & Light*, 202 B.R. 680, 685 (Bankr. E.D.N.Y.

1996); *In re Beker*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

25.     In exchange for the Trustee's use of the Secured Lenders' cash collateral, the

Trustee proposes providing the Secured Lenders with adequate protection up to the amount of any

cash collateral used by the Trustee in the form of (a) automatically perfected replacement first

priority liens against all the Debtors' unencumbered assets, (b) automatically perfected

replacement second priority junior liens against all the Debtors' previously encumbered assets, and (c) superpriority administrative claims with priority over all other administrative claims (the "Adequate Protection").

26.     The Trustee submits that the proposed Adequate Protection, as outlined above and set forth in the Interim Order and Final Order, is sufficient to secure the Secured Lenders for the Trustee's limited use of cash collateral because the projected diminution in value, from the Trustee's use of cash collateral is less than the value of the Adequate Protection proposed to the Secured Lenders.  Moreover, the use of cash collateral is itself a form of adequate protection, as it preserves the value of the Debtors' estates.  *See, e.g., In re 495 Cent. Park Ave. Corp.*, 136 B.R. at 631 (noting in the chapter 11 context that in determining whether protection is "adequate," courts consider "whether the value of the debtor's property will increase as a result of the" use of collateral or provision of financing) (citing *Bank of New England v. BWL, Inc.*, 121 B.R. 413, 418 (D. ME. 1990)).  Similarly, in the chapter 7 context, adequate protection is appropriate and should be approved when, as in the present case, the use of cash collateral serves to maximize the overall value of the Debtors' estates. [2]

## II.     The Trustee's use of cash collateral is necessary to preserve the assets of the Debtors' estates.

27.     The Trustee's ability to immediately use the cash collateral requested is critical to preserving and protecting the value of the Debtors' estates, particularly the value of the Vehicle Assets.  Without maintaining the DOL Policy, the Vehicle Assets would be exposed to risks such as theft, vandalism, and natural disasters.  If the Vehicle Assets were to become uninsured, the estates could suffer irreparable harm and diminution in value that would negatively impact the

---

[2] Although the cases cited in this section are chapter 11 cases, the legal principles regarding adequate protection are equally applicable to the present chapter 7 case.

interests of all creditors, especially those who may assert an interest in the cash collateral the Trustee seeks to use.

28.     The Trustee's proposed use of approximately $275,000 is narrowly tailored to preserve the value of the Debtors' estates—specifically the vehicle inventory, which constitutes a substantial portion of the collateral.  Therefore, the limited use of funds to satisfy the Insurance and Consultant Obligations is not only reasonable but also essential to safeguarding the overall value of the collateral for the benefit of all stakeholders.  Granting the Trustee authority to use cash collateral will allow her to faithfully carry out her duties and maximize recoveries for all creditors through an efficient chapter 7 liquidation.  Therefore, the Trustee requests that the Court grant the relief requested herein.

## REQUEST FOR IMMEDIATE RELIEF

29.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to Bankruptcy Code section 363 may not be commenced earlier than 14 days after service of such motion.  Fed. R. Bankr. P. 4001(b).  On the request of the movant, however, a preliminary hearing to use cash collateral may be conducted before such 14-day period expires, but the court may only authorize that amount of cash collateral as is necessary to avoid immediate and irreparable harm pending a final hearing.  Fed. R. Bankr. P. 4001(b).  The Trustee requires the immediate use of the cash collateral as set forth herein to prevent harm to the Debtors' estates and their creditors.

## EMERGENCY CONSIDERATION

30.     In accordance with the Local Rules, the Trustee requests emergency consideration of the Motion.  As discussed in detail above, immediate relief is critical to avoid irreparable harm to the Debtors' estates and to preserve and maximize the value of the assets for the benefit of all

creditors. Emergency consideration is necessary, and the Trustee requests that the Motion be heard on an expedited basis.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

31.     The Trustee seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property (other than cash collateral) under Bankruptcy Rule 6004(h). The relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors' estates for the reasons set forth herein. Accordingly, the Trustee submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

### NO PRIOR REQUEST

32.     No previous request for the relief sought herein has been made to this or any other court.

### RESERVATION OF RIGHTS

33.     The Trustee reserves all rights to request further authority from this Court to use cash collateral for any purpose under Bankruptcy Code sections 704(a) and 721.

### NOTICE

34.     Notice of this Motion has been provided to: (a) the U.S. Trustee, (b) the Secured Lenders, and (c) those parties who have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter the Interim Order,

substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein, set a

hearing to consider entry of the Final Order, substantially in the form attached hereto as **Exhibit**

**B**, and such other and further relief as may be just and proper.

Dated: October 23, 2025
      Dallas, Texas


            **MCDERMOTT WILL & SCHULTE LLP**

            */s/ Charles R. Gibbs*
            Charles R. Gibbs (TX Bar No. 7846300)
            Marcus A. Helt (TX Bar No. 24052187)
            Grayson Williams (TX Bar No. 24124561)
            Michael Wombacher (TX Bar No. 24120434)
            2801 North Harwood Street, Suite 2600
            Dallas, Texas 75201
            Telephone: (214) 295-8000
            E-mail: crgibbs@mwe.com
                   mhelt@mwe.com
                   gwilliams@mwe.com
                   mwombacher@mwe.com

            -and-

            Darren Azman (admitted *pro hac vice*)
            One Vanderbilt Avenue
            New York, New York 10017-3852
            Telephone: (212) 547-5400
            E-mail: dazman@mwe.com

            *Proposed Counsel to the Chapter 7 Trustee*

**CERTIFICATE OF CONFERENCE**

I, Charles R. Gibbs, proposed counsel for the Trustee, hereby certify that on October 22, 2025, I conferred with counsel for Wilmington Trust, N.A.; JPMorgan Chase Bank, N.A.; Fifth Third Bank, N.A.; TBK Bank, SSB; ACV Capital LLC; Manheim Remarketing, Inc.; and Origin Bank (collectively, the "Opposing Parties") in an effort to resolve the issues raised in the Motion. The Opposing Parties conceptually do not oppose the proposed use of Cash Collateral, and we are endeavoring to continue working toward a completely consensual resolution. To the extent additional concerns need to be addressed and are agreed to by all Opposing Parties, I will ensure a revised proposed order is uploaded to the court.

In accordance with Local Rule 9014-1(b), I hereby certify that I have made a reasonable effort to confer with the Opposing Parties before filing the Motion and that the parties are unable to resolve the issues raised therein.

Dated: October 23, 2025
      Dallas, Texas

                                    */s/ Charles R. Gibbs*
                                      Charles R. Gibbs


**CERTIFICATE OF SERVICE**

I do hereby certify that on October 23, 2025, a true and correct copy of the foregoing document was served via CM/ECF for the United States Bankruptcy Court for the Northern District of Texas on all parties authorized to receive electronic notice in this case.

Dated: October 23, 2025
      Dallas, Texas

                                      */s/ Charles R. Gibbs*
                                      Charles R. Gibbs