IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In Re: | **Case No. 25-33487-mvl-7**<br>Jointly Administered |
| TRICOLOR HOLDINGS, LLC, et al.,<br><br>Debtors. | Dallas, Texas<br>November 17, 2025<br>1:30 p.m. Docket<br><br>MOTIONS |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MICHELLE V. LARSON,
UNITED STATES BANKRUPTCY JUDGE.

APPEARANCES:

| | |
|---|---|
| For Anne Elizabeth Burns, Trustee: | Charles R. Gibbs<br>MCDERMOTT WILL & SCHULTE, LLP<br>2801 North Harwood Street, Suite 2600<br>Dallas, TX 75201<br>(214) 295-8063 |
| For Anne Elizabeth Burns, Trustee: | Charles Brackett Hendricks<br>CAVAZOS HENDRICKS POIROT, P.C.<br>900 Jackson Street, Suite 570<br>Dallas, TX 75202<br>(214) 573-7302 |
| For Anne Elizabeth Burns, Trustee: | Grayson Williams<br>MCDERMOTT WILL & SCHULTE, LLP<br>2801 North Harwood Street, Suite 2600<br>Dallas, TX 75201<br>(214) 210-2814 |
| For Origin Bank: | John E. Mitchell<br>Yelena E. Archiyan<br>Eric R. Hail<br>KATTEN MUCHIN ROSENMAN, LLP<br>2121 North Pearl Street, Suite 1100<br>Dallas, TX 75201<br>(214) 765-3600 |

APPEARANCES, cont'd.:

For Vervent, Inc.: Scott D. Lawrence
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, TX 75204
(214) 420-4449

For Vervent, Inc.: Sam Anderson
BERSTEIN, SHUR, SAWYER & NELSON, P.A.
100 Middle Street
P. O. Box 9729
Portland, ME 04101-5029
(207) 228-7178

For CICF III - TX1B01, LLC: Beau Butler
JACKSON WALKER, LLP
100 Congress Avenue, Suite 100
Austin, TX 78701
(512) 236-2256

For TBK Bank, SSB: Bradley Roland Foxman
VINSON & ELKINS, LLP
2001 Ross Avenue, Suite 3700
Dallas, TX 75201-2975
(214) 220-7784

For Landlord 603 San Fernando Road, LLC: Ivan M. Gold
ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS, LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111-4074
(415) 273-7431

For Wilmington Trust, N.A.: Gerard S. Catalanello
ALSTON & BIRD, LLP
90 Park Avenue
New York, NY 10016
(212) 210-9509

For Leasing Corporation of America: Michelle E. Shriro
SINGER & LEVICK, P.C.
16200 Addison Road, Suite 140
Addison, TX 75001
(972) 380-5533

APPEARANCES, cont'd.:

| | |
|---|---|
| For Bullish Resources, Inc. and ANC Ventures, Ltd.: | Michael Scott Held<br>JACKSON WALKER, LLP<br>2323 Ross Avenue, Suite 600<br>Dallas, TX 75201<br>(214) 953-5859 |
| For Marina LA Realty, LLC and Marina Realty Enterprises, LLC: | Megan F. Clontz<br>FERGUSON BRASWELL FRASER KUBASTA, P.C.<br>2500 Dallas Parkway, Suite 600<br>Plano, TX 75093<br>(972) 378-9111 |
| Recorded by: | Sara Ferrufino<br>UNITED STATES BANKRUPTCY COURT<br>1100 Commerce Street<br>Dallas, TX 75242<br>(214) 753-2088 |
| Transcribed by: | Kathy Rehling<br>311 Paradise Cove<br>Shady Shores, TX 76208<br>(972) 786-3063 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

DALLAS, TEXAS - NOVEMBER 17, 2025 - 1:33 P.M.

THE COURT: Please be seated.

Good afternoon, everyone. We are here on our 1:30 docket. We have one matter on today, and that's Case No. 25-33487, Tricolor Holdings, LLC. I'll take appearances for the record, and I'll start with those folks in the courtroom.

Mr. Gibbs?

MR. GIBBS: Good afternoon, Your Honor. Chuck Gibbs with McDermott, Will & Schulte, along with Grayson Williams, proposed counsel for the Chapter 7 Trustee. With me today in the courtroom is Ms. Burns, the Trustee, as well as Mr. Hendricks.

THE COURT: All right. Thank you very much.

Mr. Mitchell?

MR. MITCHELL: Good afternoon, Your Honor. John Mitchell and Yelena Archiyan with Katten Muchin for Origin Bank. Also online is my partner, Mr. Eric Hail. And then we also have a representative if needed today from Origin Bank, Mr. Michael Wawczak, regional executive vice president of Origin Bank.

THE COURT: Okay. Thank you.

MR. LAWRENCE: Good afternoon, Your Honor. Scott Lawrence at Wick Phillips appearing on behalf of Vervent.

THE COURT: All right. Thank you very much.

Okay. Give me just one moment.

All right. Now I'll go ahead and take WebEx appearances. I'll start with Mr. Butler. Would you like to make an appearance?

MR. BUTLER: Yes, Your Honor. Good afternoon. Beau Butler with Jackson Walker on behalf of what we refer to as Cabot Properties, but for the record, CICF III - TX1B01, LLC.

THE COURT: In my next life, I'm going to work for the Secretary of State and I'm going to limit names of entities to words. That's it. That's what I'm going to do.

All right. I'll now take -- Mr. Foxman?

MR. FOXMAN: Good afternoon, Your Honor. Brad Foxman on behalf of TBK Bank as Agent.

THE COURT: All right. Thank you.

All right. And I've got one for Mr. Hail.

Mr. Gold, would you like to make an appearance?

MR. GOLD: Good afternoon. Always a pleasure, Your Honor. Ivan Gold of Allen Matkins for Landlord 603 San Fernando Road, LLC, one of the Debtors' California landlords. And I unqualifiedly support your Secretary of State screening proposal.

THE COURT: Excellent. Thank you very much. Appreciate that.

All right. Mr. Catalanello?

MR. CATALANELLO: Good afternoon, Your Honor. Gerard Catalanello from Alston & Bird on behalf of Wilmington Trust

as Indenture Trustee and related capacities.

THE COURT: All right. Thank you very much.

Ms. Shriro?

MS. SHRIRO: Yes, Your Honor. Michelle Shriro for Leasing Company of America.

THE COURT: All right. Thank you.

All right. Mr. Held, would you like to make an appearance?

