# Exhibit 1

# COMMERCIAL CONTRACT



# Wesco Insurance Company
### (A Stock Insurance Company)

## An AmTrust Financial Company

**800 SUPERIOR AVENUE EAST, 21ST FLOOR**

**CLEVELAND, OH 44114**

**877-528-7878**

## Read Your Policy Carefully

This policy is a legal contract between you and us.  The information on this page is not the insurance contract and only the actual policy provisions will control.  The policy sets forth in detail the rights and obligations of both you and us.  **It is therefore important that you read your policy carefully.**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of the policy.

This policy is signed by the President and Secretary of the insurance company and, if required by State law, this policy shall not be valid unless countersigned on the Declaration page by its authorized representative.

President                                        Secretary

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

    © ISO Properties, Inc., 2004

**AmTrust**
INSURANCE

# Claim Reporting Information

## 24/7 Toll Free and Email Claims Reporting



- General Liability (888) 239-3909
  (Includes General Liability, Umbrella, BOP, Non-Profit Social Services & Non-Profit Sexual Abuse policies)
- Commercial Auto (888) 239-3909
  (Includes Auto, Transportation & Motor Carrier policies)
- Commercial Property (888) 239-3909
  (Includes Property, BOP, Inland Marine & Crime policies)
- Cyber Liability (877) 207-1047



- General Liability
  glclaimreport@amtrustgroup.com
- Commercial Auto
  commpropertyclaimreport@amtrustgroup.com
- Commercial Property
  commpropertyclaimreport@amtrustgroup.com
- Cyber Liability
  amtrustcyberclaims@amtrustgroup.com

- Professional and Management Liability Claims
  *Notice only accepted in writing (Includes Employers Practice Liability,  Directors & Officers, Errors & Omissions, Lawyers Professional Liability,  Fidelity & Financial Institution policies)
  professionalclaims@amtrustgroup.com

### Information Required for All Claims Reported



1. Name of the insured and policy number
2. Name and contact information of claimant
3. Date, time and place of accident if applicable
4. Description of accident, incident or wrongful acts
5. Name, phone, and/or email of person making the report
6. Any additional information as indicated by your individual policy

## Timely Reporting

Timely reporting of claims is essential so a thorough investigation can be completed and determination of benefits made. We urge you to please report the claim immediately upon notification. You can email us your claim or call our toll-free number to talk with a customer care representative.



**We're Here To Help**
After your claim has been filed, we may be in touch to obtain additional information. Our goal is to offer a smooth and hassle-free experience – from your first contact to the claims conclusion. Feel free to also call us with any questions. We're here to help.



**Relax And Stay Positive**
You have the assurance of our knowledge, expertise, and understanding of the claim process. We're with you all the way.

**877.528.7878 I www.amtrustfinancial.com**

This material is for informational purposes only and is not legal or business advice. Neither AmTrust Financial Services, Inc. nor any of its subsidiaries or affiliates  represents or warrants that the information contained herein is appropriate or suitable for any specific business or legal purpose. Readers seeking resolution of specific  questions should consult their business and/or legal advisors. Coverages may vary by location. Contact your local RSM for more information.



# UNDERWRITING AND POLICY INQUIRIES

In the event you need to contact someone about this insurance for any reason, please contact your agent. If no agent was involved in the sale of this insurance, or if you have additional questions, you may contact AmTrust Insurance at the address and/or telephone number in your policy. Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your agent or insurance company please have your policy number available.

# STATE COMPLAINT INFORMATION

Policyholders have the right to file a complaint with their State Insurance Department. If you have been unable to contact or obtain satisfaction from the insurance company or your agent, or if you need to request a complaint form, you may contact your State Insurance Department. The following states have specific contact information:

| Arkansas |
|---|
| **ARKANSAS INSURANCE DEPARTMENT**<br>Consumer Services Division<br>1 Commerce Way, Suite 102<br>Little Rock, AR 72202<br>1.800.852.5494 or 501.371.2640 |

| California | |
|---|---|
| **\*CALIFORNIA DEPARTMENT OF INSURANCE**<br>Consumer Services Division<br>300 S. Spring St., South Tower<br>Los Angeles, CA 90013<br>1-800-927-4357 | \*The Department of Insurance requests they be contacted only after discussions with the Insurer, or your Agent or other representative, or both, have failed to produce a satisfactory resolution to the problem. |
| This notice is provided in compliance with Section 510 of the California Insurance Code. | |

| Idaho |
|---|
| **OFFICE OF THE ATTORNEY GENERAL**<br>Consumer Protection Division<br>954 W. Jefferson, 2nd Floor<br>PO Box 83720<br>Boise ID 83720-0010<br>1-800-432-3545 or 208-334-2424 |

| Illinois | |
|---|---|
| **ILLINOIS DEPARTMENT OF INSURANCE**<br>Consumer Protection Bureau<br>500 South Second Street<br>Springfield, IL 62706<br>1-800-843-0618 | **ILLINOIS DEPARTMENT OF INSURANCE**<br>320 West Washington Street<br>Springfield, IL 62767<br>1-217-782-4515 |

| Indiana |
|---|
| **STATE OF INDIANA DEPARTMENT OF INSURANCE**<br>Consumer Services Division<br>311 West Washington Street, Suite 300<br>Indianapolis, IN 46204<br>800-622-4461 or 317-232-2395<br>www.in.gov/doi |

| Virginia |
|---|
| **STATE CORPORATION COMMISSION**<br>P&C Division, Bureau of Insurance<br>PO Box 1157<br>Richmond, VA 23218<br>804-371-9185; FAX 804-371-9396 |

| Wisconsin |
|---|
| **OFFICE OF THE COMMISSIONER OF INSURANCE**<br>Complaints Department<br>125 South Webster Street<br>PO Box 7873<br>Madison, WI 53707-7873<br>1-800-236-8517 or 1-608-266-0103 |

# CYBER LIABILITY EXCLUSION
# POLICYHOLDER NOTICE

This notice does NOT form a part of your insurance contract.  No coverage is provided by this summary nor can it be construed to replace any provisions of your policy (including its endorsements). This notice is designed to alert you to coverage changes when the following exclusionary endorsement is attached to your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is any conflict between the policy (including its endorsements) and this summary, **THE PROVISIONS OF THE POLICY SHALL PREVAIL**.

Your commercial liability policy is issued with a Cyber Liability Exclusion Endorsement.

### SUMMARY

### Cyber Liability Exclusion

When the Cyber Liability Exclusion endorsement is attached to your policy, coverage is excluded for liability arising out of:

- any access, disclosure or misuse of protected information
- violation of legal statute(s) regarding protected information
- interruption, outage, inability to access, compromise of, or corruption of computer systems or any data
- trading losses, trading liabilities or change in value of accounts
- loss, transfer or theft of monies, securities, or tangible property to, from, or in the care, custody or control of, the Insured

The attachment of this endorsement may result in a reduction of coverage.

# EXCLUSION – LEAD
# DISCLOSURE NOTICE

This notice does NOT form a part of your insurance contract.  No coverage is provided by this summary nor can it be construed to replace any provisions of your policy. This notice is designed to alert you to coverage changes when the following exclusionary endorsement is attached to your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is any conflict between the policy (including its endorsements) and this summary, **THE PROVISIONS OF THE POLICY SHALL PREVAIL**.

Your policy is being issued with a Lead Exclusion endorsement.

### SUMMARY

**Exclusion – Lead**

This endorsement excludes liability coverage for any claims, loss, injury or damage arising from, based upon or attributable to any actual, alleged, threatened, or suspected or in any way connected with the existence, removal, testing, or exposure to lead.  Coverage for investigation or defense is excluded under this endorsement.

Please refer to the Lead Exclusion endorsement for further details.

# EXCLUSION – ASBESTOS
# DISCLOSURE NOTICE

This notice does NOT form a part of your insurance contract.  No coverage is provided by this summary nor can it be construed to replace any provisions of your policy. This notice is designed to alert you to coverage changes when the following exclusionary endorsement is attached to your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is any conflict between the policy (including its endorsements) and this summary, **THE PROVISIONS OF THE POLICY SHALL PREVAIL**.

Your policy is being issued with an Asbestos Exclusion endorsement:

**SUMMARY**

**Exclusion – Asbestos**

This endorsement excludes liability coverage for injury arising out of, resulting from, caused by or contributed to by asbestos or exposure to asbestos or its use. Also excluded are damages, loss, cost or expense arising out of assessing the presence, absence or amount or effects of asbestos; identifying, sampling, testing, detecting, cleaning up, monitoring, removing, containing, treating, detoxifying, abating, disposing or mitigating asbestos, or supervision, instructions, recommendations, warnings or advice regarding any of the above which had been given or should have been given.  Coverage for investigation or defense is also excluded under this endorsement.

Please refer to the Asbestos Exclusion endorsement for further details.

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF "YOUR" POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS NOTICE DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

| |
|---|
| **Terrorism Premium (Certified Acts)** Certified Acts not covered |
| **This premium is the total Certified Acts premium attributable to the following coverages.** <br><br> **Professional Liability Coverage Part** |
| **Federal share of terrorism losses 80% Year: 2025** <br> (Refer to Paragraph **B.** in this endorsement.) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations |

A.  Disclosure Of Premium
In accordance with the federal Terrorism Risk Insurance Act, "we" are required to provide "you" with a notice disclosing the portion of "your" premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of "your" premium attributable to such coverage is shown in the Schedule of this endorsement or in the Declarations.

B.  Disclosure Of Federal Participation In Payment Of Terrorism Losses
The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

C.  Cap On Insurer Participation In Payment Of Terrorism Losses
If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, "we" shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

D.  For the purpose of this endorsement the following definitions are added:

1.  the term "we" and "our" refers to the Insurance Company providing coverage.

2.  the term "you" and "your" refers to the insured entity named in the Declarations Page.

# AMTRUST *FI Advantage*

**Policy No.  WDO1975148 03**

## WESCO INSURANCE COMPANY
(A Stock Insurance Company, herein called the **Insurer**)

## DECLARATIONS PAGE

**This is a claims-made policy. Defense Expenses are included within the Limit of Liability. Amounts incurred as Defense Expenses will reduce the Limit of Liability available to pay judgments or settlements. Please read this Policy carefully!**

**Item 1:**   (a)   Name and physical address of **Parent Company:**
Tricolor Holdings, LLC
6021 Connection Drive, 4th Floor
Irving, TX 75039

(b)   **Subsidiaries:**  See Schedule of Subsidiaries

**Item 2:**   **Policy Period:**      From: 6/16/2025 To: 6/16/2026
12:01 A.M. local time at the principal address stated in Item 1 above.

**Item 3:**   **Policy Year Aggregate Limit of Liability:** $5,000,000

**Item 4:**   **Coverage Elections, Limit of Liability, Retentions, and Premium:**
**\*Only those Coverage Parts and Insuring Agreements designated with an "X" below are covered under this Policy.**

| Coverage Part - Insuring Agreement | "X" | (a) Sublimit of Liability | (b) Separate Limit of Liability | (c) Single Limit of Liability | (d) Retention | (e) Written Premium |
|---|---|---|---|---|---|---|
| **Directors & Officers Liability** | | | | | | |
| A.  Insured Persons Liability | | | | | | |
| B.  Company Indemnification | | | | | | |
| C. 1.  Company Liability | | | | | | |
| 2.  Investigation Expense | | | | | | |
| **Professional Liability** | | | | | | |
| A.  Lender Liability | | | | | | |
| B.  Professional Services | X | | | | $125,000 | |
| IRA/Keogh & HSA Wrongful Acts | | | | $5,000,000 | | $69,336 |
| C.  Trust Services | | | | | | |
| **Employment Practices Liability** | | | | | | |
| A.  Employment Practices Liability | | | | | | |
| B.  Third Party Liability | | | | | | |
| **Fiduciary Liability** | | | | | | |
| A.  Fiduciary Liability | | | | | | |
| B.  Voluntary Settlement Program | | | | | | |
| C.  HIPAA Civil Money Penalties | | | | | | |

| Policy Premium: | $69,336.00 |
| Taxes and Surcharges: | $0 |
| Local Tax: | $0 |
| Terrorism: | $0 |
| **Total Policy Premium:** | **$69,336.00** |

**Item 5:   Prior and Pending Litigation and Retroactive Date(s):**

| Coverage Part | (a)<br>Pending & Prior Litigation Date | (b)<br>Retroactive Coverage Date |
|---|---|---|
| **Directors & Officers Liability** | | |
| A.  Insured Persons Liability | | |
| B.  Company Indemnification | | |
| C. 1.  Company Liability | | |
|      2.  Investigation Expense | | |
| **Professional Liability** | | |
| A.  Lender Liability | | |
| B.  Professional Services including IRA/Keogh & HSA Wrongful Acts (if selected) | 9/12/2018 | 9/12/2018 |
| C.  Trust Services | | |
| **Employment Practices Liability** | | |
| A.  Employment Practices Liability | | |
| B.  Third Party Liability | | |
| **Fiduciary Liability** | | |
| A.  Fiduciary Liability including Voluntary Settlement Program and HIPAA Civil Money Penalties (if selected) | | |

**Item 6:   Extended Reporting Period (ERP):**
  (a)  Percentage of Annual Premium:   75 %
  (b)  ERP Term:  1 Year

  Applicable only if exercised in accordance with Section IX of the General Terms & Conditions Applicable to All Coverage Parts, entitled Extended Reporting Period.

**Item 7:   Endorsements attached at issuance:**   Refer to attached Endorsement Schedule

The **Parent Company**, by the acceptance of this **Policy**, gives notice to the **Insurer** cancelling any prior **Policy** issued, and such cancellation shall be effective as of the time this **Policy** becomes effective.

