**MCKOOL SMITH, PC**
John J. Sparacino (TX Bar No. 18873700)
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone: (713) 485-7300
Facsimile: (713) 485-7344
Email: jsparacino@mckoolsmith.com

and

Alan Loewinsohn (TX Bar No. 12481600)
300 Crescent Court, Suite 1200
Dallas Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044
Email: aloewinsohn@mckoolsmith.com

*Counsel for Daniel Chu*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| IN RE:<br><br>TRICOLOR HOLDINGS, LLC, *et al.*,[1]<br><br>Debtor. | Chapter 7<br><br>CASE NO. 25-33487 (MVL) |

**DANIEL CHU'S REPLY TO TRUSTEE'S OBJECTION TO MOTION FOR ORDER
AUTHORIZING USE OF PROCEEDS OF DIRECTORS AND OFFICERS LIABILITY
<u>POLICIES FOR DEFENSE EXPENSES</u>**

---

[1] The Debtors in these chapter 7 cases are as follows: Tricolor Holdings, LLC, TAG Intermediate Holding Company, LLC, Tricolor Auto Group, LLC, Tricolor Auto Acceptance, LLC, Tricolor Insurance Agency, LLC, Tricolor Home Loans LLC dba Tricolor Mortgage, Tricolor Real Estate Services, LLC, TAG California Holding Company, LLC, Flexi Compras Autos, LLC, TAG California Intermediate Holding Company, LLC, Tricolor California Auto Group, LLC, Tricolor California Auto Acceptance, LLC, Risk Analytics LLC, Tricolor Tax, LLC, Tricolor Financial, LLC, Tricolor Auto Receivables LLC, Tricolor Asset Funding, LLC, and Apoyo Financial, LLC.

Daniel Chu ("Mr. Chu") hereby files this Reply (the "Reply") to the Trustee's Objection (the "Objection") (Dkt. No. 521)[2] to *Daniel Chu's Motion for Order Authorizing Use of Directors and Officers Liability Policies For Defense Expenses and Other Loss Amounts* (the "Motion") (Dkt. No. 469), and respectfully states as follows:

**Introduction.**

1. On December 9, 2025, the Trustee filed her Objection to Mr. Chu's Motion seeking payment of Defense Expenses[3] and other Loss under Tricolor's D&O Policies issued for the express purpose of defending and indemnifying Mr. Chu and other individuals from the types of Claims currently asserted against him. The Objection concedes that (i) Mr. Chu is an Insured Person under the D&O Policies, (ii) Mr. Chu is currently incurring Defense Expenses resulting from Claims under the D&O Policies; (iii) the primary D&O Insurer Travelers has acknowledged its obligation to pay Defense Costs to Mr. Chu, waiting only for an Order from this Court before doing so; and (iv) the estate has no existing Claim under the D&O Policies, meaning as a matter of fact and well-established law that the D&O Policies' proceeds are not property of the estate. In fact, the Trustee explicitly acknowledges that she "does not dispute Mr. Chu's general right to advancement under the Policies." Objection ¶ 4.

2. About ten days later, the Trustee filed a 58-page, 13-count complaint against Mr. Chu. Dkt. No. 568. The Trustee's civil action is accompanied by 31 exhibits. The allegations of fraud against Mr. Chu are supported by virtually nothing other than the unproven allegations contained in a recently returned indictment against Mr. Chu and others and as to which Mr. Chu is presumed innocent. Through her Objection to Mr. Chu's Motion and, now, her civil action, the

---

[2] The Trustee relies on the *Declaration of Julia M. Beskin* (the "Beskin Decl.") (Dkt. No. 522) in support of the Objection.

[3] Unless otherwise defined herein, capitalized terms shall have the meanings set forth in the Motion.

2

Trustee's intent has become clear: file claims against Mr. Chu for millions of dollars and, at the same time, have the Court impose arbitrary and significant limits on Mr. Chu's right to obtain insurance proceeds to defend against those claims and other matters. The Trustee's position is neither supported by precedent or principles of equity.

