

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Michelle V. Larson*

_____
**United States Bankruptcy Judge**

**Signed December 30, 2025**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| TRICOLOR HOLDINGS, LLC, *et al.*[1] | ) | Case No. 25-25-33487 (MVL) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**ORDER GRANTING CHAPTER 7 TRUSTEE'S AMENDED EMERGENCY MOTION TO (I) SELL ESTATE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) ESTABLISH SALE PROCEDURES, AND (III) GRANTING RELATED RELIEF**

Upon the *Chapter 7 Trustee's Amended Emergency Motion to (I) Sell Estate Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Establish Sale Procedures, and (III) Granting Related Relief* (the "Motion")[2] filed by the Trustee seeking entry of an order (this

---

[1] The Debtors in these chapter 7 cases are as follows: Tricolor Holdings, LLC, TAG Intermediate Holding Company, LLC, Tricolor Auto Group, LLC, Tricolor Auto Acceptance, LLC, Tricolor Insurance Agency, LLC, Tricolor Home Loans LLC dba Tricolor Mortgage, Tricolor Real Estate Services, LLC, TAG California Holding Company, LLC, Flexi Compras Autos, LLC, TAG California Intermediate Holding Company, LLC, Tricolor California Auto Group, LLC, Tricolor California Auto Acceptance, LLC, Risk Analytics LLC, Tricolor Tax, LLC, Tricolor Financial, LLC, Tricolor Auto Receivables LLC, Tricolor Asset Funding, LLC, and Apoyo Financial, LLC.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

"Order") (a) authorizing the Trustee to conduct an auction in order to sell the Vehicles[3], (b)

approving the proposed sale procedures (the "Sale Procedures") set forth in the Motion,

(c) approving the sales of the Vehicles free and clear of any liens, claims, interests, and

encumbrances, with all valid and properly perfected prepetition liens attaching to the Sale Proceeds

to the same extent, validity, and priority as the liens that encumbered the Vehicles prior to the

Petition Date, (d) establishing a bar date by which parties other than Holman must assert any

purported interests in the Sale Proceeds, and (e) granting related relief, all as more fully set forth

in the Motion; the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334; and the matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and

venue of this proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§

1408 and 1409; and the Court being able to issue a final order consistent with Article III of the

United States Constitution; and due and sufficient notice of the Motion having been given under

the particular circumstances; and the Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing before this Court (the "Hearing");

and the Court having determined that the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein; and it appearing that no other or further

notice is necessary; and it appearing that the relief requested in the Motion is in the best interests

of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation

thereon; and good and sufficient cause appearing therefor; it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

---

[3]   The term "Vehicles" as used in this Order shall mean the approximately 10,000 vehicles that were in the possession
of one or more of the Debtors, including with respect to Tricolor Auto Acceptance, LLC, as pre-petition servicer
of certain loans, as of the Petition Date, including vehicles that were repossessed prior to the Petition Date, but
shall not include any vehicles that are repossessed by or on behalf of Vervent in its capacity as successor servicer
after the Petition Date.

1.      The Motion is GRANTED as set forth herein.

2.      The Sale Procedures (as modified by this Order) are approved. The Trustee, Holman, Vervent, and their respective agents and subcontractors, are each authorized to implement, and take all actions to carry out, the following Sale Procedures:

| THE SALE PROCEDURES | |
|---|---|
| **Vehicle Inventory Sales** | A. The Trustee will work cooperatively with Vervent and Holman to ensure that the sale of substantially all the Vehicles occurs no later than April 30, 2026 (the "Vehicle Sales Deadline"). |
| | B. Beginning on the first Friday after the first week in which the sale of any portion of the Vehicles begins, and continuing on or before each Friday thereafter until all Vehicles have been sold, Vervent, and/or Holman will provide the Trustee, Secured Parties,[4] and the Texas Taxing Authorities[5] with a weekly report (the "Vehicle Sales Report") containing information described below regarding the Vehicle sales for the prior calendar week. |
| | C. The Vehicle Sales Report will include (at a minimum, and in each case only to the extent such data is available to Vervent or Holman for the particular Vehicle) the following information for each Vehicle sold in the prior week (as well as any additional information reasonably requested by the Secured Parties related to the Vehicles): |
| | 1.    Vehicle Identification Number ("VIN"); |

