# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| IN RE:<br><br>TRICOLOR HOLDINGS, LLC, *et al.*,<br><br>Debtor. | Chapter 7<br><br>CASE NO. 25-33487 (MVL) |

**JOINDER OF REED CROW TO DANIEL CHU'S MOTION FOR ORDER AUTHORIZING USE OF PROCEEDS OF DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICIES FOR DEFENSE EXPENSES AND OTHER LOSS AMOUNTS**

Reed Crow ("Mr. Crow"), former officer and director of Tricolor Holdings, LLC ("Tricolor"), submits this joinder ("Joinder") to Daniel Chu's Motion for an order authorizing the use of proceeds of directors and officers liability insurance policies, i.e. a "comfort order" (the "Motion") and in support, shows as follows:

**JURISDICTION, VENUE, AND PROCEDURAL BACKGROUND**

1. The Court has jurisdiction to consider this matter under 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O).

2. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On September 10, 2025 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 7 of the Bankruptcy Code. The Debtors' chapter 7 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

4. Also on the Petition Date, Anne Elizabeth Burns was designated as the chapter 7 trustee (the "Trustee").

5. On November 24, 2025, former Chief Executive Officer ("CEO") Daniel Chu filed a similar request for relief. Other former directors and officers have joined this motion or have

-1-

filed similar motions.

6. Since then, the Trustee objected to Mr. Chu's motion for comfort order, instead making counterproposals. A hearing is set for January 12, 2026.

## **RELIEF REQUESTED**

7. Mr. Crow has noticed a Claim under the directors and officers liability insurance policies issued to Tricolor (collectively, the "D&O Policies"). The primary insurer has responded and agreed to issue coverage for Mr. Crow. However, the insurer will only do so following entry of a "comfort order" by this Court pursuant to this Motion.

8. Pursuant to sections 105(a), 362, and 541 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules"), Mr. Crow requests entry of a "comfort" order authorizing, and, to the extent necessary, modifying the bankruptcy petition's automatic stay to allow certain insurance companies (the "Insurers")—who issued the D&O Policies—to advance and pay covered "Defense Expenses" as that term is defined in the D&O Policies on behalf of Mr. Crow as an individual "Insured Person" and "Insured," as those terms are defined in the D&O Policies, in accordance with the D&O Policies.

## **FACTUAL BACKGROUND**

9. Tricolor maintained the following D&O Policies, all of which were attached to Mr. Chu's Motion:

- Travelers Casualty & Surety Company of America ("Travelers"). Policy No. 106848518 for the period June 16, 2025 through June 16, 2026 (the "Travelers Policy").[1] The Travelers Policy provides primary coverage to Insureds, including

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings set forth in the Travelers Policy.

Mr. Crow, up to $5,000,000.[2]

- Continental Casualty Company ("Continental") Excess Insurance Policy No. 794111969 for the period June 16, 2025 through June 16, 2026 (the "CNA Policy"). The CNA Policy is a "follow form" excess policy, which agrees to provide insurance in accordance with the terms and conditions stated in the Travelers Policy unless specifically modified in the CNA Policy and provides an additional $5,000,000 in coverage excess of the Travelers coverage.

- Old Republic Insurance Company ("Old Republic") Excess Liability Insurance Policy No. ORPRO 13 103527 (the "Old Republic Policy"). The Old Republic Policy is an excess "follow form" policy that provides an additional $5,000,000 in coverage excess of both the Travelers and Continental coverage.

10. The D&O Polices provide a total of $15,000,000 in a tower of insurance coverage to Insureds (the "Policy Proceeds"), including Mr. Crow. This includes coverage for "Defense Expenses," defined to include reasonable and necessary fees, costs, and expenses resulting from the investigation or defense of a "Claim."

11. Mr. Crow understands that Tricolor also maintained an "Errors and Omissions" policy provided by Wesco Insurance Co. (the "E&O Policy") that provides up to $5,000,000 of entity-only coverage to Tricolor.

12. The D&O Policies are claims-made policies and cover the period from June 16, 2025, through June 16, 2026 (the "Policy Period"). The D&O Policies generally cover "Loss" that directors and officers incur on account of claims made during the Policy Period and provide for advancement of "Defense Expenses" in connection with such claims and governmental investigations.

