Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Phone: (214) 692-6200
Email: jason.rudd@wickphillips.com
　　　scott.lawrence@wickphillips.com

Adam R. Prescott (admitted *pro hac vice*)
Sam Anderson (admitted *pro hac vice*)
**BERNSTEIN SHUR SAWYER & NELSON, PA**
100 Middle Street, PO Box 9729
Portland, ME 04104
Phone: (207) 774-1200
Email: aprescott@bernsteinshur.com
　　　sanderson@bernsteinshur.com

**COUNSEL FOR VERVENT, INC.**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| TRICOLOR HOLDINGS, LLC, *et al.*,[1] | Case No. 25-33487 (MVL) |
| Debtors. | |

## VERVENT, INC.'S OMNIBUS OBJECTION TO CONSUMER STAY RELIEF MOTIONS AND RESERVATION OF RIGHTS

Vervent, Inc. ("**Vervent**"), in its capacity as loan servicer under various Tricolor portfolios, submits this omnibus objection and reservation of rights (the "**Objection**") regarding various pending motions for relief from stay and other relief filed by certain consumer borrowers of

---

[1] The Debtors in these chapter 7 cases are as follows: Tricolor Holdings, LLC, TAG Intermediate Holding Company, LLC, Tricolor Auto Group, LLC, Tricolor Auto Acceptance, LLC, Tricolor Insurance Agency, LLC, Tricolor Home Loans LLC dba Tricolor Mortgage, Tricolor Real Estate Services, LLC, TAG California Holding Company, LLC, Flexi Compras Autos, LLC, TAG California Intermediate Holding Company, LLC, Tricolor California Auto Group, LLC, Tricolor California Auto Acceptance, LLC, Risk Analytics LLC, Tricolor Tax, LLC, Tricolor Financial, LLC, Tricolor Auto Receivables LLC, Tricolor Asset Funding, LLC, and Apoyo Financial, LLC.

Tricolor (collectively, the "**Consumer Motions**").[2] In support of this Objection, Vervent respectfully represents as follows:

## BACKGROUND

1. On September 10, 2025 (the "**Petition Date**"), the Debtors each commenced a case by filing a petition for relief under chapter 7 of the Bankruptcy Code (collectively, the "**Chapter 7 Cases**"). The Chapter 7 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b), and Local Rule 1015-1.

2. The Office of the United States Trustee for Region 6 (the "**U.S. Trustee**") has appointed Anne Elizabeth Burns as the duly qualified trustee over the Chapter 7 Cases (the "**Trustee**").

A.  **The Transition to Vervent as Loan Servicer.**

3. Vervent is an industry-leading loan servicing company that, among other things, provides customizable loan servicing support, regulatory reporting and compliance protocols, secure fund flow and controls services, and other related services under various loan facilities across numerous industries and sectors. In addition, given its experience and servicing expertise, Vervent is frequently retained by lenders, investors, and other clients to provide back-up servicer support, which means Vervent is contracted to step into the position of a primary loan servicer in

---

[2] The Consumer Motions include, collectively, (i) *Motion to Freeze Payments and Disallow Vehicle Debt Due to Fraud and Failure of Consideration* [Docket No. 606]; and the *Combined Motion for: (1) Relief from Automatic Stay Under 11 U.S.C. § 362(d)(1); (2) § 105(a) Status-Quo Freeze; (3) Interim Relief Under Rule 4001(A)(2); and (4) Determination on the Papers with Waiver of Appearance* filed in substantially similar form by (ii) Jorge Enrique Aguirre [Docket No. 655]; (iii) Yosvanys Garcia Diaz [Docket No. 676]; (iv) Richard Gildardo Acosta Armenta [Docket No. 677]; (v) Salomon Vaquera Oviedo [Docket No. 678]; (vi) Mayra Alejandra Robledo Moreno [Docket No. 679]; (vii) Angel Celiseo Ceronio [Docket No. 680]; (viii) Johanna Ruby Vazquez Zermeno [Docket No. 681]; (ix) Brisa Viridiana Martinez Ibarra [Docket No. 682]; (x) Jose Alberto Ferrer Suarez [Docket No. 683]; (xi) Jose Eduardo Arias Linares [Docket No. 684]; (xii) Jeronimo Gonzalez Isidro [Docket No. 685]; (xiii) Jose Alberto Ferrer Suarez [Docket No. 686]; (xiv) Erminio Melchor Morales [Docket No. 687]; (xv) Evaristo Valle Mendoza [Docket No. 688]; (xvi) Juan Pablo Frigoli Campos [Docket No. 689]; (xvii) Juan Pablo Frigoli Campos [Docket No. 690].

