**OKIN ADAMS BARTLETT CURRY LLP**
Matthew Okin (TX Bar No. 00784695)
James W. Bartlett, Jr. (TX Bar No. 00795238)
Edward A. Clarkson (TX Bar No. 24059118)
1113 Vine St., Suite 240
Houston, TX 77002
Telephone (713) 228-4100
Facsimile (888) 864-2118
Email: mokin@okinadams.com

*Counsel for Daniel Chu*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| IN RE:<br><br>TRICOLOR HOLDINGS, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 25-33487 (MVL) |

## RESPONSE IN OPPOSITION TO TRUSTEE'S MOTION TO COMPEL

---

[1]     The Debtors in these chapter 7 cases are as follows: Tricolor Holdings, LLC, TAG Intermediate Holding Company, LLC, Tricolor Auto Group, LLC, Tricolor Auto Acceptance, LLC, Tricolor Insurance Agency, LLC, Tricolor Home Loans LLC dba Tricolor Mortgage, Tricolor Real Estate Services, LLC, TAG California Holding Company, LLC, Flexi Compras Autos, LLC, TAG California Intermediate Holding Company, LLC, Tricolor California Auto Group, LLC, Tricolor California Auto Acceptance, LLC, Risk Analytics LLC, Tricolor Tax, LLC, Tricolor Financial, LLC, Tricolor Auto Receivables LLC, TAG Asset Funding, LLC, and Apoyo Financial, LLC.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. i

INTRODUCTION ........................................................................................................... 1

RELEVANT BACKGROUND ........................................................................................ 1

ARGUMENT ................................................................................................................... 6

    I.    The Fifth Amendment Protects Mr. Chu From Being Compelled to Answer Questions Unless it is "Perfectly Clear" That His Answers "Cannot Possibly" "Furnish a Link" in the Chain of Evidence to be Used Against Him .................................................... 6

    II.    Answering the Trustee's Questions Would Pose a "Real and Appreciable" Risk of Self-Incrimination, as the People Who Know Best—the Prosecutors Themselves—Acknowledge ......................................................................................................... 9

    III.    Even Putting Aside the Government's Statement that it Intends to Introduce Evidence on the Exact Topics that Are the Subject of the Trustee's Motion, Mr. Chu's Invocations Were Proper ......................................................................................................... 12

    IV.    Mr. Chu Did Not Waive His Fifth Amendment Privilege as to the Bankruptcy Petition .. 16

    V.    If the Court Has Questions About Mr. Chu's Invocations, an *Ex Parte*, *In Camera* Presentation by Mr. Chu is the Appropriate Next Step ..................................................... 18

CONCLUSION ............................................................................................................... 20

4919-5726-0692, v. 2

# TABLE OF AUTHORITIES

**Cases**

*Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*,
810 F.3d 335 (5th Cir. 2016)................................................................................................ 16

*Arndstein v. McCarthy,*
254 U.S. 71 (1920)............................................................................................................... 17

*Bridas S.A.P.I.C. v. Turkm.*,
345 F.3d 347 (5th Cir. 2003)............................................................................................... 16

*Fisher v. United States*,
425 U.S. 391 (1976)............................................................................................................. 15

*Hoffman v. United States*,
341 U.S. 479 (1951).....................................................................................................7, 11, 15

*In re Connelly*,
59 B.R. 421 (Bankr. N.D. Ill. 1986)..................................................................................... 1, 8

*In re Corrugated Container Antitrust Litig.*,
661 F.2d 1145 (7th Cir. 1981) ............................................................................................... 6

*In re Gi Yeong Nam*,
245 B.R. 216 (Bankr. E.D. Pa. 2000).................................................................................... 17

*In re Hulon*,
92 B.R. 670 (Bankr. N.D. Tex. 1988) ................................................................................. 8, 17

*In re Marble*,
No. 07-50099-RLJ-7, 2008 WL 2048025 (Bankr. N.D. Tex. May 9, 2008)........................ 8, 17

*In re Moses*,
132 B.R. 837 (Bankr. E.D. Mich. 1990) ................................................................................11

*In re Paige*,
411 B.R. 319 (Bankr. N.D. Tex. 2008) .................................................................................. 8

*Kastigar v. United States*,
406 U.S. 441 (1972)........................................................................................................11, 19

*Klein v. Harris*,
667 F.2d 274 (2d Cir. 1981) ................................................................................................. 17

*McCarthy v. Arndstein*,
266 U.S. 34 (1924)................................................................................................................ 8

4919-5726-0692, v. 2

*Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*,
  86 F.3d 464 (5th Cir. 1996) ........................................................................................ 18

*Ohio v. Reiner*,
  532 U.S. 17 (2001) ....................................................................................................... 6

*Olivarez v. State*,
  No. 05-22-01112-CR, 2024 WL 3311146 (Tex. App. July 5, 2024) ......................... 19

*Studesville v. Buck*,
  No. 2:13-CV-254-J, 2014 WL 12597817 (N.D. Tex. Aug. 25, 2014) ....................... 13

*United States v. (Under Seal)*,
  794 F.2d 920 (4th Cir. 1986) ......................................................................................11

*United States v. Beattie*,
  541 F.2d 329 (2d Cir. 1976) ...................................................................................... 15

*United States v. Doe*,
  465 U.S. 605 (1984) .................................................................................................... 15

