**VINSON & ELKINS LLP**
Bradley R. Foxman (TX 24065243)
Matthew W. Moran (TX 24002642)
Sara E. Zoglman (TX 24121600)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel:    214-220-7700
Fax:    214-220-7716
Email: bfoxman@velaw.com
         mmoran@velaw.com
         szoglman@velaw.com

**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Tel:    713-758-2222
Fax:    713-758-2346
Email: pheath@velaw.com

*Counsel to TBK Bank, SSB*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | § | |
|---|---|---|
| **In re** | § | **Chapter 7** |
| | § | |
| **TRICOLOR HOLDINGS, LLC,** *et al.*, | § | **Case No. 25-33487 (MVL)** |
| | § | |
| **Debtors.**[1] | § | **Jointly Administered** |
| | § | |

**TBK BANK'S MOTION TO COMPEL TRUSTEE AND VERACITY FORENSICS LLC
TO RESPOND TO DISCOVERY AND PRODUCE DOCUMENTS**

TBK Bank, SSB ("***TBK***") files this motion (the "***Motion***"), and asks the Court to compel

Anne Burns, in her capacity as the chapter 7 trustee (the "***Trustee***") appointed over each of the

estates of the above-captioned debtors (collectively, the "***Debtors***"), and Veracity Forensics LLC

---

[1]    The Debtors and their bankruptcy case numbers are: Tricolor Holdings, LLC (25-33487), TAG
Intermediate Holding Company, LLC (25-33495), Tricolor Auto Group, LLC (25-33496), Tricolor
Auto Acceptance, LLC (25-33497), Tricolor Insurance Agency, LLC (25-33512), Tricolor Home
Loans LLC (25-33511), Tricolor Real Estate Services (25-33514), TAG California Holding Company,
LLC (25-33493), Flexi Compras Autos, LLC (25-33490), TAG California Intermediate Holding
Company, LLC (25-33494), Tricolor California Auto Group, LLC (25-33502), Tricolor California
Auto Acceptance, LLC (25-33501), Risk Analytics LLC (25-33491), Tricolor Tax, LLC (25-33515),
Tricolor Financial, LLC (25-33510), Tricolor Auto Receivables LLC (25-33498), TAG Asset Funding,
LLC (25-33492), Apoyo Financial, LLC (25-33489).

("**Veracity**") to fully and properly respond to discovery in connection with the Surcharge Motion

(as defined below).

## INTRODUCTION

1.       On February 28, 2026, the Trustee filed the Surcharge Motion seeking to surcharge

the collateral of TBK and the other Prepetition Lenders (as defined below) in an amount of at least

$1,696,664.27 for services of Veracity, a professional forensics/e-discovery firm that is alleged to

have "assist[ed] the Trustee and Vervent in marshaling, securing, preserving, and maintaining the

Debtors' electronic systems, data, and technology infrastructure."  Surcharge Motion ¶ 9.  The

Surcharge Motion was filed before any conference with TBK, without any mention of surcharging

these costs in the first five months of these cases, and with full knowledge that TBK had filed a

Notice of Non-Consent to Surcharge [Docket No. 120] in the first 20 days of these cases.

2.       The Fifth Circuit has made clear that surcharge is an "extraordinary" and "narrow"

remedy that is only available for expenses incurred "preserving, or disposing of" "property

securing an allowed secured claim," and then only if (a) the expenses are reasonable and necessary,

(b) the expenses were incurred primarily for the benefit of the secured creditor, and (c) the secured

creditor received a quantifiable and direct benefit.  *See In re Domistyle, Inc.*, 811 F.3d 691, 695,

697, 700–01 (5th Cir. 2015); *In re Grimland, Inc.*, 243 F.3d 228, 232–33 (5th Cir. 2001); 11 U.S.C.

§ 506(c).  The Trustee bears the burden of proving each of these elements.  *See Domistyle*, 811

F.3d at 695.  The Surcharge Motion does nothing to satisfy these standards but instead contains

only conclusory allegations without any evidentiary support.  Naturally, TBK served the Trustee

with discovery to answer basic questions:

- What *scope of services* did the Trustee or her professionals ask Veracity to perform, and what services did Veracity actually perform?
- Were Veracity's services *necessary to preserve or dispose* of TBK's collateral?
- Were Veracity's services *duplicative* of the services of other Trustee professionals?

2

- What *collateral* of TBK did Veracity's services *directly benefit*?
- Were Veracity's charges *reasonable*?
- What did the Trustee or her professionals tell insurers about Veracity's services?

3. But rather than produce documents and answers to these basic questions, the Trustee has shielded necessary discovery from TBK by setting forth pages of prophylactic general objections that are prohibited by federal courts and asserting a litany of privilege objections that were waived when the Trustee put Veracity's work product at issue in the Surcharge Motion.

