**VINSON & ELKINS LLP**

Bradley R. Foxman (TX 24065243)
Matthew W. Moran (TX 24002642)
Sara E. Zoglman (TX 24121600)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel:     214-220-7700
Fax:    214-220-7716
Email: bfoxman@velaw.com
        mmoran@velaw.com
        szoglman@velaw.com

**VINSON & ELKINS LLP**

Paul E. Heath (TX 09355050)
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Tel:     713-758-2222
Fax:    713-758-2346
Email: pheath@velaw.com

*Counsel to TBK Bank, SSB*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re** | § § § | **Chapter 7** |
| **TRICOLOR HOLDINGS, LLC, *et al.*,** | § § | **Case No. 25-33487 (MVL)** |
| **Debtors.[1]** | § § § | **Jointly Administered** |

**TBK BANK, SSB'S RESPONSE AND JOINDER TO**
**ORIGIN BANK AND JPMORGAN CHASE BANK, N.A.'S**
**MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE**
**EXAMINATION OF THE CHAPTER 7 BANKRUPTCY TRUSTEE PURSUANT**
**TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
[Related Docket Nos. 949 and 989]

TBK Bank, SSB ("**TBK Bank**"), in its capacity as administrative, payment, and collateral

agent, for itself and for the other lenders under that certain Amended and Restated Loan and

---

[1]   The Debtors and their bankruptcy case numbers are: Tricolor Holdings, LLC (25-33487), TAG Intermediate Holding Company, LLC (25-33495), Tricolor Auto Group, LLC (25-33496), Tricolor Auto Acceptance, LLC (25-33497), Tricolor Insurance Agency, LLC (25-33512), Tricolor Home Loans LLC (25-33511), Tricolor Real Estate Services (25-33514), TAG California Holding Company, LLC (25-33493), Flexi Compras Autos, LLC (25-33490), TAG California Intermediate Holding Company, LLC (25-33494), Tricolor California Auto Group, LLC (25-33502), Tricolor California Auto Acceptance, LLC (25-33501), Risk Analytics LLC (25-33491), Tricolor Tax, LLC (25-33515), Tricolor Financial, LLC (25-33510), Tricolor Auto Receivables LLC (25-33498), TAG Asset Funding, LLC (25-33492), Apoyo Financial, LLC (25-33489).

Security Agreement dated May 6, 2022 files this response and joinder (this "**Joinder**") to the *Motion of Origin Bank for Entry of an Order Authorizing the Examination of the Chapter 7 Bankruptcy Trustee Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Docket No. 949] (the "**Origin Rule 2004 Motion**") and the *Motion of JPMorgan Chase Bank, N.A. for Entry of an Order Authorizing Examination of the Chapter 7 Trustee Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* [Docket No. 989] (the "**JPM Rule 2004 Motion**" and together with the Origin Rule 2004 Motion, the "**Rule 2004 Motions**"). [2] In support of this Joinder, TBK Bank respectfully states as follows:

1.      TBK Bank supports and joins in the Rule 2004 Motions and requests that any information produced by the Trustee and/or her professionals to Origin Bank in response to Origin Bank's Requests for Production (attached to the Origin Rule 2004 Motion as Exhibit B) and to JP Morgan Chase Bank, N.A. ("**JPMorgan**") in response to JPMorgan's Requests (attached to the JPM Rule 2004 Motion as Exhibit B) and to any other party in response to any other Rule 2004 Motion or discovery request also be produced simultaneously to TBK Bank.  TBK Bank and its advisors have experienced the same lack of cooperation and information sharing from the Trustee and her professionals that prompted the Rule 2004 Motions.

2.      Since the commencement of these chapter 7 cases, one of the central issues has been determining the vehicles and retail installment contracts that are assets of the Debtors' estates and which belong to non-debtor securitization parties or warehouse lenders.  In an effort to gather information relevant to this and other issues, beginning in September 2025, TBK Bank and its advisors have incrementally sent the Trustee and her professionals series of requests seeking

---

[2]      All capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Origin Rule 2004 Motion and the JPM Rule 2004 Motion, as applicable.

documents related to, among other things, the Debtors' historical administration and recordkeeping of the vehicle inventory and retail installment contracts.  As of the time of filing this Joinder, and despite repeated follow-ups and reminders, the vast majority of these requests are outstanding.

3.      TBK Bank joins in Origin Bank and JPMorgan's requests but requests that they not be limited in any way to only Origin Bank and JPMorgan's collateral.  In addition to the requests sought in the Rule 2004 Motions, TBK Bank requests that the Court order the Trustee and/or her professionals to respond to TBK Bank's incremental requests attached hereto as **Exhibit A**.[3]  For the same reasons set forth in the Rule 2004 Motions, good cause exists for ordering the Trustee to provide the information set forth in TBK Bank's incremental requests.