MR. HELD: Yes, thank you. Good afternoon, Your Honor. Michael Held of Jackson Walker on behalf of Bullish Resources, Inc. and ANC Ventures, Ltd., two related landlords for two of the locations of car lots for the Debtor.

THE COURT: Awesome. Thank you very much. Appreciate that.

All right. That's probably as many thumbnails as I can see. Is there anyone else who wishes to make an appearance? Ms. Clontz, maybe? One more came up.

MS. CLONTZ: Good morning, Your Honor. Or good afternoon, Your Honor. Megan Clontz on behalf of Marina LA Realty, LLC and Marina Realty Enterprises, LLC.

THE COURT: All right. Thank you very much.

Anyone else? (No response.) All right.

MR. ANDERSON: Sorry, Your Honor. Sam Anderson on behalf of Vervent.

THE COURT: Okay. Thank you.

Anyone else?

Okay. Hearing no further takers. All right, Mr. Gibbs. I see a lot of things have probably been addressed by prior stipulations. You probably received a note from the Clerk's Office. When the stipulations -- and this kind of goes for both the Movants under various motions as well as the Trustee -- when the stipulations are being uploaded, if you could take some time to relate them to the various motions which they resolve, it's a lot easier for the Clerk's Office. Because what we've got now is stipulation and order uploaded, and then the order just resolves that stipulation. And so what it does is it leaves a lot of things on the docket.

And normally we have our superwoman, Ms. Harden, who cuts through all that, but she was out last week on her last vacation ever, and so probably left us with a few more clean-up measures. But if you could think about that when you're doing these resolved stipulations, to take care of and relate it to a motion to compel or a motion to lift stay or something like that, it helps us out a lot.

MR. GIBBS: Your Honor, we will do so. We did get the instruction. I'm embarrassed to say that we didn't follow it without being prompted.

THE COURT: That's okay.

MR. GIBBS: Parties at my firm had been appropriately prompted. It's my hope that we'll have a lot of stipulations

that we'll be sending your way, all of which will be in compliance with your request in the future.

THE COURT: Excellent.

MR. GIBBS: Thank you. And I was told, much to my pleasure, that I no longer need to say proposed counsel for the Chapter 7 Trustee, that my order was entered, and I'm happy about that.

THE COURT: Yes.

MR. GIBBS: Your Honor, we have several matters that are on the docket today. I'm happy to report that I think peace has broken out completely with respect to the matters that are set before you. We have some prove-up and brief testimony that we need to offer.

And as a housekeeping matter, one of -- a witness that the Chapter 7 Trustee had planned to call in support of the Origin Bank motion, I don't see his face. I earlier briefly saw his name on the screen. I would ask -- his name is Sheldon Stone. He's an officer of Capstone, the financial advisor for -- there he is. Okay. I wanted to make sure that he was visible to the Court, because we intend to proffer his testimony, and I assumed you wanted to see him, verify that what he'd heard he agrees with. If not, I was going to need a couple-minute break to change the names and then I'll proffer the testimony of Ms. Burns. But I see that Mr. Stone is available.

So, with that, I will kind of tell the Court where we are

and walk through the docket, at your -- in whichever order you want to take them up.

THE COURT: I am ready when you are. I've got the list, so I'll check them off.

MR. GIBBS: Thank you. Your Honor, the first on the docket that we had hoped to address is a further extension of what I'll call the Vervent Order. It's the stipulation that Your Honor entered or approved by order in mid-September, September 19th, which was, I think, Docket 79. It was amended October 15th at Docket 196. And a second amended order approving and further extending the terms of the stipulation was entered at Docket 287 on October 29, Your Honor. And that order set this for further hearing today, because, pursuant to that order, their authority under the stipulation expires at midnight tomorrow night.

I'm pleased to report that all parties are in agreement that there is a need and it's appropriate for yet a further extension of that stipulation by and through December 5th. And it would be our request that -- we drew no objections. We fully socialized this with all the parties. And it would be our request that we upload an order and Your Honor consider and hopefully enter that so that their continued authority under the exact same terms continues through December 5.

THE COURT: And that's our current one that we already have in place, different from the Origin one, right?

MR. GIBBS: Yes.

THE COURT: Okay.

MR. GIBBS: That's correct.

THE COURT: Excellent. All right.

Is there anyone who wishes to be heard with respect to the extension of the current Vervent stipulation through December 5th?

All right. Hearing no objection, the Court will extend that Vervent stipulation through the 5th. And at the right time, we can figure out if we need to set another hearing date in advance of that expiration.

MR. GIBBS: All right. Thank you, Judge.

The second matter I would like to bring to the Court's attention and for consideration is the final hearing today on cash collateral. Your Honor entered an interim order on this, on our request for use of cash collateral.

THE COURT: Uh-huh.

MR. GIBBS: And that was entered -- I think it's at Docket 274. It was entered on October 27th. Pursuant to that interim order, Your Honor, we asked for permission to spend about $275,000 of the, at the time, I'm going to say $2-1/2 million that the Trustee was holding. That sum has slightly increased since that date.

We worked out several issues that were raised by parties in interest with respect to that request and some limited

objections that were resolved. The order that we finally put before the Court for approval was different than the one we had uploaded when the motion was filed, to reflect and address the concerns that the various parties had, and the order was entered.

The Trustee, in fact, then spent the money she was authorized to spend. About $245,000 of those dollars were spent to pay two months of insurance premiums due on the dealer open lot policy that insured the vehicles that were on the various retail locations and at the recon facility that the Debtors operated, and about $30,000 was authorized to be used to pay accrued pay to two former employees of Tricolor that were critical to the Trustee being able to discharge her duties.

That second of the two monthly premiums carried insurance pursuant to the dealer open lot policy through midnight last night. We notified parties that it was our intention not to come back and ask for further authority to use any additional cash collateral. It's our understanding that there still remains, however, some vehicles on the Debtors' lots, but they are being rapidly moved to other locations that aren't property of the estate. They're being moved by Vervent and its subcontractors pursuant to a schedule that's been fully vetted and socialized to people. And it's our expectation and hope that the remainder of the vehicles will be fully off all

Debtor premises by the end of this week, possibly a few slipping over until the early part of next week.

But, with that, we don't believe there will be any further risk of exposure, and the cost-benefit analysis was such that we didn't come back and ask for any further additional use of cash collateral, after putting the parties on notice that that was our intention, and nobody disagreed with that.