**Item 8:**   All notices required to be given to the **Insurer** shall be sent by registered mail, email or fax to:

  AmTrust Claims Director
  AmTrust Financial Group
  233 N. Michigan Avenue
  Chicago, IL 60601
  Email:   professionalclaims@amtrustgroup.com
  Fax:     312-781-0423

In witness whereof, this Declarations Page is to be signed by a duly authorized representative of the **Insurer.**

**Date:** 7/23/2025                                    **Signature:**

                                                              Authorized Representative

## ENDORSEMENT SCHEDULE

IL-PJ-WIC 1022 WESCO INSURANCE COMPANY POLICY JACKET
ILSIGDEC 1015 SIGNATURE PAGE
IL P0 011 U.S. TREASURY - OFAC ADVISORY NOTICE
DN990035 1022 FI ADVANTAGE AMTRUST MGMT LIABILITY AND BONDS UW AND CLAIMS SERVICE
NOTICE
PN990258 1020 CYBER LIABILITY EXCLUSION - POLICYHOLDER NOTICE
DN990009 0419 EXCLUSION - LEAD DISCLOSURE NOTICE
DN990010 0419 EXCLUSION - ASBESTOS DISCLOSURE NOTICE
PL990128 0915 TERRORISM RISK INSURANCE ACT DISCLOSURE
PL-FI-DEC 0414 DECLARATIONS PAGE
PL-FI-DEC-ENDSCH 0414 FORMS AND ENDORSEMENTS SCHEDULE
PL990158 0414 GENERAL TERMS AND CONDITIONS
PL990163 0414 PROFESSIONAL LIABILITY COVERAGE PART
PL990615 0319 ASBESTOS EXCLUSION
PL990616 0319 LEAD EXCLUSION
PL991178 1020 CYBER LIABILITY EXCLUSION
PL990271 0915 EXCLUSION OF CERTIFIED ACTS OF TERRORISM
DN990029TX 1123 TEXAS CONSUMER COMPLAINT NOTICE
PL990170TX 0414 TEXAS AMENDATORY ENDORSEMENT
PL990185TX 0414 NON-CANCELLATION - TEXAS
PL990234 0414 INDEPENDENT CONTRACTOR ENDORSEMENT
PL990236 0414 MINOR AMWINS AUTO PROFESSIONAL SERVICES
PL990236 0414 - MINOR - AMWINS GARAGE ENDORSEMENT
PL990563 0421 RELIANCE ON OTHER CARRIER'S APPLICATION

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

# AMTRUST        *FI Advantage*

## WESCO INSURANCE COMPANY

(A Stock Insurance Company, herein called the **Insurer**)

## FINANCIAL INSTITUTION
## GENERAL TERMS AND CONDITIONS APPLICABLE TO ALL COVERAGE PARTS

**This is a claims-made policy. Defense Expenses are included within the Limit of Liability. Amounts incurred as Defense Expenses will reduce the Limit of Liability available to pay judgments or settlements. Please read this Policy carefully!**

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations Page and **Application**, the **Insurer** and the **Insureds** agree that coverage will be provided subject to all of the terms, conditions and limitations of this **Policy**, as follows:

## SECTION I – GENERAL INFORMATION

These General Terms and Conditions apply to all **Coverage Parts** made a part of this **Policy**. Unless otherwise stated to the contrary, the terms and conditions of each **Coverage Part** apply only to that particular **Coverage Part**. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any particular **Coverage Part**, the terms, conditions, and limitations for that particular **Coverage Part** shall apply.

## SECTION II – DEFINITIONS

Whenever appearing in this **Policy**, the following words and phrases appearing in bold type will have the meanings set forth below.

**Application** means:

1.      the application signed for the procurement of this **Policy** and any materials submitted to the **Insurer** in support of the procurement of this **Policy** or any **Policy** for which this **Policy** is a direct or indirect renewal or replacement;

2.      any publicly available information published or filed by or with a recognized source, agency or institution regarding the **Insured** in the three (3) years preceding the **Policy's** inception, and any amendments thereto, whether or not submitted with any signed application; and

3.      if applicable, any representation provided to the **Insurer** within the past three (3) years in connection with any **Policy** for which this **Policy** is a direct or indirect renewal or replacement.

The **Application** is deemed to be attached to and incorporated into this **Policy**, as if physically attached.

**Change of Control** means:

1.      the acquisition of the **Parent Company**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of the **Parent Company** into or with another entity such that the **Parent Company** is not the surviving entity; or

2.      the obtaining by any person, entity or affiliated group of persons or entities the right to elect, appoint or designate more than fifty percent (50%) of the board of directors, board of trustees, board of managers, or functional equivalent thereof or to exercise a majority control of the board of directors, board of trustees, board of managers, or a functional equivalent thereof of the **Parent Company**.

**Claim** has the meaning set forth in the applicable **Coverage Part.**

**COBRA** means the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended.

**Company** means the **Parent Company** and any **Subsidiary**.

**Coverage Part** means only those coverage parts designated in Item 4. of the Declarations Page.

**Defense Expenses** means reasonable and necessary legal fees and expenses incurred by the **Insurer** or the **Insured**, with the **Insurer's** consent, in the investigation, defense, settlement and appeal of a **Claim**, including but not limited to, cost of expert consultants and witnesses, premiums for appeal, injunction, attachment or supersedes bonds (without the obligation to furnish such bonds) regarding such **Claim**.  **Defense Expenses** will not include the salaries, wages, benefits or overhead of, or paid to, any **Insured** or any **Employee** of such **Insured**.

**Domestic Partner** means any natural person qualifying as such under the provisions of any federal, state or local law or under the provisions of any formal, written program established by the **Company**.

**Employee** has the meaning set forth in the applicable **Coverage Part**.

**ERISA** means the Employee Retirement Income Security Act of 1974, including amendments thereto and regulations promulgated thereunder or any similar common or statutory law.

**Executive** has the meaning set forth in the applicable **Coverage Part**.

**Financial Insolvency** means, with respect to the **Company**, the appointment of a receiver, conservator, liquidator, trustee or similar official; **Regulatory Agency**; or the inability of the **Company** financially to indemnify the **Insured Persons**.

**Independent Contractor** means any natural person working for the **Company** in the capacity of an **Independent Contractor** pursuant to an express contract or agreement with the **Company** governing the nature of such person's engagement.  The status of an individual as an **Independent Contractor** will be determined as of the date of the alleged **Wrongful Act**.

**Insured** has the meaning set forth in the applicable **Coverage Part**.

**Insured Person** has the meaning set forth in the applicable **Coverage Part**.

**Interrelated Wrongful Acts** means **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.

**Loss** has the meaning set forth in the applicable **Coverage Part**.

**Loss Information** means information on open, closed and potential **Claims**, including date, description, and payment amounts, if any.

**Parent Company** means the entity named in Item 1.(a) of the Declarations Page.

**Policy** means, collectively, the Declarations Page, the **Application**, the General Terms and Conditions Applicable to All Coverage Parts, each **Coverage Part** purchased, and any Endorsements attached thereto.

**Policy Period** means the period from the effective date of this **Policy** to either the **Policy** expiration date, as shown in Item 2. of the Declarations Page or the date on which the **Policy** is effectively terminated, whichever is sooner, but shall not include the Extended Reporting Period.

**Policy Year** means the period of one (1) year following the effective date and hour of this **Policy** as shown in Item 2. of the Declarations Page or any anniversary thereof; or if the time between the effective date and the termination of the **Policy** is less than one (1) year, such lesser period. Notwithstanding the above, if the expiration is extended for any reason, the Limit of Liability provided during the extension period shall be considered part of, and not in addition to, the Limit of Liability provided during the last **Policy Year.**

**Pollutants** means any solid, liquid, gaseous or thermal organism, irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, hazardous substances, nuclear materials, and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

**Potential Claim** means any **Wrongful Act** that may subsequently give rise to a **Claim**.

**Regulatory Agency** means any federal, state, local or foreign law enforcement or governmental authority including, the U.S. Department of Justice, the Federal Deposit Insurance Corporation, the Office of Thrift Supervision, the Federal Reserve, the National Credit Union Administration, the Federal Home Loan Bank Board, the Office of the Comptroller of the Currency, the U.S. Securities and Exchange Commission and any attorney general or the enforcement unit of any securities exchange or similar self-regulatory body.

**Subsidiary** means:

1. any entity in which the **Company** owns, directly or through one or more subsidiaries, more than fifty percent (50%) of the outstanding securities representing the present right to vote for, elect, appoint or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person partners or functional equivalent;

2. any limited liability company in which the **Company**, or one or more of its subsidiaries, has the right to appoint or designate fifty percent (50%) or more of such limited liability company's managers; or

3. any joint venture in which the **Company**, or one or more of its subsidiaries, has the right to elect, appoint or designate more than fifty percent (50%) of such entity's directors, trustees or other equivalent executives;

provided that such entities, limited liability companies or joint ventures are named in the **Application** for coverage.

**Wrongful Act** has the meaning set forth in the applicable **Coverage Part**.

## SECTION III - LIMIT OF LIABILITY AND RETENTION

A. **LIMIT OF LIABILITY**

1. The amount set forth in Item 3. of the Declarations Page is the maximum **Policy Year** Aggregate Limit of Liability of the **Insurer** for all **Loss** from all **Claims** under all purchased **Coverage Parts**, regardless of the number of **Insureds**, **Claims** made, or persons or entities bringing such **Claims**. The Single Limit of Liability and the Separate Limit of Liability on the Declarations Page are sub-limits of the **Policy Year** Aggregate Limit of Liability which further limits and does not increase the **Insurer's** limit of liability.

2. The **Coverage Parts** of this **Policy** are offered with either a Single Limit of Liability applicable in the aggregate to all Insuring Agreements or a Separate Limit of Liability for each Insuring Agreement as set forth in Item 4. of the Declarations Page.

   a. Each Single Limit of Liability designated in Item 4.(c) of the Declarations Page shall be the maximum per **Policy Year** limit of liability of the **Insurer** for all **Loss** under the respective **Coverage Part** regardless of the number of **Insureds**, **Claims** made, or persons or entities bringing such **Claims**. Each such Single Limit of Liability is a sublimit of and erodes the **Policy Year** Aggregate Limit of Liability set forth in Item 3. of the Declarations Page.

   b. Each Separate Limit of Liability designated in Item 4.(b) of the Declarations Page shall apply as separate Limit of Liability for each indicated Insuring Agreement and shall be the maximum per **Policy Year** limit of liability of the **Insurer** for all **Loss** under the respective Insuring Agreement regardless of the number of **Insureds**, **Claims** made, or persons or entities bringing such **Claims**. Each such Separate Limit of Liability is a sublimit of and erodes the **Policy Year** Aggregate Limit of Liability set forth in Item 3. of the Declarations Page.

3. Subject always to the applicable Limit of Liability, should two or more **Coverage Parts** apply to the same **Claim,** the **Insurer** will not pay more than the actual **Loss** incurred by the **Insureds**.

4. **Defense Expenses** shall be part of, and not in addition to, each applicable Limit of Liability. Payment of **Defense Expenses** by the **Insurer** shall reduce each applicable Limit of Liability.

5. The **Insurer's** obligations for all **Claims** shall cease upon exhaustion of the **Policy Year** Aggregate Limit of Liability set forth in Item 3. on the Declarations Page and, to the extent any Single Limit of Liability or Separate Limit of Liability is exhausted, the **Insurer's** obligations for all **Claims** under that particular **Coverage Part** or Insuring Agreement shall cease.

B.   **RETENTION**

1.   The applicable Retention(s) for each purchased **Coverage Part** are set forth in Item. 4.(d) of the Declarations Page. The **Insurer** has no obligation to pay **Loss**, including **Defense Expenses**, until the Retention has been paid by the **Insured**.  Except for the payment of **Defense Expenses**, the **Insurer** shall pay or reimburse one hundred percent (100%) of covered **Loss**, in excess of the applicable Retention, upon final disposition of the **Claim**.

2.   Each Retention shall be borne by the **Insured** and shall remain uninsured.

3.   If a **Claim** is subject to more than one Retention, the applicable Retention shall apply separately to such **Claim**, provided that the total Retention for such **Claim** shall not exceed the largest applicable Retention.

C.   **SINGLE LIMIT/RETENTION** - **Claims** based upon or arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** committed by one or more **Insureds** shall be considered a single **Claim**, and only one Retention and Limit of Liability shall apply. Each such single **Claim** shall be deemed to be first made on the date the earliest of such **Claims** was first made, regardless of whether such date is before or during the **Policy Period**.

## SECTION IV – SUPPLEMENTAL COVERAGES

A.   **SPOUSAL LIABILITY COVERAGE** - This **Policy** will, subject to all of its terms, conditions, and limitations, be extended to apply to **Loss** resulting from a **Claim** made against a person who, at the time the **Claim** is made, is a lawful spouse or **Domestic Partner** of an **Insured Person**, but only if and so long as:

1.   the **Claim** against such spouse or **Domestic Partner** results from a **Wrongful Act** actually or allegedly committed by the **Insured Person**, to whom the spouse is married, or who is joined with the **Domestic Partner**; and

2.   such **Insured Person** and his or her spouse or **Domestic Partner** are represented by the same counsel in connection with such **Claim**.

B.   **ESTATES, HEIRS AND LEGAL REPRESENTATIVES** - In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns (including **Domestic Partners**) of such **Insured Person** for a **Wrongful Act** of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

No spouse or **Domestic Partner** of an **Insured Person** will, by reason of this subsection have any greater right to coverage under this **Policy** than the **Insured Person** to whom such spouse is married, or to whom such **Domestic Partner** is joined.

The **Insurer** has no obligation to make any payment for **Loss** in connection with any **Claim** against a spouse or **Domestic Partner** of an **Insured Person** for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by such spouse or **Domestic Partner**.

## SECTION V - NOTICE OF CLAIMS AND POTENTIAL CLAIMS

A.   **NOTICE OF CLAIMS** - The **Insured** shall, as a condition precedent to their rights under this **Policy**, give the **Insurer** written notice as soon as practicable, of any **Claim** made and brought to the attention of an **Executive**, but in no event later than ninety (90) days after the expiration of the **Policy Year** in which the **Claim** was first made or the expiration of the **Policy Period**.

B.   **NOTICE OF POTENTIAL CLAIMS** - If during the **Policy Period** the **Insured**, through an **Executive**, first becomes aware of facts or circumstances which may reasonably give rise to a **Potential Claim** and gives written notice to the **Insurer** of the reasons for anticipating such **Potential Claim**, then any **Claim** subsequently made shall be deemed to have been first made during the **Policy Year** in which notice was first given to the **Insurer**.

As a condition precedent to any coverage hereunder for such **Potential Claims**, such notice must be specific and contain full particulars as to the names, dates, and persons involved in the underlying facts potentially giving rise to the **Potential Claim**, as well as the identity of the potential plaintiffs and the causes of action to be asserted.

C.    **INTERRELATED CLAIMS** - All **Claims** or **Potential Claims** for **Interrelated Wrongful Acts** will be considered as a single **Claim** or **Potential Claim**, whichever is applicable, for purposes of this **Policy**. All **Claims** or **Potential Claims** for **Interrelated Wrongful Acts** will be deemed to have been made at the time the first of such **Claims** or **Potential Claims** for **Interrelated Wrongful Acts** was made whether prior to or during the **Policy Period**.

D.    **NOTICE REQUIREMENTS** - Notice of **Claims** and **Potential Claims** shall be effective on the date of receipt by the **Insurer**. All notices under this subsection must be sent in writing to the address set forth in Item 8. of the Declarations Page and will be effective upon receipt.

E.    **CROSS COVERAGE NOTICE** - It is agreed that notice provided to the **Insurer** of any **Claim**, **Potential Claim** or circumstances which may give rise to a **Claim** under any **Coverage Part** shall be deemed to have been provided under the **Policy** in its entirety.

## SECTION VI – DEFENSE OF CLAIMS, INSURED'S DUTIES AND RESPONSIBILITIES, ALLOCATION, AND ARBITRATION

A.    **DEFENSE OF CLAIMS** – The **Insurer** does not assume any duty-to-defend a **Claim**.  The **Insured** shall defend and contest any **Claim** made against them, provided that:

1.    the **Insurer** will have the right to participate with the **Insured** in the investigation, defense and settlement, including the negotiation of a settlement of any **Claim** that appears reasonably likely to be covered in whole or in part by such **Coverage Part** and the selection of appropriate defense counsel;

2.    the **Insurer** may establish and provide to counsel for the **Insured** guidelines for the handling of **Claims** covered under this **Policy**. As a condition of the **Insurer's** obligation to pay **Defense Expenses**, counsel for the **Insured** shall adhere to the guidelines provided by the **Insurer** in the defense of such **Claims**. The **Insurer** shall not be obligated to pay **Defense Expenses** that have been incurred without observance of the guidelines, or that otherwise are unreasonable; and

3.    upon written request, the **Insurer** will advance **Defense Expenses** with respect to such **Claim**. Such advanced payments by the **Insurer** will be repaid to the **Insurer** by the **Insureds** severally according to their respective interests in the event and to the extent that the **Insureds** are not entitled to payment of such **Defense Expenses**. As a condition of any payment of **Defense Expenses** under this subsection, the **Insurer** may require a written undertaking on terms and conditions satisfactory to the **Insurer** guaranteeing the repayment of any **Defense Expenses** paid to or on behalf of any **Insured** if it is finally determined that any such **Claim** or portion of such **Claim** is not covered.