3. The Objection mischaracterizes applicable law to argue for a non-existent estate interest in the D&O Policies, and asserts multiple incendiary, irrelevant, unproven and unsupported allegations against Mr. Chu designed to prejudice the Court against Mr. Chu. These all culminate in a made-up, unworkable and wholly inappropriate Trustee "proposal" in the form of a Proposed Order that would result in wholesale changes to the D&O Policies and substantial degradation of rights of the Insureds. *See* Dkt. No. 521-22. Notably, the Trustee obviously recognized the folly of her initial proposal that was included with her Objection, and on December 17, 2025, filed a revised proposed Order [Dkt. No. 555] less than 4 court days before the preliminary hearing (the "Trustee Proposal"). Just like her initial proposal, the new Trustee Proposal exceeds the boundaries of Trustee or Court authority by wholly-revising existing contractual rights and terms, and ignoring existing contractual provisions. Such changes include: (1) severely and improperly limiting the coverage available to Insured Persons; (2) changing Claim submission and payment procedures; (3) altering the timing of the immediate defense owed under the plain language of the D&O Policies; and (4) erecting a new claims and coverage structure that unfairly discriminates against Side A Insureds and Claims in favor of Side B and C Insureds and Claims (*i.e.*, the Trustee, her professional and the estate). Simply, the Trustee Proposal will severely hinder Side A Insureds' (such as Mr. Chu) receipt of payments from the Policies and impose arbitrary limits not found in the D&O Policies. Simply, the Trustee seeks to rewrite the contractual terms of the D&O Policies in a manner inconsistent with the law.

4. The Trustee's Objection must be seen for what it is: an attempt to control proceeds of insurance policies to which the estate has only hypothetical interests, to the detriment of Mr. Chu (and presumably other Insureds) and Mr. Chu's current, immediate right to the bargained-for benefits of the D&O Policies. The Trustee's Objection, if not overruled, will hamstring Mr. Chu from defending himself from the litany of existing claims the Trustee and others have asserted against him. Moreover, the claims newly filed by the Trustee against Chu are covered "Claims" under the D&O Policies. And yet, the Trustee seeks to preclude or severely limit and delay Mr. Chu's access to a defense *regardless* of whether her allegations are groundless or false. Mr. Chu should not be whipsawed. The Objection should be overruled, and Mr. Chu's Motion should be approved consistent with the contractual terms of the D&O Policies and applicable law.

**The estates have no present interest in the Proceeds of the D&O Policies.**

5. When a debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate. *See In re Edgeworth*, 993 F.2d. 51, 55-56 (5th Cir. 1993); *see also Landry v. Exxon Pipeline Co.*, 260 B.R. 769, 786 (Bankr. M.D. La. 2001). A hypothetical or theoretical claim under insurance does not render policy proceeds property of the estate. *See, e.g., In re Mountain Express Oil Co.*, 2025 WL3030303, at *11 (Bankr. S.D. Tex. Oct. 29, 2025). Here, in the Trustee's "notice" letter to the carriers (the "Trustee Letter"), she concedes the estate has not asserted a "Claim" under the D&O Policies, but instead has provided only "notice of circumstances" of potential *future* claims.[4] As such, the estate has no property interest in the proceeds of the policies and the Trustee is incorrect in arguing otherwise. Hypothetical or speculative *future* claims against the Debtors are not *present* Claims under the Policies and cannot

---

[4] [The Trustee] "hereby provides notice for such **potential suits** and other claims that **may arise in the future** relating in whole or in part to the above-referenced circumstances." Beskin Decl. Ex. 10 (emphasis added).

4

prevent Mr. Chu from obtaining his current and ongoing defense costs. *See, e.g., In re Mountain Express Oil Co.*, 2025 WL 3030303, at *11 (Bankr. S.D. Tex. Oct. 29, 2025) ("the Trustee has failed to show that any Debtor has a covered Claim under the Policies' Side C Coverage resulting in the estate having no interest in the Proceeds of the Policies under Side C Coverage."); *S.E.C. v. Faulkner*, 2018 WL 2761850, at *5-6 (N.D. Tex. June 6, 2018) (over opposition of receiver, court provides individual insureds access to policy proceeds, finding that the receiver "has demonstrated no such contractual right to the proceeds" where, *inter alia*, the receiver had not yet requested any reimbursements from the policy); *S.E.C. v. Stanford Intern. Bank, Ltd.*, 2009 WL 8707814 (N.D. Tex. Oct. 9, 2009).