---

[4]   The term "Secured Parties" means (i) Wilmington Trust, N.A. or any successor indenture trustee under any series of asset backed notes issued by a subsidiary of Tricolor Holdings, LLC (each, a "Securitization" and collectively, the "Securitizations"), (ii) the ad hoc group of holders of asset-backed notes issued pursuant to any Securitization by certain subsidiaries of Tricolor Holdings, LLC represented by Davis Polk & Wardwell LLP, (iii) the ad hoc activist recovery group of holders of asset-backed notes issued pursuant to any Securitization by certain subsidiaries of Tricolor Holdings, LLC represented by Quinn Emanuel Urquhart & Sullivan LLP, (iv) JPMorgan Chase Bank, N.A. or any successor agent, (v) Fifth Third Bank, N.A. or any successor agent; (vi) TBK Bank, SSB; (vii) ACV Capital LLC; (viii) Manheim Remarketing, Inc., and (ix) Origin Bank.  For avoidance of doubt, the identification of a party as a "Secured Party" for purposes of this Motion does not affect any parties ability to challenge such a designation at a later date, including because a party may not hold a lien or other property interest in a Vehicle or have the right to direct such a holder, and does not represent an admission on behalf of any party regarding whether the parties identified above hold secured claims in the Chapter 7 Cases.

[5]   The term "Texas Taxing Authorities" means all Texas ad valorem taxing entities represented by the firms of Perdue Brandon Fielder Collins & Mott LLP, Linebarger Goggan Blair & Sampson LLP, and McCreary Veselka Bragg & Allen PC, including but not limited to Carrollton-Farmers Branch ISD, Castleberry ISD, Cooke CAD, Fort Bend ISD, City of Houston (for Perdue Brandon Fielder Collins & Mott's accounts), Kingsbridge MUD, Midland County, West Keegans Bayou Improvement District; Bexar County, Dallas County, Ector CAD, Fort Bend County, City of Frisco, Gainesville ISD, Grayson County, Hidalgo County, City of Houston (for Linebarger Goggan Blair & Sampson's accounts), Houston City College, Houston ISD, Irving ISD, Kaufman County, Lewisville ISD, Lone Star College System, City of McAllen, Navarro County, Nueces County, Parker CAD, City of Richardson, Rockwall CAD Tarrant County, Wise County; Bell TAD, Midland CAD.

| THE SALE PROCEDURES | | |
|---|---|---|
| | 2. | Auction stock number; |
| | 3. | vehicle year; |
| | 4. | vehicle make; |
| | 5. | vehicle model; |
| | 6. | vehicle color; |
| | 7. | purchase price; |
| | 8. | all fees charged for Title Processing, Transportation, Key Replacement, Reconditioning, and/or Storage; |
| | 9. | the Auction Fees; |
| | 10. | net sale proceeds; |
| | 11. | the location from which the Vehicle was picked up prior to transportation to the auction house |
| | 12. | Vehicle owner's name, as referenced on vehicle title; and |
| | 13. | date sold. |
| | D. | The Vehicle Sales Report shall also include (i) the aggregate Sale Proceeds generated from the sales as of the date of such Vehicle Sales Report and (ii) the aggregate amount of Sale Proceeds (net of Auction Fees) (the "Net Sale Proceeds"). The Trustee will file with the Court the final Vehicle Sales Report pursuant to Bankruptcy Rule 6004. |
| | E. | The Trustee will hold all Net Sale Proceeds in an escrow account pending resolution of any disputes with respect to the distribution thereof, consistent with the terms herein. All liens and interests in any sold Vehicle shall attach automatically to the Net Sale Proceeds from such Vehicle, with the same priority, interest and extent as existed prior to sale of an applicable Vehicle, and no other liens, interests, encumbrances or the like shall attach to such Sale Proceeds. For the avoidance of doubt, to the extent it is determined in accordance with the procedures set forth herein, that any Vehicle is a Non-Estate Vehicle, the Net Sale Proceeds associated with such Non-Estate Vehicles shall not constitute property of any Debtor. |
| | F. | With the exception of the payment of the Trustee's Bond (as defined below) and any payments to Holman, the Trustee shall not be entitled or otherwise permitted to use any of the Net Sale Proceeds held by it for any purpose other than those Net Sale Proceeds determined, either by agreement of the Secured Parties or order of the Court (subject to any appeal), to be proceeds of Estate Vehicles to which no Secured Parties are otherwise entitled. The Trustee shall not be entitled to any rights of set-off or recoupment with respect to any Net Sale Proceeds other than with respect to the Trustee Bond (as defined below) as expressly provided by these Sale Procedures. |