13. "Loss" is defined as:

*Loss* means *Defense Expenses* and money which an *Insured* is legally obligated to pay as a result of a *Claim*, including settlements, judgments, back and front pay,

---

[2] The Travelers Policy provides a further $1,000,000 only to Directors and Offices for "Supplemental Personal Indemnification." This coverage is available after the Liability Coverage has been exhausted.

compensatory damages, punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages, prejudgment and postjudgment interest, and legal fees and expenses awarded pursuant to a court order or judgment.

See Travelers Policy at Sec. III.G (emphases in original).

14. "Defense Expenses" is defined as

***Defense Expenses*** means reasonable and necessary legal fees and expenses incurred by the Company or the ***Insured***, with the Company's consent, in the investigation, defense, settlement and appeal of a ***Claim***, including but not limited to, cost of expert consultants and witnesses, premiums for appeal, injunction, attachment or supersedeas bonds (without the obligation to furnish such bonds) regarding such ***Claim***; provided that ***Defense Expenses*** will not include the salaries, wages, benefits or overhead of, or paid to, any ***Insured*** or any employee of such ***Insured***.

See Travelers Policy at Sec. II.F (emphases in original).

15. The D&O Policies provide Side A, Side B, and Side C coverage as follows:

A. the **Insured Persons**, **Loss** for **Wrongful Acts**, except for **Loss** which the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification;

B. the **Insured Organization**, **Loss** for **Wrongful Acts**, which the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification; and

C. the **Insured Organization**, **Loss** for **Wrongful Acts**,

resulting from any **Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period.

The Company will also pay on behalf of the **Insured Organization**, **Investigation Expense** resulting from any **Security Holder Derivative Demand** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, against an **Insured Organization** for **Wrongful Acts**. The Company's maximum limit of liability for all **Investigation Expense** will be the Investigation Limit of Liability set forth in ITEM 5 of the Declarations for this **Liability Coverage**.

See Travelers Policy at Sec. I (emphases in original).

12. The D&O Policies include a "priority of payments" provision that prioritizes the Side A coverage:

> If **Loss**, other than **Defense Expenses**, from any **Claim** exceeds the remaining applicable limit of liability as set forth in ITEM 5 of the Declarations:
>
> 1. the Company will first pay **Loss** for such **Claim** to which Insuring Agreement A applies; then
>
> 2. to the extent that any amount of the applicable limit of liability will remain available, the Company will pay **Loss** for such **Claim** to which Insuring Agreements B and C apply.

*See* Travelers Policy at Sec. VI.F (emphases in original).

13. This "Order of Payments" provision requires that, in the event a covered "Loss" exceeds the policy's limits of liability and affects multiple coverage parts (*i.e.*, Side A and either Side B or Side C), the Insurers must first prioritize payment of non-indemnified Loss—including Defense Expenses—for individual directors and officers under the Side A coverage.

14. The Travelers Policy states that it is designed for the primary benefit of the Insured Persons, including Mr. Crow: "[t]he Company will pay on behalf of the Insured Persons, Loss for Wrongful Acts … resulting from any Claim."

15. Mr. Crow was Tricolor's Vice President of Accounting and Controller. As such, Mr. Crow was an officer and qualifies as an "Insured Person" and an "Insured" under each of the D&O Policies.

16. The Trustee has informed this Court as to various criminal and civil investigations for conduct prior to the Petition Date, as well as its own investigation into conduct by certain directors and officers. On December 17, 2025, the Department of Justice unsealed criminal indictments against certain former officers and directors, including Mr. Chu. These investigations and subsequent indictments have resulted in Claims and Potential Claims during the Policy Period for Wrongful Acts and Related Wrongful Acts under the D&O Policies.

17. Beginning on September 29, 2025, Mr. Crow provided notice of a "Claim" to all the Insurers under the D&O Policies.

18. Travelers has acknowledged Mr. Crow's Claim and agreed to his choice of counsel. However, Travelers requires a "comfort order" from this Court before paying Mr. Crow's Defense Expenses under the Travelers Policy. Specifically, the Travelers' counsel stated "since there is a bankruptcy pending, Travelers is unable to pay any invoices until a Comfort Order is entered by the bankruptcy court allowing [them] to make payments."

## BASIS FOR RELIEF AS TO MR. CROW

19. Mr. Crow respectfully requests the Court enter an order authorizing payment or advancement of his accrued and future Defense Expenses, as well as other Loss amounts, under the D&O Policies.