2

the event the primary servicer is unable to perform its contracted servicer obligations or otherwise is removed from that role following a default.

4. Prior to the Petition Date, Vervent was engaged as the back-up servicer under certain servicing agreements, including certain agreements in which debtor Tricolor Auto Acceptance, LLC ("**TAA**") was the primary servicer. Due to certain asserted prepetition defaults, TAA was terminated as servicer prior to the Petition Date, and Vervent was appointed as successor servicer as to certain of these Tricolor portfolios.

5. Further, since the Petition Date, due to its expertise and familiarity with the relevant assets and the Tricolor portfolio more generally, several other parties have executed servicing agreements with Vervent, and Vervent is now the contracted-servicer for substantially all of the Tricolor portfolio.[3]

6. In its capacity as loan servicer, Vervent manages and services the loans and receives into various collection accounts funds remitted by borrowers with respect to various pools of receivables. As a result, Vervent has played a central role in the Chapter 7 Cases by facilitating the efforts of the Trustee and the Customers[4] to untangle the web left behind by the Debtors, all in an attempt to secure collateral and, ultimately, maximize value for the estates and all parties in interest by ensuring timely loan servicing that maximizes loan performance.

7. To facilitate the onboarding and servicing of loans, among other things, on September 19, 2025, the Court entered the *Order Granting Chapter 7 Trustee's Motion for Entry*

---

[3] One exception at this time is certain unassigned notes that may be property of the chapter 7 estates, and Vervent and the Trustee are in the process of finalizing a servicing agreement for those assets as well.

[4] "**Customers**" includes Wilmington Trust, National Association (in its capacity as indenture trustee under each of the securitizations and together with any successor indenture trustee under any securitization), JPMorgan Chase Bank, N.A., Fifth Third Bank, National Association, Origin Bank, Ares, and the Trustee.

of *Order Approving Stipulation Between Trustee and Vervent, Inc.* [Docket No. 53], (the "**Original Vervent Stipulation**"),[5] pursuant to which Vervent continued to provide certain servicer and other duties through the early days of the Chapter 7 Cases. In particular, although not a "normal" servicer duty, Vervent coordinated, under the Original Vervent Stipulation and its various extensions, among other things, transportation and security efforts with Holman to assist the Trustee and benefit stakeholders in the Chapter 7 Cases, including to facilitate the Court-approved sale process of the approximately 10,000 vehicles that were on various Debtor-lots or other facilities as of the Petition Date.

B. **Vervent's Ongoing Servicing Efforts and the Expanded Vervent Stipulation.**

8. As a result of Vervent's Court-approved transition efforts under the Original Vervent Stipulation and the various servicing agreements (the "**Servicing Agreements**") with the Customers, starting on October 1, 2025, Vervent has been servicing the known Tricolor auto loan accounts (collectively, the "**Accounts**"), including while the ultimate ownership and collateral mapping as to such Accounts among the Customers is being finalized and determined across the various Customer silos (including loans that may or may not be property of the estates once a final determination is made).