*United States v. Donofrio*,
  No. 23-40586, 2025 WL 1443577 (5th Cir. May 20, 2025) ............................... 12, 13

*United States v. Goodwin*,
  625 F.2d 693 (5th Cir. 1980) ..................................................................................... 18

*United States v. Hubbell*,
  530 U.S. 27 (2000) ...................................................................................................... 15

*United States v. Tracts 31a, Lots 31 & 32, Lafitte's Landing Phase Two Port Arthur, Jefferson Cnty. Texas*,
  852 F.3d 385 (5th Cir. 2017) ..................................................................................... 16

*United States v. Whittington*,
  783 F.2d 1210 (5th Cir. 1986) ................................................................................... 19

*Vernon Smith, etc. v. Sch. Bd. of Concordia Par.*,
  88 F.4th 588 (5th Cir. 2023) ...................................................................................... 16

4919-5726-0692, v. 2

Daniel Chu, through counsel, respectfully submits this opposition to the "Trustee's Motion to Compel Answers in Response to Daniel Chu's Improper Invocation of Fifth Amendment Privilege at Section 341 Meeting" (ECF No. 733 (the "Motion")).

## INTRODUCTION

1.     The Trustee's Motion misunderstands the scope of the Fifth Amendment, as well as the significance of the questions her counsel asked at the 341 meeting to the criminal charges against Mr. Chu.  The undeniable fact—confirmed by the prosecutors handling the criminal case in writing[2]—is that the government intends to introduce evidence against Mr. Chu at the criminal trial on the *exact same* topics that the Trustee contends "have nothing to do with the criminal charges against him" and "lack [] any legitimate risk of self-incrimination."  (Motion at 17-18).  In these circumstances, compelling Mr. Chu to answer the Trustee's questions would at the very least "furnish a link in the chain of evidence needed to prosecute criminal conduct," which is what the Trustee herself contends is the relevant standard.  (Motion at 14 & 18 (quoting *In re Connelly*, 59 B.R. 421, 434 (Bankr. N.D. Ill. 1986)).  The Trustee's Motion must therefore be denied.

## RELEVANT BACKGROUND

2.     Since its filing, this bankruptcy case, including the adversary proceeding filed against Mr. Chu, has been inextricably intertwined with the criminal investigation, and later prosecution, against Mr. Chu.

3.     On December 15, 2025, several months after these Chapter 7 proceedings were initiated, Mr. Chu was indicted in the Southern District of New York based upon his alleged

---

[2]     A copy of the government's letter to counsel for Mr. Chu and the Trustee is attached as Exhibit A to the Declaration of James W. Bartlett, Jr.

involvement in Tricolor's collapse.[3]  The Indictment accuses him of directing and conducting an expansive fraud from at least 2018 through September 2025.

4.      Two days after the Indictment was unsealed, the Trustee filed an adversary proceeding against Mr. Chu arising from the same alleged conduct.[4]  The adversary complaint seeks civil remedies based on the same business operations and financial transactions described in the Indictment.   In fact, the Trustee's adversary complaint largely relies on the allegations contained in the Indictment.   In several instances, the complaint adopts the government's allegations verbatim.  *Compare* Ex. B ¶ 12 ("[O]n or about April 20, 2021, CHU texted Kollar and others that, '[i]n an ideal scenario, we buy and increase inventory by $10mm and then we move the sold units off the borrowing base'"), *with* Ex. C ¶ 58 ("[O]n April 20, 2021, Chu texted Kollar and others that, '[i]n an ideal scenario, we buy and increase inventory by $10mm and then we move the sold units off the borrowing base.'"); *compare* Ex. B ¶ 14 ("On November 16, 2022, for example, when CHU asked for an update on liquidity, Kollar responded: 'We have $2.lm to [pledge] and with working DQ [delinquency] buckets we are getting $2.77M or ~$1.3m more. Will do a Bb [borrowing base] tomorrow and work to squeeze a little more out.'"), *with* Ex. C ¶ 61 ("On November 16, 2022, Chu texted Kollar for an update on Tricolor's liquidity, and Kollar responded that Tricolor has '$2.1m to [pledge] and with working DQ [delinquency] buckets we are getting $2.77M or ~$1.3m more. Will do a Bb [borrowing base] tomorrow and work to squeeze a little more out.'"); and *compare* Ex. B ¶ 16 ("On July 22, 2021, for example, while an audit firm was conducting an audit of Tricolor's prior year financial statements, Kollar texted CHU, 'We will need

---

[3]      A copy of the Indictment is attached as Exhibit B to the Declaration of James W. Bartlett, Jr.

[4]      A copy of the amended adversary complaint is attached as Exhibit C to the Declaration of James W. Bartlett, Jr.

4919-5726-0692, v. 2

to make sure [the auditor] does not try to[ t]ie out [Lender-1],' because a comparison of the manipulated data that was provided to Lender-1 to the real data in Tricolor's internal dealer management system would have revealed the fraud. CHU responded: 'I know.'"), *with* Ex. C ¶ 63 ("For example, on July 22, 2021, when an auditing firm was auditing Tricolor's prior year financial statements, Kollar texted Chu, 'We will need to make sure [the auditor] does not try to [t]ie out [Lender],' because a comparison of the manipulated data that was provided to one of the Lenders to the real data in Tricolor's internal dealer management system would have revealed the fraud. Chu responded: 'I know.'").