4. The Trustee's position seems to be that TBK (and the Court) should blindly accept, without any discovery or verification, that all of Veracity's expenses the Trustee seeks to recover are properly surchargeable. This position is not only unreasonable and contrary to the law, but the Trustee's own actions show that the allegations in the Surcharge Motion are unreliable. The Surcharge Motion originally sought to recover $1,696,664.27 from TBK's collateral. *See* Surcharge Motion ¶ 9. However, after TBK *merely served discovery*, the Trustee reversed course and indicated it would be dropping its surcharge demand by hundreds of thousands of dollars. TBK should be afforded full production and complete responses from both the Trustee and Veracity so that it can gather evidence necessary to show that the entire surcharge demand is improper. After all, "[t]he purpose of discovery is to ascertain the truth." *In re Certain Asbestos Cases*, 112 F.R.D. 427, 432 n.8 (N.D. Tex. 1986) (citing *Ishler v. Cook*, 299 F.2d 507, 511 (7th Cir. 1962)).

5. Accordingly, this Motion requests that the Trustee's privilege assertions and inappropriate objections be overruled and the Trustee be ordered to produce discovery regarding:

- What *scope of services* did the Trustee or her professionals ask Veracity to perform, and what services did Veracity actually perform?
- Were Veracity's services *necessary to preserve or dispose* of TBK's collateral?
- Were Veracity's services *duplicative* of the services of other Trustee professionals?
- What *collateral* of TBK did Veracity's services *directly benefit*?
- Were Veracity's charges *reasonable*?

3

- What did the Trustee or her professionals tell insurers about Veracity's services?

## ARGUMENT

### I. TBK Served Discovery on the Surcharge Motion and the Trustee and Veracity Refused to Meaningfully Respond

6.    On the evening of Saturday, February 28, 2026, before conferring with TBK,[2] the Trustee filed the *Chapter 7 Trustee's Motion For Entry Of An Order (I) Authorizing The Trustee To Surcharge The Prepetition Lenders' Collateral, (II) Limiting The Prepetition Lenders' Liens On Proceeds Of The Collateral, (III) Ordering The Prepetition Lenders To Pay The Expenses, And (IV) Granting Related Relief* [Docket No. 916] (the "**Surcharge Motion**") seeking to surcharge the collateral of TBK, Origin Bank, and ACV Capital LLC (collectively, the "**Prepetition Lenders**") in an amount of at least $1,696,664.27.

7.    In response, TBK promptly served two sets of discovery on the Trustee and one set of discovery on Veracity, attached to the Appendix accompanying this Motion as Exhibits A, B, and C, respectively (collectively, the "**Discovery Requests**").  On March 20, the Trustee's counsel provided written objections and responses of the Trustee and Veracity—consisting largely of prophylactic and meritless objections.[3]  The parties met and conferred virtually about the inadequate responses and objections on Sunday, March 22.  During that meeting, the Trustee's counsel notified TBK's counsel that the Trustee would be reducing the initially requested surcharge amount of $1.7 million by hundreds of thousands of dollars.  Nevertheless, the Trustee's

---

[2]    On the evening of Friday, February 27, 2026, and without any prior discussion, counsel for the Trustee provided TBK notice (by email) of the Trustee's plan to file the Surcharge Motion with the Court on the following day.  Approximately 24 hours later, and before any actual conference, the Trustee filed the Surcharge Motion.

[3]    *See* Trustee's Responses and Objections to TBK Bank, SSB's First Requests for Production of Documents and First Set of Interrogatories, dated Mar. 20, 2026 (included in the Appendix as Exhibit D); Veracity Forensics LLC's Responses and Objections to TBK Bank, SSB's First Requests for Production of Documents and First Set of Interrogatories, dated Mar. 20, 2026 (included in the Appendix as Exhibit E).

4

counsel stood by most of the discovery objections and insisted that TBK should only be entitled to engagement letters, redacted invoices, a collection log, and possibly a few other documents. The Trustee refused to search for or produce any responsive emails or other communications. The parties were unable to reach an agreement on a majority of the requests, thereby necessitating the filing of this Motion.

## II. The Trustee Waived Privilege and Cannot Hide Behind Prophylactic Objections

### A. <u>By Putting Veracity's Work "At Issue" In Seeking an Affirmative Recovery, the Trustee Cannot Now Shield Communications and Details About Veracity's Work.</u>

8.      The Trustee, without ever producing a privilege log,[4] has asserted numerous privilege objections in an attempt to shield information about the scope, details, and contents of Veracity's work.  However, the Trustee waived any such privilege by affirmatively placing the scope, details, and content of Veracity's work at issue. Indeed, "[t]he attorney-client privilege was intended as a shield, not a sword." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (internal quotation marks omitted).  "[T]he attorney-client privilege is waived when a litigant place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Id.*

9.      In the Surcharge Motion, the Trustee has placed Veracity's work product fully at issue.  Section 506 allows the Trustee to "recover from property securing an allowed secured claim" only "the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."  11 U.S.C. § 506(c).  It is the

---

[4]    To the extent any of the Trustee's or privilege assertions are not waived, TBK insists that the Trustee and Veracity provide a privilege log, consistent with Bankruptcy Rule 7026 (incorporating Fed. R. Civ. P. 26(b)(5)(A), which states that the party claiming privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed").