4.      Moreover, the Trustee and her professionals' lack of cooperation and information sharing despite TBK Bank's good-faith requests and repeated follow-ups and reminders is inconsistent with the sale procedures set forth in the Sale Order[4], which this Court entered in December 2025.  Pursuant to the Sale Order, the Trustee and her professionals are required to "promptly, upon request by the Secured Parties, provide information reasonably requested . . . to assist such party in determining its interest in any Vehicles."  Additionally, the Trustee providing the requested information is consistent with her statutory duty under Bankruptcy Code section 704(a)(7), which requires the Trustee to ". . . furnish such information concerning the estate and the estate's administration as is requested by a party in interest."  Despite the foregoing, during a meet and confer between the Trustee's counsel and TBK Bank's counsel on March 22, 2026, the Trustee's counsel stated that the Trustee will not produce anything in response to TBK Bank's (or

---

[3]    In preparing **Exhibit A**, TBK Bank made a good-faith effort to exclude any requests that are duplicative of requests already provided for in the Rule 2004 Motions.

[4]    *See* Order Granting Chapter 7 Trustee's Amended Emergency Motion to (I) Sell Estate Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests, (II) Establish Sale Procedures, and (III) Granting Related Relief (the "**Sale Order**"), Effective as of December 30, 2025 [Docket No. 593].

other parties') requests unless a formal Rule 2004 motion is filed. This approach is inconsistent with the express language of the Sale Order and the Trustee's statutory duty under the Bankruptcy Code, but to avoid further delay, TBK Bank now brings this Joinder.[5]

5. Accordingly, TBK Bank files this Joinder and respectfully requests that the Court grant the Rule 2004 Motions and order the Trustee and/or her professionals to provide the information set forth in TBK Bank's Request for Production in **Exhibit A**.

6. TBK Bank reserves all rights related to the Rule 2004 Motions, including, without limitation, the right to amend, supplement, and/or otherwise modify this Joinder and/or the incremental discovery requests attached hereto as **Exhibit A**.

[*Remainder of Page Intentionally Left Blank*]

---

[5] TBK Bank reserves all rights against the Trustee, including for failure to comply with the Sale Order.

4

Dated:  April 2, 2026

 */s/ Bradley R. Foxman*_____

**VINSON & ELKINS LLP**

Bradley R. Foxman (TX 24065243)

Matthew W. Moran (TX 24002642)

Sara E. Zoglman (TX 24121600)

2001 Ross Avenue, Suite 3900

Dallas, Texas 75201

Tel:     214-220-7700

Fax:     214-220-7716

Email: bfoxman@velaw.com

　　　mmoran@velaw.com

　　　szoglman@velaw.com

-and-

Paul E. Heath (TX 09355050)

845 Texas Avenue, Suite 4700

Houston, Texas 77002

Tel:     713-758-2222

Fax:     713-758-2346

Email: pheath@velaw.com

*Counsel to TBK Bank, SSB*

## **CERTIFICATE OF SERVICE**

I certify that, on April 2, 2026, I caused a copy of the foregoing document to be served on counsel of record for the Trustee via email.

*/s/ Bradley R. Foxman* ____
Bradley R. Foxman

6

**<u>Exhibit A – TBK Bank's Request for Production</u>**

**EXHIBIT A**

**DEFINITIONS**

1.      "***Adversary Complaint***" means the following lawsuit by the Trustee against former Tricolor officers: *Burns, as Chapter 7 Trustee for Tricolor Holdings, v. Chu et al.*, 3:25-AP-3126 (Bankr. N.D. Tex).

2.      "***Capstone***" means CRS Capstone Partners LLC.

3.      "***Communications***" is used in the broadest sense permitted under applicable law, including the transmittal of any information (in the form of facts, ideas, inquiries, or otherwise) by any means, including, but not limited to, personal conversations, telephone conversations, letters, meetings, memoranda, electronic mail exchanges, text messages, instant messages, chat room posts, Bloomberg messages/emails, telegraphic and telex communications, or transmittals of documents.  The term "Communications" is not limited to internal Communications but includes Communications between Debtors and third parties and Communications between or among third parties.