What we're proposing, Your Honor, is to upload for consideration and entry a final order approving the use of cash collateral. There were no objections that were filed to the interim, other than I just mentioned that were resolved in the interim order. And the proposed final order has -- it's exactly the same as the interim order that Your Honor approved and it includes all of the proposed comments and insertions and revisions that the various parties in interest negotiated with us.

So with respect to the final hearing on request for use of cash collateral, we would ask Your Honor to consider and ultimately enter the order that we upload.

THE COURT: All right. Is there anyone who wishes to be heard with respect to cash collateral?

Okay. Hearing no takers, let me take a look at your redline, Mr. Gibbs. I'll be honest, I did not have an opportunity to review it before coming out. I was on the bench all morning. So just give me one moment.

MR. GIBBS: It's at Docket 396, and I believe --

THE COURT: Right. And I was handed a --

MR. GIBBS: -- 396-1.

THE COURT: -- notebook of it, so I'm just going to take a look at it.

MR. GIBBS: Okay.

(Pause.)

THE COURT: All right. Like you said, there's really no substantive changes to it other than to take the interim and bring it to final.

MR. GIBBS: Correct.

THE COURT: So, given that there are no objections, the Court will approve cash collateral on a final basis.

MR. GIBBS: All right. Thank you, Judge.

The next that I wanted to address is the -- let me get the title correct. Just one second. This is a Motion Authorizing Entry into Amended and Restated Successor Servicing Agreement. I'll refer to it as the Origin Bank Motion. It's at Docket 278, filed on October 28. And let me just take a minute and set the stage, if I will, with the Court's permission.

TAA, which was one of the two primary Debtors, had been, as the Court will remember, servicing over a hundred thousand loans that had been issued by Tricolor to borrowers who bought cars from Tricolor pre-bankruptcy.

Vervent had been named as the back-up successor servicer

under the servicing agreements that Tricolor had with the vast majority of the parties who either claimed an ownership interest in the retail installment contracts or who claimed a perfected security interest in those retail installment contracts.

Principally, those contracts that TAA had originated and that they were servicing were between TAA or a nondebtor affiliate of TAA, and that were pledged either to the warehouse lenders -- principally, JPMorgan or Fifth Third Bank -- or were sold to one or more securitization trusts, for whom Wilmington Bank acts as the Indenture Trustee.

There were certain other retail installment contracts that were pledged by the Debtor to Origin Bank. Origin Bank had a servicing agreement that we understand to not be in writing with TAA prepetition, and there was no named successor servicer under that agreement between Origin Bank. Origin Bank claims that it has a perfected lien on a little over 4,000 contracts, and the evidence will make this more clear.

It was imperative, we believe, for the estate to make sure that those contracts pledged to Origin continued to be serviced to minimize risk to the estate. Origin likewise felt it imperative to do so in the most cost-effective manner, and their logical conclusion was to enter into an agreement with Vervent, who performed those servicing services.

As I understand it, the economic terms that are laid out

in the motion are roughly identical to the economic terms between Vervent and the various other parties for whom they stepped in as backup servicer.

You'll hear proffered testimony from a representative of Origin Bank authenticating the agreement that was reached between Origin and Vervent, and you'll hear proffered testimony from Mr. Stone from Capstone as to why the approval of this agreement and the entry into that agreement between Origin, Vervent, and approved by the Trustee is a proper exercise of the Trustee's business judgment.

Part and parcel of the proposed order will eliminate any claim that might be brought by Origin for damages associated with failure of TAA to have acted appropriately as servicer, both pre- and postpetition. They still have, obviously unaffected, their rights against the Debtors pursuant to the contracts and the loan agreements, et cetera.

THE COURT: Sure.

MR. GIBBS: So this -- making sure that the cars, I'm sorry, the contracts are appropriately serviced and that the estate is not subject to continuing exposure related to their inability to service those retail installment contracts is the reason for this joint motion.

There were several comments made to the proposed order. All of those comments have been agreed to and are in the proposed order.

So, with that, I'll, with the Court's permission, pass the podium to Mr. Mitchell and he can proffer the testimony of the Origin representative. And then I'm going to ask Mr. Williams to proffer Mr. Stone's testimony, and then I'll be back and ask you to approve it.

THE COURT: All right. Thank you very much, Mr. Gibbs.

MR. GIBBS: Thank you.

THE COURT: Mr. Mitchell?

MR. MITCHELL: Thank you, Your Honor. Again, John Mitchell for Origin Bank.

I do have a little -- there may be a little misunderstanding or I do have a little disagreement with what Mr. Gibbs just said.

THE COURT: Okay.

MR. MITCHELL: And so perhaps I can explain. I think we get to the same place, but if we need to take a short recess at some point, when we get through with the proffer and everything else.

THE COURT: Okay.

MR. MITCHELL: So it's -- with respect to any prepetition agreement, we don't believe -- Origin Bank doesn't believe there ever was any servicing agreement with TAA. TAA -- we had a revolving line of credit, Your Honor, that was secured by, as Mr. Gibbs stated, we believe approximately

4,200 retail installment contracts.

THE COURT: Uh-huh.

MR. MITCHELL: That's all being determined, as we know, right now, with everything that's going on.

THE COURT: Sure.

MR. MITCHELL: But this was Origin's belief. But TAA serviced those loans. We know of no formal or informal agreement for the servicing of those. There was a collateral agency agreement that included TAA and Wilmington Trust, in which TAA was referenced as the servicer, but there wasn't a servicing agreement. And he is correct that there -- Vervent was not the backup servicer.

So, everything else that Mr. Gibbs said, that is correct, and we felt it imperative in order to get Vervent up and running servicing these contracts as well.

If I can add, as the testimony will show, when the case hit -- and I know McDermott and the Trustee and everybody was drinking out of a firehose -- we were working with Vervent to get up and running. We actually signed an agreement with Vervent. The Trustee knew about this. I don't think there's any allegation we did anything wrong. We're not trying to take possession of estate assets.

But once they had a chance, I think, to take a breath, they realized, we need to be part of this agreement, since it may be your collateral but arguably estate assets. And so we

did the amended agreement that is before the Court today to get permission.

I also -- there may be a disconnect on what we're waiving today, Your Honor. The Trustee asked us to agree to waive any contract rejection damages claim against the estates that might result from rejection of any agreement that might be there. So we don't believe there is a servicing agreement, prepetition servicing agreement. Nevertheless, out of an abundance of caution, we have no qualm about rejecting any agreement that might be there, as well as we certainly are fine waiving an administrative claim against the estate for any servicing that the Trustee or the estate should have done postpetition until we get Vervent up and running, which we are now.