B.    **INSURED'S DUTIES AND RESPONSIBILITIES** – It shall be the duty and responsibility of the **Insured**, as a condition precedent to any coverage under this **Policy**:

1.    to grant to the **Insurer** the right to associate itself in defense and settlement of any **Claim** that appears reasonably likely to involve the **Insurer**;

2.    not to, except at personal cost, make any payment, admit any liability, settle any **Claims**, assume any obligation, or incur any expense without the **Insurer's** written consent, which consent shall not be unreasonably withheld;

3.    to assert all appropriate defenses and to take all steps in defense of any **Claim** made, including but not limited to, releasing to the **Insurer** all copies of reports, investigations, pleadings and other papers as soon as reasonably possible and to provide the **Insurer** with such information, assistance and cooperation as the **Insurer** may reasonably request to determine the existence or extent of the **Insurer's** obligation; and

4.   to conduct all matters relative to any **Claim** or **Potential Claim** as if coverage under this **Policy** were not otherwise afforded, including but not limited to not admitting any liability for, settling any **Claim,** or incurring any **Defense Expenses** without the prior written consent of the **Insurer**, which consent shall not be unreasonably withheld.

C.   <u>**ALLOCATION**</u> – If there is a **Claim** under any **Coverage Part** in which the **Insured** incurs an amount consisting of both covered **Loss** and uncovered loss because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, the **Insured** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of all such amounts. In making such a determination, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and settlement of the **Claim** by the **Insured Persons**, the **Company**, and others not insured under the applicable **Coverage Part**. In the event that an allocation cannot be agreed to, then the **Insurer** will be obligated to make an interim payment of the amount of **Loss** which the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of the applicable **Coverage Part** and applicable law.

D.   <u>**ARBITRATION**</u> – If the **Insured** and the **Insurer** cannot agree on an allocation of **Defense Expenses**, if requested by the **Insured**, the **Insurer** shall submit the allocation dispute to binding arbitration. In such case:

1.   no presumption as to allocation shall exist in any arbitration, suit or other proceeding; and

2.   the **Insurer** shall advance on a current basis **Defense Expenses** which the **Insurer** believes to be covered under this **Policy** until a different allocation is negotiated, arbitrated or judicially determined.

The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel. The arbitration panel shall consist of one arbitrator selected by the **Insured**, one arbitrator selected by the **Insurer**, and a third independent arbitrator selected by the first two arbitrators. In any such arbitration, each party will bear its own legal fees and expenses. Any negotiated, arbitrated or judicially determined allocation of **Defense Expenses** will be applied retroactively to all **Defense Expenses**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Defense Expenses** shall not apply to or create any presumption with respect to the allocation of other **Loss** arising from such **Claim** or any other **Claim**.

## <u>SECTION VII – ACQUISITIONS, CREATIONS AND ASSET PURCHASES/ASSUMPTIONS</u>

A.   <u>**NOTICE/COVERAGE REQUIREMENTS**</u> - If, during the **Policy Period**, the **Company**:

1.   acquires or forms a **Subsidiary**;

2.   acquires any entity by such entity's merger into, or consolidation with, the **Company** such that the **Company** is the surviving entity; or

3.   purchases assets or assumes liabilities of another entity, without acquiring such entity,

then coverage will be provided for such acquired or formed entity and its **Insured Persons**, or for such purchased assets or assumed liabilities for ninety (90) days, subject to all other terms and conditions of this **Policy**, provided that the:

a.   **Company** provides written notice to the **Insurer** and any requested information regarding the transaction within such ninety (90) day period;

b.   **Company** accepts any special terms, conditions and/or Exclusions and pays any additional premium required by the **Insurer**; and

c.   **Insurer**, at its sole discretion, agrees in writing to provide such coverage.

B.   <u>**AUTOMATIC COVERAGE EXTENSION**</u> - The ninety (90) day limitation of coverage and ninety (90) day notice requirement referenced in A. above shall not apply, if during the **Policy Period** the **Company**:

1.   creates or acquires a **Subsidiary** or purchases or assumes assets or liabilities totaling less than thirty percent (30%) of the total assets of the **Company** (as reflected in the **Company's** most recent fiscal year-end financial statement at time of the transaction); or

2. the purchase of assets or assumption of liabilities occurs less than ninety (90) days prior to the end of the **Policy Year**.

C. **MERGED/ACQUIRED ENTITIES** - Any coverage afforded under this section will be subject to all other terms and conditions of this **Policy** and will only extend to **Claims** made for **Wrongful Acts** relating to, or in connection with, such acquisition, formation, purchased assets, or assumed liabilities committed after such acquisition, formation, purchase of assets, or assumption of liabilities, unless the **Insurer** agrees in writing to provide for **Wrongful Acts** committed before such acquisition, creation, purchase of assets, or assumption of liabilities.

## SECTION VIII—CANCELLATION, NON-RENEWAL AND CONVERSION

A. **CANCELLATION**

1. This **Policy** may be cancelled at any time by the **Parent Company** for itself and as agent for all other **Insureds**, by providing written notice to the **Insurer**.  If this **Policy** is canceled by the **Parent Company**, the **Insurer** shall retain the customary short rate portion of the premium. If this **Policy** is canceled by the **Insurer**, the **Insurer** shall retain the pro-rata portion of the premium. Payment or tender of any unearned premium by the **Insurer** to the **Parent Company** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

2. The **Insurer** may cancel this **Policy** by mailing or delivering to the **Parent Company** written notice of cancellation stating when, not less than sixty (60) days thereafter, such cancellation shall be effective. The **Insurer** may cancel this **Policy** for nonpayment of premium, in which case ten (10) days written notice shall be given to the **Parent Company.** If the **Insurer** cancels the **Policy** for nonpayment of premium, the **Policy** may, at the **Insurer's** option, be deemed void from its inception.

B. **NON-RENEWAL** - If the **Insurer** elects not to renew this **Policy**, the **Insurer** shall provide the **Parent Company** for itself and as agent for all **Insureds**, with no less than sixty (60) days advance written notice of when the non-renewal shall become effective and the reason(s) for such action.

C. **CONVERSION** - Upon the occurrence of any of the following events, this **Policy** shall continue in full force and effect with respect to **Claims** for **Wrongful Acts** committed or allegedly committed before such event, but coverage shall cease with respect to **Claims** for such **Wrongful Acts** committed or allegedly committed after such event (herein called the Conversion Period):

1. **Financial Insolvency** of the **Company** or any **Subsidiary** comprising more than fifty percent (50%) of the **Company's** total assets;

2. **Change of Control**; or

3. the **Company** or any **Subsidiary** ceasing to engage actively in its primary business.

Pursuant to this Conversion Period, this **Policy** may not be cancelled and the entire premium shall be deemed fully earned. If the Extended Reporting Period is elected, it will run concurrently with the Conversion Period.

In the event of **Financial Insolvency** or sale of a **Subsidiary** comprising less than fifty percent (50%) of the **Parent Company's** total assets, this Conversion Period provision shall apply only to the **Subsidiary** and its **Insured Persons** and the **Policy** shall continue in full force with respect to all other **Insureds**.

D. **NOTICES** - The **Insurer** will mail any cancellation or non-renewal notice to the mailing address shown in Item 1.(a) of the Declarations Page. If notice is mailed, proof of mailing will be sufficient proof of notice. If the period of limitation relating to the giving of notice is prohibited or made void by any law, such period shall be amended so as to be equal to the minimum period of limitation permitted by such law.

## SECTION IX - EXTENDED REPORTING PERIOD (ERP)

A.  **ERP AVAILABILITY** - If the **Company** or the **Insurer** cancels or nonrenews this **Policy**, or if the **Policy** converts subject to Section VIII C.2., the **Insured** shall have the right to purchase the Extended Reporting Period.  At any time prior to or within sixty (60) days after the effective date of cancellation, non-renewal or conversion, the **Insured** may give the **Insurer** written notice that it desires to purchase the Extended Reporting Period. It is understood and agreed that the Extended Reporting Period shall not be made available if:

1. the **Insurer** cancels this **Policy** due to nonpayment of premium; or

2. there is an offer by the **Insurer** to renew this **Policy** under terms, conditions, Limits of Liability, Retentions or premiums different from those applicable to the expiring **Policy** as such offer of coverage shall not constitute a refusal to renew.

B.  **ERP TERMS AND CONDITIONS** – The Extended Reporting Period shall be subject to the following terms and conditions:

1. The coverage term for the Extended Reporting Period shall be the period set forth in Item 6. of the Declarations Page.  The premium due will be calculated by multiplying the fully annualized premium for such coverage by the percentage reflected in Item 6.(a) of the Declarations Page and the entire premium will be deemed to have been fully earned at the commencement of such Extended Reporting Period.

2. There is no separate or additional Limit of Liability for the Extended Reporting Period. The **Insurer's** maximum Limit of Liability for all **Claims** made during such Extended Reporting Period will be the remaining portion of the applicable Limit of Liability set forth in the Declarations Page for the **Policy Year** immediately preceding the effective date of the Extended Reporting Period.

3. The Extended Reporting Period is not an extension of coverage, but rather an extended period to report **Claims** first made during the Extended Reporting Period resulting from **Wrongful Acts** that occurred prior to the effective date of cancellation, nonrenewal or conversion and otherwise covered under this **Policy**. Notice of facts and circumstances that may give rise to a **Claim**, pursuant to Section V.B., must be given during the **Policy Period** and shall not be effective if given during the Extended Reporting Period.

## SECTION X– REPRESENTATIONS AND SEVERABILITY

A.  **REPRESENTATIONS** - It is agreed and represented that the particulars and statements contained in the **Application** are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy**. By acceptance of this **Policy**, the **Insured** agrees that:

1. each **Application** shall be construed as a separate **Application** for coverage by each **Insured Person**;

2. this **Policy** shall not be deemed to be a series of individual insurance contracts with the **Company** and each of the **Insured Persons**; and

3. the statements in the **Application** are their representations, and that this **Policy** is issued in reliance upon the truth of such representations. No misrepresentation by the **Insured** shall be deemed material unless knowledge by the **Insurer** of the facts misrepresented would have led to the refusal by the **Insurer** to issue or renew the **Policy** for the premium charged and with the same terms and conditions as offered based on the **Insurer's** uniformly applied underwriting guidelines.

B.  **SEVERABILITY** - The **Insureds** agree that in the event the **Application** contains material misrepresentations made with the actual intent to deceive, no coverage will be provided under this **Policy** with respect to:

1. any **Insured Person** who knew of any fact, circumstance or situation that was not truthfully disclosed in the **Application**;

2.      the **Company**, to the extent the **Company** indemnifies the **Insured Person** reflected in Item 1 above; or

3.      the **Company**, to the extent coverage is granted to the **Company** by any Insuring Agreement made a part of this **Policy**, if any past, present, or future chief financial officer, in-house counsel, chief executive officer, President or Chairman of the Board of the **Company**, or any person holding any equivalent position within the **Company** (regardless of title), knew of any fact, circumstance or situation that was not truthfully disclosed in the **Application**.

The foregoing conditions shall apply whether or not the **Insured Person** actually knew that the misrepresentation or untruthful disclosure was made in the **Application** for coverage.

C.     **SEVERABILITY OF EXCLUSIONS** - With respect to the Exclusions contained in each **Coverage Part**, in order to determine if coverage is available:

1.      no **Wrongful Act**, fact pertaining to, or knowledge possessed by any **Insured Person** will be imputed to any other **Insured Person**; and

2.      all facts pertaining to and knowledge possessed by any past, present, or future chief financial officer, in-house counsel, chief executive officer, President or Chairman of the Board of the **Company**, or any person holding any equivalent position within the **Company** (regardless of title), shall be imputed to the **Company** with respect to the Fraud/Illegal Profit and Violation of Law Exclusion.

## SECTION XI - OTHER TERMS AND CONDITIONS

A.     **ACTION AGAINST THE INSURER** - No action shall be taken against the **Insurer** unless, as a condition precedent, there shall have been full compliance with all of the terms of this **Policy**, and until the **Insured's** obligation to pay shall have been finally determined either by adjudication or by written agreement of the **Insureds**, the claimant and the **Insurer**.

No person or organization shall have any right under this **Policy** to join the **Insurer** as a party to any action against any **Insured** nor shall the **Insurer** be impleaded by the **Insureds** or their legal representatives.

B.     **ASSIGNMENT AND ACCEPTANCE** - By acceptance of this **Policy**, the **Insured** and the **Insurer** agree that this **Policy**, the **Application**, and any written endorsements attached thereto constitute the entire agreement between the parties. Assignment of interest under this **Policy** shall not bind the **Insurer** until its consent is endorsed hereon.

C.     **AUTHORIZATION CLAUSE** - By acceptance of this **Policy**, the **Insureds** agree that the **Parent Company** will act on behalf of all **Insureds** for all purposes under this **Policy** including, but not limited to, giving and receiving of all notices and correspondence, cancellation, nonrenewal or termination of this **Policy**, payment of premiums, the negotiation and acceptance of endorsements, and receipt of any return premiums that may be due under this **Policy**.

D.     **CHANGES** - Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the **Insurer** shall not effect a waiver or a change in any part of this **Policy** or estop the **Insurer** from asserting any right under the terms of this **Policy**, nor shall the terms, conditions and limitations of this **Policy** be waived or changed, except by written Endorsement issued to form a part of this **Policy**.

E.     **CONFORMITY TO STATUTE** - The terms of this **Policy** that are in conflict with the terms of any applicable laws construing this **Policy** are hereby amended to conform to such laws.

F.     **COVERAGE PART COORDINATION** – Subject always to the applicable Limit of Liability, should two or more **Coverage Parts** apply to the same **Claim**, the **Insurer** will not pay more than the actual **Loss** incurred by the **Insureds**.

G.     **COVERAGE TERRITORY** - Coverage under this **Policy** shall extend to **Wrongful Acts** taking place or **Claims** made anywhere in the world.

H.     **INSOLVENCY/BANKRUPTCY** - The **Financial Insolvency** of the **Insured** or of the estate of such **Insured** shall not release the **Insurer** from its obligations nor deprive the **Insurer** of its rights under this **Policy**.

I.   **LIBERALIZATION** – If during the **Policy Period**, the **Insurer** is required, by law or by insurance supervisory authorities of  the state in which this **Policy** was issued, to make any changes in the form of this **Policy**, by which the insurance afforded by this **Policy** could be extended or broadened without increased premium charge by endorsement or substitution of form, then such extended or broadened insurance will inure to the benefit of the **Insured** as of the date the revision or change is approved for general use by the applicable department of insurance.