6. The Trustee's assertion that the proceeds are property of the estate because of alleged "insufficient coverage" is unavailing as it is presently no more than conjecture and speculation. Mr. Chu has been informed that <u>no proceeds</u> from the D&O policies have been paid and none will be paid until an order issues from this Court. The Trustee's assertion that limits will be exceeded is premised on events that have not taken place, and include potential liability for claims not even asserted.[5] To be clear, to date the following has occurred: (1) Insureds Mr. Chu and Mr. Goodgame have been indicted, (2) Insureds Mr. Kollar and Mr. Seibold have pled guilty to felonies (and thus presumably are ineligible for coverage under the D&O Policies), and (3) the Trustee has filed suit against each of these four individuals (and again, Mr. Kollar and Mr. Seibold are presumably not entitled to coverage given their felony pleas). Thus, at present there are only two Insured Persons (Mr. Chu and Mr. Goodgame) that face the immediate and urgent need for

---

[5] The Trustee does not, and cannot, support the bald statement "the Debtors and other Insureds under the Policies are facing hundreds of millions of dollars in defense costs and damages from claims." Objection ¶ 30. And there is also no evidentiary support for the assertion that there are over a dozen other D&O insureds who will need policy proceeds to cover defense expenses and, even if there were, none of those have filed an opposition to Mr. Chu's motion. The only directors or officers to file any pleading on this issue, Mauricio Delgado and Andy Mata, have joined in Mr. Chu's motion. Dkt. Nos. 517, 568.

substantial Defense Expenses coverage under the Policies. Even if this were not the case, the Trustee seeks support from case law that does not apply, since the authorities cited in the Objection deal with competing Claims of Insured Persons <u>and</u> the estate, or inapplicable tort liability[6], neither of which is the case here. Mr. Chu has asserted a "Claim," acknowledged as such by the insurer; the Trustee/estate has not. Hypothetical or potential scenarios are insufficient to preclude Mr. Chu from the immediate defense promised by the explicit contractual provisions of the D&O Policies.

**The D&O Policies are structured to advance Defense Expenses "as requested."**

7. In her Objection, the Trustee disregards caselaw demonstrating that D&O policies are designed to favor payment to Insured Persons over the entity. But the Trustee cannot refute that D&O policies are obtained for the protection of individual directors and officers. *See Youngstown Osteopathic Hosp. Ass'n*, 271 B.R. 544, 550 (Bankr. N.D. Ohio 2002) (quoting *First Cent. Fin. Corp.*, 238 B.R. at 16: "In essence and at its core, a D & O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection"). Mr. Chu, as Tricolor's former Chairman of the Board and CEO, is clearly an intended beneficiary and an Insured under the D&O Policies. Indeed, as noted in the Motion, Tricolor (and hence the estates) has available to it Errors & Omissions coverage that is supplemental to the D&O Policies. The estates will not be completely "shut out" from insurance coverage, as might happen to Mr. Chu should the Trustee's ill-conceived Proposal be adopted.

---

[6] The Trustee's Objection heavily relies upon *In re OGA Charters, LLC* 901 F.3d 599 (5th Cir. 2018). That case involved a debtor/charter bus operator that suffered a pre-bankruptcy catastrophic bus crash, and a resulting "siege" of tort liability claims pursued against the debtor's liability insurance. Under those "limited circumstances," the court took control of the liability policy proceeds to effectuate a fair distribution among the debtor's many tort claimants. Two other cases relied upon by the Trustee similarly involve limited tort liability insurance policies, not D&O policies. *See Law Office of Rogelio Solis PLLC v. Curtis*, 83 F.4th 409 (5th Cir. 2023) (fatal car crash with limited tort liability insurance); *Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1023 (5th Cir. 2012) (boating accident led to multiple claims against tort liability policy with Fifth Circuit determining that the policy proceeds were not property of the estate as the situation presented was not the "limited instance" of a mass tort context requiring otherwise).