| THE SALE PROCEDURES | |
|---|---|
| **Proceeds Bar Date & Asserted Lien or Interest Notice** | A. By no later than August 31, 2026 (the "Proceeds Bar Date"), or such later date that the Trustee and all Secured Parties agree, all parties, including the Trustee on behalf of the Debtors' estates and the Secured Parties (the "Asserted Lien or Interest Parties"), must assert any purported ownership interest or security interests in and liens upon the Net Sale Proceeds.<br><br>B. Each Asserted Lien or Interest Party must file a notice of its ownership interest or lien (the "Asserted Lien or Interest Notice") with the Court on or before the Proceeds Bar Date. Each Asserted Lien or Interest Notice will:<br><br>   1. include evidence of the Asserted Lien or Interest Party's asserted ownership interest or lien and the perfection thereof (e.g., loan documents, security agreements, UCC-1 statements, state statute, etc.);<br><br>   2. identify with particularity (e.g., VIN or assertion of blanket lien) the portion of the Vehicles for which the Asserted Lien or Interest Party asserts an ownership interest or lien; and<br><br>   3. include any other information that may be necessary to determine the validity and/or priority of the Asserted Lien or Interest Party's asserted ownership interest or lien.<br><br>C. The Trustee (and advisors) and Vervent shall promptly, upon request by the Secured Parties, provide information reasonably requested by any Asserted Lien or Interest Party to assist such party in determining its interest in any Vehicles, and, subject to execution of a protective order, any such information shared by the Trustee or Vervent shall be provided to all Asserted Lien or Interest Parties contemporaneously. The Trustee shall make her advisors and consultants available to the Asserted Lien or Interest Parties at reasonable times and subject to reasonable advance notice to assist such parties in determining their respective interests in the Vehicles.<br><br>D. The sharing of any confidential information contemplated by the process outlined herein shall be governed by a protective order acceptable to the Trustee, Vervent, and the applicable Secured Parties sharing such information.<br><br>E. A party's failure to timely file an Asserted Lien or Interest Notice will forever bar such party from receiving any distribution of the Net Sale Proceeds.<br><br>F. Each Asserted Lien or Interest Party may object to the Asserted Lien or Interest Notice of any other party, and such objection must include with reasonable particularity the basis for such objection.<br><br>G. This procedure related to the asserting any purported ownership or security interest in and liens upon the Net Sale Proceeds does not preclude Holman from asserting any security interest or lien rights notwithstanding the Interim Payment Procedures applicable to Holman set forth below. |
| **Vervent-Holman Costs Per Vehicle** | A. In consideration for the services to be rendered by Vervent and Holman, both parties will be entitled to a combined administrative and remarketing fee of $295 in the aggregate amongst the two parties (the "Administrative Fee"). For avoidance of doubt, the Administrative Fee will be shared amongst Vervent |

5

| THE SALE PROCEDURES |
|---|
| and Holman and, upon allowance in accordance with the Interim Payment Procedures (defined below), shall be paid from the Net Sale Proceeds and shall be allocated on a Vehicle-by-Vehicle basis. $95 of the Administrative Fee (when such fee is duplicative of servicing fees covered by a servicing agreement between Vervent and a Secured Party) shall be rebated by Vervent from its portion of the Administrative Fee and not from Holman's portion of the Administrative Fee to the applicable Secured Party in accordance with the applicable servicing agreement.<br><br>B. For the avoidance of doubt, except as set forth below, no security or pass through costs of or on behalf of Vervent or any Secured Party (other than TBK Bank, SSB and subject to ACV Capital LLC's ("ACV") reservation of rights to assert security or pass through costs) shall be asserted by Vervent, Holman, or such Secured Party with respect to Estate Vehicles, and no security or pass-through costs of or on behalf of TBK Bank, SSB or ACV shall be asserted with respect to Non-Estate Vehicles. Any security costs incurred by Vervent and/or Holman shall be addressed as part of Vervent's servicing transition costs, and with respect to any customer notes owned by the Debtors' estates shall be allocated to such customer notes owned by the Debtors estates solely on the basis of the value of such customer notes owned by the Debtors' estates serviced by Vervent in proportion to all customer notes relating to Tricolor being serviced by Vervent and not on the basis of any Vehicles determined to be Estate or Non-Estate Vehicles under these Sale Procedures. For the avoidance of doubt, nothing in these Sale Procedures overrides any separate agreement regarding Vervent's servicing transition costs between Vervent and any Secured Party with respect to customer notes being serviced by Vervent that are not property of the Debtors' estates.<br><br>C. The Administrative Fee is intended to compensate Vervent and Holman for the following services:<br><br>   1. Administrative Services<br><br>      a. Boarding collateral to Vervent system of record which allows for cash management, tracking at scale through entire transport and sales process<br><br>      b. Automation of sales status reports through Holman integration ensuring every asset is accounted for, reconciled, and available for live reporting as needed<br><br>      c. Basic title processing work (see Title Processing Fee terms below for when additional work is required):<br><br>         i. Staff will work through Dealertrack and Vervent core system to ensure lien records are reconciled;<br><br>      d. Vervent to manage certain auto pre- and post-auction decision processes such as key approvals, minor repair cost approvals (e.g. salvage vs. repair decisions), monitor non-selling units to |