20. Proceeds of liability insurance policies do not necessarily belong to the estate merely because the underlying insurance policies are themselves estate property. *See In re Vitek, Inc.*, 51 F.3d 530, 535 (5th Cir. 1995) ("when a debtor corporation owns a liability policy that *exclusively* covers its directors and officers…the proceeds of that D&O policy are *not* part of the debtor's bankruptcy estate." (emphasis in the original)); *see also In re Edgeworth*, 993 F.2d 51, 55–56 (5th Cir. 1993) ("[W]hen the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.").

21. Further, courts routinely conclude that policy proceeds that might benefit a debtor are not part of the bankruptcy estate when, like here, a D&O insurance policy provides payment priority to individual insureds. *See In re MF Glob. Holdings Ltd.*, 515 B.R. 193, 203-04 (Bankr. S.D.N.Y) ("Even if [debtors] had a contractual claim to the D&O Proceeds, that claim would be subject to the D&O Policies' priority of payment provision."); *In re World Health Alternatives,*

*Inc.*, 369 B.R. 805, 810 (Bankr. D. Del. 2007) (insurance proceeds not property of estate where the policy contained a priority of payment provision and the debtor was entitled only to coverage for amounts it was required to indemnify and no indemnification claims had yet been made); *In re Downy Fin. Corp.*, 428 B.R. 595, 608 (Bankr. D. Del. 2010) ("[T]he Policy's priority scheme is not affected by a bankruptcy filing.…This is significant because were the Court to hold that the Policy proceeds are property of the estate and, thus, subject to the automatic stay, the trustee would have greater rights in the [Policy proceeds] than the debtor had before filing for bankruptcy." (internal quotations omitted)); *In re Laminate Kingdom LLC*, No. 07-10279-BKC-AJC, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008) (finding, in light of a priority of payments provision in the applicable insurance policy, the estate's trustee had only a contingent, residual interest in policy proceeds and payment of proceeds in accordance with the priority provision would not diminish the protection afforded the estate under the policy).

22. In its objection to Mr. Chu's Motion, the Trustee noted Mr. Chu's background, potential criminal conduct, and wealth as reasons to object to Mr. Chu's "comfort order" request. However, such concerns are not at issue as to Mr. Crow. For example, Mr. Crow worked for Tricolor for only a year before the Company filed for bankruptcy and yet has incurred a disproportionate amount of potential criminal and civil exposure given the ongoing nature of the investigations. Based on the allegations to date, the fraud scheme pre-dated Mr. Crow's employment at Tricolor and yet Mr. Crow is burdened by the necessity for legal counsel. The D&O Policies should cover an officer such as Mr. Crow, who was working within his officer role and now, because of that employment, is burdened with defense expenses. Since the Petition was filed, Mr. Crow has been committed to assisting the bankruptcy and the Trustee's efforts to understand

the Company and its financial statements. However, in doing so, Mr. Crow sought counsel to navigate potential exposure and involvement in civil and criminal investigations.

23. Counsel for Mr. Crow has been in discussions with the Trustee and other Insureds regarding the Trustee's counter-proposals on the D&O Policies. Those conversations are on-going. As a result, Mr. Crow only files this Joinder in order to request a similar "comfort order" and to reserve his rights concerning access to the respective D&O Policies.

## RESERVATION OF RIGHTS

24. Mr. Crow reserves all rights with regard to access, use, and eligibility to and under the D&O Policies, along with all other rights available to him under applicable law.

25. Mr. Crow reserves all rights to amend, modify, or supplement this Joinder. Mr. Crow further reserves the right to respond, as appropriate, to any filings related to the Motion that are filed in the future and to make arguments in connection with any other related filings.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Reed Crow respectfully requests entry of an order authorizing the Insurers to advance and pay the Defense Expenses and other Loss amounts pursuant to the terms of the D&O Policies and granting such other and further relief as may be just and proper.

Dated: January 6, 2026

Respectfully submitted,

*/s/ Kate Rumsey*
Kate Rumsey
Texas State Bar No. 24081130
krumsey@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, Texas 75201
Telephone: (469) 391-7400
Facsimile: (469) 391-7401

**Counsel to Reed Crow**

## CERTIFICATE OF CONFERENCE

I certify that I have attempted to reach Trustee's counsel via email and telephone to confer as to the relief sought in this Joinder. The Trustee's counsel represents that given its objection to Mr. Chu's motion, the Trustee opposes the relief sought by this Joinder.

*/s/ Kate Rumsey*
Kate Rumsey

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will cause a copy of the foregoing document to be served by the Court's ECF system upon parties who have registered with this Court.

*/s/ Kate Rumsey*
Kate Rumsey