9. Pursuant to the Original Vervent Stipulation and the various Servicing Agreements with the Customers (and including the anticipated to-be-agreed servicing agreement with the Trustee), Vervent has been engaged to perform—and has performed—various loan servicing duties (the "**Services**"), including the following:

---

[5] The relief granted under the Original Vervent Stipulations was extended by consensual orders. See, e.g., Docket Nos. 196, 287, 435, 520. Given the similarities in these extensions with the Original Vervent Stipulation, Vervent refers to these extensions, collectively, as the Original Vervent Stipulation.

4

- Manage, service, administer, and make collections on certain loan receivables originated by the Debtors as described in the Servicing Agreements (the "**Receivables**");

- Collect and consolidate funds remitted by borrowers with respect to the Receivables and respond to borrower inquiries related to the Receivables;

- Collect, transport, and dispose or repurpose collateral related to the Receivables, including via vehicle GPS information and repossession from Debtor-owned premises, including the utilization of the Collection Accounts and Trust Account (as defined in the applicable stipulations) in the manner consistent with the stipulations and the Servicing Agreements;

- Investigate delinquencies related to the Receivables;

- Provide collection and repossession services in the event of borrower defaults related to the Receivables;

- Utilize the Debtors' brand identities and company names to accomplish the Services;

- With respect to the Receivables, manage and maintain electronic and physical data of the Debtors to accomplish the Services, including via web domains owned or operated by the Debtors; and

- Communicate and contract with and pay vendors, contractors, suppliers, and creditors of the Debtors or other third parties to accomplish the Services.

10. On January 15, 2026, based on the efforts of Vervent and the Customers, and to reflect the full transition into "ordinary course" servicing duties, this Court entered the *Sixth Amended Order Granting Chapter 7 Trustee's Motion for Entry of Order Approving Stipulation Between Trsutee and Vervent Inc.* [Dkt. No. 668] (the "**Sixth Vervent Stipulation**"). The Sixth Vervent Stipulation updated the Original Vervent Stipulation and set forth, in detail, the Services and other tasks that Vervent could perform, including the Services that generally align with the contractual servicing duties under the various Servicing Agreements.

5

11. Most relevant for purposes of this Objection, the Sixth Vervent Stipulation explicitly enumerated the following activities that Vervent would continue to perform (and modified the automatic stay for Vervent to perform such activities to the extent needed):

- The Trustee granted Vervent access to and use of funds in the Collection Accounts (as defined in the Sixth Vervent Stipulation) and WellsFargo Acct. # X3566 (the "**Trust Account**"), to fund necessary servicing and transition costs incurred in accordance with the stipulations and Servicing Agreements and related documents and to transfer, pool and segregate into accounts established by Vervent proceeds of Receivables received in the Collection Accounts and Trust Account.

- Vervent was authorized to use commercially reasonable efforts to collect and account for Receivables.

- Subject to the procedures in the Sixth Vervent Stipulation, Vervent was authorized to pay certain Collateral Protection Insurance premiums, state sales taxes, and state registration fees or similar charges required to register new vehicles and obtain titles in the ordinary course, as well as filing, in coordination with the Trustee, any state tax returns required to facilitate the same.

- Vervent was authorized to take the following actions, each in its reasonable business judgment and in the ordinary course of its servicer duties, without further order of the Court or authorization from any party:

    o Perform ordinary course account collection and collateral repossession services in the event of borrower defaults, including, without limitation, sending default notices, repossessing vehicles, liquidating vehicles, and receiving the net proceeds from such liquidations into the Trust Account;

    o Perform ordinary course lien release and title processing services, including as loans are paid off, or collateral is sold or deemed total losses, which necessitates Vervent to process the required lien release, transfer of ownership, order duplicate titles, and take other related actions;

    o Perform ordinary course loan modification services, including working with customers to minimize delinquency through loan modification programs that help customers to maintain their vehicles and avoid repossessions, all in compliance with regulatory and lender guidelines;

    o Perform and complete ordinary course loan charge offs, including in accordance with generally accepted accounting and regulatory guidelines for past due-loans; and

6

> > o   Perform other ordinary course servicer duties as required by the Servicing Agreements and as are commercially standard to service accounts in compliance with applicable law and regulations, including, without limitation, granting late fee waivers, payment processing, bankruptcy processing (including filing proofs of claim in borrower bankruptcy cases), credit reporting, dispute processing, outbound collections calling and text messages, and complaint management.