5.      At the 341 meeting of creditors held on January 20, 2026, Mr. Chu was examined under oath.  *See* ECF No. 734-2.  Contrary to the assertions in the Motion, Mr. Chu did not make a "blanket invocation" of the Fifth Amendment.  He answered certain questions posed to him by counsel for the Trustee, including confirming his marital status, his Florida residency, and his understanding of Tricolor as Tricolor Holdings, LLC.  *Id.*  On other matters—far from "reflexively" invoking his rights (Motion at 15)—Mr. Chu conferred with his criminal defense counsel and, on advice of counsel, invoked his Fifth Amendment privilege in response to questions regarding a number of matters relevant to the charges in the criminal case as well as evidence that may be introduced to prove those charges—which was, to be sure, most of the questions.

6.      On February 4, 2026, the Trustee filed the Motion, requesting that the Court reject Mr. Chu's assertions of Fifth Amendment privilege and compel Mr. Chu to answer questions regarding the following topics:  "(1) the Petition Mr. Chu signed as the Debtors' authorized signatory; (2) his own role, title, and the positions he held at each of the Debtors; (3) the Debtors' financial affairs and the existence and disposition of their assets and liabilities; (4) his employment and relationship with Origin Bank; and (5) Mr. Chu's corporate credit card, his income and

3

compensation, and the disposition of these and other personal assets that may be subject to avoidance." (Motion at 15-16 (citing Motion, Ex. B at 14:7-15:14, 15:21-16:3, 17:14-18:24, 79:16-80:9, 97:2-6, 98:10-99:5, 99:16-19, 100:4-7, 108:3-102:6, 103:7-104:11, 121:10-122:23, 123:3-128:4, 128:17-131:3)).

7.      The prosecutors handling the criminal case became aware of the Trustee's Motion and, on February 26, 2026, sent a letter addressed to counsel for both Mr. Chu and the Trustee outlining certain categories of evidence it intends to rely upon at Mr. Chu's criminal trial. *See* Ex. A. This letter was expressly submitted to the parties in connection with the Trustee's Motion, *see id.*, and explains that each of the categories of questioning that the Trustee seeks to compel Mr. Chu to testify about is, in fact, a category of evidence that the government intends to introduce in its prosecution of Mr. Chu.

8.      The comparison below illustrates the extent to which the Trustee's requested testimony parallels the government's anticipated trial evidence:

4

4919-5726-0692, v. 2

| Categories of Evidence the United States Intends to Present at Mr. Chu's Criminal Trial (Ex. A) | Categories of Testimony the Trustee Seeks to Compel from Mr. Chu (Motion at 15-16) |
|---|---|
| "Evidence regarding the authorization for and the filing of the Tricolor debtors' bankruptcy petitions;" | "[T]he Petition Mr. Chu signed as the Debtors' authorized signatory;" |
| "Evidence regarding the corporate structure of Tricolor entities;"<br><br>"Evidence regarding the roles Mr. Chu held at Tricolor entities;" | "[Mr. Chu's] role, title, and the positions he held at each of the Debtors;" |
| "Evidence regarding the financial statements of Tricolor entities;"<br><br>"Evidence regarding the assets and liabilities of . . . [the] Tricolor entities;"<br><br>"Evidence regarding bank accounts used by Mr. Chu and Tricolor entities." | "[T]he Debtors' financial affairs and the existence and disposition of their assets and liabilities." |
| "Evidence regarding the roles Mr. Chu held at . . . Origin Bank;"<br><br>"Evidence regarding compensation, loans, mortgages, and other money Mr. Chu received from . . . Origin Bank;" | "[Mr. Chu's] employment and relationship with Origin Bank;" |
| "Evidence regarding the assets and liabilities of Mr. Chu . . ."<br><br>"Evidence regarding bank accounts used by Mr. Chu . . ." | "Mr. Chu's corporate credit card, his income and compensation, and the disposition of these and other personal assets[.]" |

5

4919-5726-0692, v. 2

| | |
|---|---|
| "Evidence regarding Mr. Chu's use of Tricolor entities' corporate credit cards;"<br><br>"Evidence regarding compensation, loans, mortgages, and other money Mr. Chu received from Tricolor entities and Origin Bank;"<br><br>"Evidence regarding Mr. Chu's income, wealth, and spending history." | |

## ARGUMENT

9.      Notwithstanding this clear guidance from the criminal prosecutors, the Trustee is for some reason pressing her Motion and seeking an order from this Court compelling Mr. Chu to provide evidence on the exact same topics that will comprise the evidence against him in the criminal trial.  That Motion should be denied in its entirety, because Mr. Chu's invocations were proper.

**I.      The Fifth Amendment Protects Mr. Chu From Being Compelled to Answer Questions Unless it is "Perfectly Clear" That His Answers "Cannot Possibly" "Furnish a Link" in the Chain of Evidence to be Used Against Him**

10.      "First, and most fundamental . . . the protection of the Fifth Amendment applies so long as there is a possibility of prosecution, regardless of a judge's assessment of the likelihood of prosecution." *In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1150 (7th Cir. 1981), *aff'd sub nom. Pillsbury Co. v. Conboy*, 459 U.S. 248 (1983).  As the Supreme Court has "emphasized," "one of the Fifth Amendment's basic functions is to protect *innocent* men who otherwise might be ensnared by ambiguous circumstances," *Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (marks and citation omitted) (emphasis in original), which is why Mr. Chu's invocation is not in any way at odds with his plea of not guilty.