*Trustee* who bears the burden of showing: "(1) the expenditure was necessary, (2) the amounts expended were reasonable, and (3) the creditor benefitted from the expenses." *Domistyle*, 811 F.3d at 695 (quoting *Matter of Delta Towers, Ltd.*, 924 F.2d 74, 76 (5th Cir. 1991)). To understand the nature and scope of Veracity's work, TBK is entitled to see ***all documents and communications*** about that work: What was Veracity asked by the Trustee to do? What was the stated purpose for that work? The Surcharge Motion places these communications regarding Veracity's work squarely at issue. And "[w]hen a party puts privileged matter in issue as evidence in a case, it thereby waives the privilege as to all related privileged matters on the same subject." *See La Union del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2024 WL 4344471, at *7 (W.D. Tex. Apr. 29, 2024) (quoting 8 CHARLES WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2016.2 (3d ed. 2023)).

10.     As just one example, the Trustee seeks to recover thousands of dollars related to Veracity's "Data Hosting Project Management" work performed on November 20, 2025.[5] The time entries indicate that an "ECA"[6] or "early case assessment tool" was being used and that Veracity was "[r]un[ning] searches," presumably at the request of counsel.

| 11/20/2025 | ECA to Review Promotion: 7,197 Documents Exported Natives | Data Hosting Project Management | SS | Yes | 2.00 | $250.00 | $500.00 |
|---|---|---|---|---|---|---|---|
| 11/20/2025 | **Redacted** | Data Hosting Project Management | RP | Yes | 1.50 | $250.00 | $375.00 |
| 11/20/2025 | Redacted | Data Hosting Project Management | BS | Yes | 1.00 | $250.00 | $250.00 |
| 11/20/2025 | Run searches | Data Hosting Project Management | DD | Yes | 1.50 | $250.00 | $375.00 |

---

[5]     *See* Veracity Forensics LLC's Invoice to Chapter 7 Trustee, dated Nov. 30, 2025 [Trustee_000000081–114] (included in the Appendix as Exhibit F) at 24 [App'x. 90].

[6]     ECA is a tool used with the Relativity software platform to "sift[] through large amounts of emails, documents, instant message, and other data to filter content and uncover facts pertinent to your case." RELATIVITYONE, *Early Case Assessment in RelativityOne*, https://help.relativity.com/RelativityOne/Content/Relativity/ECAv2_Overview.htm (last visited March 29, 2026).

But while, on the one hand, the Trustee seeks to recover these "Data Hosting Project Management" charges, on the other hand, she categorically refuses to produce any communications between the Trustee (or her professionals) and Veracity about this work. The Trustee cannot seek affirmative relief and, at the same time, seek to maintain privilege over the very subject she has placed at issue. Indeed, these and numerous similar entries raise significant questions, and TBK is entitled to see communications between the Trustee and Veracity to understand: What case or controversy was this database hosted for? How did this case benefit TBK's collateral? What was the purpose of the "searches"? If the "Data Hosting Project Management" work was to assist lawyers in rendering legal advice to the Trustee or made in anticipation of litigation, how could its primary purpose be to preserve or dispose of TBK's collateral?

11. The Trustee and Veracity cannot hide behind an unspecified privilege to shield themselves from discovery after affirmatively placing Veracity's work at issue. Any privilege has been waived and the Trustee must be ordered to produce all communications with Veracity. Anything else is "manifestly unfair." *Conkling*, 883 F.2d at 434 (When a party "place[s] information protected by it in issue . . . for his own benefit, . . . to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.").[7]

## B. **The Trustee's and Veracity's Prophylactic General Objections Result in Waiver of All Objections.**

12. Both the Trustee's and Veracity's objections and responses begin with identical prophylactic general objections. For example, they object to the discovery requests "to the extent they conflict with, are in a different form from, or purport to expand upon the obligation imposed

---

[7] If communications between Veracity and the Trustee (or her professionals) actually related to the preservation and disposition of TBK's collateral (*e.g*., repairing vehicles or selling them at auction houses), such communications would not be privileged.

or authorized by [the applicable rules]" but do not point to a single specific violation of any such rule.[8]  The other general objections are similarly vague and unhelpful.  "The prohibition against general [or blanket] objections to discovery requests has been long established." *Nat'l Rifle Ass'n of Am. v. Ackerman McQueen Inc.*, No. 3:22-CV-01944-G (BT), 2024 WL 6843694, at *4 (N.D. Tex. Mar. 19, 2024) (internal quotation marks omitted).  "[O]bjections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections." *Id.* (internal quotation marks omitted).