4.      "***Debtor***," "***Debtors***," or "***Tricolor***" means, individually or collectively, as the context requires, Tricolor Holdings, LLC (25-33487), TAG Intermediate Holding Company, LLC (25-33495), Tricolor Auto Group, LLC (25-33496), Tricolor Auto Acceptance, LLC (25-33497), Tricolor Insurance Agency, LLC (25-33512), Tricolor Home Loans LLC (25-33511), Tricolor Real Estate Services (25-33514), TAG California Holding Company, LLC (25-33493), Flexi Compras Autos, LLC (25-33490), TAG California Intermediate Holding Company, LLC (25-33494), Tricolor California Auto Group, LLC (25-33502), Tricolor California Auto Acceptance, LLC (25-33501), Risk Analytics LLC (25-33491), Tricolor Tax, LLC (25-33515), Tricolor Financial, LLC (25-33510), Tricolor Auto Receivables LLC (25-33498), TAG Asset Funding, LLC (25-33492), Apoyo Financial, LLC (25-33489).

5.     "*Dealertrack*" refers to the automotive dealership software, systems, and solutions created and offered by Dealertrack Holdings, Inc.—which was utilized by the pre-petition Debtors.

6.     "*Documents*" is intended to have the broadest possible meaning under Rule 34(a) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7034 and 9014 of the Bankruptcy Rules, and includes, but is not limited to, all originals, non-identical copies and copies with marginal notations or interlineations of any written Communications, writings, sworn statements, deposition transcripts, affidavits, recordings, photographs, phone records, computer data, electronic mail or other items containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form maintained. The term "Documents" also includes all Electronically Stored Information.    The term "Documents" further means any document in the possession, custody or control of the entities and individuals to whom this document request is directed (together with any employees, agents, and attorneys).  Without limitation to the term "control" as used in the preceding sentence, an entity or individual is deemed to be in control of a document if that entity or individual has the right to secure the document or a copy thereof from another entity or individual having actual possession thereof.  A draft or non-identical copy is a separate Document within the meaning of this term.

7.     "*Retail Installment Contracts*" means, collectively, the promissory notes, installment payment contracts, and other related financing documents which the pre-petition Debtors would execute with their retail consumer customers in connection with providing seller-financing for the customers' purchase of the pre-petition Debtors' vehicles.

8.     "*Retail Installment Contracts Portfolio*" means all of the Retail Installment Contracts that the pre-petition Debtors possessed, controlled, and serviced—which are currently being serviced by Vervent.

9. "*Trustee*" means Anne Elizabeth Burns, in her capacity as the court-appointed Chapter 7 Trustee in the above-captioned matter.

10. "*Trustee Professionals*" means any attorneys, consultants, investment bankers, financial advisors, contractors, employees, or other individuals representing, advising, or otherwise working for or at the Trustee's direction—whether retained or unretained—in her capacity as Chapter 7 Trustee in the above-captioned matter or within her former authority to operate the Debtors' business in the ordinary course under 11 U.S.C. Section 721, including, as examples, but without limitation: McDermott Will & Schulte LLP; Cavazos Hendricks Poirot, P.C., Capstone, Vervent, and (to the extent they have been hired by the Trustee) any of the Debtors' former employees and their respective personnel are Trustee Professionals.

11. "*Unassigned Retail Installment Contracts*" refers to Retail Installment Contracts that have not been assigned to a non-debtor entity or for which there is no documentation showing an assignment to a non-debtor entity.

12. "*Vehicle Inventory*" means the approximately 10,000 vehicles possessed by the pre-petition Debtors as part of the inventory the pre-petition Debtors would market and sell to retail consumers, which are currently being liquidated by Vervent and Holman as authorized by the Bankruptcy Court.

13. "*Vervent*" means Vervent, Inc.

14. "*VIN*" refers to a Vehicle Identification Number, the unique 17-digit code used in the automotive industry to identify individual vehicles.

15. "*You*," "*Your*," or "*Yours*" means the Trustee and any Trustee Professionals, attorneys, consultants, investment bankers, financial advisors, contractors, employees, or other

3

individuals representing, advising, or otherwise working for the Trustee or at the Trustee's direction.

16. Capitalized terms not otherwise defined herein are given the meanings ascribed to them in the relevant contracts, agreements, or other documents to which such terms relate.

17. Unless otherwise stated, the time period for these Requests and Interrogatories is January 1, 2025 through the present.

18. These Requests expressly seek data and information that exists in electronic or magnetic form, including, without limitation, email and text messages.

19. If Documents are withheld based on an objection to a Request, all Documents and things not subject to the objection must be produced.

20. If Documents are withheld under a claim of privilege or protection from disclosure, state the claim in detail and provide a privilege log sufficient to facilitate an evaluation of the claim of privilege or protection from disclosure and any possible waiver.