If that's problematic, I may need to speak with Mr. Gibbs about that. But we certainly reserve the right -- and this is Paragraph 4 of the proposed order, Your Honor.

THE COURT: Yes. I'm there.

MR. MITCHELL: We reserve the right, though, if there was any damage caused to Origin based off of any Tricolor entities' servicing of the retail installment contracts, then, by all means, those claims are preserved, and any other claim we may have against the estate. But what we're waiving is essentially the statutory breach, the codified breach that occurs when a contract is rejected. We're not going to file a

contract rejection damages claim against the estate, nor are we going to seek an administrative claim against the estate for any servicing that should have occurred before Vervent took over.

And if that's problematic, I may need -- we can do it before or after the proffer; I'm happy to put the proffer forward -- if we need a break to work this out, --

THE COURT: Okay. Thank you, Mr. Mitchell.

MR. MITCHELL: -- if that makes sense.

THE COURT: Mr. Gibbs?

MR. GIBBS: I'm in violent agreement with everything Mr. Mitchell just said. I don't have any qualms with his clarification to the extent I wasn't crystal clear. I was just imprecise. The agreement is properly reflected in the order, and as he described it, we're fine with.

THE COURT: Okay. Thank you very much, Mr. Gibbs.

MR. GIBBS: Uh-huh.

THE COURT: All right. Mr. Mitchell, so you're asking to proffer a witness? And who's that?

MR. MITCHELL: That is Mr. Michael Wawczak.

THE COURT: Okay.

MR. MITCHELL: His last name is spelled W-A-W-C-Z-A-K, and the C is silent, Your Honor.

THE COURT: All right.

MR. MITCHELL: And he is on the video today.

THE COURT: Okay. Thank you.

Is there any objection to the proffer of Mr. Wawczak's testimony?

Okay. Hearing no objections, please proceed, Mr. Mitchell.

MR. MITCHELL: Thank you, Your Honor.

MICHAEL WAWCZAK, ORIGIN BANK'S WITNESS, PROFFER

MR. MITCHELL: Your Honor, I proffer the testimony of Mr. Michael Charlie Wawczak. He would testify, if called to the stand today, that he is the regional executive vice president of Origin Bank.

As a preliminary matter, he would testify that he is by himself in the conference room and has no other video or telecommunications with him or notes other than filings before the Court related to this motion other than the video that he is on right now appearing before Your Honor.

He would further testify that his duties and responsibilities include working with companies on behalf of Origin Bank that have cash flow issues, are in financial distress, or in bankruptcy.

With respect to Origin's relationship with the Debtors, Mr. Wawczak would testify that, prepetition, Origin Bank and Tricolor Holdings entered into a revolving line of credit note and corresponding loan and security agreement, each dated as of February 22, 2018, among other related loan and security

agreements.

He would further testify that the revolving line of credit and the loan and security agreement permitted Tricolor Holdings to obtain advances from Origin Bank under a borrowing base tied to certain eligible accounts -- specifically, customer installment contracts that Tricolor Holdings periodically pledged or delivered to Origin.

With respect to the custodial agreement with Wilmington Trust, Mr. Wawczak would testify that Tricolor Holdings, Origin, and Wilmington Trust entered into a custodial agreement dated as of November 18, 2021 pursuant to which Wilmington assumed custodial obligations for Origin's financing arrangements with Tricolor Holdings.

He would further testify that Wilmington took custody and maintained an inventory of the retail installment contracts pledged to Origin under the borrowing base structure.

As of June 2025, Wilmington had reported to Origin that it was serving as custodian for 4,271 Tricolor Holdings customer retail installment contracts, which in turn Origin understood to be its collateral.

Furthermore, he would testify that Origin continues to have certain questions regarding the state of its collateral.

Mr. Wawczak would further testify that Origin is not a party, to his knowledge, of any prepetition servicing agreement with any of the Debtors, nor was Vervent designated

as a backup servicer for Origin's collateral.

Therefore, when the Debtors filed Chapter 7 and the Securitization Lenders all turned to their backup servicer, Origin -- excuse me, Vervent -- Origin determined that it was in the best interest to have a servicing agreement in place with Vervent as well for its pool of collateral.

Origin kept the Trustee advised of its progress in getting a servicing agreement in place, but in the interests of time Origin and Vervent entered into a servicing agreement without the Trustee on September 30, 2025.

Subsequent thereto, the Trustee advised Origin and Vervent that she needed to be a party to the servicing agreement. Accordingly, the Trustee, Origin, and Vervent entered into that certain Amended and Restated Successor Servicing Agreement dated October 21, 2025.

Mr. Wawczak would further testify that he reviewed the witness and exhibit list with the attached exhibit. If called to testify, I would have referred him to Exhibit 1, and Mr. Wawczak would have testified that Exhibit 1 is a true and correct copy of the Amended and Restated Successor Servicing Agreement dated October 21, 2025.

Your Honor, following his swearing in and any cross-examination, at some point, though, I will want to move Exhibit 1 into evidence.

THE COURT: Okay.

MR. MITCHELL: And that concludes the proffer.

THE COURT: Thank you very much, Mr. Mitchell.

All right. Mr. Wawczak, if you could raise your right hand for me. Thank you very much, sir.

(The witness is sworn.)

THE COURT: All right. Thank you very much. Were you able to hear the proffer that was given by your counsel?

THE WITNESS: Yes, that's correct.

THE COURT: Okay. And do you have anything to change or amend to it?

THE WITNESS: No.

THE COURT: All right. And if called to testify as direct testimony, would that proffer accurately reflect your testimony?

THE WITNESS: Yes, it would.

THE COURT: All right. Thank you very much.

So now I'll -- you can move in your exhibit and then we'll see if there's any cross-examination for Mr. Wawczak.

MR. MITCHELL: Thank you, Your Honor. Origin moves Exhibit 1 into evidence.

THE COURT: All right. And Exhibit 1 found at 278, or did you file a witness and exhibit list as well?

MR. MITCHELL: There was a witness and exhibit list filed by the Trustee.

THE COURT: Okay. Just give me one moment.

(Pause.)

MR. MITCHELL: I think I've got it right here, Your Honor. It was --

THE COURT: Is it 386, Mr. Williams?

MR. WILLIAMS: Yes, Your Honor.

THE COURT: All right. Thank you very much.

All right. Any objection to the admission of Exhibit 1 at 386?

All right. Hearing no objections, that exhibit is hereby admitted.

(Origin Bank's Exhibit 1 is received into evidence.)