J.   **STATE AMENDATORY DISCREPANCY PROVISION** - In the event that there is a discrepancy between a state amendatory endorsement attached to this **Policy** and any term or condition of this **Policy**, then it is understood and agreed that, where permitted by law, the **Insurer** shall apply the most favorable terms in the contract to the **Insured**, whether those terms and conditions are in either the amendatory or the **Policy**.

K.   **LOSS INFORMATION** - The **Insurer** will provide **Loss Information** to the **Company** within ten (10) days of the **Company's** request or, if required by statute, at the same time as any notice of cancellation or nonrenewal of this **Policy**.

L.   **SUBROGATION** - In the event of payment under this **Policy**, the **Insurer** is subrogated to all of the **Insured's** rights of recovery against any person or organization to the extent of such payment and the **Insured** agrees to execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing to prejudice such rights.

M.   **TITLES OF PARAGRAPHS** - The descriptions in the headings and sub-headings of this **Policy** are inserted solely for convenience or reference and form no part of the terms and conditions of coverage.

# AMTRUST   *FI Advantage*

| | Policy No.  WDO1975148 03 |
|---|---|

### WESCO INSURANCE COMPANY
(A Stock Insurance Company, herein called the **Insurer**)

### FINANCIAL INSTITUTION
### PROFESSIONAL LIABILITY COVERAGE PART

**This is a claims-made policy. Defense Expenses are included within the Limit of Liability. Amounts incurred as Defense Expenses will reduce the Limit of Liability available to pay judgments or settlements. Please read this Policy carefully!**

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations Page and **Application**, the **Insurer** and the **Insured** agree that coverage will be provided subject to all of the terms, conditions and limitations of this **Policy**, as follows:

## SECTION I-INSURING AGREEMENTS

A.   **LENDER LIABILITY** - The **Insurer** will pay on behalf of the **Insured**, **Loss** resulting from any **Claim** first made during the **Policy Period** or Extended Reporting Period (if exercised), by or on behalf of a **Borrower** for a **Wrongful Lending Act**.

B.   **PROFESSIONAL SERVICES LIABILITY** - The **Insurer** will pay on behalf of the **Insured**, **Loss** resulting from a **Claim** first made during the **Policy Period** or Extended Reporting Period (if exercised), by or on behalf of a customer of the **Company** for a **Wrongful Professional Services Act**.

C.   **TRUST SERVICES LIABILITY** - The **Insurer** will pay on behalf of the **Insured**, **Loss** resulting from a **Claim** first made during the **Policy Period** or the Extended Reporting Period (if exercised), for a **Wrongful Trust Services Act**.

## SECTION II – DEFINITIONS

In addition to the Definitions set forth in General Terms and Conditions Applicable to All Insuring Agreements, the following Definitions apply to all Insuring Agreements contained herein.

**Borrower** means any individual or entity to which the **Company** extends, agrees to extend, or refuses to extend, a loan, lease or extension of credit; or any individual or entity that is a guarantor of any such loan, lease or extension of credit.

**Claim** means:

1.   a written demand for monetary damages or non-monetary relief;

2.   a civil proceeding commenced by the service of a complaint or similar pleading;

3.   a criminal proceeding commenced by a filing of charges or return of an indictment;

4.   a formal administrative or regulatory proceeding commenced by a filing of charges, formal investigative order, service of summons, or similar document;

5.   an arbitration, mediation or similar alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the **Insurer's** written consent, such consent not to be unreasonably withheld; or

6.   a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

against an **Insured** for a **Wrongful Act** including any appeal from such proceeding.

**Depositor Services** means only those services an **Insured** performs or is required to perform for a customer of the **Company** in connection with establishing, maintaining, administering or servicing any FDIC or NCUA insured deposit account or processing any transaction related to such account.

**Employee** means any natural person whose labor or service was, is or shall be engaged and directed by the **Company** including full-time, part-time, seasonal, leased and temporary employees as well as volunteers. **Employee** shall not include any **Independent Contractor**.

**Executive** means any natural person who was, is or shall be a duly elected or appointed:

1.   director, officer, or member of the board of managers or management committee of the **Company**;

2.   head of any **Trust Department** or **Trust Company**;

3.   branch manager of the **Company**; or

4.   manager of a **Company** organized outside the United States of America if such position is equivalent to those specified in 1. or 2. above.

**Incidental Insurance Services** means the sale of credit life or disability insurance incidental to the issuance of a loan.

**Insured** means the **Insured Persons** and the **Company**.

**Insured Person** means any:

1.   **Executive**; or

2.   **Employee**.

**Lending Services** means:

1.   an agreement or refusal to grant or extend any  loan, lease or extension of credit;

2.   the granting or extending of any  loan, lease or extension of credit;

3.   **Loan Servicing**, but only for any  loan, lease or extension of credit in which the **Company** has an ownership interest;

4.   the restructure, termination, transfer, repossession, or foreclosure of any loan, lease or extension of credit; or

5.   the rendering or failure to render **Incidental Insurance Services**.

**Loan Servicing** means the administrative servicing of a loan, lease or extension of credit (not including financing for investment banking, or leveraged or management buy-outs), including the following administrative servicing activities: record keeping, billing and disbursements of principal or interest, receipt or payment of insurance premiums and taxes, credit reporting or statements of a customer's creditworthiness, and determination of the depreciation amount of property (but not projections of, or an appraisal for, residual or future value of property).

**Loan Servicing** shall not include the purchase, acquisition or sale of any loan, lease or extension of credit, the restructuring, termination, transfer, repossession, or foreclosure of any such loan, lease or extension of credit, or any act based upon or arising out of the operation or control of any entity or property that the **Company** acquired as security or collateral for any loan, lease or extension of credit.

**Loss** means **Defense Expenses** and any amount the **Insured** is legally obligated to pay resulting from a **Claim**, including damages, judgments, settlements, punitive or exemplary damages or the multiple portion of any multiplied damage award (if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages), prejudgment and post judgment interest, and legal fees and expenses awarded pursuant to a court order or judgment. **Loss** shall not include:

1.   payroll or other taxes;

2.   criminal or civil fines or penalties imposed by law;

3.   any unpaid, unrecoverable or outstanding amounts resulting from a loan, lease or extension of credit to any **Borrower**, including unpaid, unrecoverable or outstanding amounts resulting from a loan, lease or extension of credit which has been sold as a participation to other financial institutions;

4.    costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, including but not limited to any damages, costs or expenses incurred in making an accommodation for any disabled person pursuant to the Americans with Disabilities Act or any similar federal, state or local laws, or in complying with any other federal, state or local laws of any kind;

5.    the depreciation (or failure to appreciate) in value of any investment product, including but not limited to securities, commodities, currencies, options or futures due to market fluctuation unrelated to any **Wrongful Act**;

6.    any restitution, disgorgement, or payment of similar payments including, but not limited to the return of fees, commissions or charges for the **Company's** services; or

7.    any matters which are uninsurable under the law pursuant to which this **Policy** shall be construed.

Where the **Company** reasonably determines that punitive, exemplary or multiple damages are insurable under the applicable law, the **Insurer** shall not challenge that interpretation of insurability.

**Professional Services** means services performed by the **Insured** for or on behalf of a customer of the **Company** pursuant to a written agreement between such customer and the **Company** or, with respect to **Loan Servicing**, pursuant to a written agreement between a third party and the **Company**:

1.    for a fee, commission or other monetary compensation;

2.    for no fee, commission or other monetary compensation, if a fee, commission, or other monetary compensation would usually be received by the **Company** for such services, but for business or other reasons is waived or not charged by the **Company**; or

3.    for other remuneration which inures to the benefit of the **Company**,

including **Depositor Services**, services performed outside of a **Trust Department** or a **Trust Company** by any **Insured** in the capacity as a trustee, custodian or administrator of any individual retirement account (IRA) or H.R. 10 Plan (Keogh Plan), or **Loan Servicing** that the **Insured** performs or is required to perform for a customer of the **Company** on behalf of a third party.

**Trust Company** means any **Company** specifically formed for the purpose of performing wealth management and fiduciary services, including agency services and acting as a trustee of, or administering, a trust or settling estates.

**Trust Department** means a distinct unit or division of the **Company** specifically formed for the purpose of performing wealth management and fiduciary services, including agency services and acting as a trustee of, or administering, a trust or settling estates.

**Trust Services** means any of the following services performed by the **Insured** through a **Trust Company**, **Trust Department** or Trust **Subsidiary** of the **Company**:

1.    administrator, custodian or trustee under any individual retirement account (IRA) or H.R. 10 Plan (Keogh Plan);

2.    executor, administrator or personal representative of estates, administrator of guardianships, trustee under personal or corporate trust agreements, or conservator of any person;

3.    trustee under a pension, profit sharing, health and welfare or any other employee benefit plan or trust, other than an employee benefit plan or trust sponsored or established by the **Company** for its own **Employees**;

4.    custodian, depository or managing agent for securities or real property, manager of any personal property owned by others, attorney-in-fact, interest or dividend disbursing agent, transfer or paying agent, redemption or subscriptions agent, fiscal agent, tax withholding agent, registrar of securities, agent for voting securities, sinking fund agent, escrow agent or trustee under a corporate bond indenture; or

5.    trustee exercising any other trust or fiduciary powers permitted by law.

**Wrongful Act** means:

1.    solely with respect to Insuring Agreement A., any actual or alleged **Wrongful Lending Act**;

2.    solely with respect to Insuring Agreement B., any actual or alleged **Wrongful Professional Services Act**; or

3.    solely with respect to Insuring Agreement C., any actual or alleged **Wrongful Trust Services Act**.

**Wrongful Lending Act** means any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by any **Insured** in rendering or failing to render **Lending Services**. **Wrongful Lending Act** does not include a **Wrongful Professional Services Act** or a **Wrongful Trust Services Act**.

**Wrongful Professional Services Act** means any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by any **Insured** in the rendering of, or failure to render **Professional Services**. **Wrongful Professional Services Act** does not include a **Wrongful Lending Act** or a **Wrongful Trust Services Act**.

**Wrongful Trust Services Act** means any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by the **Insured** in the rendering of, or failure to render, **Trust Services** by a **Trust Department** or a **Trust Company** pursuant to a written agreement:

1.    for a fee, commission or other monetary compensation;

2.    for no fee, commission or other monetary compensation if a fee, commission, or other monetary compensation would usually be received by the **Company** for such services, but for business or other reasons is waived or not charged by the **Company**; or

3.    for other remuneration which inures to the benefit of the **Company**.

**Wrongful Trust Services Act** does not include **Wrongful Professional Services Act** or **Wrongful Lending Act**.

## SECTION III — EXCLUSIONS

### A.    EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

**Bodily & Personal Injury/Property Damage** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** for bodily injury, sickness, disease or death of any person, or damage to, loss of use or destruction of any tangible property; provided, however, that this exclusion shall not apply to **Claim** for emotional distress, mental anguish or humiliation under Insuring Agreement A. Lender Liability.

**Cyber Liability** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to:

1.    the inability of an authorized user to gain access to a network;

2.    electronic information damage or theft to a network;

3.    the suspension or interruption of any network;

4.    electronic infection of any network;

5.    an attack executed over one or more networks or the Internet that disrupts the operation of a network or renders a network inaccessible to authorized users; or

6.    the unauthorized access to any electronic data processing system of the **Company**.

**Bonding/Insurance Company** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** brought directly or indirectly by or for the benefit of any insurance carrier or bond carrier of the **Company**, or any affiliate of the **Company**, regardless in whose name such **Claim** is actually made.

**Fraud/Illegal Profit and Violation of Law** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to:

1.    the gaining, of any profit, remuneration or pecuniary advantage to which such **Insured** is not legally entitled; or

2.    any fraudulent or criminal **Wrongful Act** with actual knowledge of its wrongful nature or with intent to cause damage by such **Insured**,

as evidenced by a final adjudication by a judge, jury or arbitrator in any proceeding.

**Insured vs. Insured** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** by, on behalf of, or at the behest of any **Insured** in any capacity; provided, however, that this exclusion will not apply to:

1.    any **Claim** that is in the form of a cross claim, third party claim or other claim for contribution or indemnity which is part of, or results directly from a **Claim** which is not otherwise excluded by the terms of this **Coverage Part**; or

2.    any **Claim** brought or maintained by an **Insured Person** solely as a customer of the **Company**; provided such **Claim** is brought independently of, and totally without the solicitation, assistance, participation, or intervention of any other **Insured**.

**Non-Subsidiary Wrongful Acts** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any **Wrongful Act** by any entity that is, or was, a **Subsidiary**, or by any **Insured Person** of such entity, occurring at any time during which such entity was not a **Subsidiary**.

**Outside Capacity Exclusion** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** involving any **Insured Person** in their capacity as an employee, director, officer, trustee, governor, member of the board of managers, or any equivalent position, of any entity other than the **Company**, even if such service is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the **Insured Person** by the **Company**.

**Past Acts** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any actual or alleged **Wrongful Acts** committed on or before the Retroactive Date set forth in Item 5. (b) of the Declarations Page or any **Wrongful Acts** occurring prior to such date which together with **Wrongful Acts** occurring on or after such date would constitute **Interrelated Wrongful Acts.**

**Pollution** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to:

1.    the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any **Pollutant**; or

2.    any request, demand, order, or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, any **Pollutant**;

provided, however, that this exclusion shall not apply to the portion of any **Claim** based upon, arising out of, or in consequence of the diminution in value of any securities in connection with an **Insured's** investment on behalf of a customer in any organization, other than the **Company**, if such diminution in value is allegedly as a result of a **Pollutant**.

**Prior Knowledge/Litigation** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to:

1.    any fact, circumstance, situation, or event that is or reasonably would be regarded as the basis for a **Potential Claim** about which any **Executive Officer** had knowledge prior to the date of the initial **Application** for coverage; or

2.    any prior or pending civil, criminal, administrative or regulatory proceeding initiated against any **Insured** prior to the applicable Prior and Pending Litigation Date(s) set forth in Item 5.(a) of the Declarations Page, or arising out of or in any way involving the same or substantially the same fact, circumstance, situation or **Wrongful Act** underlying or alleged in such prior or pending civil, criminal, administrative or regulatory proceeding.

**Prior Notice** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any **Wrongful Act** or any **Wrongful Act** which is part of any **Interrelated Wrongful Acts**, or any fact, circumstance or situation, which has been the subject of any notice given to any carrier other than the **Insurer** under any similar insurance policy providing protection for any **Insured**.

**Safe Deposit Box** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any safe deposit box operations of the **Company**.

**Violation of Lending Law** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any intentional violation of federal or state laws or regulations relating to extensions or denials of credit, including the Truth-in-Lending Act, Equal Credit Opportunity Act, Fair Credit Reporting Act, Fair Debt Collection Practices Act, the Home Owners Equity Protection Act of 1994, Fair Credit Billing Act, and usury laws or regulations, as amended.

B.   **EXCLUSIONS APPLICABLE TO LENDER LIABILITY COVERAGE**

**Financial Insolvency** - The **Insurer** shall not be liable under Insuring Agreement A. to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to **Financial Insolvency**.