8. The Trustee argues that the "allocation" provision in the D&O Policies is inapplicable to Defense Expenses, but she does not and cannot ignore the expressed intent that, with respect to indemnity payments, directors and officers take under the D&O coverage <u>before</u> the company. Moreover, while the Trustee argues an insurer does not pay <u>indemnity</u> claims "as requested," that is ***exactly*** the way defense costs are advanced and paid under such policies where there is no provision for the order of payments. Since no indemnity payments have been made, and there is no legitimate argument that <u>current</u> liabilities exceed policy limits, Defense Expenses should be paid to Insureds "as requested." *See In re Licking River Mining, LLC*, No. 14-10201, 2016 WL 3251890, at *9 (Bankr. E.D. Ky. June 6, 2016) (where defense costs had not come close to policy limits, stay modified to allow for payment of Movant's defense costs). Because the D&O Policies are quiet as to order of payments prior to exceeding policy limits, claims on the Policies must be paid on an as-submitted basis. *See In re Petters*, 419 B.R. 369, 376 (Bankr. D. Minn. 2009) (insurer's duty of immediate performance in relation to a claim by insured is restrained only by policy terms that may prioritize or otherwise regulate competing claims to the same aggregate coverage: "If there is no such control, the payment on covered losses could be made on a 'first-come, first-served' basis until the policy limit is reached."). Mr. Chu received subpoenas, was later indicted, and is now a defendant to an action initiated by the Trustee.[7] Mr. Chu has tendered the Claim, and is entitled to immediate assistance from the Insurers with respect to ongoing Defense Expenses that have been tendered to date, as well as those to be tendered in the future. Since no indemnity payments have been made, and there is no legitimate argument that <u>current</u> liabilities exceed policy limits, Mr. Chu's Defense Expenses should be paid "as requested."

---

[7] Under the D&O Policies, all "Wrongful Acts" that "have as a common nexus, or are causally connected by reason of, any fact, circumstance, situation, event or decision" are considered "Related Wrongful Acts." Travelers Policy Definitions, p. 3 of 11 (Loewinsohn Decl. Ex. B). Furthermore, all claims for Related Wrongful Acts "will be considered a single Claim" for purposes of the insurance policy. *Id.*, Condition H.

7

9. In her Objection, the Trustee repeatedly mischaracterizes Mr. Chu's request as a request for "unrestricted access" to insurance proceeds. Restrictions on access are built into the existing policies. First, there are limits to the amount of insurance available. Second, the insurance carriers, who are motivated financially to only pay monies that are truly owed and justified, are fully capable and well-experienced at assessing legal invoices and determining coverage of requested fee amounts submitted by Mr. Chu (and presumably any other Insured individual). Further, Mr. Chu does not seek unfettered access to the policy proceeds – he seeks what he is contractually entitled to under the D&O Policies and existing legal authority. *See, e.g., In re Allied Digital Technologies, Corp.*, 306 B.R. 505, 513 (Bankr. D. Del. 2004) (in overruling trustee opposition to advancement of defense costs, court determines that "[t]his is not what the directors and officers bargained for. In bringing the action against the directors and officers, the Trustee knew that the proceeds could be depleted by legal fees and he took that chance. The law does not support the Trustee's request to regulate defense costs."); *In re MF Global Holdings Ltd.*, 515 B.R. 193, 207 (Bankr. S.D.N.Y. 2014) ("With respect to the D&O Policies, the Court does not believe the law supports placing the bankruptcy court as the overseer of defense costs.").