6

| THE SALE PROCEDURES | |
|---|---|
| | determine changes in sales strategies (e.g. next steps following failed auction); <br><br> e. Sale Proceeds reporting and reconciliation of funds received to bank account(s) and core collateral system (this ensures proper payment for all assets). <br><br> 2. Remarketing Services: <br><br>    a. Ensure consumer repossessions are sold in compliance with applicable regulations <br><br>    b. Manage Vehicle Logistics <br><br>       i. Source carrier and auction capacity; <br><br>       ii. Coordinate with Vervent to align site closures with Vehicle pickups; <br><br>       iii. Coordinate with repossession agents and impound yards on advance charge payouts and release documentation. <br><br>    c. Title Administration <br><br>       i. Audit for marketability; <br><br>       ii. Acquire duplicate titles if necessary; <br><br>       iii. Store in a secure location; <br><br>       iv. Execute titles. <br><br>    d. Vehicle Level Sale Preparation and Representation <br><br>       i. Manage auction process across all 35+ auctions; <br><br>       ii. Repair and reconditioning approval; <br><br>       iii. Pricing strategy (floor, high bid approval, etc.). <br><br>    e. Audit expenses and Sale Proceeds <br><br>    f. Integration & Collaboration with Vervent <br><br>       i. Seamless remittance of Sale Proceeds; <br><br>       ii. Integrated reporting. |
| **Title Processing Fees** | A. Vervent or Holman (as applicable) shall be entitled to payment of certain title processing fees (the "Title Processing Fees") as follows, which shall be paid from the Net Sale Proceeds in accordance with the Interim Payment Procedures and will be charged on a Vehicle-by-Vehicle basis as applicable for each Vehicle: <br><br>    1. Tier I: No charge/minimal work as title is clean <br><br>    2. Tier II: $40 – Convert title into selling party name <br><br>       i. Applies on a per occurrence basis when Holman is asked to manage the title conversion process (plus pass-through |

| THE SALE PROCEDURES | |
|---|---|
| | DMV fees incurred by Holman (without markup) (including from consumer's name to TAA, solely in its capacity as a liquidation agent under this agreement for the benefit of the Asserted Lien or Interest Parties; provided that such titling in the name of TAA with respect to the Non-Estate Vehicles shall be for administrative purposes only and solely in TAA's capacity as agent for the Secured Parties)<br><br>3. <u>Tier III</u>: $125 – Significant and complicated title issues resulting in Vervent performing certain remediation services, including, but not limited to:<br><br>    i. Working with DMV to track down latest title, as allowed by law;<br><br>    ii. Working with DMV to ensure verified titles are matching their lienholder records prior to sale, as allowed by law;<br><br>    iii. Outbound calls and troubleshooting any VIN discrepancies with DMVs, a43s allowed by law;<br><br>    iv. Note: This pricing includes local DMV charges and completing applicable state required forms. |
| **Estimated Auction Fees** | A. In addition to the Administrative Fees and Title Processing Fees paid under the Vervent-Holman bid, the Trustee and Secured Parties acknowledge that certain pass-through costs from independent, non-affiliated third parties will be incurred through the sale process (the "<u>Auction Fees</u>"), and which shall be paid (or otherwise deducted) by the auction house from the Sale Proceeds prior to remittance of the Net Sale Proceeds to the Trustee from Holman, and will be charged on a Vehicle-by-Vehicle basis, as applicable, with respect to Vehicles sold by such applicable third parties.<br><br>B. Other than some possible relationship-based payments that Holman may receive from certain third-party providers and that are contingent and not presently determinable, the amounts that will be charged by Holman as shown in these Sale Procedures are the only compensation that Holman will receive in connection with this sale process.<br><br>C. The aggregate total of the Administrative Fee, Title Processing Fees, and Auction Fees as to any particular Vehicle may, at times, exceed the Sale Proceeds obtained from the sale of such Vehicle. (such shortfall amounts, the "<u>Deficiency Amounts</u>"). In such event, Holman shall be entitled to an Administrative Fee with respect to such Vehicle in the amount of $100 of which Vervent shall be entitled to $50 (Vervent's $50 portion of the Administrative Fee is subject to the same Vervent rebate terms and conditions as the full Administrative Fee), and thereafter, Holman shall be entitled to recover the resulting Deficiency Amounts associated with any and all such Vehicles from the Sale Proceeds of the other Vehicles (the "<u>Other Vehicle Sale Proceeds</u>") by (i) with respect to the Auction Fees, immediately applying, |