12. Thus, consistent with the various stipulations and the Servicing Agreements, Vervent has continued to service the Accounts and collect Receivables since the transition was completed. Throughout that process, Vervent has gone above and beyond "normal" servicing duties to onboard accounts, stand up multi-lingual customer support services (including hiring and training over 100 bi-lingual customer support agents), secure and process titles and registrations for vehicles (including through DealerTrack and other platforms), ensure insurance and tax payments are made, facilitate and receive borrower payments (including through phone, mail, and various payment platforms), and engage in account performance monitoring and collection efforts on delinquent accounts (including texts, calls, and other methods).

**C.    Summary of the Consumer Motions.**

13. The Consumer Motions present similar arguments. In short, they allege that payment on the underlying Tricolor loans is impossible because, allegedly, no party has demonstrated authority to receive payments, allocate funds with finality, or guarantee lien releases upon satisfaction of the debts. The Consumer Motions further allege that this Court has approved a "servicing framework" that authorizes enforcement activity to proceed before collateral ownership disputes are adjudicated, which allegedly creates a risk of irreparable harm to individual

consumers. The movants,[6] therefore, ask for what appears to be preliminary injunction "to preserve the status quo" while (i) the Trustee's investigation continues and (ii) purported state-law issues "in the appropriate forum." That injunctive relief would seemingly include freezing payment obligations and any repossession activity, among other things.

14. Finally, the movants seek to modify the automatic stay to pursue various state-court claims, including fraud, rescission, declaratory relief, lien ownership, and recoupment.[7]

## OBJECTION

15. Vervent, in its capacity as servicer under the various Servicing Agreements, respectfully objects to the Consumer Motions. Specifically, although Vervent respects the concerns raised by the movants, the Consumer Motions overlook the ongoing, ordinary course Services being provided by Vervent during the Chapter 7 Cases. Instead, the Consumer Motions ask this Court to draw the unsupported inference that because ultimate ownership of assets among the Customers remains unresolved, individual consumer loans should not (or cannot) be paid. That suggestion ignores the reality both in these cases—including through the Original Vervent Stipulation and the Sixth Vervent Stipulation—and on the ground, where Vervent continues to

---

[6] The "**movants**" means, collectively, (i) Rigoberto Felix Castro [Docket No. 606]; (ii) Jorge Enrique Aguirre [Docket No. 655]; (iii) Yosvanys Garcia Diaz [Docket No. 676]; (iv) Richard Gildardo Acosta Armenta [Docket No. 677]; (v) Salomon Vaquera Oviedo [Docket No. 678]; (vi) Mayra Alejandra Robledo Moreno [Docket No. 679]; (vii) Angel Celiseo Ceronio [Docket No. 680]; (viii) Johanna Ruby Vazquez Zermeno [Docket No. 681]; (ix) Brisa Viridiana Martinez Ibarra [Docket No. 682]; (x) Jose Alberto Ferrer Suarez [Docket No. 683]; (xi) Jose Eduardo Arias Linares [Docket No. 684]; (xii) Jeronimo Gonzalez Isidro [Docket No. 685]; (xiii) Jose Alberto Ferrer Suarez [Docket No. 686]; (xiv) Erminio Melchor Morales [Docket No. 687]; (xv) Evaristo Valle Mendoza [Docket No. 688]; (xvi) Juan Pablo Frigoli Campos [Docket No. 689]; (xvii) Juan Pablo Frigoli Campos [Docket No. 690].