6

4919-5726-0692, v. 2

11.     The Fifth Amendment privilege not only protects against compelled answers that could directly be used to obtain a conviction, but "likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486 (1951).[5]

12.     To sustain Mr. Chu's privilege assertions, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman*, 341 U.S. at 486–87.  To overcome Mr. Chu's assertions and compel him to answer the questions identified by the Trustee, it must be "*perfectly clear*, from a careful consideration of all the circumstances in the case, that [Mr. Chu] is mistaken, and that the answer(s) *cannot possibly* have" a tendency to incriminate him. *Id.*, 341 U.S. at 488 (citation and marks omitted; both emphases in original).

13.     In other words, unless the Court can reliably conclude that it is "*perfectly clear*" that the answers to the Trustee's questions "*cannot possibly*" "furnish a link in the chain of evidence needed to prosecute" Mr. Chu, the Trustee's Motion must be denied. *Hoffman*, 341 U.S. at 486, 488.

---

[5]     The Trustee agrees *Hoffman*'s "link in the chain" standard is the proper test, (Motion at 14, 18), but also cites *In re Mudd*, 95 B.R. 426, 431 (Bankr. N.D. Tex. 1989), for the proposition that "some nexus between the risk of criminal conviction and the information requested must exist." (Motion at 14).  To be clear, this is not a different standard, but a characterization of the standard expressed in *Hoffman* drawn from a Seventh Circuit opinion; it does not represent some different test. *In re Mudd* cited both *Hoffman* and the Seventh Circuit decision, *Martin-Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir. 1980).  In *Martin-Trigona v. Gouletas*, the court paraphrased a lengthy block quotation from *Hoffman* as meaning that "the pendency of criminal proceedings does not by itself excuse a witness of his obligation to give testimony in civil proceedings.  Some nexus between the risk of criminal conviction and the information requested must exist."

7

14.     Despite acknowledging certain of these broad principles of constitutional law, the Trustee suggests that Mr. Chu's Fifth Amendment rights are somehow diminished in the bankruptcy setting.  That is not so, nor does it make any sense.  As the Supreme Court has expressly held, Fifth Amendment rights exist to protect a criminal defendant from incriminating himself in a criminal prosecution; the forum in which he might be compelled to provide those incriminating answers—the criminal case itself, related or unrelated civil litigation, arbitration, 341 meeting, Congressional testimony, etc.—is beside the point.  *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924) ("The contrary must be accepted as settled.  The privilege is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used.  It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it.").

15.     Notwithstanding the clear Supreme Court precedent to the contrary, the Trustee asserts that the Fifth Amendment privilege is "strictly limited" in bankruptcy proceedings. (Motion at 14).  Of course, the Trustee's "strictly limited" language is hers alone; it does not come from any judicial opinion, all of which are to opposite effect.  *See McCarthy*, 266 U.S. at 40; *see also, e.g., In re Hulon*, 92 B.R. 670, 673 (Bankr. N.D. Tex. 1988) ("[s]ince a debtor's bankruptcy testimony can be used in criminal proceedings, a debtor may invoke the fifth amendment privilege against self-incrimination in a bankruptcy proceeding unless granted immunity."); *In re Marble*, No. 07-50099-RLJ-7, 2008 WL 2048025, at *2 (Bankr. N.D. Tex. May 9, 2008); *In re Paige*, 411 B.R. 319, 335 (Bankr. N.D. Tex. 2008).  It is no surprise, therefore, that when one actually reads the decisions cited by the Trustee, they undermine her position and support Mr. Chu's invocation of the privilege.  For example, *In re Connelly*, 59 B.R. at 433, reaffirmed the settled standard that

8

an assertion of the privilege may be rejected only where the demonstrated danger of incrimination is "imaginary, remote and speculative," not where it is "real and appreciable." *Id.*

**II.     Answering the Trustee's Questions Would Pose a "Real and Appreciable" Risk of Self-Incrimination, as the People Who Know Best—the Prosecutors Themselves—Acknowledge**

16.     The Trustee's Motion rests on the faulty premise that any question posed that does not directly tie to an expressly pleaded allegation in the Indictment must be answered. (*See* Motion at 16 ("None of the questions at issue pertain to the criminal charges in the Indictment.")). But as just explained, that is simply not the relevant standard.

17.     Here, there can be no serious question that there is a "real and appreciable" risk of self-incrimination inherent in each of the questions posed by the Trustee that are the subject of her Motion. Those questions—relating to Mr. Chu's role with respect to the bankruptcy petitions, his role at Tricolor, Tricolor's "financial affairs," and Mr. Chu's compensation, assets, and use of corporate credit accounts (*see* Motion at 15-16)—all pertain to categories of evidence that may be used in the criminal prosecution to attempt to convict Mr. Chu. That is obvious from the face of the Indictment and the fact of the government's ongoing criminal investigation.