13.    Additionally, the request-specific responses are littered with boilerplate objections that provide no assurance that the Trustee's and Veracity's refusal to produce documents is justified.  For example, the Trustee and Veracity repeat the sentence "[The Trustee/Veracity] further objects to this Request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of this case because it seeks information not related to the claims or defenses of any party in this action" no fewer than fifteen times.[9]  These general and boilerplate objections, "even when asserted in response to a specific discovery request and not as part of a general list of generic objections preceding any responses to specific discovery requests," are "improper and ineffective." *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014).  They do not "preserve or accomplish anything other than waiver and subjecting the responding party to sanctions." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. 2018).  The Court should overrule all such generic objections and prophylactic objections and hold that the Trustee has waived all objections to the Discovery Requests. *See Hopkins v. Green Dot Corp.*, No. CVSA16CA00365DAE, 2016 WL 8673861, at *3 (W.D. Tex. Aug. 16, 2016) ("Courts

---

[8]    *See* Ex. D at 2 [App'x. 32]; Ex. E at 2 [App'x. 53].

[9]    *See generally* Ex. D [App'x. 31]; Ex. E [App'x. 52].

8

consistently find waiver of a valid objection upon a party's use of boilerplate."); *Bevill v. City of Quitman, Texas*, No. 4:19-CV-00406, 2022 WL 14318439, at \*6 (E.D. Tex. Oct. 24, 2022) ("[B]oilerplate language is unacceptable under Rule 34 . . . [and] results in waiver of the objections.").

### III.   The Trustee and Veracity Must Fully Respond to TBK's Discovery Requests

#### A.   <u>TBK Is Entitled To Discovery Concerning the Scope and Details of Veracity's Work (Trustee RFPs 2, 4, 5, 6, 8, 11, 12, 14, 15, and 16 and Int. 2; Veracity RFPs 2, 3, 7, 8, 9, 10, 11 and Int. 1-2).</u>

14.     Under section 506 and governing case law, the Trustee has the burden of showing the services of Veracity were "necessary" for "preserving, or disposing of" TBK's collateral.  11 U.S.C. § 506(c); *see also In re Houston Regional Sports Network, L.P.*, 886 F.3d 523, 534 (5th Cir. 2018) ("[T]o benefit the creditor, the expenses must be 'directly related to preserving or enhancing' that encumbered property.") (quoting *Domistyle*, 811 F.3d at 698).  This naturally places the scope and details of Veracity's services at issue:  What scope of services did the Trustee or her professionals ask Veracity to perform?  What services did Veracity actually perform?  How were these services necessary to preserve and dispose of TBK's collateral? Accordingly the scope and details of Veracity's work are relevant for numerous reasons.

15.     *First*, TBK is entitled to full discovery on the scope and details of Veracity's work to determine how, if at all, it was ***necessary to preserve or dispose*** of TBK's collateral.  *See* 11 U.S.C. § 506(c); *Domistyle*, 811 F.3d at 695.  In the 131 pages of invoices produced, there is no mention of Veracity having any involvement in "preserving" or "disposing" (or liquidating or selling or securing) TBK's collateral, which consists of vehicles and retail installment contracts. The vast majority of Veracity's time entries relate to things like "Forensic Consulting," "Project

9

Administration," and "Collection Logistics."[10] The only things suggesting a tie between Veracity's work and TBK's collateral are the conclusory assertions in the Surcharge Motion; for example, that Veracity's work was intended "to ensure[] that liquidation of the inventory proceeded in a reliable manner." Surcharge Motion ¶ 16. TBK is entitled to discovery—including all communications between the Trustee (and her professionals) and Veracity—to test assertions like this one and understand how, if at all, Veracity's work was intended for "preserving or disposing" of TBK's collateral.

16. **Second**, to be "necessary," Veracity's work must be integral to the preservation or disposition of TBK's collateral and **_non-duplicative_**. *See* Surcharge Motion ¶¶ 13–17 (suggesting in conclusory fashion that Veracity's work was necessary and non-duplicative). Indeed, duplicative services are "*per se* unreasonable" and cannot be surcharged. *See In re Cummins Util., L.P.*, 279 B.R. 195, 207 (Bankr. N.D. Tex. 2002) (explicitly applying section 506(c) principles when evaluating the reasonableness of professional fees under section 506(b)). But, in this case, the Court has already approved—through various orders and stipulations—processes by which other third parties (not Veracity) were charged with preserving and disposing of TBK's collateral (vehicles and retail installment contracts). *See Seventh Amended Order Granting Chapter 7 Trustee's Motion for Entry of Order Approving Stipulation Between Trustee and Vervent Inc.* [Docket No. 926] at 4 (requiring Vervent to "take responsibility for, and account for, all vehicles owned by . . . the Debtors" and "secur[e] all vehicles, protect[] all vehicles[,] . . . [and] account[] for all [Vehicle Assets]"), and at 4 of the attached *Stipulation* (showing that Vervent was engaged to perform various tasks related to servicing of notes); *Order Granting Chapter 7 Trustee's*

---

[10] *See generally* Veracity Forensics LLC's Invoice to Chapter 7 Trustee, dated Sept. 30, 2025 [Trustee_000000023–040] (included in the Appendix as Exhibit G).