## **DOCUMENT REQUESTS**

**REQUEST NO. 1:** Documents sufficient to identify the vehicles in the Vehicle Inventory that were previously repossessed by pre-petition Debtors.

**REQUEST NO. 2:** For each of the vehicles in the Vehicle Inventory that were previously repossessed, please produce all documents relating to (a) the repossession process and (b) any payments, credits, or other compensations paid to any lender with an interest in any such vehicle.

**REQUEST NO. 3:** For any Retail Installment Contract or loan tied to repossessed vehicles in the Debtors' possession, custody or control, all documents showing whether the Retail

4

Installment Contract or loan has been satisfied (via mutual release or otherwise) or charged off, including the charged off amount and remaining balance.

**REQUEST NO. 4:**   All Unassigned Retail Installment Contracts.

**REQUEST NO. 5:**   All documents related to the servicing of the Unassigned Retail Installment Contracts (including all documents showing payments made on such contracts, whether the contracts are in default, amounts owing on the contracts, etc.).

**REQUEST NO. 6:**   Documents sufficient to identify vehicles within the Debtors' Vehicle Inventory that were repossessed after July 31, 2025, and the date of repossession.

**REQUEST NO. 7:**   All documents identifying, showing, or reflecting any vehicles currently in the Debtors' possession, custody or control (including any vehicles stored at auction houses or third-party sites) that are tied to Retail Installment Contracts, promissory notes, loans, or other similar forms of financing which are or were at any time serviced by Vervent or Tricolor Auto Acceptance.

**REQUEST NO. 8:**   All "Receivable Receipts" (*see* Exhibit H to the Credit Agreement described herein) completed over the lifetime of the Credit Agreement, dated as of November 13, 2020, among Tricolor Funding SPV 4 LLC, Tricolor Auto Acceptance, LLC, the Lenders from time to time party thereto, the Agent from time to time party thereto, JPMorgan Chase Bank, N.A., Vervent Inc., and Wilmington Trust, National Association.

**REQUEST NO. 9:**   Updated, current "Checks Received" and "P&I" files, previously provided by Capstone, reflecting all payments received for all Unassigned Retail Installment Contracts and any additional documents sufficient to reflect the complete servicing history of the Unassigned Retail Installment Contracts.

**REQUEST NO. 10:** Documents sufficient to provide supporting details for the file labelled "Inventory to Loan Analysis 10092025," previously provided by Capstone.

**REQUEST NO. 11:** Documents showing all accounting entries that were made or posted by the pre-petition Debtors when a vehicle subject to a Retail Installment Contract was repossessed, credited, or charged off.

**REQUEST NO. 12:** Documents showing all actions taken by the pre-petition Debtors when a vehicle subject to a Retail Installment Contract was repossessed.

**REQUEST NO. 13:** Documents showing all actions taken by the pre-petition Debtors when a vehicle subject to a Retail Installment Contract was charged off.

**REQUEST NO. 14:** All Documents related to the 580 VINs that are currently listed in the file labeled "Tricolor Data Analysis (V_1 Updated 11.17.25).xlsx," generated and circulated by Vervent in connection with the above-captioned matter, regarding Retail Installment Contracts Portfolio as collateral for both assigned and unassigned Retail Installment Contracts.

**REQUEST NO. 15:** Documents sufficient to identify (a) the specific "finance receivables" referenced in paragraph 58 of the Adversary Complaint that pre-petition Debtors pledged both to "inventory lines of credit" and "other lenders," (b) the identities of such "inventory lines of credit" and "other lenders," and (c) the pledging of such "finance receivables."

**REQUEST NO. 16:** The final 2021 Chief Process Officer report referenced in paragraph 64 of the Adversary Complaint.

**REQUEST NO. 17:** All documents and communications detailing, displaying, or presenting the results of the August 2025 JPMorgan investigation referenced in paragraphs 67 and 73 of the Adversary Complaint.

6

**REQUEST NO. 18:** Documents sufficient to identify with particularity the 38,368 false finance receivable accounts referenced in paragraph 76 of the Adversary Complaint including any VIN numbers or other vehicle identifying information identifying the particular vehicle that was purportedly tied to each such false finance receivable account.

**REQUEST NO. 19:** Copies of the analyses conducted by Jerome Kollar in August 2025 which are referenced in paragraph 17 of the US Department of Justice Indictment against Daniel Chu and David Goodgame.

**REQUEST NO. 20:** Documents sufficient to identify the current results or findings of the Trustee's investigation into Tricolor's double-pledged and fictitious loans, referenced in paragraph 62 of the Noteholders' Complaint against Wilmington Trust, NA and Vervent.