THE COURT: All right. Is there anyone who wishes to cross-examine Mr. Wawczak?

All right. Hearing no takers, thank you very much for your testimony, sir.

THE WITNESS: Thank you.

THE COURT: You're welcome.

(The witness is excused.)

THE COURT: Mr. Williams?

MR. WILLIAMS: Good afternoon, Your Honor. As Mr. Gibbs indicated, I just want to do a quick proffer for Mr. Stone.

THE COURT: All right. Is there any objection to the proffer of Mr. Stone?

Okay. Hearing none, please proceed.

SHELDON STONE, TRUSTEE'S WITNESS, PROFFER

MR. WILLIAMS: Your Honor, if called to testify in support of the Joint Motion of Origin Bank, Vervent, Inc., and the Chapter 7 Trustee for an Order Authorizing Entry into the Amended and Restated Successor Servicing Agreement, Mr. Stone would testify as follows:

My name is Sheldon Stone. I am a managing director of financial advisory services at CRS Capstone Partners, LLC, the Trustee's financial advisor.

Capstone was engaged by the Trustee on September 19, 2025, and has been advising the Trustee since their engagement. I have served as the financial advisor in a number of bankruptcy cases, and am familiar with a trustee's duties and obligations under the Bankruptcy Code.

In my role as financial advisor, I have reviewed the Debtors' financial records, assessed the estate's assets, and worked closely with the Trustee to identify and preserve value for creditors.

I have reviewed the Amended and Restated Successor Servicing Agreement between Origin Bank, Vervent, and the Trustee. It is my professional opinion that entering into this agreement is in the best interest of the Debtors' estates and their creditors, and thus a sound exercise of the Trustee's business judgment.

The Amended and Restated Successor Servicing Agreement

allows Vervent to take over the servicing of loans that were previously serviced by the Debtor, Tricolor Auto Acceptance, LLC, which ceased operations and performance of loan servicing on the notes that serve as Origin's collateral upon the Debtors' filing for bankruptcy.

Vervent has already assumed the role of successor servicer under other servicing agreements pursuant to the Court's orders approving the stipulation between the Trustee and Vervent.

Further, the stipulation contemplated additional servicing agreements involving the Debtors and Vervent.

Because Vervent has already stepped in as successor servicer on the retail installment contracts pursuant to the stipulation, it is both logical and most efficient for Vervent to service Origin's alleged collateral.

Finally, the Debtors' estates will not incur any costs or expenses as a result of entry into the proposed servicing agreement. Origin will pay to Vervent an initial setup fee as well as monthly servicing fees and expenses.

The proposed servicing agreement will ensure the continued servicing, management, and collection of the receivables and other collateral in which Origin may hold an interest.

If called to testify, I would testify truthfully to these matters, and I would be available for cross-examination.

Your Honor, that concludes the proffer of Mr. Stone's

testimony, and he is available via WebEx.

THE COURT: All right. Thank you very much.

Mr. Stone, if you could raise your right hand for me. Thank you.

(The witness is sworn.)

THE COURT: All right. Thank you very much.

Were you able to hear the proffer that was given by the Trustee's counsel?

THE WITNESS: Yes, Your Honor.

THE COURT: All right. And do you have anything to change or add to it?

THE WITNESS: No, Your Honor.

THE COURT: All right. And if called to testify on direct, would that have been the same accurate testimony as you would otherwise have given?

THE WITNESS: Yes, Your Honor.

THE COURT: All right. Thank you very much.

Is there anyone who wishes to cross-examine Mr. Stone?

All right. Hearing no takers, thank you very much for your testimony, sir.

(The witness is excused.)

THE COURT: Thank you, Mr. Williams.

THE WITNESS: Thank you, Your Honor.

MR. WILLIAMS: Yes, Your Honor. I'm going to pass the podium back to Mr. Gibbs for some final remarks on this

issue.

THE COURT: All right.

MR. GIBBS: Your Honor, I believe right prior to the hearing there was a notice of revised proposed order that was uploaded at Docket 397 that included a redline of the proposed order that's at 397-2 that reflects input from various parties in interest.

With respect to everyone's reservation of rights of exactly what interest various claimants to loans written by Tricolor have, I think we've resolved everybody's informal concerns and this accurately reflects the understanding of the parties.

You've heard the proffer. I think the Trustee's business judgment is adequately supported, and the efficacy and appropriateness of this proposed relief is also appropriate, and we would ask Your Honor to enter this order.

THE COURT: All right. Thank you very much, Mr. Gibbs.

Is there anyone who wishes to be heard with respect to the form of the order that was filed at Docket 397?

Okay. Hearing no takers, again, I didn't have an opportunity before the hearing, but I just gave a quick read to the form of the order, Mr. Gibbs. The only thing that I see is -- or maybe my eyes are failing me -- I think that in Paragraph 7 I think "foregoing" needs an E in it. But don't

hold me on spelling on that today. It's been a long day.

MR. GIBBS: We'll make the change.

THE COURT: All right. Again, I think I've already asked if anyone wishes to be heard with respect to the Origin-Vervent stipulation.

Okay. Hearing no takers, the Court will approve the same based upon the agreements and the lack of objection.

Do we have an outside date for this one?

MR. MITCHELL: I don't believe so, Your Honor. Let me take a look. My apologies. I don't believe there is. I don't think so.

THE COURT: Unless it's buried in the agreement. I did not see it in the order itself, but it could be in the agreement that I didn't necessarily see. Let's see. The term just says until the receivables are paid in full, that I can see.

MR. MITCHELL: And Your Honor, if my partner Eric Hail is on, he has a little better command of the document than I do.

THE COURT: Okay.

MR. MITCHELL: I don't believe there is an outside date, but --

THE COURT: Mr. Hail?

MR. HAIL: Your Honor, there is not. You read it correctly.

THE COURT: Okay.

MR. HAIL: There is a minimum period of time that Origin has to be a party to this agreement, --

THE COURT: Okay.

MR. HAIL: -- which is, I believe, six months. And beyond that, they will be the servicer until the collateral notes are paid off.

THE COURT: Okay. All right.

Well, with that, the Court will grant the joint motion filed by Origin, Vervent, and the Chapter 7 Trustee.

MR. GIBBS: Your Honor, what is left for consideration today are -- there's, number one, a status conference that Your Honor asked for for today --

THE COURT: Sure.

MR. GIBBS: -- with respect to, I believe, four motions to compel filed by four separate landlords, all of whom have appeared virtually today.