**Foreclosed Property** - The **Insurer** shall not be liable under Insuring Agreement A. to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any error, misstatement, misleading statement, act, omission, neglect or breach of duty arising out of the operation or control of any entity or property that the **Company** acquired as security or collateral for any loan, lease or extension of credit; provided, however, that this exclusion shall not apply to **Claims** resulting from **Wrongful Acts** in connection with the foreclosure process or the ownership, operation management or control of any one (1) to four (4) family residential property.

**Legal Lending Limit Violation** - The **Insurer** shall not be under Insuring Agreement A. to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any **Wrongful Lending Act** in connection with a loan, lease or extension of credit that was, at the time of its making, in excess of the legal lending limit of the **Company**.

**Lending/Advisory Services** - The **Insurer** shall not be liable under Insuring Agreement A. to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any lending or advisory services where such services are not reasonably regarded as part of the process of extending a loan, lease or extension of credit to a **Borrower**.

C.   **EXCLUSIONS APPLICABLE TO PROFESSIONAL SERVICES LIABILITY AND TRUST SERVICES LIABILITY COVERAGES**

**Contractual Liability** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any liability under any contract or agreement; provided, however, that this exclusion shall not apply to:

1.   the extent that the **Company** would have been liable in the absence of the contract or agreement;

2.   **Defense Expenses** to the extent that such **Claim** alleges a breach of contractual obligations because of a **Wrongful Professional Services Act** or a **Wrongful Trust Services Act**; or

3.   the extent that the **Company** has agreed to indemnify an **Employee** whose services have been leased to the **Company**.

**ERISA** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** for any actual or alleged violation of the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA** or any similar law.

**Failure to Maintain Insurance** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any failure of the **Insureds** to effect or maintain adequate insurance.

**Fee Dispute** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any disputes over fees, commissions, or charges for the **Company's** services.

**Forgery** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** for:

1.  accepting, paying or cashing any instrument which bears a forged, altered or      unauthorized signature or endorsement;

2.  acquiring, selling, transferring, paying or delivering any funds or property, extending any credit or giving any value, on the faith of any instruction or advice which:

    a.  bears a forged signature; or

    b.  has been altered without the knowledge and consent of the person or entity who signed or endorsed the instruction or advice; or

3.  guaranteeing in writing or witnessing any handwritten signature, which:

    a.  is on a transfer, assignment, bill of sale, power of attorney, evidence of debt, guarantee, endorsement or similar written document; and

    b.  is forged or altered.

**Guarantees** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to the **Insured's** actual or written representations, promises or guarantees regarding the past performance or future value of any investment product.

**Investment Performance** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon or attributable to the depreciation, or failure to appreciate, in value of any investments, including securities, commodities, currencies, options or futures; provided, however, that this exclusion will not apply to any such depreciation, or failure to appreciate, resulting from negligence on the part of any **Insured** in failing to effect a specific investment transaction in accordance with the specific prior instructions of a customer of the **Company**.

**Investment Banking/Securities Underwriting** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to:

1.  underwriting, syndicating or promoting any security (except loan syndications or equity or debt securities issued by the **Company**);

2.  rendering of advice or recommendations regarding any actual or attempted or threatened merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, bankruptcy, reorganization, restructuring, recapitalization, spin-off, offering of securities, dissolution or sale of all or substantially all of the assets or stock of an entity;

3.  rendering of any fairness opinion;

4.  proprietary trading;

5.  any acquisition or sale of securities of the **Company** for its own account; or

6.  any other investment banking activity,

including any disclosure requirements in connection with any of the foregoing.

**Lost Property** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to the actual physical loss of, or damage to, money, securities, property or other items of value in the care, custody or control of the **Company**, its correspondent bank or other authorized representative, including money, securities, property or other Items of value stored in a safe deposit box at, or in transit while in the care, custody or control of, the **Company**, its correspondent bank or other authorized representative.

**Mechanical Malfunction** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to the mechanical or electronic failure, breakdown or malfunction of any machine or system of machines.

**Notary Services** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to the notarization or certification of a signature of a person unless that person, or someone claiming to be that person, physically appeared before the **Insured** at the time of such notarization or certification.

**Other Services** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to:

1.  **Lending Services**;

2.  services performed by any entity which the **Company** has acquired or is in control of, as security or collateral for an extension of credit;

3.  the practice of law or the rendering of legal services;

4.  architectural or construction management services; or

5.  services provided to customers as an enrolled actuary as that term is used in or in connection with **ERISA**.

**Receiver/Trustee in Bankruptcy** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to the **Company** serving as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of creditors.

**Stop Payment Liability** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to the failure to comply with any notice of any customer of the **Company**, or any authorized representative of such customer, to stop payment on any check or draft made or drawn by such customer, or the wrongful dishonor of, or wrongful failure to certify, any check or draft made or drawn by any customer of the **Company** or any authorized representative of such customer.

**Insolvency** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to the insolvency, conservatorship, receivership, bankruptcy, or liquidation of, or financial inability to pay or suspension of payment by, any bank or banking firm, investment company, investment bank, broker or dealer in securities or commodities, insurance or reinsurance entity, or any other organization of a similar nature (other than the **Company**); provided, however, that this exclusion will not apply to the extent such **Claim** alleges a covered **Wrongful Professional Services Act** or **Wrongful Trust Services Act** solely in connection with an **Insured's** investment on behalf of a customer in the stock of any of the foregoing entities.

## SECTION IV - OTHER TERMS AND CONDITIONS

This Section will supplement and not replace, Section XI., entitled "Other Terms And Conditions" contained in the General Terms and Conditions Applicable to All Coverage Parts.

A.   **ADDITION OF A NEW PROFESSIONAL SERVICE** - If, during the **Policy Period**, the **Insured** begins to offer a new **Professional Service**, coverage will be provided for such new **Professional Service** provided written notice has been given to the **Insurer**, together with such documentation and information as the **Insurer** may request, within ninety (90) days after the **Insured** begins to offer such new **Professional Service**. Coverage will not be afforded after ninety (90) days unless the **Insurer** has agreed to provide such coverage, subject to any additional terms and conditions, and payment of any additional premium, as may be required by the **Insurer**. The ninety (90) day notice requirement and the ninety (90) day limitation of coverage will not apply, provided that:

1.   the total projected annual fee income or gross revenue to the **Company** from such new **Professional Service** does not exceed ten (10%) of the annual fee income or gross revenue to the **Company** for all **Professional Services**, as reflected in the **Company's** most recent financial statements as of the inception date of the **Policy Period**; or

2.   the **Company** begins to offer such **Professional Service** less than ninety (90) days prior to the end of the **Policy Period**.

Notwithstanding the foregoing, no coverage will be afforded under this section with respect to any new **Professional Service** specifically excluded from the definition of **Professional Services**.

B.    <u>**OTHER INSURANCE**</u> - This **Coverage Part** shall not be subject to the terms of any other insurance. All **Loss**, including **Defense Expenses**, payable under this **Policy** shall be excess to any other valid and collectible insurance available to any **Insured**, including any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this **Coverage Part** by reference in such other policy to the Policy Number assigned to this **Policy**.

## ASBESTOS EXCLUSION

In consideration of the premium paid, the **Insurer** and the **Insured** agree that this endorsement amends the following **Coverage Parts**:

Professional Liability Coverage Part

The **EXCLUSIONS** Section, Subsection A. of each **Coverage Part** shown above is amended to add the following:

### ASBESTOS

1.  The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon or attributable to bodily injury, property damage, or personal and advertising injury arising out of the actual, alleged or suspected:

    a.  ingestion, inhalation, absorption, presence or exposure or threat of exposure to asbestos in any form, or goods, products containing any form of asbestos;

    b.  use of any form of asbestos in constructing or manufacturing any good, product or structure;

    c.  removal of any form of asbestos from any good, product or structure; or

    d.  manufacture, intellectual development, sale, transportation, storage, or disposal of asbestos or goods or products containing any form of asbestos.

2.  The **Insurer** will not pay:

    a.  **Loss**, cost or expense, including but not limited to **Defense Expenses**, bonds or fees arising out of any request, demand, or order that any **Insured** or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, or mitigate; or in any way respond to or assess the effects of asbestos; or repair, replace or improve any property as a result of such effects; or

    b.  **Loss**, cost or expense arising out of any **Claim** by or on behalf of a government authority because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, or mitigating; or in any way responding to or assessing the effects of asbestos; or repairing, replacing or improving any property as a result of such effects.

3.  This exclusion applies whether or not:

    a.  such **Loss**, cost or expense was caused by the instigation of, or with the direct or indirect involvement of any **Company**, the **Company's Employees**, additional insureds, or other persons on the **Company's** premises or worksite at any time.

    b.  such **Loss**, cost or expense was caused by or arising out of the failure at any time of any **Company**, the **Company's Employees**, additional insureds, or other persons on any **Company's** premises or worksite to supervise or keep the premise or worksite in a safe condition.

All other provisions of the **Policy** shall remain unchanged.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreement or limitations of the above mentioned **Policy**, other than as stated above.

## LEAD EXCLUSION

In consideration of the premium paid, the **Insurer** and the **Insured** agree that this endorsement amends the following **Coverage Parts**:

Professional Liability Coverage Part

The **EXCLUSIONS** Section, Subsection A. of each **Coverage Part** shown above is amended to add the following:

### LEAD

The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon or attributable to any:

1. injury or damage arising out of the actual, alleged, threatened, or suspected:

   a. ingestion, inhalation, absorption, presence, or threat of exposure to lead in any form, or goods or, products containing lead in any form;

   b. use of lead in any form in constructing or manufacturing any good, product or structure;

   c. removal of lead in any form from any good, product or structure;

   d. discharge, dispersal, seepage, migration, release or escape of lead in any form; or

   e. manufacture, intellectual development, sale, transportation, storage or disposal of lead in any form, or goods or products containing lead in any form;

2. **Loss**, cost or expense arising out of any:

   a. request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, lead in any form;

   b. **Claim** by or on behalf of a government authority because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, or mitigating, or in any way responding to, or assessing the effects of lead in any form, or the repair, replacement or improvement of any property as a result of such effects;

   Paragraph 2. applies whether or not such **Loss**, cost or expense:

   i. was caused by the instigation of, or with the direct or indirect involvement of, any **Company**, the **Company's Employees**, additional insureds or other persons on the **Insured's** premises or worksite at any time; or

   ii. arises out of the failure at any time of any **Company**, the **Company's Employees**, additional insureds or other persons on any **Company's** premises or worksite to supervise or keep the premises or worksite in a safe condition; or

3. fines or penalties imposed by a governmental authority because of or in connection with any activity, event, condition or circumstance contained or described in Paragraphs 1. or 2. above.

All other provisions of the **Policy** shall remain unchanged.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreement or limitations of the above mentioned **Policy**, other than as stated above.

## CYBER LIABILITY EXCLUSION

In consideration of the premium paid for this **Policy**, the **Insurer** and the **Insureds** agree that this endorsement amends the following Coverage Parts:

Professional Liability Coverage Part

I.  **SECTION V – EXCLUSIONS** of the Directors & Officers Liability Coverage Part is amended to add the **Cyber Liability** exclusion in paragraph III. of this endorsement.

II.  The **Cyber Liability** exclusion in **SECTION III – EXCLUSIONS** of the Professional Liability Coverage Part is deleted and replaced with the **Cyber Liability** exclusion in paragraph III. of this endorsement.

III.  **Cyber Liability** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to:

1.  theft, loss, disclosure, collection, storage, retention, inability to access, alteration or corruption of, or use or misuse of any **Protected Information**;

2.  failure to report, respond to or disclose the theft, loss, disclosure, collection, storage, retention, inability to access, alteration or corruption of, or use or misuse of any **Protected Information**;

3.  violation of any federal, state, local or foreign statute, law, rule, or regulation (as amended) governing the correction, collection, protection, retention, handling, control, disposal, processing, disclosure, sharing, sale, maintenance, acquisition, storage, access to, use or misuse of any **Protected Information**;

4.  interruption, outage, inability to access, compromise of, or corruption of **Computer Systems** or any data residing thereon;

5.  trading losses, trading liabilities or change in value of accounts; or

6.  loss, transfer or theft of monies, securities or tangible property to, from, or in the care, custody or control of, the **Insured**.

IV.  Solely for the purpose of this endorsement, the **DEFINITIONS** Section of the Directors & Officers Liability Coverage Part and the Professional Liability Coverage Part is amended to add the following definitions:

**Computer System** means any computer hardware, software, any components thereof, or other associated devices or equipment (including, but not limited to wireless and mobile devices), and are owned, operated, controlled, or leased by or on behalf of:

1.  the **Insured**;

2.  any third party from which the **Insured** receives services or products;

3.  any third party to which the **Insured** provides services or products; or

4.  any third party with which the **Insured** has a contractual relationship.

**Data Holder** means a third party:

1.  to which the **Insured** has provided **Protected Information**; or

2.  that has received **Protected Information** on behalf of the **Insured**.

**Protected Information** means any information of others in an **Insured's** or a **Data Holder's** care, custody or control or for which an **Insured** or **Data Holder** is legally responsible, including, but not limited to:

1.  any non-public information that is protected under the **Insured's** publicly available privacy policy (as amended);

2.  information from which an individual may be uniquely and reliably identified or contacted, or which allows access to an individual's financial, medical, or other records or accounts, including, but not limited to an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, account histories, usernames, authentication information, security information, passwords, or biometric information;

3.  any information about and individual that is not publicly available, including, but not limited to videos, photographs, internet browsing history, customer proprietary network information (CPNI), and geolocation information;

4.  any information concerning an individual that is protected pursuant to any federal, state, local or foreign statute, law, rule, or regulation (as amended) intended to govern the correction, collection, retention, handling, control, disposal, processing, disclosure, sharing, sale, maintenance, acquisition, storage, access to, or use or misuse of personal, financial, medical or other sensitive information, including, but not limited to:

    a.  Insurance Portability and Accountability Act of 1996 (as amended) (HIPAA) or the Health Information Technology for Economic and Clinical Health Act (HITECH Act) and their implementing regulations, or protected health-related information under any similar federal, state, local or foreign law;

    b.  the Gramm-Leach Bliley Act of 1999 and its implementing regulations, or protected personal information under any similar federal, state, local or foreign statute, law or regulation;

    c.  the California Security Breach Notification Act (CA SB 1386) and Massachusetts 201 CMR 17;

    d.  the Identity Theft Red Flags under the Fair and Accurate Credit Transactions Act of 2003;

    e.  Fair Credit Reporting Act;

    f.  section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), but solely for alleged violations of unfair or deceptive acts or practices in or affecting commerce;

    g.  the Data Protection Act of 1998 or similar legislation to comply with the European Union Data Protection Directive 95/46/EC of 1995; or by the European Union General Data Protection Regulation (GDPR).

    h.  New York Cybersecurity Regulation (23 NYCRR Part 500);

    i.  the California Consumer Privacy Act of 2018;

    j.  the Biometric Information Privacy Act; or

    k.  other federal, state, local or foreign statutes, laws, rules, or regulations similar to those described above;

5.  any information that is not publicly available, and which is held under an obligation, agreement, or understanding of confidentiality; or

6.  intellectual property including, but not limited to patents, trade secrets, data, designs, interpretations, forecasts, formulas, methods, practices, processes, records, reports, ideas, expressions of ideas, or other item of information that is not available to the general public.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

Professional Liability Coverage Part

A.  The following exclusion is added:

**EXCLUSION CERTIFIED ACTS OF TERRORISM**

"We" will not pay for any "loss" (as defined in the applicable coverage) resulting from any "claim" (as defined in the applicable coverage) based upon, attributable to, or arising, directly or indirectly, out of a "Certified Act of Terrorism".