**The Trustee incorrectly argues that Mr. Chu's "Financial Ability" is a "cause" factor.**

10. On the one hand, the Trustee asserts in her opposition that Mr. Chu has substantial assets and, on the other hand, the Trustee in her lawsuit against Mr. Chu seeks to control and restrain all his assets. *See* Dkt. No. 568 at ¶¶ 209-13 (alleging claim for turnover of assets), ¶¶ 257-66 (alleging claim for imposition of constructive trust). Regardless, the Trustee argues, albeit without any supporting precedent, that Mr. Chu's alleged net worth nullifies any showing of "cause" for relief from the stay. The Trustee's assertion is flatly wrong, and it is quite telling that the Trustee points to not one single case in which a court assessed an individual's financial

8

situation on the issue of "cause." To the contrary, courts focus *exclusively* on the contractual rights under the specific policies, the overarching purpose of D&O coverage, and the balance of immediate versus speculative harms. Courts do not focus on individual financial circumstances. One of the Trustee's cited cases, *In re Bos. Reg'l Med. Ctr., Inc.*, 285 B.R. 87 (Bankr. D. Mass. 2002), drives this point home. In that case, the court was presented with a summary judgment motion relating to which the individuals' asserted a financial need for defense costs and the debtor opposed the factual contention of financial need. The court *without any factual analysis whatsoever* (and, given the summary judgment posture, any factual development as to subjective financial need) simply found that the individuals "do need the insurance proceeds." *Id.*, at 96. The court there, consistent with the customary approach of other courts, plainly rejected any notion that an individual financial circumstances factors into whether there exists "cause." *See also In re Downey Financial Corp.,* 428 B.R. 595 (Bankr. D. Del. 2010) (court's analysis treated the obligation to pay defense costs personally as sufficient hardship without regard to individual wealth); *In re MF Global Holdings Ltd.,* 469 B.R. 177, 194 (Bankr. S.D. NY 2012) (noting that individual insureds "had present necessity for the benefit of their contractual rights" and would "suffer increased out-of-pocket costs" if denied coverage, without inquiring into their personal ability to pay such costs); *In re Celsius Network LLC,* 652 B.R. 34, 45 (Bankr. S.D.N.Y. 2023) (focusing on whether directors and officers were "only using proceeds that they are already contractually entitled to" under the policy); *In re Oaktree Medical Centre, LLC,* 634 B.R. 937, 940 (Bankr. D. S.C. 2021) (reaffirming that "clear, immediate, and ongoing losses to the directors and officers in incurring defense costs trump hypothetical or speculative claims by the trustee."). Simply, caselaw makes clear that requiring an insured individual to pay his/her (otherwise

covered) defense costs out of pocket provides sufficient harm and hardship so as to constitute cause for relief from the stay.

11. To reiterate, the recent indictment of Mr. Chu and the even more recent complaint filed by the Trustee highlight the immediacy of Mr. Chu's need for coverage. While the Trustee's Objection argues a "balancing of equities," she ignores this critical point (and these recent events) and that the fundamental reason for the D&O coverage is to protect Insured Persons like Mr. Chu from these very circumstances.

12. The Trustee also argues that it would be inequitable to allow Mr. Chu to receive policy proceeds given her unsupported opinion that Mr. Chu is complicit in Tricolor's demise. However, given that the fundamental purpose of D&O insurance is to provide protection to officers and directors, the courts have explicitly rejected any requirement that "Directors and Officers need to be 'blameless' to access insurance that is specifically intended to cover their defense costs and liability". *See In re SVB Financial Group,* 650 B.R. 790, 801 (Bankr. S.D.N.Y. 2023). Both *SVB Financial* and *Celsius Network* involved high-profile corporate bankruptcies with significant public attention and allegations of officer and director misconduct. Nonetheless, each court applied a straightforward approach, did not reject policy access because of alleged misconduct, and did not assess any individual financial circumstances. *See also, In re Petters Co., Inc.*, 4119 B.R. 369, 378 (Bankr. D. Minn. 2009) (in a case involving massive fraud perpetrated by criminally indicted wealthy principal, court allowed access to principal noting that "there is nothing divine about the estate's status as an insured and prospective claimant; the universe of other claimants has the same status under non-bankruptcy law.").