| THE SALE PROCEDURES |
|---|

and setting off, such Deficiency Amounts from the Other Vehicle Sale Proceeds in Holman's possession, and (ii) with respect to any other fees and any Auction Fees not paid through the aforementioned setoff, being reimbursed from the Other Vehicle Sale Proceeds (in such case in accordance with the Interim Payment Procedures). The final allocation of the Deficiency Amounts to the Other Vehicle Sale Proceeds shall be resolved in connection with the Holman Final Fee Application either consensually by Trustee and the parties with interests in those Other Vehicle Sale Proceeds, or by the Court, if necessary; provided that any payments of the Deficiency Amounts to Holman shall not be delayed pending the resolution of the final allocation of the Deficiency Amounts to the Other Vehicle Sale Proceeds. These Auction Fees will be tracked on a VIN-by-VIN basis and apply as follows:

1. Standard Fees (applies to all Vehicles sold)

   a. Auction Sale Fee ($150) – Flat rate fee for general auction services

   b. Cleaning ($35) or Detail ($90) – Flat rate fee, one of these two fees will apply to each Vehicle, based on the condition of such Vehicle;

   c. PII Removal ($30) – Flat rate fee to ensure appropriate removal of all digital and physical personally identifiable information from Vehicles;

   d. Technology Fee ($50) – Flat rate fee, auction integration into various technology (AutoIMS, Condition Reporting, Virtual Markets, and Simulcast platforms);

   e. Transportation Fee (estimated average of $125 - $200) – Actual, reasonable, and customary variable cost for transportation from retail/recondition facility to auction house; variable based on asset, condition, and distance of relocation.

      i. Note: Transportation Fees include dollars associated with impounds and repossession releases (i.e. storage costs or repair work paid for to obtain possession of the Vehicle).

2. Per Occurrence (as needed for each Vehicle)

   a. Key Replacement ($225 average) – Variable cost for a replacement key, only approved on an as-needed basis;

   b. Miscellaneous Reconditioning – Variable cost for minor repair/reconditioning (battery replacement, tire replacement, windshield replacement, etc.);

   c. Storage ($15/day) – flat rate per day, only applies to Vehicles that are secured at an auction house engaged by Holman and removed prior to a sale.

| THE SALE PROCEDURES | |
|---|---|
| | E. Notwithstanding anything to the contrary herein, any auction house shall remit the Net Sale Proceeds of the Vehicle sales to Holman within three (3) business days of the auction sale date, and Holman shall thereafter remit such Net Sale Proceeds to the Trustee within three (3) business days of receipt from the auction house in each case, without any set-off, recoupment, or other reduction for any pre-petition amounts owing from the Debtors to the auction houses or their affiliates. |
| | F. Vervent and/or Holman shall provide a detailed accounting of all fees charged for Transportation, Key Replacement, Reconditioning, and/or Storage (collectively, the "Reviewable Auction Fees"), to the Trustee and the Asserted Lien or Interest Parties, and the Trustee and the Asserted Lien or Interest Parties shall have the right to review and object to the reasonableness or necessity of the Reviewable Auction Fees incurred as part of the Court's review and approval of payment of Vervent's and Holman's fees in the Holman Final Fee Application. |
| **Trustee Commission** | A. The Trustee may seek her statutory commission set forth under section 326(a) of the Bankruptcy Code (the "Trustee Commission"). For avoidance of doubt, all parties reserve the right to challenge the Trustee's assertion of entitlement to statutory fees under 326(a) on behalf of the sale of Vehicles. For avoidance of doubt, nothing herein, including the Secured Parties' consent to the Trustee's participation and oversight of the sale process, and that proceeds flow through the Trustee's accounts, shall be deemed a waiver as to or otherwise prejudice any parties', including the Secured Parties' rights or arguments with respect to whether the Trustee has earned her statutory commission under section 326(a) of the Bankruptcy Code. |
| | B. The Trustee will provide the Secured Parties and Vervent with written evidence (e.g., invoices and calculations) of the Trustee Commission and an opportunity to object to same before any portion of the Trustee Commission are paid from the Net Sale Proceeds of Vehicles. Any disputes regarding the Trustee Commission shall be determined by the Bankruptcy Court. |
| **Specified Costs** | A. Any out-of-pocket costs incurred by the Trustee in connection with the Trustee's bond, in an aggregate amount not to exceed $175,000 (the "Trustee's Bond") (plus any amounts necessary to renew such bond) may be paid from the Net Sale Proceeds and such cost shall be allocated to each Vehicle on a pro-rata basis. |
| | B. Further, to the extent that any ad valorem taxes due to an applicable taxing agency have been determined, by agreement of the Trustee and the other Asserted Lien or Interest Parties or by order of this Court, to have priority over the lien or security interest of any other Asserted Lien or Interest Parties with respect to the Net Sale Proceeds of a particular Vehicle (as it relates to any particular Vehicle, the "Finally Determined Ad Valorem Taxes"), such Finally Determined Ad Valorem Taxes may be remitted by the Trustee or Vervent, as applicable in respect of Estate or Non-Estate Vehicles, respectively, to the |