[7] Some of the Consumer Motions raise issues around documentation at the time of loan origination. To the extent any movant seeks copies of documents, Vervent will continue to use its best efforts, in coordination with the Trustee, to provide such documentation, including records hosted by former Tricolor vendors.

service these loans and collect and track borrower payments. Accordingly, this Court should deny the Consumer Motions and allow Vervent to continue performing its tasks consistent with this Court's prior orders and the Servicing Agreements.

A.     **The Consumer Motions Fail to Establish Grounds for Emergency Relief Without a Hearing.**

16.     The Consumer Motions seek relief "on the papers," waive appearance, and seek relief from the Court on an emergency basis without a hearing.

17.     Section 362(d) of the Bankruptcy Code authorizes bankruptcy courts to grant relief from the automatic stay "on request of a party in interest and **after notice and a hearing**." (emphasis added). A bankruptcy court may grant relief under such a provision without a hearing if notice is properly given "and if such a hearing is **not** requested timely by a party in interest." (emphasis added).

18.     Vervent objects to any relief being afforded on the Consumer Motions without a hearing and respectfully requests a hearing before the Court for the Court to consider Vervent's arguments regarding the Consumer Motions prior to entering any order related to the Consumer Motions.

19.     Although it is unclear, the Consumer Motions may be attempting to argue that "there is insufficient time for a hearing to be commenced before" an order on the Consumer Motions must be entered. See 11 U.S.C. § 102(1). The Consumer Motions allege that the movants wish to seek relief in state court litigation, as discussed in more detail, below. Such relief is incompatible with the automatic stay and its purposes, but even if it was bit, there is no emergency basis for relief from stay to proceed in state court without the bankruptcy court first holding a hearing on the issues.

**B.     The Consumer Motions Fail to Establish Grounds for Injunctive Relief.**

20.     To the extent the Consumer Motions are seeking a preliminary injunction or other injunctive relief, the movants do not meet their burden under the well-established standards.

21.     The "four elements to justify a preliminary injunction are (a) substantial likelihood of success on the merits; (b) substantial threat that the plaintiff will suffer irreparable injury; (c) the threatened injury outweighs any harm the injunction might cause the defendant; and (d) the injunction is in the public interest." In re Acis Cap. Mgmt., L.P., No. 18-30264-SGJ-11, 2019 WL 417149, at *10 (Bankr. N.D. Tex. Jan. 31, 2019), aff'd, 604 B.R. 484 (N.D. Tex. 2019), aff'd sub nom. Matter of Acis Cap. Mgmt., L.P., 850 F. App'x 302 (5th Cir. 2021).

22.     Here, it is unclear what "success on the merits" would be, but to the extent the underlying claim is for stay relief, that claim fails for the reasons set forth below.  Further, there are no specific factual allegations or evidence that movants have suffered any harm or might suffer harm in the future from being required to comply with their contractual loan obligations—let alone irreparable harm—and the only harm that would occur from granting the Consumer Motions is a significant loss of value by creating a wave of non-performing accounts and state-by-state litigation.  Accordingly, the harm to the estates and the Customers from granting relief far outweighs the alleged harm to the movants.  Finally, no public interest is served in preventing Vervent from servicing loans in the ordinary course or excusing borrowers from complying with their contractual obligations, nor would stay relief facilitate any such public benefit.  Thus, the

10

movants cannot meet the standard for a preliminary injunction, nor is there any factual basis to support similar relief under § 105(a).[8]

### C. Movants Fail to Present Cause to Modify or Lift the Automatic Stay.

23. In the Consumer Motions, the movants appear to seek to modify the automatic stay to pursue various claims in state court, including purported claims of fraud, rescission, declaratory relief, lien ownership, and recoupment. Section 362(d) states that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay" under § 362(a) "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d). Here, the Consumer Motions fail to establish cause,[9] and the relief sought is, in fact, exactly why the automatic stay exists in the first place.