18.     To the extent there was any question, the very prosecutors handling Mr. Chu's criminal case from the U.S. Attorney's Office for the Southern District of New York have informed the parties in writing that they intend to introduce evidence on the very same topics at the criminal trial. *Compare* Ex. A at 1 ("Evidence regarding the authorization for and the filing of the Tricolor debtors' bankruptcy petitions"), *with* Motion at 7 ("Did you sign the petition for each of the eighteen debtors, sir?"); *compare* Ex. A at 1 ("Evidence regarding the corporate structure of Tricolor entities"), *with* Motion at 8 ("[D]o I understand correctly that the sole member of the debtor, Tricolor Financial, LLC, is Tricolor Holdings, LLC?"); *compare* Ex. A at 1 ("Evidence regarding the financial statements of Tricolor Entities"), *with* Motion at 9 ("[Y]ou have a copy of

9

those schedules and statement of financial affairs in front of you.  Have you reviewed those documents prior to this meeting today?"); *compare* Ex. A at 2 ("Evidence regarding bank accounts used by Mr. Chu and Tricolor entities"), *with* Motion at 9 ("And besides the Wells Fargo and Origin Bank accounts I have been able to find, did any of the debtors have bank accounts at any other banks?"); *compare* Ex. A at 2 ("Evidence regarding the roles Mr. Chu held at Tricolor entities and at Origin Bank"), *with* Motion at 7 ("You served in the role as CEO . . . at Tricolor Holdings, LLC, during the period 2017 through September 10th, 2025; is that correct?"), 11 ("You were on the board of Origin bank, right, during at least a portion of that time?"); *compare* Ex. A at 2 ("Evidence regarding Mr. Chu's use of Tricolor entities' corporate credit cards"), *with* Motion at 9 ("Mr. Chu, you were issued a corporate American Express card by Tricolor; is that correct?"); and *compare* Ex. A at 2 ("Evidence regarding compensation, loans, mortgages, and other money Mr. Chu received from Tricolor entities and Origin Bank"), *with* Motion at 10 ("Mr. Chu, can you walk me through the compensation that you received, on an annual basis, from Tricolor"), 11 ("Were you compensated for serving as a director on Origin Bank's board of directors?").

19.    To state the obvious, for example, if the government is going to introduce "[e]vidence regarding the authorization for and the filing of the Tricolor debtors' bankruptcy petitions" in its criminal prosecution of Mr. Chu, then testimony from Mr. Chu about his role in preparing those filings and whether he authorized or signed them could surely be used against him, and would at least "furnish a link in the chain" of the government's evidence.  Likewise, the other categories of evidence that the Trustee contends "have nothing to do" with the charges against Mr. Chu (Motion at 17) are precisely the sorts of evidence that white collar prosecutors routinely introduce at trial.  For example, and as discussed further below, evidence about compensation, expense accounts, corporate cards, and other employee benefits are frequently introduced by

10

4919-5726-0692, v. 2

prosecutors to attempt to demonstrate a variety of relevant subjects, including, for example, corporate control or economic motive.

20.     In sum, the criminal jeopardy the Trustee's questions pose to Mr. Chu is obvious to anyone who has ever set foot in a criminal courtroom.  And the prosecutors' letter makes crystal clear that the exact questions the Trustee seeks to compel Mr. Chu to answer concern categories of evidence that they actually intend to use against him in the criminal case.  There can thus be no question that the hazard faced by Mr. Chu is not imaginary or speculative, and he is not "clear[ly] . . . mistaken," *Hoffman*, 341 U.S. at 488, in his fear that his answers "could be used in a criminal prosecution or could lead to other evidence that might be so used."  *Kastigar v. United States*, 406 U.S. 441, 445 (1972).  The prosecutors' letter, even standing alone, is reason enough to deny the Trustee's motion.

21.     Again, none of the Trustee's cases remotely compel a different conclusion.  For example, she cites *In re Moses*, 132 B.R. 837 (Bankr. E.D. Mich. 1990), with the parenthetical that the Court there "compell[ed] debtor to testify at Section 341 meeting over improper Fifth Amendment assertions, as the debtor failed to demonstrate a real and substantial risk that answering creditors' questions would incriminate her in connection with criminal proceedings pending in another jurisdiction." (Motion at 19).  True enough, but that case bears no resemblance to this one.  To begin with, the debtor in *Moses* was not a criminal defendant or even the subject of a criminal investigation in the United States.  The only prospect of prosecution for the debtor in *Moses* was in Switzerland, and the *Moses* court's decision turned on that fact because there was controlling Fourth Circuit authority holding that "the Fifth Amendment does not grant any right to a person in the United States not to testify based on a fear of foreign prosecution."  *Id.* at 840 (citing *United States v. (Under Seal)*, 794 F.2d 920 (4th Cir. 1986)).  The *Moses* court also held

11

that any fear that the debtor's compelled statements could be used against her was remote and speculative because extradition to Switzerland was incredibly unlikely because there was no applicable extradition treaty ratified with the United States. The facts here are wildly different. Mr. Chu faces a pending criminal prosecution by the United States Department of Justice based on his alleged years-long fraud at Tricolor—the very allegations that also run through this bankruptcy and the related adversary proceeding. It is easy to imagine—and far from speculative—that any answers given by Mr. Chu would be introduced against him by the government in that prosecution.