*Amended Emergency Motion To (I) Sell Estate Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Establish Sale Procedures, and (III) Granting Related Relief* [Docket No. 593] (the "***Sale Order***") (providing a detailed outline of Vervent's and Holman's responsibilities in securing and selling of vehicles). Especially considering the Court-ordered roles of Vervent and Holman relating to TBK's collateral, TBK is entitled to discovery on Veracity's scope of work to determine if Veracity's work purportedly relating to TBK's collateral was duplicative of work done by Holman and Vervent, the parties actually tasked by the Court with securing and liquidating the vehicles and servicing the retail installment contracts.

17. ***Third***, TBK is entitled to discovery on the scope of Veracity's services to understand how, if at all, those services ***directly benefitted*** TBK's collateral. *See Grimland*, 243 F.3d at 232 (requiring "a quantifiable and direct benefit to the secured creditor[] [because] indirect or speculative benefits may not be surcharged, nor may expenses that benefit the debtor or other creditors"); *see also Domistyle*, 811 F.3d at 698 (requiring a "connection between the expense and the collateral"). This is especially the case where TBK has seen no benefit to its collateral from Veracity's work and, indeed, in the five months these cases were pending prior to the filing of the Surcharge Motion, the Trustee never once consulted with TBK about Veracity's work or explained that Veracity's work was providing any benefit to TBK's collateral. TBK is entitled to all communications between the Trustee (or her professionals) and Veracity to determine how Veracity's work was being used to benefit TBK's collateral. Additionally, Veracity's work product itself must be produced.[11] This work product will have a tendency to prove or disprove (or otherwise quantify) whether that work product was a direct benefit to TBK's collateral.

---

[11] *See* TBK Bank, SSB's First Requests for Production of Documents and First Set of Interrogatories to Anne Elizabeth Burns in her Capacity as Chapter 7 Trustee, dated Mar. 9, 2026 (included in the Appendix as Exhibit A) at RFP 10 [App'x. 10]; TBK Bank, SSB's First Requests for Production of

18.     ***Fourth***, TBK is entitled to fully understand the scope and details of Veracity's work

to understand if Veracity's expenses relate to tasks that admittedly did not benefit TBK's collateral.

For example, TBK served the following discovery seeking:

- "All documents created, restored, or preserved by Veracity that the Trustee . . . provided to United States Department of Justice or any other state or federal governmental unit or entity" (RFP 11); and
- "All documents created, restored, or preserved by Veracity that were reviewed or relied upon by the Trustee . . . in connection with preparation or defense of any litigation, including, without limitation, the following lawsuits . . ." (RFP 12).[12]

19.     Although the Trustee at the time of filing the Surcharge Motion sought to recover

***all*** of Veracity's expenses from TBK, the Trustee now appears to concede, only ***after*** receiving

the Discovery Requests, that Veracity's work related to the ongoing criminal investigations by the

DOJ and the various civil suits brought by the Trustee against former Tricolor officers was not

necessary to preserve or dispose of TBK's collateral.

20.     TBK is entitled to take discovery to determine which portions of Veracity's work

were used for, among other things, the DOJ investigation and the Trustee's civil suits.  Discovery

on these topics is especially necessary because the descriptions provided in Veracity's time entries

are of no value and do not quantify how Veracity's work was being used.  For example, many of

the produced invoices simply reference things like "On-Site Collection" and "Data Collection"

which give no clue as to the primary purpose of the work, how the work was ultimately used, or

how it benefitted TBK's collateral, if at all.  How does TBK test whether the Veracity charges

relate to the DOJ investigation, the civil lawsuits, or something else?  The answer is that TBK must

have fulsome discovery related to Veracity's scope of work, including all communications

---

Documents and First Set of Interrogatories to Veracity Forensics LLC, dated Mar. 11, 2026 (included in the Appendix as Exhibit C) at RFPs 7 and 10 [App'x. 28–29].

[12]     *See* Ex. A at 7–8 [App'x. 10–11].

between the Trustee and Veracity.  To obtain surcharge relief, the "claimant [must] incur the expenses primarily for the benefit of the secured creditor." *Delta Towers*, 924 F.2d at 77.  Data collected to assist the DOJ in its investigation or to assist the Trustee's litigation against third parties is not "primarily for the benefit" of TBK.  Nor does it provide any quantifiable benefit to TBK's collateral.  Accordingly, TBK is entitled to discovery regarding the entirety of Veracity's work so it has evidence to support which portions of Veracity's work, if any, satisfy the requirements of section 506 of the Bankruptcy Code.