**REQUEST NO. 21:** Copy of the SPV6 Warehouse Agreement dated August 3, 2022, including all schedules and exhibits.

**REQUEST NO. 22:** Documents showing any payments, credit, or other compensation conferred to JPMorgan, Fifth Third Bank, any other Warehouse Lender, or the Securitization Trusts in connection with any lending or financing arrangement.

**REQUEST NO. 23:** Documents sufficient to identify the role of JPMorgan, Fifth Third Bank, and any other Warehouse Lender in connection with the securitization of Tricolor-issued consumer notes and the offering to public investors of such securities, including the fees and compensation awarded in connection with such role.

**REQUEST NO. 24:** Documents sufficient to identify the fees, interest, and any other compensation conferred to Wilmington Trust, NA and any other Indenture Trustee in connection with the Securitization Facilities.

7

**REQUEST NO. 25:** Documents sufficient to identify the customer-borrower payment history, from January 2025 to the present, on the Unassigned Retail Installment Contracts.

**REQUEST NO. 26:** Native copies of the documents with the following file names:

(a) Tricolor SPV6 BB – 2025.08.18-email.xlsx

(b) Vervent Adonis Data Transition.xlsx

(c) Origin Collateral List – CONFIDENTIAL.xlsx

(d) Tricolor SPV6 BB – 2025.08.21-email.xlsx

(e) SPV4 Servicer Report-2025 Jul-email (JPM).xlsb

(f) Loan_Account_Data_All_Active_Statuses.csv

(g) Side_Loan_Data_All_Active_Statuses.csv

(h) Collateral_Title_Repo_Active_Statuses.csv

(i) Forced_Place_Ins_Info.csv

(j) LoanGroup_Account_Relationship.csv

(k) Downpayment Balance_Report_adhoc2.csv

**REQUEST NO. 27:** Copies of the monthly Servicing Reports (or monthly servicer reports) provided to the entities party to the following agreements, for each of the 36 months prior to the Petition Date:

(a) the Credit Agreement, dated as of November 13, 2020, among Tricolor Funding SPV 4 LLC, Tricolor Auto Acceptance, LLC, the Lenders from time to time party thereto, the Agent from time to time party thereto, JPMorgan Chase Bank, N.A., Vervent Inc., and Wilmington Trust, National Association;

(b) the Sale and Servicing Agreement, dated as of April 1, 2022, among Tricolor Auto Securitization Trust 2022-1, Tricolor Auto Receivables 2 LLC, Tricolor Auto Acceptance, LLC, Wilmington Trust, National Association, and Vervent Inc.;

(c) the Sale and Servicing Agreement, dated as of February 1, 2023, among Tricolor Auto Securitization Trust 2023-1, Tricolor Auto Receivables 2 LLC, Tricolor Auto Acceptance, LLC, Wilmington Trust, National Association, and Vervent Inc.;

8

(d)   the Sale and Servicing Agreement, dated as of January 1, 2024, among Tricolor Auto Securitization Trust 2024-1, Tricolor Auto Grantor Trust 2024-1, Tricolor Auto Receivables 2 LLC, Tricolor Auto Acceptance, LLC, Wilmington Trust, National Association, and Vervent Inc.;

(e)   the Sale and Servicing Agreement, dated as of May 1, 2024, among Tricolor Auto Securitization Trust 2024-2, Tricolor Auto Grantor Trust 2024-2, Tricolor Auto Receivables 2 LLC, Tricolor Auto Acceptance, LLC, Wilmington Trust, National Association, and Vervent Inc.;

(f)   the Sale and Servicing Agreement, dated as of October 1, 2024, among Tricolor Auto Securitization Trust 2024-3, Tricolor Auto Grantor Trust 2024-3, Tricolor Auto Receivables 2 LLC, Tricolor Auto Acceptance, LLC, Wilmington Trust, National Association, and Vervent Inc.;

(g)   the Sale and Servicing Agreement, dated as of March 1, 2025, among Tricolor Auto Securitization Trust 2025-1, Tricolor Auto Grantor Trust 2025-1, Tricolor Auto Receivables 2 LLC, Tricolor Auto Acceptance, LLC, Wilmington Trust, National Association, and Vervent Inc.;

(h)   the Sale and Servicing Agreement, dated as of June 1, 2025, among Tricolor Auto Securitization Trust 2025-2, Tricolor Auto Grantor Trust 2025-2, Tricolor Auto Receivables 2 LLC, Tricolor Auto Acceptance, LLC, Wilmington Trust, National Association, and Vervent Inc.