And in addition, there are three, I believe, final hearings that were set for hearing today at the conclusion of the docket, with appropriate admonishments from the Court that they may not be heard depending on how the day goes.

THE COURT: If they all want to go final, an evidentiary, probably not.

MR. GIBBS: Exactly. Let me, if I could, take up those remaining motions, because I believe that there's really

certainly nothing to fight about --

THE COURT: Okay.

MR. GIBBS: -- and I think it's really just announcements to the Court.

Let me take them in order. At Docket No. 229 -- and let me follow the bouncing ball. Give me one second, see if I can make sure I know which --

THE COURT: I think 226 was the first one.

MR. GIBBS: Yes.

THE COURT: But if you want to start with 229, that's fine, too.

MR. GIBBS: No, no, I skipped over. Thank you.

THE COURT: Okay.

MR. GIBBS: 226 is the motion filed by Mr. Gold on behalf of his client, 603 San Fernando Road, LLC. We have -- the parties have reached an agreement, and it's reflected in a stipulation that is being finalized and we expect to upload later today.

THE COURT: Okay.

MR. GIBBS: It resolves their motion to compel and it also will govern any -- next week's motion that we have filed for authority to reject leases.

THE COURT: Okay.

MR. GIBBS: So the issues with this landlord are resolved by that stipulation.

THE COURT: All right.

MR. GOLD: And Your Honor, Ivan Gold for 603 San Fernando Road.

I confirm Mr. Gibbs' representations. We have reached agreement on the form text concept of the stipulation, and it will be uploaded shortly.

It does provide for the withdrawal without prejudice of our motion and withdrawal without prejudice as to the retroactive rejection sought at this location and provides other, similar with the other stipulation, a more comprehensive solution as to some of the lease rejection and personal property abandonment issues that were teed up through the various motions.

THE COURT: Right. I did pay particular attention to that in the stipulations that I've signed. Thank you very much, Mr. Gold.

MR. GOLD: Thank you. And I again thank the Debtor -- the Trustee team for working with us, Your Honor. Thank you.

THE COURT: Excellent.

Mr. Catalanello, did you wish to be heard with respect to the stipulation? Or the motion to compel?

MR. CATALANELLO: Briefly, Your Honor. Yes, briefly, Your Honor. Gerard Catalanello from Alston & Bird on behalf of Wilmington Trust.

Just to confirm, Your Honor, that Wilmington Trust's concerns, which were raised in a very limited objection, and reservation of rights which we filed at Docket No. 338, have in fact been resolved. And we thank the parties for working with us.

THE COURT: Thank you very much, Mr. Catalanello.

MR. CATALANELLO: Thank you.

THE COURT: All right.

MR. GIBBS: Your Honor, the second motion to compel that was set for status conference today is found at Docket 229.

THE COURT: Uh-huh.

MR. GIBBS: I believe that is the motion to compel filed by Creditor ANC Ventures and Creditor Bullish Resources. I believe Mr. Held represents those landlords.

THE COURT: Yes.

MR. GIBBS: And that was resolved by stipulation that I think has now been approved by the Court and is found at Docket 393.

THE COURT: Okay. Mr. Held, do you wish to be heard?

MR. HELD: Yes, very briefly, Your Honor. And, again, Michael Held on behalf of Bullish Resources, Inc. and ANC Ventures, Ltd.

With regard to ANC, that was a Laredo property which we were one of the first stipulations I think that were entered.

And I believe our client has possession of those premises back. And that's -- again, we will -- can and will likely file our claims as in accordance with regard to -- well, again, I think we have rejection damages claims there.

But with regard to Bullish Resources, Mr. Gibbs is correct. Again, I think Your Honor signed this morning the stipulation. And that stipulation was a little bit -- I'll use a real official term here -- a little bit hinky in that one of the requirements for the rejection to become effective was the removal of those cars, of all the cars from those lots today, which would, in essence, I mean, one of the obstacles that that would get out of the way was Wilmington Trust's concern about any interest they've got in cars there.

And so all that is to say I do not know as I sit here right this minute, Your Honor, whether all the cars have been vacated from that lot. What it did provide, the particular stipulation, was that to the extent they were not removed by today, by 11:59 this evening, that the stipulation would become void.

However, we have the ability to extend that deadline. If they're not all removed today and there are still some cars there, our client can, in writing, you know, extend that deadline, saying, okay, the stipulation is not void; instead, we'll allow them to be removed tomorrow, right, and to extend that deadline.

So, having said that, I don't know where we stand on that, but I just wanted to alert the Court I don't see this falling through, because I take Mr. Gibbs at his word and I think he has been informed by Vervent that the cars should be removed in any event by the end of this week from all locations. And from our location, I know they had prioritized that Bandera location, and I'm hopeful that that is done by midnight tonight. And if it's not, we can talk and see how many cars are still left there and whether we can increase that date so that we don't have to come back to the Court with yet another stipulation or fighting about issues.

THE COURT: All right. Thank you, Mr. Held.

Does 393 resolve both ANC and Bullish's motions, the issues of both of the landlords, or only one?

MR. HELD: I think only one, Your Honor.

THE COURT: Okay.

MR. HELD: I think we had a separate stipulation --

THE COURT: Yes. I think it's only Bullish on 393. That's why I was trying to make sure.

MR. GIBBS: I think you're right, Your Honor. And I couldn't read my notes. I believe that the motion to compel filed by Mr. Held on behalf of ANC was resolved by stipulation that's at Docket 371.

MR. HELD: That's correct, Mr. Gibbs. I think that's right.

THE COURT: Okay. So, just one second.

(Pause.)

THE COURT: No, I don't think so, because 371 is the mere filing of the stipulation. That's why I wanted to kind of --

MR. GIBBS: Yeah.

THE COURT: -- nail these things down, so that once we're doing our double-check back at the ranch, we can see if they've all been resolved.

So let's look at your original 229, Mr. Held.

MR. HELD: And I apologize, Your Honor. I'm looking at it the old-fashioned way. I'm looking at -- I knew I had printed it out. I had it here on my --

THE COURT: Okay. So it looks like your motion was for both of them. So the 229 motion was for both. So if we have an ANC stipulation, I'd like to put my fingers on that.

MR. HELD: Yeah. And I was looking for it physically, but let me go to the docket, because I think that's probably the easiest way.

(Pause.)

MR. BUTLER: Your Honor, Beau Butler also with Jackson Walker.

Just to save the Court some time, the order resolving the stipulation for ANC is at Docket No. 308.