B.  For the purpose of this endorsement the following definitions are added:

1.  "Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "Certified Act of Terrorism" include the following:

   a.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   b.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2.  The term "we" refers to the Insurance Company providing coverage.

C.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any "loss" (as defined in the applicable coverage) that is otherwise excluded under the coverage(s) list above.

# TEXAS NOTICE OF TOLL-FREE TELEPHONE NUMBERS AND INFORMATION AND COMPLAINT PROCEDURES

## Where you can get information or make a complaint

If you have a question or a problem with a claim or your premium, contact your agent or the insurance company first.  You can also get information or file a complaint with the Texas Department of Insurance.  Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company.  If you don't, you may lose your right to appeal.

## Donde puede obtener información o presenter una queja

Si tiene una pregunta o un problema con una reclamación o con su prima de seguro, comuníquese primero con su el agente o compañía de seguros.  Usted también puede obtener información o presentar una queja ante el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés). Aun si usted presenta una queja ante el Departamento de Seguros de Texas, también debe presentar una queja a través del proceso de quejas o de apelaciones de su compañía de seguros. Si no lo hace, podría perder su derecho para apelar.

**AmTrust Financial Services, Inc.**
To get information or file a complaint with your insurance company:

**Call: VP, Senior Regulatory Counsel, at 866-203-3037**
**Website**: https://amtrustfinancial.com
**Email**: regulatorycompliance@amtrustgroup.com
**Mail**: 800 Superior Avenue East, 21st Floor, Cleveland, OH 44114

To get information or file a claim with your insurance company:

**Toll-free Customer Service**: **1-866-272-9267**
**Toll-free Claims**: **1-888-239-3909**
**Toll-free Claims Cyber**: **1-877-207-1047**
**Website**: https://amtrustfinancial.com
**Claims Email**:
   **General Liability**
      glclaimreport@amtrustgroup.com
   **Commercial Auto**
      commautoclaimreport@amtrustgroup.com
   **Commercial Property**
      commpropertyclaimreport@amtrustgroup.com
   **Cyber Liability**
      amtrustcyberclaims@amtrustgroup,com
   **Professional and Management Liability Claims**
      professionalclaims@amtrustgroup.com
**Mail**:  800 Superior Avenue East, 21st Floor, Cleveland, Ohio 44114

**The Texas Department of Insurance**
To get help with an insurance question, learn about your rights, or file a complaint with the state:

**Call**: 1-800-252-3439
**Online**: www.tdi.texas.gov
**Email**: ConsumerProtection@tdi.texas.gov
**Mail**:  Consumer Protection, MC: CO-CP
         Texas Department of Insurance
         P.O. Box 12030, Austin, TX 78711-2030

**Attach this notice to your policy:** This notice is for information only and does not become a part or condition of the attached document.

**AmTrust Financial Services, Inc.**
Para obtener información o para presentar una queja ante su compañía de seguros:

**Llame**: VP, Senior Regulatory Counsel, at 866-203-3037
**En línea**: https://amtrustfinancial.com
**Correo electrónico**:
      regulatorycompliance@amtrustgroup.com
**Dirección postal**: 800 Superior Avenue East, 21st Floor, Cleveland, OH 44114

Para obtener información o presentar una reclamación ante su compañía de seguros:

**Teléfono gratuito - Servicio al Cliente: 1-866-272-9267**
**Teléfono gratuito - Reclamaciones: 1-888-239-3909**
**Teléfono gratuito - Cibernetica: 1-877-207-1047**
**En línea**: https://amtrustfinancial.com
**Correo electrónico de Reclamaciones**:
   **Responsabilidad civil general**
      glclaimreport@amtrustgroup.com
   **Automovil comercial**
      commautoclaimreport@amtrustgroup.com
   **Propiedad comercial**
      commpropertyclaimreport@amtrustgroup.com
   **Cibernetica** amtrustcyberclaims@amtrustgroup.com
   **Responsabilidad Civil Profesional y Administrativa**
      professionalclaims@amtrustgroup.com
**Dirección postal**: 800 Superior Avenue East, 21st Floor, Cleveland, Ohio 44114

**El Departamento de Seguros de Texas**
Para obtener ayuda con una pregunta relacionada con los seguros, para conocer sus derechos o para presentar una queja ante el estado:

**Llame:** 1-800-252-3439
**En línea**: www.tdi.texas.gov
**Correo electrónico**: ConsumerProtection@tdi.texas.gov
**Dirección postal**: Consumer Protection, MC: CO-CP
         Texas Department of Insurance
         P.O. Box 12030, Austin, TX 78711-2030

**Adjunte Este Aviso A Su Poliza:** Este aviso es solamente para propositos informativos y no se convierte en parte o en condición del documento adjunto.

DN990029TX 1123                                                    Page 1 of 1

## TEXAS AMENDATORY ENDORSEMENT

In consideration of the premium paid for this **Policy**, the **Insurer** and the **Insureds** agree that this endorsement amends the General Terms and Conditions Applicable to All Coverage Parts:

1.   **SECTION II – DEFINITIONS** is amended to add the following:

**Extended Reporting Period** means the Automatic Extension Period and the optional Extended Reporting Period.

2.   **SECTION VI – DEFENSE OF CLAIMS, INSURED'S DUTIES AND RESPONSIBILITIES, ALLOCATION AND ARBITRATION** is amended to add the following:

**NOTICE OF SETTLEMENT** – The **Insurer** will notify the **Parent Company** in writing of:

1.   An initial offer to compromise or settle a **Claim** made or suit brought against any **Insureds** under this **Policy**.  The notice will be given not later than the 10th day after the date on which the offer is made.

2.   Any settlement of a **Claim** made or suit brought against the **Insureds** under this **Policy**. The notice will be given not later than the 30th day after the date of settlement.

3.   **SECTION VIII – CANCELLATION, NONRENEWAL AND CONVERSION,** Subsection A.2. is deleted and replaced as follows:

A.2.   a.   If this **Policy** has been in effect for less than sixty (60) days and is not a renewal of a **Policy** the **Insurer** issued, the **Insurer** may cancel this **Policy** by mailing to the **Parent Company** written notice stating when such cancellation shall be effective.  The **Insurer** shall provide not less than:

(i)   ten (10) days' notice of its intent to cancel for nonpayment of premium; or

(ii)   sixty (60) days' notice of its intent to cancel for any other reason(s).

b.   If this **Policy** has been in effect for more than sixty (60) days or if this **Policy** is a renewal of a **Policy** the **Insurer** issued, the **Insurer** may cancel this **Policy** by mailing to the **Parent Company** written notice stating when such cancellation shall be effective and the reason(s) therefore.  The **Insurer** shall provide not less than:

(i)   ten (10) days' notice of its intent to cancel for nonpayment of premium; or

(ii)   sixty (60) days' notice of its intent to cancel for any of the following reasons:

(1)   fraud in obtaining coverage;

(2)   an increase in hazard within the control of the **Company** which would produce an increase in rate;

(3)   loss of the **Insurer's** reinsurance covering all or part of the risk covered by this **Policy**; or

(4)   the **Insurer** being placed in supervision, conservatorship or receivership, if the cancellation is approved or directed by the supervisor, conservator or receiver.

4.   **SECTION VIII – CANCELLATION, NONRENEWAL AND CONVERSION,** Subsection B. is deleted and replaced as follows:

B.   **NON-RENEWAL** – If the **Insurer** elects not to renew this policy, the **Insurer** shall provide the **Parent Company** for itself and as agent for all **Insureds,** with no less than sixty (60) days advance

written notice.  If notice is mailed or delivered less than sixty (60) days before the expiration date, this policy will remain in effect until the sixty-first (61st) day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

5. **SECTION VIII – CANCELLATION, NONRENEWAL AND CONVERSION** is amended to add the following:

The **Insurer** may not cancel or nonrenew a **Policy** or contract of insurance based solely on the fact that one or more of the **Insureds** is an elected official.

6. **SECTION IX – EXTENDED REPORTING PERIOD (ERP)** is amended to add the following:

<u>**Automatic Extension Period**</u> - If the **Company** or the **Insurer** cancels or nonrenews this **Policy**, or if the **Policy** converts subject to **SECTION VIII.C.2.,** the **Insured** shall have the right to an automatic extended reporting period (herein called the Automatic Extension Period) for a period of thirty (30) days following the effective date of such cancellation or nonrenewal.  The Automatic Extension Period is not an extension of coverage, but rather an extended period to report **Claims** first made during the Automatic Extension Period resulting from **Wrongful Acts** that occurred prior to the effective date of cancellation, nonrenewal or conversion and otherwise covered under this **Policy**.  The Automatic Extension Period shall be provided at no additional charge to the **Insured**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

## GENERAL TERMS AND CONDITIONS MODIFICATION
## NON-CANCELLATION ENDORSEMENT - TEXAS

In consideration of the premium paid for this **Policy**, the **Insurer** and the **Insureds** agree that this endorsement amends the General Terms and Conditions Applicable to All Coverage Parts:

**SECTION VIII – CANCELLATION, NONRENEWAL AND CONVERSION,** Subsection A.2. is deleted and replaced as follows:

A.  **CANCELLATION**

1.  The **Insurer** may not cancel this **Policy** from 6/16/2025 to 6/16/2026 except for:

    a.  nonpayment of premium, in which case the **Insurer** will provide written notice of cancellation to the **Parent Company** at least ten (10) days before the effective date of cancellation; or

    b.  the taking over of the **Parent Company** by a receiver or other liquidator or by State or Federal officials, in which case the **Insurer** will provide written notice of cancellation to the **Parent Company** at least thirty (30) days before the effective date of cancellation.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

## INDEPENDENT CONTRACTOR ENDORSEMENT

In consideration of the premium paid for this **Policy**, the **Insurer** and the **Insureds** agree that this endorsement amends the following **Coverage Parts**, if purchased and attached to this **Policy**:

Professional Liability Coverage Part


The definition of **Employee** in the **DEFINITIONS** section of each **Coverage Part** shown above is deleted and replaced as follows:

> **Employee** means any natural person whose labor or service was, is or shall be engaged and directed by the **Company** including full-time, part-time, seasonal, leased and temporary employees as well as volunteers. **Employee** also shall mean any **Independent Contractor**, but only if the **Company** provides indemnification to such individual in the same manner as that provided to an **Employee**.


Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

**PROFESSIONAL LIABILITY COVERAGE PART MODIFICATION**
**SPECIFIED PROFESSIONAL SERVICES ENDORSEMENT**

In consideration of the premium paid for this **Policy**, the **Insurer** and the **Insureds** agree that this endorsement amends the Professional Liability **Coverage Part**:

The definition of **Professional Services** in **SECTION II – DEFINITIONS** of the Professional Liability Coverage Part is deleted and replaced as follows:

**Professional Services** means only the services set forth in the Specified Professional Services Schedule below that the **Insured** performs or is required to perform for or on behalf of a customer of the **Company** pursuant to a written agreement between such customer and the **Company** or, with respect to **Loan Servicing**, pursuant to a written agreement between a third party and the **Company**:

1. for a fee, commission or other monetary compensation;

2. for no fee, commission or other monetary compensation, if a fee, commission, or other monetary compensation would usually be received by the **Company** for such services, but for business or other reasons is waived or not charged by the **Company**; or

3. for other remuneration which inures to the benefit of the **Company**.

Specified Professional Services Schedule:

- _____   Depositor Services
- _____   Data Processing Services
- _____   Discount Brokerage Services
- _____   Insurance Agent/Broker Services
- _____   Investment Adviser/Financial Planning Services
- _____   Notary Public Services
- _____   Property Management Services
- _____   Real Estate Agent/Broker Services
- _____   Real Estate Appraisal Services
- _____   Sale of Mutual Funds or Annuities
- _____   Sale of Traveler's Checks, Certified or Cashier's Checks or Money Orders
- _____   Sale or Administration of Credit Cards
- _____   Security Broker/Dealer Services
- _____   Tax Planner or Preparation Services
- _____   Title Abstractor Services
- _____   Travel Agent Services
- _____   Wire Transfer Agent Services
- ___X___   Other: Arising out of, related to, or incidental to the purchase, sale, repair, service, rental (except this does not apply to car rental operations, and to "loaner" vehicle operations at the dealerships where a rental agreement is in use for service or body shop customers), rental financing, diagnosis, titling or lease of vehicles, which includes: financing services, loan services, tag and title services, insurance services such as those of an insurance agent/broker, finance and loan document services or documentation preparation services for others for a fee.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

## POLICY CHANGE ENDORSEMENT

In consideration of the premium paid for this **Policy**, the **Insurer** and the **Insureds** agree that this endorsement amends the following **Coverage Parts**:

> General Terms and Conditions Applicable to All Coverage Parts
> Directors & Officers Liability Coverage Part
> Professional Liability Coverage Part
> Employment Practices Liability Coverage Part

It is agreed that each **Coverage Part** shown above is amended as follows:

I.  The definition of **Application** in **SECTION II – DEFINITIONS** of the General Terms and Conditions Applicable to All Coverage Parts is deleted and replaced with the following:

**Application** means:

1.  the application signed for the procurement of this **Policy** and any materials submitted to the **Insurer** in support of the procurement of this **Policy** or any **Policy** for which this **Policy** is a direct or indirect renewal or replacement; and

2.  if applicable, any representation provided to the **Insurer** within the past twelve (12) months, in connection with any **Policy** for which this **Policy** is a direct or indirect renewal or replacement.

The **Application** is deemed to be attached to and incorporated into this **Policy,** as if physically attached.

II.  The definition of **Company** in **SECTION II – DEFINITIONS** of the General Terms and Conditions Applicable to All Coverage Parts is deleted and replaced with the following:

**Company** means the **Parent Company** and any **Subsidiary,** and in the event any bankruptcy proceeding shall be instituted by or against the **Company,** the **Debtor in Possession** (or equivalent status outside of the United States), if any.

Solely, for the purposes of this definition, **Debtor in Possession** means a debtor in possession as such term is used in Chapter 11 of the United States of America Bankruptcy Code.

III.  **SECTION V – NOTICE OF CLAIMS AND POTENTIAL CLAIMS,** Subsection D. of the General Terms and Conditions Applicable to All Coverage Parts is amended to add the following:

In addition to the postal address set forth for any notice of **Claim** or **Potential Claim** reported under this **Policy,** such notice may also be given in writing in the same manner required by the terms and conditions of the **Policy** to the **Insurer** by email at the following email address:

prolinesclaims@amtrustgroup.com

The **Insured's** email must reference the policy number for this **Policy.**

A **Claim** shall be deemed a **Claim** for purposes of Notice and forwarding to the **Insurer** when the **Insured's** General Counsel, Insurance or Risk Manager, or organizational equivalent, or executive officer or director have knowledge that the **Insured** has received a **Claim.**

IV.     **SECTION VI – DEFENSE OF CLAIMS, INSURED'S DUTIES AND RESPONSIBILITIES, ALLOCATION AND ARBITRATION** of the General Terms and Conditions Applicable to All Coverage Parts is deleted and replaced with the following:

A.  **DEFENSE OF CLAIMS** - The **Insurer** will have the right and duty to defend any **Claim** covered by a **Coverage Part**, even if the allegations are groundless, false or fraudulent, including the right to select defense counsel with respect to such **Claim**; provided, that the **Insurer** will not be obligated to defend or to continue to defend any **Claim** after the applicable Limit of Liability has been exhausted by payment of **Loss**.