**Neither the Trustee nor this Court may rewrite the existing Policy contracts.**

13. In the Trustee Proposal, the Trustee asks this Court to significantly rewrite the contractual terms of the D&O Policies. New and modified terms requested by the Trustee include

10

(1) (mis)characterizing the insurers' immediate duty to defend directors and officers as a qualified "advancement" of costs inconsistent with the D&O Policies; (2) a requirement that individual Insureds obtain "pre-approval" prior to even incurring any Defense Expenses and provide a "written undertaking guaranteeing" repayment; (3) disbursing Proceeds only in accordance with the Trustee's extra-contractual Proposal rather than pursuant to the contractual Policy terms; (4) limiting the total amount of Defense Expenses that any single *individual* Insured (notably, no such limit imposed on the estate as a putative Insured) may take by arbitrarily capping such at 10% of total policy proceeds per Side A claimant; (5) requiring the disclosure by the insurers of confidential information disclosing the identity of all Insureds who have made claim under the D&O Policies; (6) requiring publication and filing of attorney (and other professional) invoices on the Bankruptcy Court docket, and (7) requiring that prior Defense Expense submissions to the carriers (made in compliance with the contracts) be resubmitted to the Court under the proposed procedures, thereby losing the priority to which they are entitled. The Trustee's request should be a non-starter as there is no legal authority on which to rewrite the terms of the insurance policies, let alone to do so over the objection of the Insured Persons, the people who are entitled to the protections of the policies.

14. As noted in the Motion, the Supreme Court has made clear that property interests are created and defined by nonbankruptcy law and are not expanded by the Bankruptcy Code. *Butner v. United States*, 440 U.S. 48 (1977). This has been distilled to the basic proposition that the estate takes no greater rights under the existing policy terms than provided by the contract and state law. *See, e.g., In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987) ("[T]he estate's legal and equitable interest in property rise no higher than those of the debtor."). Texas law requires a court to construe and apply a contract, including insurance policies, as written.

11

*See Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.,* 267 S.W.3d 20, 23 (Tex. 2008) (Texas courts construe insurance policies according to general rules of contract construction to ascertain the parties' intent). Courts must strive to give effect to the written expression of the parties' intent through the written language of the policy. *See State Farm Lloyds v. Page*, 315 S.W.3d 525 (Tex. 2010). The Trustee's proposal ignores the language of the D&O Policies and seeks to interpose provisions inconsistent with the intent of the parties, all without any legitimate basis to modify the contracts and impose the procedures that the Trustee has invented. Indeed, doing so would frustrate the intended fundamental goal of providing Insured Persons with an immediate (and potentially full) defense from and against covered Claims.

15. The Trustee's claim that Mr. Chu has not shown an immediate need for defense costs is irrelevant and irreconcilable with the admission that Mr. Chu has already been subjected to Claims under the D&O Policies, for which Travelers has recognized its defense obligation. The D&O Policies impose a present "duty to defend any Claim" and do not contemplate that Defense Expenses will be reimbursed on a *pro rata* or capped basis. The D&O Policies similarly do not require any showing by an Insured of an "immediate need." It would be absurd to impose a "need" requirement to the payment of insurance claims and this Court should not countenance such a demand by the Trustee.

16. The Trustee's proposed limitation on the amount of coverage available to any claimant (besides the Trustee and the states, of course) defies the plain language of the D&O Policies (which have no limitation), especially where (as here) the Trustee seeks an arbitrary 10% "cap" in consideration of other claimants (or prospective claimants) who *have not even asserted* a Claim. The Trustee provides no legitimate basis to interpose into these insurance contracts such a provision, where the parties to the contracts chose not to do so themselves nor does Trustee provide

any legal precedent for such a ruling. Refusing to presently provide all of the insurance policy benefits to *present* claimants (like Mr. Chu) in favor of possible future, unasserted claims is irreconcilable with the D&O Policies. First, there is no such limitation found in the policies, and no reason to change the contracts to include one. Second, as stated above "need" is not a valid consideration in coverage determinations. Last, and possibly most important, such a "cap" would deprive Mr. Chu of policy limits for defense of *actual* claims in favor of withholding limits for *potential* claimants to cover *potential* claims. No reasonable reading of the D&O Policies hints at imposing any such mechanism. The Trustee certainly provides none.