| THE SALE PROCEDURES | |
|---|---|
| | applicable taxing authority prior to distribution of the remaining Net Sale Proceeds to the applicable Asserted Lien or Interest Party as set forth herein. |
| **Allocation of Sale Proceeds** | A. The Trustee and each of the other Asserted Lien or Interest Parties, as applicable, will work cooperatively and in good faith to: |
| |    1. determine whether and which Net Sale Proceeds are subject to ownership, lien and/or priority disputes; |
| |    2. identify the quantum of such disputes; |
| |    3. identify the Asserted Lien or Interest Parties involved in such disputes; and |
| |    4. resolve or otherwise reach agreement with respect to such disputes. |
| | B. Notwithstanding anything to the contrary herein, prior to making any distribution of any Sale Proceeds (including any Net Sale Proceeds), in advance of any such distribution, the Trustee shall (i) obtain from Holman written confirmation of all amounts that are or may become due and owing to Holman in accordance with the Interim Payment Procedures, whether or not such amounts have yet been approved under the Interim Payment Procedures, in connection with the amount of Sale Proceeds that are the subject of the proposed distribution by the Trustee (the "<u>Amount Confirmed by Holman</u>"), and (ii) reserve and hold from the Sale Proceeds funds sufficient to pay in full the Amount Confirmed by Holman (with any unapproved amounts to be held pending approval under the Interim Payment Procedures). The Trustee shall not distribute any Sale Proceeds unless and until such written confirmation is obtained from Holman and such reserve is established.  For the avoidance of doubt, if any portion of the Amount Confirmed By Holman is not ultimately approved pursuant to the Interim Payment Procedures, that portion of the Amount Confirmed by Holman shall be distributed in accordance with the paragraph found immediately below. |
| | C. To the extent (1) the Trustee and all other Asserted Lien or Interest Parties agree in writing that there is no lien, ownership, and/or priority dispute with respect to a portion of the Net Sale Proceeds, or (2) the Asserted Lien or Interest Parties asserting an interest in the same portion of the Net Sale Proceeds, and any party objecting to any such Asserted Lien or Interest with respect to such property resolve any lien, ownership, and/or priority dispute as between themselves (which resolution shall be memorialized in writing), in each case the Trustee will promptly, but in no event later than 7 business days after the date of such agreement or resolutions, distribute the applicable undisputed Net Sale Proceeds, less (I) the Amount Confirmed By Holman that is reserved for Holman; provided that the Trustee will deliver and pay to Holman only those portions of reserved Amount Confirmed by Holman that are approved under the Interim Payment Procedures, (II) the Trustee's Bond (applied ratably to all Vehicles) and (III) any Finally Determined Ad Valorem |

| THE SALE PROCEDURES | |
|---|---|
| | Taxes (applied only to the applicable Vehicle) as follows: (A) to the extent that any Net Sale Proceeds held by the Trustee are determined, by agreement of the Secured Parties or order of the Court (subject to any appeal), to be the proceeds of a Vehicle determined not to constitute property of Debtors' estates, such Net Sale Proceeds shall be promptly (and in any event within 7 days) turned over to Vervent to be held for the benefit of, and distributed to, the Secured Parties in accordance with the procedures contemplated below and applicable law, and (B) to the extent that any Net Sale Proceeds held by the Trustee are determined, by agreement of the Secured Parties or order of the Court (subject to any appeal), to be proceeds of Estate Vehicles, to the Asserted Lien or Interest Party with the undisputed interest in such allocable Net Sale Proceeds (or as otherwise directed by the Court). |
| | D.  If any Asserted Lien or Interest Parties asserting an interest in the same portion of the Net Sale Proceeds are unable to resolve any lien, ownership, and/or priority disputes as between themselves, such Parties will submit the dispute to the Court for adjudication; provided, however, that such Parties may submit such dispute to the Court for adjudication at an earlier date. |
| | E.  After a dispute is resolved by the Court, the Net Sale Proceeds subject of such dispute shall be distributed in accordance with the terms of the Court's order no later than 3 calendar days after such order of the Court becomes final and non-appealable with respect to such dispute. |
| | F.  The Trustee and the other Asserted Lien and Interest Parties agree: |
| |     1.  that any lien, ownership, and/or priority disputes relating to the Vehicles or Net Sale Proceeds, or any other disputes in connection with the allocation of the Net Sale Proceeds as between Estate Vehicles and Non-Estate Vehicles, will be subject to and governed by motion practice in accordance with Bankruptcy Rule 9014 and related procedures and no party shall have or assert a defense on the grounds that a party failed to file an adversary proceeding to determine the estate's ownership interest in property; provided, however that to the extent that Net Sale Proceeds are determined to be the proceeds of Non-Estate Vehicles, any disputes with respect to such Net Sale Proceeds shall be determined pursuant to applicable law; and |
| |     2.  to submit to the jurisdiction of the Court and consent to the entry of an order by the Court in connection with the sale process as to the determination of whether Net Sale Proceeds constitute proceeds of Estate Vehicles or Non-Estate Vehicles. |
| **Interim Payment Procedures** | In accordance with Sections 330 and 331 of the Bankruptcy Code, the Administrative Fees, Title Processing Fees, the Deficiency Amount, and the Reviewable Auction Fees, as well as the actual, necessary expense associated with purchasing a bond in connection with these sale procedures (which, for avoidance of doubt, shall not include any legal expenses associated with obtaining such bond), shall be subject to allowance and payment from the Net Sale Proceeds in |