24. Granting relief from stay for the movants to pursue litigation in various state courts related to the Tricolor loans and prepetition Tricolor activities would open the door to exactly the type of burdensome and piecemeal litigation that the automatic stay is intended to prevent. See In re Hemphill Bus Sales, Inc., 259 B.R. 865, 867 (Bankr. E.D. Tex. 2001) (describing "goal of centralized resolution of purely bankruptcy issues and the need to protect creditors and

---

[8] In In re OGA Charters, LLC, 554 B.R. 415, 428 (Bankr. S.D. Tex. 2016), the court found that "it possesses the power to issue a preliminary injunction, pursuant to § 105(a), that may enjoin the parties in the instant case so long as the actions enjoined by the preliminary injunction are consistent with the rest of the Bankruptcy Code." (cleaned up). Courts also have held that "[w]hen determining whether to issue a temporary restraining order or preliminary injunction pursuant to 11 U.S.C. § 105(a), the bankruptcy court must consider the traditional inquiries which have a bearing on preliminary injunctions[.]" In re Yukos Oil Co., 320 B.R. 130, 135 (Bankr. S.D. Tex. 2004). As stated above, movants have not met the traditional injunction standards. Further, the injunctive relief sought is not a status quo "preserving" injunction, but rather would upend today's status quo by stopping payments and other servicing activities. Martinez v. Mathews, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.").

[9] The movant carries the initial burden on the stay relief, and only if the movant makes a prima facie case does the debtor need to respond. See In re Kowalsky, 235 B.R. 590, 594 (Bankr. E.D. Tex. 1999). "If a movant fails to make a prima facie showing, the court should deny the relief requested." Id. (citing In re Keene Corp., 171 B.R. 180, 182 (Bankr. S.D.N.Y. 1994)).

11

reorganizing debtors from piecemeal litigation"). Doing so also would significantly increase the costs to the estates and the Customers, including if Vervent and others are required to appear and defend these cases around the country, all of which would negatively harm the ultimate recovery and value of collateral to all stakeholders. Finally, stay relief would likely result in inconsistent and conflicting judgements, including judgements that could implicate property of the estates and recovery to creditors in the Chapter 7 Cases. For these and other reasons, the movants fail to establish "cause" for stay relief. Accordingly, this Court should deny the Consumer Motions.[10]

## RESERVATION OF RIGHTS

25. Vervent reserves all rights to supplement this Objection and to present evidence at any hearing(s) on the Consumer Motions, as well as to oppose any similar motions that may be filed in the future. Vervent also incorporates by reference any other objections to the Consumer Motions, including filed by the Trustee.

## VERVENT'S ONGOING CONSUMER OUTREACH

26. Finally, Vervent, in coordination with the Trustee, will attempt to contact the movants directly to discuss any concerns and questions that they may have about their Tricolor loans and the loan servicing, including any concerns that may have been expressed in the Consumer Motions.

**WHEREFORE**, Vervent respectfully requests that this Court deny the Consumer Motions and grant such other relief as this Court deems fair and just.

[intentionally left blank]

---

[10] Vervent notes that some Tricolor borrowers have commenced litigation in state court already, which actions violate the automatic stay. Vervent is working with the Trustee to address these stay violations and to ensure that any Tricolor consumer claims are adjudicated in this Court.

Dated: January 26, 2026                    Respectfully submitted,

*/s/ Scott D. Lawrence*
Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Phone: (214) 692-6200
Email: jason.rudd@wickphillips.com
           scott.lawrence@wickphillips.com

- and -

Adam R. Prescott (admitted *pro hac vice*)
Sam Anderson (admitted *pro hac vice*)
**BERNSTEIN SHUR SAWYER & NELSON, PA**
100 Middle Street, PO Box 9729
Portland, ME 04104
Phone: (207) 774-1200
Email: aprescott@bernsteinshur.com
           sanderson@bernsteinshur.com

**COUNSEL FOR VERVENT, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served on January 26, 2026 by the Court's ECF noticing system on all parties that consent to such service via electronic filing and Movant Jorge Enrique Aguirre (jorgagmtz@outlook.com).

*/s/ Scott D. Lawrence*
Scott D. Lawrence