III.    **Even Putting Aside the Government's Statement that it Intends to Introduce Evidence on the Exact Topics that Are the Subject of the Trustee's Motion, Mr. Chu's Invocations Were Proper**

22.    Mr. Chu does not dispute that he asserted his privilege frequently throughout the 341 meeting. That can come as no surprise given the extensive overlap between the issues in the bankruptcy and the allegations in the criminal case. It was for that same reason Mr. Chu objected to sitting for the 341 meeting to begin with, ECF No. 604; the ostensible purpose of the meeting could not be achieved in this setting unless Mr. Chu was forced to forgo his constitutional protections. But the Trustee's characterization that his invocations were "reflexive" or "blanket" is not accurate. (*See* Motion at 3). The proceedings were recorded, and Mr. Chu invites the Court to listen to the recording. Far from reflexive, Mr. Chu regularly consulted with counsel concerning his assertions and where appropriate, responded to the questioning. That Mr. Chu was faced with the choice of providing information that could be used against him in an active criminal prosecution—and potentially waiving his Fifth Amendment rights going forward as to those topics—or asserting the privilege is an unavoidable consequence of the Trustee's questions. In these circumstances, it was entirely proper for Mr. Chu to invoke in response to the disputed questions. *United States v. Donofrio*, No. 23-40586, 2025 WL 1443577, at *13 (5th Cir. May 20,

12

2025) ("If it grows clear that the witness could legitimately refuse to answer essentially all relevant questions, then the witness may be excused.") (cleaned up); *id.*, at *14 (holding that "the district court did not abuse its discretion in recognizing the Fifth Amendment privilege applied to each witness as to the entire scope of their potential testimony."); *Studesville v. Buck*, No. 2:13-CV-254-J, 2014 WL 12597817, at *1 (N.D. Tex. Aug. 25, 2014) (broad invocations should be sustained where "the court finds that he could legitimately refuse to answer essentially all relevant questions").

23.    Taking the categories of questions in turn, Mr. Chu properly invoked his Fifth Amendment privilege to each inquiry.  First, with respect to both questions regarding his "role, title, and the positions he held" at the Debtors, as well as the "financial affairs and the existence and disposition of their assets and liabilities" (Motion at 15-16), compelled answers from Mr. Chu could be used to attempt to establish Mr. Chu's knowledge of the operations and finances of the Debtors and his control over them. *Donofrio*, 2025 WL 1443577, at *13 ("If the danger possibly exists, the court shall recognize the privilege without requiring the witness to give the potentially inculpatory answer.").  It is therefore no surprise that the government stated that it intends to introduce evidence in all these categories at trial.  Ex. A at 1-2.

24.    Likewise, Mr. Chu properly asserted his Fifth Amendment rights in response to questions regarding his role at and relationship with Origin bank.  As alleged in the adversary complaint, Origin was one of the lending banks that worked with Tricolor during the relevant period.  Ex. C ¶ 36.  These lending banks are alleged to be victims in the criminal case against Mr. Chu.  *See generally* Ex. B; *see also* Statement of U.S. Attorney Jay Clayton (Dec. 17, 2025), available at https://www.justice.gov/usao-sdny/pr/ceo-cfo-coo-charged-connection-billion-dollar-collapse-tricolor-auto (attached as Exhibit D to the Declaration of James W. Bartlett, Jr.).  And the

13

government confirmed it intends to introduce evidence regarding Mr. Chu's "roles at . . . Origin bank." Ex. A at 2.

25. Questions regarding Mr. Chu's assets, compensation, and use of corporate credit card accounts are also properly subject to the privilege. For example, the Indictment presents Mr. Chu's compensation as a motivation to commit the charged crime and alleges that Mr. Chu enriched himself from the fraud, Ex. B ¶ 1, and continued to do so as Tricolor collapsed, *id*. ¶ 25. Evidence about Mr. Chu's compensation could also be used to attempt to demonstrate Mr. Chu's control over Tricolor's board. *See id.* ¶ 2. Again, there is no need to speculate about the connection between this evidence and the criminal prosecution. The government has confirmed it intends to offer evidence at the criminal trial regarding Mr. Chu's assets, his bank accounts, Tricolor's bank accounts, and Mr. Chu's use of Tricolor credit cards. Ex. A at 1-2.

26. The Trustee is also incorrect that Mr. Chu improperly asserted his Fifth Amendment rights in response to questions pertaining to the bankruptcy itself. If the bankruptcy was unrelated to the criminal case, the Trustee's argument might have some force. But here, the fraud charged in the Indictment is alleged to have persisted through the filing of the bankruptcy petition and the government has made clear that it intends to introduce evidence relating to the bankruptcy at trial. Ex. A; Ex. B ¶¶ 1, 12, 25.

27. Likewise, the Trustee's questions regarding authentication of evidence—such as whether Mr. Chu signed the bankruptcy petition—plainly pose a risk of self-incrimination. Whether the Trustee is correct that Mr. Chu's signature "can be easily verified" by other means, (Motion at 17), is beside the point—in addition to begging the question of why the Trustee needs to compel a response in the first place. The Supreme Court has long recognized that the Fifth Amendment protects a criminal defendant from having to authenticate a document that may be

14

introduced into evidence against him, full stop.  It does not matter whether the document can be authenticated by other means, nor does it matter what the nature of the document is.  *See United States v. Hubbell*, 530 U.S. 27, 36–45 (2000); *United States v. Doe*, 465 U.S. 605, 612–14 (1984); *Fisher v. United States*, 425 U.S. 391, 409–10 (1976); *c.f. United States v. Beattie*, 541 F.2d 329, 331 (2d Cir. 1976) (shielding act of production of taxpayer's letters under the Fifth Amendment because the act communicates authorship and authenticity).