21.     ***The Trustee cannot self-select what information she wants to produce regarding Veracity's work.***  In response to Discovery Requests concerning Veracity's scope of work, the Trustee has only provided engagement letters and redacted invoices with limited details of Veracity's work.  The Trustee's position is that the descriptions in these documents should be enough to satisfy TBK's inquiry into whether Veracity's work was reasonable, necessary, non-duplicative and benefitted TBK's collateral.  However, the descriptions provide no context as to why the work was done, what the work was used for, or how it benefitted TBK's collateral, if at all.  The invoices also fail to satisfy *the Trustee's* burden to show that Veracity's fees were necessary and provided a direct, quantifiable benefit to TBK's collateral.

22.     ***The Trustee cannot withhold communications.***  The Trustee has objected to producing any communications as unduly burdensome and not proportional.  But there is no significant burden in producing communications.  Simple searches can be run to capture emails between the Trustee and her professionals, on the one hand, and Veracity, on the other hand.  These searches can be most easily run from the Veracity side to capture emails with a mwe.com, mcdermottlaw.com, srz.com, chfirm.com, or capstone.com email domain.  The relevant time period is a limited period of about six months from September 2025 to present.  Even if there was

an email with Veracity every day during this period, it would be fewer than 200 emails.  And, after all, Veracity is an e-discovery vendor specializing in doing such searches—meaning there is no burden.  These communications are needed to understand the context for Veracity's work, including, among other things, the purpose of its work, possible complaints about its work or fees, or discussions about why Veracity has not yet been paid.

**B.   The Trustee Must Identify the Collateral She Alleges Was Directly Benefitted by the Services of Veracity (Trustee RFPs 7, 8, 9, and 17).**

23.    Section 506(c) states "[t]he trustee may recover from ***property*** securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, ***such property*** to the extent of any benefit to the holder of such claim . . . ."  11 U.S.C. § 506(c) (emphases added).  It is thus axiomatic that the Trustee must identify the property (*i.e.*, the secured creditor's collateral) that is subject to surcharge.  Accordingly, TBK sought:  "All documents showing any analysis done by the Trustee (or any of the Trustee Professionals) to determine which vehicles or Retail Installment Contracts were property of the Debtors' estates or, alternatively, property of non-debtors" (RFP 7).[13]  But the Trustee refused to answer.

24.    Without identifying the collateral that was directly benefitted by the work of Veracity, the Trustee could never meet her burden to show that "such property" directly benefitted from Veracity's services or the extent of any benefit.  *See Brookfield Prod. Credit Ass'n v. Borron*, 738 F.2d 951, 952 (8th Cir. 1984) (denying surcharge in part because debtors "failed to ascribe actual expenses to specific items of collateral"), cited with approval in *Domistyle*, 811 F.3d at 698. And without discovery, TBK lacks the ability to get answers to necessary questions:  What vehicles and retail installment contracts are estate property versus property of non-debtors? What collateral

---

[13]    *See* Ex. A at 7 [App'x. 10]; *see also id.* (RFPs 8, 9).

of TBK benefitted, if at all, and to what extent?  How does the Trustee allocate the purported

surchargeable expenses among the Prepetition Lenders?[14]  The Trustee must identify the property

subject to surcharge and fully respond to Trustee RFPs 7–9.

### C. **TBK Is Entitled to Discovery Concerning the Reasonableness of Veracity's Fees and Expenses (Trustee RFPs 3, 5, 6, 10, and 13; Veracity RFPs 4, 5, 6, and 7).**

25.     Section 506(c) of the Bankruptcy Code only allows the recovery of "***reasonable,***

necessary costs and expenses."  11 U.S.C. § 506(c) (emphasis added).  Thus, in addition to

understanding the scope of Veracity's work, TBK is entitled to know whether the fees were

reasonable.  Accordingly, TBK sought:

- ". . . (c) communications related to the pricing or cost of Veracity's services; . . . (e) communications related to bills, invoices and amounts owing to Veracity" (RFP 5); and
- "All documents or communications . . . discussing any budgets or estimates of fees and expenses of Veracity . . ." (RFP 6).[15]

One way to test the reasonableness of fees is to compare such fees with previously budgeted or

estimated fees.

26.     In October 2025, as part of a proposed post-petition financing package that TBK

offered to the Trustee as a means by which the Trustee could pay her professionals (including

Veracity), the Trustee provided a budget that estimated Veracity's total fees through November 2,

2025 at \$374,400.[16]  Despite this estimate, the total bills from Veracity for just September and

October 2025 are over \$650,000.  This discrepancy between Veracity's estimated fees and the

actual fees now sought raises numerous questions:  Why are Veracity's fees so much more than

---

[14]   Based on its own analysis of the collateral, TBK reserves the right to disagree with the Trustee's designation of which vehicles and loans are TBK's.

[15]   *See* Ex. A at 6–7 [App'x. 9–10].

[16]   *See* Chapter 7 Liquidating Trustee Expense Budget, dated Oct. 21, 2025 (included in the Appendix as Exhibit H).

estimated?  What accounts for the difference in Veracity's fees?  The Trustee and Veracity should produce all documents and communications related to budgets and fee estimates.