THE COURT: Thank you very much. Appreciate it.

MR. HELD: Thank you, Beau.

THE COURT: All right. Yes, just want to --

MR. HELD: Technologically less-impaired people than I to the rescue.

THE COURT: Yes. Exactly. We'll let those with good eyes and control of the docket. Excellent.

Well, that's going to be very helpful to me, because, like I said, I know that Ms. Harden and I and the case administrator were going to kind of make sure that we've got all of these motions buttoned up, with my crazy Cajun hands there. I'm sorry about that. So, excellent. I appreciate it.

MR. HELD: All right. Thank you, Your Honor. Sorry about the confusion.

THE COURT: No worries.

MR. GIBBS: Your Honor, the third of the four motions to compel is -- was filed by Creditor BV NWH, LP. It's Docket 274. And that was resolved by a stipulation that was entered, I believe, at Docket 374.

THE COURT: Okay. Thank you. Yes, got that one. Did we skip 245?

MR. GIBBS: No, I'm getting there.

THE COURT: Okay.

MR. GIBBS: Sorry.

THE COURT: Perfect. You told me numerical order,

and I was really in on that for a minute. Thank you.

MR. GIBBS: Well, yeah.

THE COURT: Thank you.

MR. GIBBS: I thought I'd just see if I could throw a curveball or two to see if people --

THE COURT: There we go.

MR. GIBBS: -- are following the docket numbers.

THE COURT: All right. As long as you hang it, I can hit it.

MR. GIBBS: Docket 245, Your Honor, is the motion to compel filed by the landlord for what I'll call the Wilmer location. That is the reconditioning facility down --

THE COURT: Okay.

MR. GIBBS: -- south of Downtown. It's large, and it has still cars on it, and it has personal property in it that's claimed as the collateral of TBK, as well as a few vehicles that aren't cars but are larger vehicles that move cars that also are claimed as collateral by TBK.

We believed, and counsel for the Landlord I think if he's on can -- if she's on can confirm, we will have a stipulation before the Court prior to next Tuesday, the 25th, which I think this would otherwise be set for, because by then the cars will be gone and we believe, we certainly hope, that we will have a -- I'll call it a three-party understanding between TBK, the Landlord, and the Debtors' estate as to the

resolution over how and when to dispose of the personalty that's still in that location.

THE COURT: Okay. So we're going to carry this motion?

MR. GIBBS: Yeah.

THE COURT: Okay.

MR. GIBBS: And this -- today was just a status conference.

THE COURT: Okay.

MR. GIBBS: I think it's actually set for next week.

THE COURT: That's true. It's set for the 25th.

MR. GIBBS: Yeah.

THE COURT: I'm with you now. Thank you.

MR. GIBBS: Yep.

THE COURT: All right. So we'll take that one up on the 25th if there's no prior settlement. Or a stipulation.

MR. GIBBS: Yep. So that, I believe, resolves the --

THE COURT: I've got 247 as well --

MR. GIBBS: We just did that one, I believe.

THE COURT: -- in my status conference list. I thought that --

MR. GIBBS: I think we just did that. That's --

THE COURT: -- was 245.

MR. GIBBS: Well, we went out of order based on my mistake. 247 is the Northwest Highway location.

THE COURT: Oh, yes. Okay.

MR. GIBBS: All right.

THE COURT: A little bit of dyslexia here in my notes.

MR. GIBBS: Yep.

THE COURT: All right. Got you.

MR. GIBBS: So what that left us with was three final hearings set today.

THE COURT: Uh-huh.

MR. GIBBS: And those -- I apologize, Your Honor. I'm -- here we go. Nope. I'm looking. It would help if I turned the page. I might find them.

The final hearings that Your Honor set are Docket Nos. 184, 187, and 200. The final hearing on the lift stay motion that's at Docket 184, the Movant is RKJS.

THE COURT: Right.

MR. GIBBS: And it was resolved via stipulation and order that was filed at Docket 377.

THE COURT: Got it.

MR. GIBBS: The final hearing set for today on -- filed by K&S, also by the same counsel, that is found at Docket 187 was resolved by stipulation that's found at Docket 376.

THE COURT: Got it.

MR. GIBBS: And the third was the lift stay motion

filed by SMH.

THE COURT: Uh-huh.

MR. GIBBS: Mr. Sheppard is their counsel. That was filed at Docket 200, and that was resolved by stipulation that was filed at Docket 392. So, --

THE COURT: Thank you.

MR. GIBBS: So those motions are disposed of by stipulation, as are the motions to compel, with the exception of the Wilmer facility, which we believe will be resolved by stipulation before their hearing next week.

THE COURT: Okay.

MR. GIBBS: Your Honor, next week we have our motion for authority to reject leases.

THE COURT: Yes.

MR. GIBBS: It's set for the 25th. The objection deadline is the 20th.

We've received a few objections. We've been in contact with each of those Objectors. We believe we'll have stipulations resolving their objections. And to the extent any additional objections are filed before the objection deadline, we'll deal with those, hopefully as successfully, and hope to be before you on that motion on the 25th with no objections that we have to dispose of.

So I think that resolves not only the final hearings today but all matters that Your Honor asked for a status conference

on today.

I will also report, while I have the podium, with the Court's permission, we have seven motions set for preliminary hearing tomorrow.

THE COURT: Uh-huh.

MR. GIBBS: We have resolved all of those via stipulation or an agreement to continue them to a final -- either a further interim or a final. So the appropriate announcements will be made either telephonically tomorrow or by a pleading later today, but I wanted the Court to know that there's nothing that will need to be dealt with tomorrow on those seven motions.

THE COURT: Okay. Excellent. And it's at your choice. You can use the announcement procedure on ECF to call those hearings off, or if you want to appear and announce, that's fine as well.

MR. GIBBS: Okay.

THE COURT: All right.

MR. GIBBS: As the Court can tell, the Trustee has taken your direction and admonishment to heart, and we have worked diligently with a whole lot of landlords to resolve a whole lot of potential disputes and hopefully free up a whole lot of the Court's time.

THE COURT: I don't remember an admonishment, but I've been told I have that tone.

MR. GIBBS: It's instruction. Let's leave it at that.

THE COURT: Thank you. All right. So I think on the 25th, all that leaves us with right now is the rejection motion and then the motion to compel at 245 by CICF, which, if not resolved by stipulation, will be heard that day as well.

I think one more matter of housekeeping. Are we going to set another hearing date for the larger non-Origin Vervent stipulation, if it goes through the 5th? Do you want to put this onto the 25th or do you want to put it sometime during the week of December 1st?