B.  **INSURED'S DUTIES AND RESPONSIBILITIES** – It shall be the duty and responsibility of the **Insured**, as a condition precedent to any coverage under this **Policy**:

1.  not to make any payment, admit any liability, settle any **Claims**, assume any obligation, or incur any expense without the **Insurer's** written consent, which consent shall not be unreasonably withheld;

2.  to give to the **Insurer** all copies of reports, investigations, pleadings and other papers as soon as reasonably possible and to provide the **Insurer** with such information, assistance and cooperation as the **Insurer** may reasonably request to determine the existence or extent of the **Insurer's** obligation.

C.  **ALLOCATION** – If there is a **Claim** under a **Coverage Part** in which the **Insureds** incur an amount consisting of both covered **Loss** and uncovered loss because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, then:

1.  one hundred percent (100%) of **Defense Expenses** incurred by the **Insureds** who are afforded coverage for such **Claim** will be allocated to covered **Loss**; and

2.  all loss, other than **Defense Expenses**, will be allocated between covered **Loss** and uncovered loss based upon the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and settlement of the **Claim** by the **Insured Persons**, the **Company**, and others not insured under this **Coverage Part**. In making such a determination, the **Insurer** and the **Insured** agree to use their best efforts to reach a proper allocation of **Defense Expenses**.

D.  **CONSENT TO SETTLEMENT PROVISION**

1.  The **Insurer** may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the **Insurer** deems expedient. In the event that:

    a.  the **Insured** and the **Insurer** hereunder consent to the first settlement offer recommended by the **Insurer** (the "Settlement Offer") within thirty (30) days of being made aware of such offer by the **Insurer**; and

    b.  the amount of such Settlement Offer:

        i.   is less than the remaining applicable Limit of Liability available at the time; and

        ii.  combined with **Defense Expenses** incurred with respect to such **Claim**, exceeds the Retention;

        the Retention will be retroactively reduced by ten percent (10%) with respect to such **Claim**.

2.  If the **Insured** does not consent to the Settlement Offer within thirty (30) days of being made aware of such offer by the **Insurer**:

    a.  the Retention will not be reduced as provided in paragraph 1. above, even if consent is given to the same or subsequent Settlement Offer; and

    b.  the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer and the **Insured** will also be responsible for twenty percent (20%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the **Insurer's** liability

under the **Coverage Part** for such **Claim** will not exceed the remaining applicable Limit of Liability.

E.   Notwithstanding the above, at the **Insurer's** option, defense counsel may be appointed by the **Insured** and not to be unreasonably withheld after the **Insurer's** written consent.   Any and all **Defense Expenses** of defense counsel appointed by the **Insured** with the **Insurer's** written consent shall be paid and satisfied on an ongoing basis by the **Insured** until all applicable Retention amounts have been satisfied.  The **Insured** or appointed defense counsel must keep the **Insurer** apprised of the status of litigation.

V.   **SECTION VIII—CANCELLATION, NON-RENEWAL AND CONVERSION**, Subsection A.1. of the General Terms and Conditions is deleted and replaced with the following:

1.   This **Policy** may be cancelled at any time by the **Parent Company** for itself and as agent for all other **Insureds**, by providing written notice to the **Insurer**.   If this **Policy** is canceled by the **Parent Company** or the **Insurer**, the **Insurer** shall retain the pro-rata portion of the premium. Payment or tender of any unearned premium by the **Insurer** to the **Parent Company** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

VI.   **SECTION IX – EXTENDED REPORTING PERIOD (ERP),** Subsection A. of the General Terms and Conditions Applicable to All Coverage Parts is deleted and replaced with the following:

A.   **<u>ERP AVAILABILITY</u>** - If the **Company** or the **Insurer** cancels or nonrenews this **Policy**, or if the **Policy** converts subject to Section VIII C.2., the **Insured** shall have the right to purchase the Extended Reporting Period.  At any time prior to or within ninety (90) days after the effective date of cancellation, non-renewal or conversion, the **Insured** may give the **Insurer** written notice that it desires to purchase the Extended Reporting Period. It is understood and agreed that the Extended Reporting Period shall not be made available if:

1.   the **Insurer** cancels this **Policy** due to nonpayment of premium; or

2.   there is an offer by the **Insurer** to renew this **Policy** under terms, conditions, Limits of Liability, Retentions or premiums different from those applicable to the expiring **Policy** as such offer of coverage shall not constitute a refusal to renew.

VII.   **SECTION IX – EXTENDED REPORTING PERIOD (ERP),** Subsection B.1. of the General Terms and Conditions Applicable to All Coverage Parts is deleted and replaced with the following:

1.   The coverage term for the Extended Reporting Period shall be twelve (12) months, twenty-four (24) months or thirty-six (36) months following the effective date of such cancellation, nonrenewal or conversion subject to **SECTION VIII.C.2.** (depending upon the Extended Reporting Period purchased). The additional premium for the Extended Reporting Period shall be 75% of the annual premium for the twelve (12) month period, 125% of the annual premium for the twenty-four (24) month period, and 150% of the annual premium for the thirty-six (36) month period.  The additional premium paid for the Extended Reporting Period will be deemed to have been fully earned at the commencement of such Extended Reporting Period.

VIII.   **SECTION XI – OTHER TERMS AND CONDITIONS,** Subsection L. of the General Terms and Conditions Applicable to All Coverage Parts is amended to add the following:

The **Insurer** hereby waives its subrogation rights against a client of the **Insured** to the extent that the **Insured** had, prior to a **Claim,** or a **Potential Claim** reasonably expected to give rise to a **Claim,** entered into a written agreement to waive such rights.

In no event shall the **Insurer** exercise its right of subrogation against an **Insured** under this **Policy** unless such **Insured** has been convicted of a deliberate criminal act; or has committed a deliberate fraudulent act, if a final judgment establishes that such deliberate act was committed; or has obtained any profit or advantage to which a final judgment established the **Insured** was not legally entitled.

Any amount recovered upon the exercise of such rights of subrogation shall first be applied to the repayment of expenses incurred by the **Insurer** toward subrogation, second toward reimbursement of any payments made by the **Insured** pursuant to the **Insured's** Retention, and any remaining balance shall be the **Insurer's.**

IX.     The definition of **<u>Claim</u>** in the **DEFINITIONS** section of each **Coverage Part** shown above is amended to add the following:

**Claim** shall also include a formal request for the extradition of an **Insured Person** in any country by another country for trial or to answer a criminal accusation.

X.      The definition of **<u>Executive</u>** in the **DEFINITIONS** Section of each **Coverage Part** shown above is amended to add the following:

**Executive** shall also mean managers and committee members.

XI.     The definition of **<u>Loss</u>** in the **DEFINITIONS** Section of each **Coverage Part** shown above is amended to add the following:

Solely with respect to fines and penalties, such fines and penalties must be assessed against the **Insured.**

XII.    The definition of **<u>Insured</u>** in the **DEFINITIONS** Section of the General Terms and Conditions Applicable to All Coverage Parts and each **Coverage Part** shown above is amended to add the following:

**Insured** shall also include any entity or property under the same majority owner of the entity named in Item 1. Of the Declarations Page.

XIII.   The last sentence of the **<u>Fraud/Illegal Profit and Violation of Law</u>** exclusion in the **EXCLUSIONS** Section of the Directors and Officers Liability, Professional Liability and Fiduciary Liability **Coverage Parts** is deleted and replaced with the following:

as evidenced by a final, non-appealable adjudication by a judge in any proceeding.

XIV.    The **EXCLUSIONS** section, Subsection B. of each **Coverage Part** shown above is amended to add the following:

**<u>Predatory Lending</u>** – The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** based upon or attributable to any predatory, abusive, unfair or deceptive lending practice, including, any practice defined as a "predatory lending practices" under any federal, state or local law or regulation, as evidenced by a final adjudication by a judge, jury or arbitrator in any proceeding.

XV.     **<u>INQUIRY COSTS</u>**

1.  **SECTION I – INSURING AGREEMENTS** of the Directors & Officers Liability Coverage Part is amended to add the following:

The **Insurer** shall pay **Defense Expenses** on behalf of:

a. an **Insured Person** resulting from any **Inquiry** first made against such **Insured Person** during the **Policy Period** or Extended Reporting Period (if exercised) except and to the extent that the **Company** has indemnified such **Insured Person** for such **Defense Expenses**;

b. the **Company** for which the **Company** has indemnified an **Insured Person** resulting from any **Inquiry** first made against such **Insured Person** during the **Policy Period** or Extended Reporting Period (if exercised).

2. Solely with respect to this coverage extension, the definition of **Defense Expenses** in **SECTION II – DEFINITIONS** of the General Terms and Conditions Applicable to All Coverage Parts is amended to add the following:

   Solely with respect to an **Inquiry**, **Defense Expenses** means **Inquiry Costs**.

3. Solely with respect to this coverage extension, **SECTION II – DEFINITIONS** of the Directors & Officers Liability Coverage Part is amended to add the following:

   **Inquiry** means:

   1. any request for an **Insured Person** to appear at a meeting or interview or to give a sworn statement that concern the business of a **Company** or that concerns such **Insured Person's** insured capacities with respect to a **Company;**

   2. any formal or informal discovery or other request seeking documents, records or electronic information that are in the sole and exclusive possession or control of an **Insured Person** and are not accessible by a **Company,**

   if such request is:

   a. made by any **Regulatory Agency;** or

   b. made by or on behalf of a **Company,** by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body) as part of its investigation or evaluation after receipt of a **Shareholder Derivative Demand** or in connection with an investigation by a **Regulatory Agency** concerning the business of that **Company** or that **Insured Person's** insured capacities.

   **Inquiry** also includes arrest or involuntary confinement of an **Executive** of the **Company** by or on behalf of any **Regulatory Agency,** where such arrest or confinement is in connection with the business of the **Company** or is in such **Executive's** capacity as such.

   However, **Inquiry** shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity, conducted in the **Company's** or **Regulatory Agency's** normal review or compliance process.

   An **Inquiry** shall be deemed first made on the date that any **Insured** received notice of such request, arrest or involuntary confinement.

   **Inquiry Costs** means reasonable and necessary fees, costs and expenses incurred by the **Insureds** solely in connection with their preparation for and response to an **Inquiry,** except **Inquiry Costs** do not include the costs of complying with any formal or informal discovery or other request seeking documents, records or electronic information that are accessible by the **Company.**

4. **SECTION III – LIMIT OF LIABILITY AND RETENTION** in the General Terms and Conditions Applicable to All Coverage Parts is amended to add the following:

   $500,000 shall be the maximum **Policy Year** Aggregate Limit of Liability of the **Insurer** for all **Informal Regulatory Investigation** under this **Policy** in connection with any **Inquiry**, regardless of the number of such **Inquiries** made against the **Insureds**. The limit described herein is a sublimit, included within, and not in addition to, the applicable Limit of Liability set forth in Item 4. of the Declarations Page.  This sublimit shall not apply to **Inquiry Costs.**

XVI.   The definition of **Investigation Expense** in **SECTION IV – DEFINITIONS** of the Directors and Officers Liability Coverage Part is deleted and replaced with the following:

**Investigation Expense** means the necessary fees, costs and expenses incurred by the **Company,** including its board of directors, board of managers or any duly constituted committee thereof, in connections with any investigation or evaluation by the **Company** of any **Shareholder Derivative Demand.**

XVII.   The **Bodily & Personal Injury/Property Damage** exclusion in **SECTION V – EXCLUSIONS,** Subsection A. of the Directors and Officers Liability Coverage Part is deleted and replaced with the following:

**Bodily & Personal Injury/Property Damage** – The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** for bodily injury, personal injury, humiliation, sickness, disease or death of any person, injury resulting from libel, slander, defamation or disparagement, violation of a person's right of privacy, or damage to, loss or use or destruction of any tangible property.

XVIII.   The **Contractual Liability** exclusion in **SECTION V – EXCLUSIONS,** Subsection A. of the Directors and Officers Liability Coverage Part is deleted and replaced with the following:

**Contractual Liability** - The **Insurer** shall not be liable to pay any **Loss,** other than **Defense Expenses,** in connection with any **Claim** made against any **Insured**:

1.   arising from, based upon, or attributable to the assumption of any liability to defend, indemnify, or hold harmless any person or entity, other than an **Insured Person**, under any written contract or agreement, unless such liability would be imposed regardless of the existence of such contract or agreement; or

2.   for the intentional breach, in fact, of any express written or oral contract or amounts the **Company** is obligated to pay pursuant to any express written or oral contract.  If it is established in fact that such **Claim** involves intentional breach of contract, the **Insured** agrees to reimburse **Defense Expenses**.

XIX.   The **Insured vs. Insured** exclusion in **SECTION V – EXCLUSIONS,** Subsection A.3. of the Directors and Officers Liability Coverage Part is deleted and replaced with the following:

3.   any **Claim** brought or maintained by a former **Executive** who has not served as an **Executive** for at least two (2) years preceding the date the **Claim** is first made; provided such **Claim** is brought independently of, and totally without the solicitation, assistance, participation, or intervention of any **Insured Person;**

XX.   The **Pollution** exclusion in **SECTION V – EXCLUSIONS,** Subsection A. of the Directors and Officers Liability Coverage Part is amended to add the following:

Provided; however, that this exclusion shall not apply to **Loss** arising from any securities **Claim.**

XXI.   The **Professional Services** exclusion in **SECTION V – EXCLUSIONS,** Subsection A. of the Directors and Officers Liability Coverage Part is deleted in its entirety; provided the **Company** purchases the Professional Liability **Coverage Part.**

XXII.   The **Securities Offering** exclusion in **SECTION V – EXCLUSIONS,** Subsection A. of the Directors and Officers Liability Coverage Part (if purchased and attached to this **Policy**), is deleted and replaced with the following:

**Securities Offering** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to:

a.   the public offer, sale, solicitation or distribution of securities issued by the **Company**; or

b. the violation of any federal, state, local or provincial statute relating to securities, including the Securities Act of 1933 and the Securities and Exchange Act of 1934, or any rules or regulations promulgated thereunder; provided however, this exclusion shall not apply to **Professional Services,** as defined in the Professional Liability Coverage Part**.**

This exclusion shall also not apply to:

1. any offer, purchase or sale of securities, whether debt or equity, in a transaction that is exempt from registration under the Securities Act of 1933 (an "Exempt Transaction"); or

2. to the extent that such **Claim** is made by a security holder of the **Company** for the failure of the **Company** to undertake or complete an initial public offering or sale of securities of the **Company**.

If at least thirty (30) days prior to any securities offering by the **Company**, other than pursuant to an Exempt Transaction, the **Insurer** receives notice of the proposed transaction and any additional information requested by the **Insurer**, the **Company** may request a proposal for coverage subject to any additional terms and conditions, and payment of any additional premium, described in such proposal.