17. The Trustee's Proposal calls for imposition on the D&O Insurers reporting obligations and dictates claims-handling procedure not called for by the contracts, compliance with which would materially affect confidentiality of the insurers and claimants like Mr. Chu. It would also impose time limitations in insured submissions and dictate their contents, inconsistent with industry standards. The D&O Policies contain cooperation clauses requiring insureds to provide otherwise confidential information to the insurers or risk entitlement to coverage; the Trustee Proposal would invade that relationship. Further, the reporting obligations to be imposed on insurers would require the disclosure of confidential information, including counsel's invoices,[8] identity of claimants, how much they have received and amounts remaining available, all facts that insurers steadfastly hold private. There is no cause shown, or even discussed, sufficient to justify the imposition of these procedures. They are entirely an invention of the Trustee.

18. Finally, the Trustee's proposal inequitably seeks to impose a "cap" only on Claim payments to individual Insured Persons like Mr. Chu, create limitations applicable only to claims

---

[8] While the Trustee Proposal claims no information protected by privileged or work product need be disclosed, the practical reality is that if a defense lawyer's invoice is redacted to reflect this protection, then what little narrative remains would be meaningless.

under "Side A" coverage, and imposes no limitations or conditions whatsoever on the payment of any prospective, future "Side C" claim that might be brought against the estate.[9] Such an arrangement would be blatantly unfair, would favor *potential* estate claims over the directors' and officers' *actual* claims, and would frustrate the fundamental purpose of insurance designed to protect a company's directors and officers from liability.

**The Trustee has access to coverage.**

19. One final issue that further highlights the inequitable approach sought by the Trustee is the existence of the E&O Policy which provides the Debtors with $5 million in additional limits (including reimbursement of defense costs) should future claims be leveled against the estates alleging a "wrongful professional services act" caused damage to third parties. In pleading the inequities of directors and officers recovering under the D&O Policies in accordance with the terms of those Policies, the Trustee simply ignores that she has access to $5 million in E&O coverage. Thus, the predicted depletion of the D&O Policies by payment of valid D&O Claims—like Mr. Chu's—will not leave the estates without protection. Just as this Court structured in *Goodman Networks* a result that required first depletion of a "Side A-only" policy, this Court should consider fashioning relief that will require the Trustee to look first to the E&O Policy for coverage as an insured.

**Conclusion**

20. The Trustee's Objection is not well taken because the estate has no valid Claim and thus no property interest in the proceeds of the D&O Policies. Faced with this reality, the Trustee not only seeks to frustrate Mr. Chu's contractual right to access proceeds of the D&O Policies, but also wants to re-write the insurance contracts to benefit the estate (and detriment of Insured

---

[9] Proposed Order, ¶5, n. 3: the limitation "specifically excludes the Debtors and those acting on the Debtor's behalf…as the Debtors are insured under Side B and Side C of the Policies."

Persons) on little more than her say-so. As a potential plaintiff against Mr. Chu, as described in the Objection, notions of fundamental fairness mandate that the Trustee not be permitted to prosecute claims while at the same time controlling and constricting Mr. Chu's ability to defend himself against those claims. The D&O Policies are not ambiguous; there is no legitimate reason to ignore existing provisions or to interpose additional terms to benefit the estate, to the detriment of Insured Persons like Mr. Chu, for whose benefit the policies were purchased in the first place.

21. The Objection should be overruled, and Mr. Chu's Motion should be granted so the Insurers can provide the bargained for defense that Mr. Chu is entitled to under the plain language of the D&O Policies.

Dated: December 22, 2025

Respectfully submitted,

*/s/ John J. Sparacino*
John J. Sparacino (TX Bar No. 18873700)
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone: (713) 485-7300
Facsimile: (713) 485-7344
Email: jsparacino@mckoolsmith.com

Alan Loewinsohn (TX Bar No. 12481600)
300 Crescent Court, Suite 1200
Dallas Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044
Email: aloewinsohn@mckoolsmith.com

**Counsel to Daniel Chu**

**CERTIFICATE OF SERVICE**

   I hereby certify that on December 22, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will cause a copy of the foregoing document to be served by the Court's ECF system upon parties who have registered with this Court.

                 */s/ John J. Sparacino*
                 John J. Sparacino