| THE SALE PROCEDURES |
|---|

accordance with the following compensation procedures (the "Interim Payment Procedures"):

A.  On or before the 10th day of each month starting on January 10, 2026, until all Vehicles are sold, Holman shall file with the Court a statement reflecting the (1) Title Processing Fees, and (2) Administrative Fees for the Vehicles sold in the applicable period (the "Holman Interim Compensation Request"). The Holman Interim Compensation Request shall itemize the Title Processing Fees and Administrative Fees on a VIN-by-VIN basis for the relevant fee period. Beginning with the Holman Interim Compensation Request filed in February 2026 and continuing on a consecutive monthly basis thereafter, Holman may include in each Holman Interim Compensation Request an amount equal to twenty-five percent (25%) of the actual, necessary expenses incurred by Holman to obtain the bonding associated with the Sale Procedures, which shall be applied ratably to all Vehicles (for avoidance of doubt, these expenses shall not include any of Holman's legal fees).

B.  The Trustee and the Secured Parties shall have seven (7) days from filing of a Holman Interim Compensation Request to object to interim payment of the amount therein (the "Objection Deadline"). Any objection must state with specificity the basis of the objection and the amount of that Holman Interim Compensation Request at issue.

C.  Within seven (7) days of each Objection Deadline, the Trustee shall remit payment to Holman from the Net Sale Proceeds either (1) the full amount of the Holman Interim Compensation Request if no timely objection was filed or, (2) if a timely objection was filed by the Objection Deadline, the undisputed amount of such Holman Interim Compensation Request. Holman shall thereafter promptly remit to Vervent its portion of any allowed compensation in the applicable Holman Interim Compensation Request.

D.  Failure to include any Title Processing Fee or Administrative Fee in any Holman Interim Compensation Request shall not waive the right to seek payment of such fee in a future Holman Interim Compensation Request or the Holman Final Fee Application (defined below).

E.  Not later than thirty (30) days after the last Vehicle is sold, Holman shall file a final fee application for all requested Title Processing Fees, Administrative Fees, Deficiency Amounts, any unpaid bond expenses and Reviewable Auction Fees related to the Vehicles (the "Holman Final Fee Application"); provided that all costs incurred by Holman to obtain bonding associated with these Sale Procedures shall be paid as set forth above and shall be applied ratably to all Vehicles and to the extent that those bonding costs are not paid-in-full by the deadline for Holman to file the Holman Final Fee Application, any unpaid bonding costs shall be included in the Holman Final Fee Application; provided further that, the allocation of any Deficiency Amounts shall be resolved in the Holman Final Fee Application either consensually by the Trustee and the parties

13

| THE SALE PROCEDURES | |
|---|---|
| | with interest in those Other Vehicle Sales Proceed, or by the Court, if necessary. |
| | F. Parties shall have twenty-one (21) days from the filing of Holman Final Fee Application to object to the amount requested being allowed and paid on a final basis (the "Final Objection Deadline"), which objection must state with specificity the basis of the objection and the amount of the Holman Final Fee Application at issue. |
| | G. Within seven (7) days of the Final Objection Deadline, the Trustee shall remit payment to Holman either (1) the full amount of the Holman Final Fee Application not previously funded if no timely objection is submitted, or (2) if a timely objection was submitted before the Final Objection Deadline or an interim objection remains unresolved, the undisputed amount of such the Holman Final Fee Application. All amounts in the Holman Final Fee Application that are not subject to a timely interim or final objection shall be allowed on a final basis as of the Final Objection Deadline. |
| | H. To the extent of any timely filed objection, Vervent, Holman, and the objecting party shall work in good faith to resolve such objection. If no resolution can be reached, the Bankruptcy Court shall have exclusive jurisdiction to resolve the objection. |

3.     The Trustee, Vervent, Holman, and their respective agents and subcontractors are authorized to execute and deliver all instruments and documents (including any purchase instruments) and take other such action as may be necessary or appropriate to implement and effectuate the transactions contemplated by the Sale Procedures.