28.     Here, there is no question that the documents the Trustee seeks to have Mr. Chu authenticate would be used against him.  Not only has the Trustee accused Mr. Chu of filing a false and misleading bankruptcy petition, ECF No. 465 at 1-2,[6] but the criminal prosecutors confirmed that they intend to use evidence "regarding the authorization for and the filing of the Tricolor debtors' bankruptcy petitions" to attempt to convict Mr. Chu at trial, Ex. A.  Thus, forcing Mr. Chu to confirm the authenticity of the petition or the signature on it would compel testimony providing a "link in the chain" that the Fifth Amendment protects against.  *Hoffman*, 341 U.S. at 486–87.

---

[6]     The Trustee, of course, is not a law enforcement authority.  But she has made clear her intention to "work hand in glove with the various governmental agencies that are investigating what, by all accounts, appears to be a pervasive fraud of rather extraordinary proportions."  ECF No. 182 at 20.  Given that the Trustee appears to view that her role, in part, as aiding government agencies in the investigation of Mr. Chu, and that the nature of the Trustee's allegations plainly relate to criminal activity—some charged by the government already, and some (like bankruptcy fraud) not—Mr. Chu is well within his rights to decline to answer the Trustee's questions that have an obvious inculpatory thrust.  *See generally McCarthy v. Arndstein*, 262 U.S. 355, 360 (1923), *aff'd*, 266 U.S. 34 (1924) ("we are not called upon, on appeal, to examine, as with a microscope, the multitudinous questions in issue, involved in an unduly protracted examination, containing many vain and futile repetitions, much of which does not appear to have had any relation to a discovery of assets of the bankrupt but was of such character as to suggest that the underlying purpose was the discovery of evidence to support the charge of grand larceny for which Arndstein had been indicted in the State court."); *see also Hulon*, 92 B.R. at 674 ("[t]hat information, if elicited from the debtor may tend to further incriminate the debtor by helping the government pinpoint more fruitful areas of inquiry.").

15

29.     In sum, the categories of questions that the Trustee wishes to compel Mr. Chu to answer have a relationship nexus to alleged criminal conduct or otherwise post a risk of criminal jeopardy, and thus Mr. Chu's invocation was proper.  The government's letter, which explicitly lays out the prosecutors' intention to introduce evidence on the exact topics that are the subject of this Motion, only underscores the criminal jeopardy to Mr. Chu and the rightfulness of his invocation.[7]

### IV.     Mr. Chu Did Not Waive His Fifth Amendment Privilege as to the Bankruptcy Petition

30.     In passing, the Trustee asserts that Mr. Chu waived his Fifth Amendment rights by signing the bankruptcy petition.  To begin with, that incredibly broad argument—presented solely in a single footnote, (Motion at 15, n.6)—is itself forfeited and should not be considered.  *See, e.g., Vernon Smith, etc. v. Sch. Bd. of Concordia Par.*, 88 F.4th 588, 596 (5th Cir. 2023) ("We have repeatedly cautioned that arguments appearing only in footnotes are 'insufficiently addressed in the body of the brief' and are thus forfeited." (quoting *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016), and citing cases); *United States v. Tracts 31a, Lots 31 & 32, Lafitte's Landing Phase Two Port Arthur, Jefferson Cnty. Texas*, 852 F.3d 385, 390 n.5 (5th Cir. 2017) ("However, Stacy does not raise this argument in the body of her brief; therefore, her argument is waived."); *Bridas S.A.P.I.C. v. Turkm.*, 345 F.3d 347, 356 n.7 (5th Cir. 2003).

---

[7]     As the Supreme Court has held, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question *or an explanation of why it cannot be answered* might be dangerous because injurious disclosure could result."  *Hoffman*, 341 U.S. at 486–87 (emphasis added).  For that reason, and in light of the discussion in the text and because the government's letter is dispositive, we believe the potentially incriminating nature of the questions posed by the Trustee is more than clear.  However, should the Court have questions on this point (and as we discuss below), Mr. Chu is prepared to make an *in camera*, *ex parte* showing, as Courts sometimes entertain.

16

31.     Regardless, the argument is meritless.  "[A] waiver of a person's privilege against self-incrimination will not be lightly inferred."  *In re Marble*, No. 07-50099-RLJ-7, 2008 WL 2048025, at *2 (Bankr. N.D. Tex. May 9, 2008).  "Courts indulge every reasonable presumption against finding a testimonial waiver."  *Id.* (internal quotation omitted).

32.     Bankruptcy Courts in the Northern District of Texas routinely follow the two-part test adopted by the Second Circuit in *Klein v. Harris*, 667 F.2d 274 (2d Cir. 1981), to determine whether waiver can be inferred from prior testimonial statements.  *See, e.g.*, *Hulon*, 92 B.R. at 673; *see also In re Marble*, 2008 WL 2048025, at *3.  "That test holds that waiver should only be inferred if (1) the prior statements create a significant likelihood that the fact finder will be left with and prone to rely on a distorted view of the truth, and (2) the person had reason to know that her prior statements would be interpreted as a waiver of the privilege."  *Id.*

33.     As the Trustee appears to concede by relegating this argument to a footnote, there has been no testimonial waiver here.  Mr. Chu has not testified that he signed the petition, and he cannot be compelled to authenticate the signature on the petition or the document itself.  But even if Mr. Chu did sign the petition, the Supreme Court has *expressly* held that filing bankruptcy schedules does not constitute a Fifth Amendment waiver.