27.     Additionally, the Trustee and Veracity should produce all communications regarding Veracity's fees, which are needed to understand, among other things, possible complaints about Veracity's work or fees and the reasons why Veracity has not yet been paid.

28.     Finally, the Trustee must also demonstrate that Veracity's fees were reasonable in light of the work product completed by Veracity.  With only the invoices' sparse descriptions, TBK has no way to connect the amount of fees to any of the work product actually delivered to the Trustee by Veracity.  TBK is entitled to the work product of Veracity to evaluate for itself the quality of Veracity's work product and whether the charged fees were reasonable, necessary, and non-duplicative, as well as to understand how, if at all, this work directly and quantitatively benefitted TBK's collateral.  The Court should compel the Trustee and Veracity to produce all responsive documents in response to Trustee RFPs 5, 6, 10, and 13 and Veracity RFPs 4–7.

### D. The Trustee Must Produce Communications With Insurers About Veracity's Fees and Expenses (Trustee RFP 18).

29.     The Trustee has typical Side C insurance coverage with Travelers (and other insurers) that provides Debtors with coverage for "Loss" from "Wrongful Acts" resulting from any "Claim first made during the Policy Period."[17] During a virtual meet-and-confer call on Sunday, March 22, the Trustee's counsel indicated that an insurer denied a claim for Veracity's fees due to problems with proper notice. This raises several questions: Did the Trustee represent to the insurers that Veracity's fees and expenses were incurred in response to, for example, a DOJ

---

[17]     *See* Private Company Directors and Officers Insurance Policy issued by Travelers Casualty and Surety Company of America to Tricolor Holdings, LLC [Trustee_000000189–300] (included in the Appendix as Exhibit I) at 48 [App'x. 168].

subpoena?  If Veracity's fees and expenses were incurred to preserve and dispose of TBK's collateral, how could they be submitted to the insurers for reimbursement?  Did the Trustee fail to give proper notice causing a lapse in coverage?  TBK is entitled to see if the Trustee is taking inconsistent positions about the nature of Veracity's fees.  TBK served Second Trustee RFP 1 to seek this information, however, the Trustee refused to respond.  The Court should compel the production of all communications with insurers relating in any way to Veracity.

### E. The Trustee Should Be Compelled to Comply With the Sale Order (Trustee RFPs 10 and 17, Int. 3–4; Veracity RFPs 5 and 7).

30.     TBK served discovery—specifically Trustee RFP 17 and Int. 3 and 4, and Veracity RFP 5—that it believes is relevant to the Surcharge Motion.  The Trustee admits to having such information and agrees that it is discoverable but claims that she will only produce such documents under the Sale Order.  But, while the Trustee claims she will produce documents consistent with the Sale Order, she simultaneously refuses to comply with the Sale Order.

31.     The Sale Order states: "The Trustee (and advisors) and Vervent shall promptly, upon request by the Secured Parties, provide information reasonably requested by any Asserted Lien or Interest Party to assist such party in determining its interest in any Vehicles."  Sale Order at 5.  But the Trustee refuses to comply with the Sale Order and make "prompt" production of information "reasonably requested."  Instead, the Trustee has stated that she will not produce any information as required by the Sale Order unless and until TBK (or any other party) files a Rule 2004 motion.  This cumbersome and duplicative process that requires unnecessary motion practice and delay is a waste of resources and directly violates this Court's Sale Order.  The Court should require the Trustee to respond to the foregoing requests as well as comply promptly with the Sale Order (without requiring parties to file a Rule 2004 motion).

17

## CONCLUSION

TBK's Discovery Requests seek information that is highly relevant to the issues and allegations raised in the Surcharge Motion.  For all the reasons set forth above, TBK respectfully requests that the Court enter an order:

(1)     overruling the Trustee's privilege claims and objections to TBK's Discovery Requests;

(2)     compelling the Trustee to produce all documents responsive to the Discovery Requests, within seven (7) days of such order;

(3)     compelling the Trustee to comply with the Sale Order by promptly responding to requests for information from TBK; and

(4)     granting all other relief to which TBK may show itself justly entitled.


[*Remainder of Page Intentionally Left Blank*]

Dated:  March 30, 2026

       */s/ Bradley R. Foxman*

**VINSON & ELKINS LLP**
Bradley R. Foxman (TX 24065243)
Matthew W. Moran (TX 24002642)
Sara E. Zoglman (TX 24121600)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel:     214-220-7700
Fax:     214-220-7716
Email: bfoxman@velaw.com
      mmoran@velaw.com
      szoglman@velaw.com

-and-

Paul E. Heath (TX 09355050)
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Tel:     713-758-2222
Fax:     713-758-2346
Email: pheath@velaw.com

*Counsel to TBK Bank, SSB*

## CERTIFICATE OF SERVICE

I certify that, on March 30, 2026, I caused a copy of the foregoing document to be served on counsel of record for the Trustee via email.