MR. GIBBS: The latter.

THE COURT: Okay.

MR. GIBBS: As close to the 5th as possible.

THE COURT: Okay.

MR. GIBBS: And just by way of announcement, we are very hopeful that we'll be filing in pretty short order a motion that we hope to have broad agreement for, support for, for a set of procedures to conduct an auction of all of these vehicles.

THE COURT: Okay.

MR. GIBBS: It would requires some shortening of notice. We think it's appropriate. And I won't pre-argue that issue, but we would be, if we haven't already, reaching out to chambers to see if Your Honor has time the week of the

1st, you know, anytime towards -- anytime that week is fine.

I think people, to the extent there is going to be an issue that needs to be argued, would prefer that it not be on the 1st, because that may require them to travel on Sunday of Thanksgiving weekend. So beggars can't be choosers, so we'll take whatever the Court's docket will allow.

THE COURT: Sure. How much time do you think you'll need?

MR. GIBBS: Um, --

THE COURT: Because that'll be --

MR. GIBBS: A couple of hours, I think, max.

THE COURT: All right. That'll determine how much we need to beg.

All right. Let's see what we've got. I think that we might have -- yes, I mean, December 1st is certainly the best. We're open all day that day. We have very quick matters on Tuesday morning at 9:30, but there's also five of them. So let's see.

Mr. Wilhite, correct me if I'm wrong. We had calculated we had a couple hours of availability on Tuesday?

LAW CLERK: I think so.

THE COURT: Okay. Okay.

(Court confers with Law Clerk.)

THE COURT: Yes. That might be pushing it, now that I look at it. That is a really tough week. I mean, the 1st

is very much my --

MR. GIBBS: Preference?

THE COURT: -- my day that I'm wide open. And I recognize -- now, I could start in the afternoon --

MR. GIBBS: That's what --

THE COURT: -- to allow people to come in that morning.

MR. GIBBS: I was about to suggest that, is to know that we have enough time, if we could start after lunch so people could travel in the morning and get here --

THE COURT: Definitely can do that. I think that that's probably our best bet, because I'm a little concerned that if we started in the morning on Tuesday morning, --

MR. GIBBS: Uh-huh.

THE COURT: -- we'd probably need to head out, to extend to the afternoon, which probably would mean that I couldn't pick you guys up again until like 3:00, and now you're probably staying overnight anyway. So to try to help with travel, I would bet that the 1st is the best.

Let me double-check Wednesday. Wait a minute, now.

Thank you, Mr. Wilhite.

So, Wednesday we could probably start at 2:00 or 2:30 in the afternoon. So that's December 3rd.

So I've got Monday in the afternoon, or a little bit later in the afternoon on Wednesday. So, let me know what you

think.

MR. GIBBS: The Trustee can do either, so I'll be guided by the noise that we're about to hear on --

THE COURT: Okay.

MR. GIBBS: -- on those options.

THE COURT: All right. Is there anyone that wishes to be heard whether we select the 1st or the 3rd in the afternoon? The 3rd, I have about -- it would be starting around 2:30 Central.

MR. CATALANELLO: Your Honor, Gerard Catalanello from Alston & Bird. May I be heard?

THE COURT: Of course.

MR. CATALANELLO: Your Honor, just because it's a long holiday weekend, and given travel logistics, I think Wilmington Trust would prefer December 3rd, if that works, obviously, for the majority of the other parties. Either date, we'll make it work for us, but if there's a preference, it would be December the 3rd.

THE COURT: Okay. Thank you.

MR. CATALANELLO: Thank you.

THE COURT: I didn't focus that that would be the weekend after or the first Monday after Thanksgiving as well.

MR. GIBBS: There's never any holiday travel plans on the Sunday after Thanksgiving. That shouldn't be a problem.

I mean, frankly, the Trustee would prefer the 3rd, but

we're willing to do the 1st if that's the only thing that worked.

THE COURT: All right. Anyone else wish to be heard?

Okay. Well, as my grandmother would say, God willing if I'm not trampled for a low-cost TV the morning of Black Friday, then I will be here on December 3rd at 2:30.

MR. GIBBS: All right.

THE COURT: All right. Well, do you want to put Vervent there as well?

MR. GIBBS: Yes, please.

THE COURT: And I know you said you might seek expedition on a motion.

MR. GIBBS: Yes, please.

THE COURT: Okay. So that's where we'll put Vervent. So, for sake of the record, I think, let me find it. No, that's the wrong one. That's where we're taking Number -- what was originally, I guess, 53, too. Okay.

MR. GIBBS: All right.

THE COURT: I will get that correct in my minutes.

Anyone else wish to be heard today?

(No response.)

THE COURT: All right. Well, great job by all. You've given me time back, which I haven't gotten back in a while. So I will see you guys for whatever we have left on the 25th on the rejection motion and on the CICF motion, and

then again on the 3rd. You guys take care.

MR. GIBBS: Thank you, Judge.

THE COURT: You're very welcome. Court will stand adjourned for the day.

(Proceedings concluded at 2:33 p.m.)

--oOo--

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

**/s/ Kathy Rehling** **11/18/2025**

______________________________________ ________________

Kathy Rehling, CETD-444 Date
Certified Electronic Court Transcriber

INDEX


PROCEEDINGS 4

WITNESSES

Origin Bank's Witnesses

Michael Wawczak
- Proffer of Direct Testimony 20

Trustee's Witnesses

Sheldon Stone
- Proffer of Direct Testimony 25

EXHIBITS

Origin Bank's Exhibits

Exhibit 1 Received 24

RULINGS

Order on Motion for Leave (287) - Extension of Vervent Stipulation - *Granted* 10

Order on Motion to Use or Prohibit Cash Collateral (274) - *Granted* 13

Joint Motion to Enter Into Amended and Restated Successor Servicing Agreement (278) - *Granted* 29/30

Motion to Compel (226) - *Stipulation* 32

Motion to Compel (229) - *Stipulations* 37

Motion to Compel (245) - *Stipulation* 39

Motion to Compel (247) - *Continued to 11/25/2025* 39

Emergency Motion for Entry of Order Approving Stipulation (53) - *Continued to 12/3/2025* 47

Final Hearing re: Motion for Relief from Stay (187) 40

Final Hearing re: Motion for Relief from Stay (200) 41

INDEX
Page 2

RULINGS, cont'd.

Motion to Use Cash Collateral (255) --

END OF PROCEEDINGS 48

INDEX 49-50