XXIII. The **Unfair Trade Practices** exclusion in **SECTION V – EXCLUSIONS,** Subsection B. of the Directors and Officers Liability Coverage Part is deleted in its entirety.

XXIV. **SECTION I – INSURING AGREEMENTS,** Subsection B. of the Professional Liability Coverage Part is deleted and replaced with the following:

B. **PROFESSIONAL SERVICES LIABILITY –** The **Insurer** will pay on behalf of the **Insured, Loss** resulting from a **Claim** first made during the **Policy Period** or Extended Reporting Period (if exercised) for a **Wrongful Professional Services Act.**

XXV. The definition of **Claim** in **SECTION II – DEFINITIONS** of the Professional Liability Coverage Part is deleted and replaced with the following:

**Claim** means:

1. a written demand for monetary damages or non-monetary relief;

2. a civil action, suit, proceeding or demand commenced by the service of a complaint or similar pleading;

3. a criminal proceeding commenced by a filing of charges or return of an indictment;

4. a formal administrative or governmental regulatory proceeding commenced by the receipt of a notice of charges, formal investigative order, service of summons, or similar document;

5. an arbitration, mediation or similar alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the **Insurer's** written consent, such consent not to be unreasonably withheld; or

6. a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

against an **Insured** or any **Entity** for whom the **Insured** is legally liable, for a **Wrongful Act** including any appeal from such proceeding.

A **Claim** will be deemed first made on the earliest date any **Insured** receives the civil action, suit, proceeding or demand.

XXVI. **SECTION II – DEFINITIONS** of the Professional Liability Coverage Part is amended to add the following definition:

**Entity** means any individual, sole proprietor, partnership, or corporation or other form of association recognized as such by law.

XXVII. The following exclusions in **SECTION III – EXCLUSIONS,** Subsection A. of the Professional Liability Coverage Part are deleted in their entirety:

1. **Bonding/Insurance Company**

2. **Safe Deposit Box**

3. **Violation of Lending Law**

XXVIII. The **Bodily & Personal Injury/Property Damage** exclusion in **SECTION III – EXCLUSIONS,** Subsection A. of the Professional Liability Coverage Part is deleted and replaced with the following:

**Bodily & Personal Injury/Property Damage** – The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** for bodily injury, sickness, disease or death of any person, or damage to, loss of use or destruction of any tangible property; provided, however, that this exclusion shall not apply to any **Claim** for:

1. emotional distress;

2. defamation;

3. mental anguish; or

4. distress or humiliation:

   a. under Insuring Agreement A. Lender Liability; or

   b. which is brought by an investor, limited partner, or member of a private investment fund.

XXIX. The **Fraud/Illegal Profit and Violation of Law** exclusion in **SECTION III – EXCLUSIONS,** Subsection A. of the Professional Liability Coverage Part is deleted and replaced with the following:

**Fraud/Illegal Profit and Violation of Law** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** for, arising from, based upon, or attributable to:

1. the gaining in fact of any illegal profit or illegal remuneration or illegal advantage knowingly or intentionally retained by the **Insured;** however, this exclusion shall not apply to **Defense Expenses** or the **Insurer's** duty to defend any such **Claim** unless or until a judgment or a final adjudication, after the exhaustion of all applicable appeals, adverse to such **Insured** establishes the **Insured** did commit, participate in, or have knowledge of any illegal profit, illegal remuneration or illegal advantage; or

2. any actual dishonest, criminal, malicious or fraudulent **Wrongful Act** or omissions of any **Executive;** however, this exclusion shall not apply to **Defense Expenses** or the **Insurer's** duty to defend any such **Claim** unless or until a judgment or a final adjudication adverse to such **Executives** establishes the **Executives** committed such dishonest, criminal, malicious or fraudulent **Wrongful Act** or omission.  This exclusion shall also not apply to any **Executive** that did not commit, participate in, or have knowledge of any dishonest, criminal, malicious or fraudulent **Wrongful Act** or omission.

XXX. The **Insured vs. Insured** exclusion in **SECTION III – EXCLUSIONS,** Subsection A. of the Professional Liability Coverage Part is deleted and replaced with the following:

**Entity vs. Insured**

The **Insurer** shall not be liable for **Loss** in connection with any **Claim** that is brought or maintained by or on behalf of the **Company** against any **Insured** provided; however, that this exclusion will not apply to a **Claim** brought and maintained:

1. in the form of a security holder derivative action or demand, without the active participation, solicitation, or assistance or an **Insured Person**, or a named person who is a director, officer, manager, trustee, or functional equivalent position of the **Company**, unless such person has not served in such capacity for at least three (3) years preceding the date the **Claim** is first made, or is acting pursuant to any whistleblower statute;

2. by the **Company** against an **Executive** in connection with a **Corporate Inquiry;**

3. by a court-appointed examiner, receiver creditors' committee, conservator, liquidator, trustee, or rehabilitator of such entity, or a similar official serving in the same legal capacity, in a bankruptcy proceeding by or against the entity;

4. outside of the United States (including any U.S. territory, possession, or protectorate), Canada, the United Kingdom, Australia, or any other jurisdiction governed by a common law legal system, but only if the laws where such **Claim** is brought and maintained require that such **Claim** be brought by or on behalf of such; or

5. by the **Company** where prior to bringing such **Claim,** independent legal counsel has stated in a written opinion that a failure to bring such **Claim** would be a breach of fiduciary duty owned by an **Insured** to the **Company** or its investors.

XXXI. **SECTION III – EXCLUSIONS,** Subsection A. of the Professional Liability Coverage Part is amended to add the following exclusions:

**Credit Discrimination** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** for, arising from, based upon, or attributable to any claim of credit discrimination involving a loan funded in whole or in part with the **Insured's** own funds, including, but not limited to allegations of any predatory lending act or practice, rate gouging, kickbacks, improper fees, or improper split of charges.

**Defect in Title** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** for any defect in title not disclosed of public record or of which any **Insured** had actual or constructive knowledge that a vehicle was not titled prior to the delivery of the vehicle.

**Employment Practices/Discrimination** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** for, arising from, based upon, or attributable to:

1. any actual or alleged wrongful employment practices; or

2. any discrimination of any person or entity on any basis, however, this exclusion does not apply to any allegation of credit discrimination by a customer of the **Insured** except when such allegation of credit discrimination involves a loan funded in whole or in part with the **Insured's** own funds.

$500,000 shall be the maximum Policy Year Aggregate Limit of Liability of the **Insurer** for all **Loss**, including **Defense Expenses** under this **Policy** in connection with any **Claim** related to an allegation of credit discrimination by a customer of the **Insured**, regardless of the number of such **Claims** made against the **Insureds**. The limit described herein is a sublimit, included within, and not in addition to, the applicable Limit of Liability set forth in Item 4. of the Declarations Page.

**Insolvency with Client Funds** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** for, arising from, based upon, or attributable to a governmental intervention, cease and/or desist order, insolvency, receivership, bankruptcy, licensing or liquidation or

financial inability to pay of any insurer, self-insurer, insurance plan, trust or any other vehicle or instrumentality which provides coverage or benefits or in which the **Insured** has placed or obtained insurance coverage or placed the funds of a client or account; however, this exclusion shall not apply if at the time the **Insured** placed or obtained insurance coverage or placed the funds of a client or account the carrier was rated A- or better by A.M. Best.

**Intentional Non-Compliance** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** for, arising from, based upon, or attributable to any intentional non-compliance with any statute or regulation; however, this exclusion shall not apply to **Defense Expenses** or the **Insurer's** duty to defend any such **Claim** unless or until a judgment or a final adjudication adverse to such **Executives** establishes the **Executives** committed such intentional non-compliance with any statute or regulation.  This exclusion shall also not apply to any **Executive** that did not commit, participate in, or have knowledge of any intentional non-compliance with any statute or regulation.

**Misappropriation** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** for, arising from, based upon, or attributable to any commingling, misappropriation, or improper gaining or misuse of funds, accounts, premium, claims or tax monies as evidenced by final non-appealable adjudication by a judge or jury.

**Professional Services** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** for, arising from, based upon, or attributable to any **Professional Services** as a licensed Certified Public Accountant or Lawyer.

**Taxes, Fines or Penalties from Tax Authority** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** for, arising from, based upon, or attributable to any taxes, fines or penalties due or assessed by the Internal Revenue Service or any other tax authority, when such taxes, fines or penalties are due by or assessed against the **Insured**.

**Telephone Consumer Protection Act** – The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any actual or alleged violation of the Telephone Consumer Protection Act, any federal and/or state anti-spam statutes, or any federal, state and/or local law similar to the foregoing.

XXXII.  The **Contractual Liability** exclusion in **SECTION III – EXCLUSIONS,** Subsection C. of the Professional Liability Coverage Part is deleted and replaced with the following:

**Contractual Liability** - The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss,** other than **Defense Expenses,** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any liability under any contract or agreement; provided, however, that this exclusion shall not apply to:

1. the extent that the **Company** would have been liable in the absence of the contract or agreement;

2. **Defense Expenses** to the extent that such **Claim** alleges a breach of contractual obligations because of a **Wrongful Professional Services Act** or a **Wrongful Trust Services Act**; or

3. the extent that the **Company** has agreed to indemnify an **Employee** whose services have been leased to the **Company**.

XXXIII.  The **Failure to Maintain Insurance** exclusion in **SECTION III – EXCLUSIONS,** Subsection C. of the Professional Liability Coverage Part is deleted in its entirety.

XXXIV. The **Fee Dispute** exclusion in **SECTION III – EXCLUSIONS,** Subsection C. of the Professional Liability Coverage Part is deleted and replaced with the following:

**Fee Dispute** – The **Insurer** shall not be liable under Insuring Agreements B. or C. for **Loss** in connection with any **Claim** made against any **Insured** for any disputes over fees, commissions, or charges for the **Company's** services.

XXXV. The **Forgery** exclusion in **SECTION III – EXCLUSIONS,** Subsection C. of the Professional Liability Coverage Part is amended to add the following:

Provided, however, this exclusion shall not apply unless a judgment or other final adjudication adverse to any of the **Insureds** in such **Claim** shall establish that such **Insureds** committed such forgery.

XXXVI. **Other Insurance/Difference In Conditions**

The **OTHER INSURANCE** clause in the **OTHER TERMS AND CONDITIONS** section of each **Coverage Part** shown above is amended to add the following:

B. **OTHER INSURANCE GARAGE LIABILITY POLICY** – If any **Claim** or **Wrongful Act** noticed to the **Insurer** under this **Policy** is insured by another valid and collectible policy or policies, then this **Policy** shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this **Policy** by reference in such other policy to the Policy Number indicated on this **Policy's** Declarations Page.

Notwithstanding the above paragraph, it is agreed, however, that:

1. covered **Wrongful Acts** under this **Policy** will first apply as excess to any applicable coverage granted under the following policy shown in the SCHEDULE below:

SCHEDULE

| Policy Type | Policy Number | Carrier |
|---|---|---|
| Garage Liability Policy | AD-6Y789675 | Travelers Indemnity Company |

and any amendments and renewals of that policy;

2. thus, in such situations when applicable coverage is granted under the Garage Liability Policy, this **Policy** only provides coverage for covered **Claims** when the applicable underlying limit of liability is exhausted by reason of the Garage Liability Policy insurer paying, or being held to pay, in legal currency, the full amount of the applicable underlying limit of liability as a loss.

It is further agreed that any amounts payable under the Garage Liability Policy for **Wrongful Acts** that would be covered under this **Policy** shall be credited towards the **Insured's** Retention under this **Policy.** Solely with respect to this provision, **SECTION III – LIMIT OF LIABILITY AND RETENTION,** Subsections B.2. and B.3. of the General Terms and Conditions Applicable to All Coverage Parts shall not apply.

It is further agreed that with respect to the above, the **Insured** shall give the **Insurer** timely notice, within the terms of the Notice Provision, as shown **SECTION V – NOTICE OF CLAIMS AND POTENTIAL CLAIMS** of the General Terms and Conditions Applicable to All Coverage Parts, of any **Claim** at the same time notice is given to the Garage Liability Policy insurer referenced in the SCHEDULE above, and the **Insured** shall give the **Insurer** such information and cooperation as it may reasonably require.

XXXVII. **SECTION IV – OTHER TERMS AND CONDITIONS,** of the Professional Liability Coverage Part is amended to add the following:

### Joint Venture or Partnership

Subject to all other terms and conditions, this **Policy** covers **Loss,** including **Defense Expenses,** the **Insured** becomes legally obligated to pay as a result of **Claims** arising out of the **Insured's** participation in a joint venture or partnership.  This extension of coverage applies only to the **Insured's Wrongful Acts** and does not afford coverage to the joint venture or partnership itself or to any **Entity**, that is part of the joint venture or partnership.

### Unfair Practices Defense Expenses Sublimit

Subject to all other terms and condition, this **Policy** covers **Defense Expenses** only, that the **Insured** becomes legally obligated to pay as a result of **Claims** arising out of any violation of anti-trust laws, unfair competition, unfair or deceptive business practices, or restraint of trade solely related to the **Insured's Professional Services.**  $1,000,000 shall be the maximum Policy Year Aggregate Limit of Liability of the **Insurer** for all **Defense Expenses** under this **Policy** in connection with any **Claim** related to a violation of anti-trust laws, unfair competition, unfair or deceptive business practices, or restraint of trade, regardless of the number of such **Claims** made against the **Insureds**.  The limit described herein is a sublimit, included within, and not in addition to, the applicable Limit of Liability set forth in Item 4. of the Declarations Page.

### Pre-Claim Assistance

If during the **Policy Period** the **Insured** reports a specific **Wrongful Act** in accordance with **SECTION V – NOTICE OF CLAIMS AND POTENTIAL CLAIMS,** in the General Terms and Conditions Applicable to All Coverage Parts of this **Policy,** the **Insurer,** at its sole option, may investigate such specific **Wrongful Act** as it deems appropriate.  Once the **Insurer** has incurred $25,000 of expenses for such investigation, the **Insurer** shall deem that a **Claim** arising from such specific **Wrongful Act** has been made.  Until such time that a **Claim** arising from such specific **Wrongful Act** has or is deemed to have been made, any payment made by the **Insurer** for such investigation shall be at the **Insurer's** expense.


Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

## RELIANCE ON OTHER CARRIER'S APPLICATION

In consideration of the premium paid for this **Policy**, the **Insurer** and the **Insureds** agree that this endorsement amends the following **Coverage Parts,** if purchased and attached to this **Policy**:

Professional Liability Coverage Part

It is agreed that each **Coverage Part** shown above is amended as follows:

The **OTHER TERMS AND CONDITIONS** Section of each **Coverage Part** shown above is amended to add the following:

### OTHER CARRIER APPLICATION

The **Insurer** agrees to accept the application submitted to the **Insurer** as the application for this **Policy** as referenced in the SCHEDULE below. The **Insurer** has relied on such application as if it were the **Insurer's** own **Application**. All references to the **Application** in this **Policy** will mean the **Application** described in this endorsement, and any attachments and materials submitted with such **Application.**

SCHEDULE

| Carrier's Name | Date Application Signed |
|---|---|
| Auto Dealers Professional Application | 4/15/2025 |

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.