4.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the sales authorized pursuant to this Order.

5.     To the extent applicable, the requirements of Bankruptcy Rule 6004(a) are waived.

6.     To the extent necessary, the Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

14

7.      The Vehicles shall be sold in accordance with industry-standard remarketing protocols. Notwithstanding the foregoing, neither the Trustee, any Debtor, Vervent, Holman, nor any Secured Party shall be deemed to have made any representation regarding any Vehicle, and buyers shall have no recourse against, and may not assert any claim against, the Trustee, any Debtor, Vervent, Holman, or any Secured Party based on any such alleged representation.

8.      The Trustee is authorized to transfer to each applicable buyer all of the Debtors' right, title, and interest in and to, and possession of, the applicable Vehicles, which shall be immediately vested in such buyer and title to such Vehicles shall be transferred to such buyer pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, free and clear of all claims, liabilities, interests, and encumbrances of whatever kind or nature, in each case, whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law, or doctrine of successor liability or related theories, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the consummation of the sale of the applicable Vehicles, to the maximum extent permitted to be extinguished by this Order or applicable law. The claims, liabilities, interests, and encumbrances shall attach to the Sale Proceeds in such order and priority as they existed immediately prior to the actual consummation of the sale of the applicable Vehicles. All persons with claims, liabilities, interests, and encumbrances of any kind or nature whatsoever against or in any of the applicable Vehicles shall

15

be forever barred and estopped from pursuing or asserting such claims, liabilities, interests, and encumbrances against the applicable buyer or the applicable Vehicles.

9.     Notwithstanding anything herein to the contrary, the effectiveness of this Order shall be expressly conditioned upon the Court's entry of an order approving the retention of Holman as an auctioneer under section 327(a) of the Bankruptcy Code (the "Retention Order"). All payments, fees, compensation, and reimbursement of expenses to Holman or Vervent shall be subject in all respects to (a) the Interim Payment Procedures, (b) the Retention Order, and (c) future application, notice, hearing, and approval by the Court.

10.     Nothing in this Order shall prejudice the rights of Manheim Remarketing, Inc. or ACV, or any of their respective affiliates, to seek the allowance of an administrative expense claim for storage fees incurred between the Petition Date and the entry of this Order and the rights of all parties-in-interest to object to such requests are reserved

11.     This Order and the Sale Procedures shall be binding and enforceable on the Debtors, the Trustee, the Debtors' estates, and all creditors and parties in interest and their successors and assigns.

12.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

13.     Nothing in this Order, any amendments thereto, or related documents, including, but not limited to, APAs or amended APAs, discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Closing Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of

16

property after the Closing Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors. Nor shall anything in this Order enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

14.     Further, nothing in this Order, any amendments thereto, or related documents, authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Sale Order shall relieve any entity from any obligation to address or comply with information requests or inquiries from any Governmental Unit. Nothing in this Order shall affect any setoff or recoupment rights of any Governmental Unit. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order

15.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order, all purchase instruments and any other agreements executed in connection with any sales, and to adjudicate, if necessary, any and all disputes concerning or relating in any sales authorized by this Order (other than as it relates to any disputes regarding Net Sales Proceeds of Non-Estate Vehicles).

16.     Notwithstanding anything herein, all rights and remedies of the Trustee, the Secured Parties and each of the other parties in interest in these cases are expressly preserved, including, but not limited to, with respect to the priority of any liens or claims against or to the Vehicles.

# # # END OF ORDER # # #

17

Prepared and submitted by:

/s/ *Charles R. Gibbs*
Charles R. Gibbs (TX Bar No. 7846300)
Marcus A. Helt (TX Bar No. 24052187)
Grayson Williams (TX Bar No. 24124561)
MCDERMOTT WILL & SCHULTE LLP
2801 North Harwood Street, Suite 2600
Dallas, Texas 75201
Telephone: (214) 295-8000
E-mail: crgibbs@mwe.com
          mhelt@mwe.com
          gwilliams@mwe.com

-and-

Darren Azman (admitted *pro hac vice*)
MCDERMOTT WILL & SCHULTE LLP
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
E-mail: dazman@mwe.com

*Counsel to the Chapter 7 Trustee*