34.     In *Arndstein v. McCarthy*, a unanimous Court—discussing the District Court's holding "that by filing schedules without objection the bankrupt waived his constitutional privilege"—held: "This view of the law we think is erroneous.  The schedules, standing alone, did not amount to an admission of guilt or furnish clear proof of crime, and the mere filing of them did not constitute a waiver of the right to stop short whenever the bankrupt could fairly claim that to answer might tend to incriminate him."  254 U.S. 71, 72 (1920).  *See also Hulon*, 92 B.R. at 671 ("A debtor who voluntarily petitions a bankruptcy court for a discharge of debts under Chapter 7

17

4919-5726-0692, v. 2

of the Bankruptcy Code does not forfeit her rights guaranteed by the United States Constitution."); *In re Gi Yeong Nam*, 245 B.R. 216, 234 (Bankr. E.D. Pa. 2000) (describing *Arndstein* as holding that "in the involuntary examination of a debtor, he is practically in the position of witness under cross examination, and where the previous disclosure (in this case, the debtor's schedules) is not incriminating, he is not deprived of the privilege of stopping short in his testimony whenever it may fairly tend to incriminate him.").

35. The Trustee's waiver argument is both forfeited and meritless. Mr. Chu retains the right to invoke the privilege as to any testimony that may tend to incriminate him, especially given the pending criminal prosecution. *See, e.g.*, *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 468–69 (5th Cir. 1996) ("Because Fox did not admit at any earlier stage of this proceeding to guilt or to facts which are themselves incriminating, he cannot be deprived of the right to assert the privilege.").

## V. If the Court Has Questions About Mr. Chu's Invocations, an *Ex Parte*, *In Camera* Presentation by Mr. Chu is the Appropriate Next Step

36. For the reasons discussed above, the Court can and should deny the Trustee's Motion in its entirety. But should the Court seek further information on how the Trustee's questioning implicates Mr. Chu's well-founded fear of self-incrimination, Mr. Chu respectfully requests an *in camera*, *ex parte* hearing at which the Court can receive further evidence without having to expose privileged information or criminal trial strategy to either the Trustee or the government. Courts routinely employ this procedure to ensure that a witness's Fifth Amendment rights are not inadvertently infringed, either by being compelled to answer questions or in the process of explaining why those answers would potentially be incriminating.

37. At such an *in camera, ex parte* hearing, the witness may "give a description that is at least adequate to allow the trial judge to determine whether the fear of incrimination is

18

reasonable and, if reasonable, how far the valid privilege extends." *United States v. Goodwin*, 625 F.2d 693, 702 (5th Cir. 1980). The *in camera, ex parte* hearing can be used to develop a sealed record demonstrating that the witness is entitled to invoke the Fifth Amendment. *United States v. Whittington*, 783 F.2d 1210, 1218 (5th Cir. 1986) ("The record of that hearing shows that Lynn was already under investigation for obstruction of justice for giving false information in statements to government agents . . . . The record thus supports the judge's determination that Lynn had a legitimate fear of prosecution and was entitled to invoke the fifth amendment."); *see also Olivarez v. State*, No. 05-22-01112-CR, 2024 WL 3311146, at *7 (Tex. App.—Dallas July 5, 2024) ("At the hearing, counsel for Eric articulated multiple reasons why Eric's testimony would open him up to criminal liability.").

38. To be clear, Mr. Chu believes that the information and evidence provided in this opposition, including the government's February 26, 2026 letter (Ex. A), clearly establish the propriety of his Fifth Amendment invocations such that no further inquiry is necessary. However, if the Court believes it appropriate, Mr. Chu would be able to provide even greater detail on the sealed record at an *in camera*, *ex parte* hearing regarding his legitimate fear of prosecution on any question he might be compelled to answer.

39. We also respectfully suggest that, if the Court believes that such a proceeding is necessary—or if the Court believes that this Motion is close in any way, shape, or form—it may be appropriate for Judge Castel in the Southern District of New York, who is presiding over the criminal case, to resolve any Fifth Amendment issues, because any order compelling Mr. Chu to answers questions over his invocation is likely to cause (at a minimum) material complications to the criminal prosecution. *See generally Kastigar*, 406 U.S. 441. If the Court believes that

19

approach would be appropriate, Mr. Chu is prepared to immediately raise the issue in the criminal

case so that there is no delay.

## CONCLUSION

The Motion should be denied.

Dated: March 3, 2026

Respectfully submitted,

**OKIN ADAMS BARTLETT CURRY LLP**

*/s/ James W. Bartlett, Jr.*
James W. Bartlett, Jr. (TX Bar No. 00795238)
Matthew Okin (TX Bar No. 00784695)
Edward A. Clarkson, III (TX Bar No. 24059118)
1113 Vine St., Suite 240
Houston, TX 77002
Telephone (713) 228-4100
Facsimile (888) 864-2118
Email: mokin@okinadams.com

20

4919-5726-0692, v. 2

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will cause a copy of the foregoing document to be served by the Court's ECF system upon parties who have registered with this Court.

/s/ James W. Bartlett, Jr.
James W. Bartlett, Jr.

21

4919-5726-0692, v. 2