       */s/ Bradley R. Foxman*
       Bradley R. Foxman

## CERTIFICATE OF CONFERENCE

I certify that, on March 22, 2026, I and other attorneys representing TBK conferred virtually regarding the relief requested in this Motion with multiple attorneys of record for the Trustee and Veracity, including Ms. Julia Beskin, Mr. Charles R. Gibbs, and Mr. Grayson Williams.  During that conference, the forgoing attorneys could not reach an agreement about the propriety of the Trustee's objections and the appropriate scope of discovery necessitating the filing  of this Motion, which the Trustee and Veracity oppose.

       */s/ Matthew W. Moran*
       Matthew W. Moran

19

**<u>Addendum A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re** | § | **Chapter 7** |
| | § | |
| **TRICOLOR HOLDINGS, LLC,** *et al.*, | § | **Case No. 25-33487 (MVL)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

## ORDER GRANTING TBK BANK, SSB'S MOTION TO COMPEL

Upon the motion (the "**Motion**")[2] of TBK Bank, SSB ("**TBK**") for entry of an order (this

"**Order**"), granting relief under Federal Rule of Civil Procedure 37, made applicable to this

proceeding under Bankruptcy Rules 7037 and 9014(c), and seeking and order compelling Anne

---

[1]   The Debtors and their bankruptcy case numbers are: Tricolor Holdings, LLC (25-33487), TAG Intermediate Holding Company, LLC (25-33495), Tricolor Auto Group, LLC (25-33496), Tricolor Auto Acceptance, LLC (25-33497), Tricolor Insurance Agency, LLC (25-33512), Tricolor Home Loans LLC (25-33511), Tricolor Real Estate Services (25-33514), TAG California Holding Company, LLC (25-33493), Flexi Compras Autos, LLC (25-33490), TAG California Intermediate Holding Company, LLC (25-33494), Tricolor California Auto Group, LLC (25-33502), Tricolor California Auto Acceptance, LLC (25-33501), Risk Analytics LLC (25-33491), Tricolor Tax, LLC (25-33515), Tricolor Financial, LLC (25-33510), Tricolor Auto Receivables LLC (25-33498), TAG Asset Funding, LLC (25-33492), Apoyo Financial, LLC (25-33489).

[2]   Capitalized terms used but not otherwise defined in this Order shall have the respective meanings provided for such terms in the Motion.

Elizabeth Burns, in her capacity as Chapter 7 Trustee of the above-captioned Debtors' estates (the "**Trustee**"), to produce certain documents, all as more fully described in the Motion; and upon the Court's consideration of the Motion and all evidence presented and any objections and pleadings filed with respect to the Motion; the Court hereby finds and determines that: (a) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (b) consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b); (c) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (d) due and proper notice of the Motion has been provided under the particular circumstances and no other or further notice need be provided; (e) the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; (f) it appearing that no other or further notice is necessary; (g) it appearing that the relief requested in the Motion is in the best interests and without prejudice to the rights of TBK Bank, the Trustee, the Debtors, their estates, their creditors, and other parties-in-interest; and (h) after due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED** that:

1. The Motion is GRANTED as set forth herein.

2. The Trustee's objections to TBK's Requests for Production Nos. 2, 3, 4,  5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, and 18 to the Trustee, including any privilege assertions and general objections, are OVERRULED;

3. The Trustee's objections to TBK's Interrogatory Nos. 2, 3, and 4 to the Trustee, including any privilege assertions and general objections, are OVERRULED;

4. Veracity's objections to TBK's Requests for Production Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 to Veracity, including any privilege assertions and general objections, are OVERRULED;

5. Veracity's objections to TBK's Interrogatory Nos. 1 and 2 to Veracity, including any privilege assertions and general objections, are OVERRULED;

6. The Trustee and Veracity shall produce all documents responsive to TBK's Requests for Production, as listed above, within seven (7) days following entry of this Order;

2

7.      The Trustee and Veracity shall provide answers responsive to TBK's Interrogatories, as listed above, within seven (7) days following entry of this Order;

8.      Trustee  shall comply with the Sale Order by promptly responding to requests for information from TBK; and

9.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**IT IS SO ORDERED.**

**# # # End of Order # # #**

Respectfully Submitted By:

*/s/ Bradley R. Foxman*
**VINSON & ELKINS LLP**
Bradley R. Foxman (TX 24065243)
Matthew W. Moran (TX 24002642)
Sara E. Zoglman (TX 24121600)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel:     214-220-7700
Fax:     214-220-7716
Email:  bfoxman@velaw.com
        mmoran@velaw.com
        szoglman@velaw.com

-and-

Paul E. Heath (TX 09355050)
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Tel:     713-758-2222
Fax:     713-758-2346
Email:  pheath@velaw.com

*Counsel to TBK Bank, SSB*