Clerk of the Superior Court
*** Electronically Filed ***
COC Auto-Accept
3/11/2026 10:29:00 AM
Filing ID 21631912

## MARICOPA COUNTY SUPERIOR COURT
### SENTENCING/DISPOSITION SHEET

DEFENDANT:  FRANCISCO AGUIRRE  AGE/DOB:  64/12-22-1960
SENTENCING DATE:  NOVEMBER 24, 2025  APO:  MADISON OFFICER
JUDGE/DIVISION:  JOSHUA BOYLE / MQPV3

REVOCATION
CASE NO.:  CR2017001272-001

**COUNT 008**
 AS AMENDED, §13-1802 THEFT, FELONY 2
 A.R.S. § 13-1802, 13-701, 13-702, 13-703, 13-801
 DATE OF OFFENSE: 3/1/2015 NON DANGEROUS - NON REPETITIVE

**COUNT 009**
 AS AMENDED, §13-2002 FORGERY, FELONY 6
 A.R.S. § 13-2002, 13-701, 13-702, 13-801, 13703
 DATE OF OFFENSE: 3/26/2014 NON DANGEROUS - NON REPETITIVE

**COUNT 015**
 §13-2002 FORGERY, FELONY 4
 A.R.S. § 13-2002, 13-701, 13-702, 13-801, 13703
 DATE OF OFFENSE: 2/20/2015 NON DANGEROUS - NON REPETITIVE

PRIOR CONVICTIONS/CONFINEMENTS/PROBATIONS:
FELONY: _____  PRISON: _____  PROBATION: _____
MISDEMEANOR: _____  JAIL: _____
JUVENILE: _____  DOJC: _____  PROBATION: _____
PLEA AGREEMENT: _____
REST/REIMBURSE: _____  FINE: _____  COMMUNITY SERVICE: _____

RECOMMENDATIONS   DEFENSE   PROSECUTION   APO   VICTIM

SENTENCE/DISPOSITION:
AGGRAVATION 13-702(C)   MITIGATION 13-702 (D)   COMMENTS

DAYS IN JAIL: _____   DISMISS COUNTS: _____

******** **END OF COVERSHEET** ********

**The Superior Court of Arizona in Maricopa County**
**Adult Probation Department**
*Chief Probation Officer Michael P. Cimino*

## PROBATION VIOLATION REPORT

STATE OF ARIZONA v.                                    New Case(s): **None**
**Francisco Aguirre**                         PV Case(s): **CR2017001272-001**

DOB: 12-22-1960                                    Judge: **Joshua Boyle/MQPV3**

### PROBATION CASE(S)

**CR2017001272-001-DT**

**Charge:**        Count 15: §13-2002 FORGERY, Felony 4

Offense Date:    2015-02-20

| Incarcerated | To | Reason | Days |
|---|---|---|---|
| 03/03/2017 | 2/12/2018 | Presentence | 347 |
| 10/01/2025 | 10/3/2025 | Probation Violation | 3 |
| | | **Total Days:** | **350** |

**Financial Sanctions:**
No financials ordered on this case/count.

**Charge:**        Count 8: AS Amended §13-1802 THEFT, Felony 2

Offense Date:    2015-03-01

| Incarcerated | To | Reason | Days |
|---|---|---|---|
| 03/03/2017 | 2/12/2018 | Presentence | 347 |
| 10/01/2025 | 10/3/2025 | Probation Violation | 3 |
| | | **Total Days:** | **350** |

### Victims(s):

There are 8 opt-in victims total. Two victims have opted-in, but do not wish to be heard in this matter. One victim will be submitting a written statement to this Officer, but doesn't wish to attend the hearings. The remaining 5 victims have been left voicemails and will be sent a letter regarding the Petition to Revoke.

**Financial Sanctions:**

| Account | Amount Ordered | Amount Due | Delinquent | Last Payment |
|---|---|---|---|---|
| Probation Service Fee (Monthly Charge) | $65.00 | $65.00 | $1690.00 | NONE |
| Probation Assessment | $20.00 | $20.00 | $20.00 | NONE |
| Time Payment Fee | $20.00 | $20.00 | $20.00 | NONE |
| Victim Rights Enforcement Assessment | $2.00 | $2.00 | $2.00 | NONE |
| Criminal Penalty Assessment | $13.00 | $13.00 | $13.00 | NONE |

**Charge:**        Count 9: AS Amended §13-2002 FORGERY, Felony 6

Offense Date:    2014-03-26

*Exhibit UST-U*

## The Superior Court of Arizona in Maricopa County
## Adult Probation Department
*Chief Probation Officer Michael P. Cimino*

STATE OF ARIZONA v.  
**Francisco Aguirre**

New Case(s): **None**  
PV Case(s): **CR2017001272-001**

| Incarcerated | To | Reason | Days |
|---|---|---|---|
| 03/03/2017 | 2/12/2018 | Presentence | 347 |
| 10/01/2025 | 10/3/2025 | Probation Violation | 3 |
| | | **Total Days:** | **350** |

**Financial Sanctions:**
No financials ordered on this case/count.

**Progress**

Since beginning probation after his release from the Department of Corrections on May 21, 2023, Mr. Aguirre has reported to probation as directed. He reported to probation monthly from June 2023 through October 2025 and has not missed any reporting days.

Additionally, Mr. Aguirre has maintained a stable residence and has been located at his residence on a consistent basis. During these visits, no visible violations were seen.

Per the Restitution Order dated August 18, 2021, Mr. Aguirre was ordered to pay a total of $1,768,420.01 in restitution along with the other financial orders on his conditions of probation. Since September 2023, Mr. Aguirre has made varying payments towards these financial orders, ranging from $100-$250 on average a month.

In regard to his White-Collar conditions, Mr. Aguirre has been compliant with submitting his personal bank statements every month to this Officer as directed from December 2023 through September 2025, consisting of statements for his two checking accounts, various credit card statements, and CashApp account. Additionally, he submitted a 2024 and 2025 credit report as directed.

Lastly, when given specific directives to provide documentation to this Officer, Mr. Aguirre submitted the required documentation by the deadline given, including statements regarding his employment. This includes the employment verification letter he submitted in March 2024, and the emails regarding his businesses sent in September 2025.

**Regress**

On May 22, 2023, Mr. Aguirre initially reported to another Officer and reported that he was employed by Gaxiola & Litwak Law Group, and upon reporting this was directed that he was not to work with any vulnerable population or mortgages in this position. On June 14, 2023, he met with another Officer and reported that he worked as a legal consultant for the same law firm, was the Executive Director of La Casita de mi Angel Foundation (a non-profit) and was trying to start his own legal consulting service called BeyondLaw Office.

**Page 2 of 9**

*Exhibit UST-U*

**The Superior Court of Arizona in Maricopa County**
**Adult Probation Department**
*Chief Probation Officer Michael P. Cimino*

STATE OF ARIZONA v.                                     New Case(s): **None**
**Francisco Aguirre**                          PV Case(s): **CR2017001272-001**

In November 2023, he was transferred to the White-Collar caseload, and upon his initial meeting with a White-Collar officer on November 1, 2023, reported that he was still a legal consultant for the same law firm. The Officer directed him that he was not permitted to deal with any accounts payable or any identifying information. This Officer had a discussion with him on January 9, 2024, about what his work includes as a "Legal consultant" and was reassured that he doesn't file any Court paperwork and that he works under other attorneys, however he did report that he completes this work under two LLCs, Beyond Attorneys LLC and Beyond Law Office LLC. This Officer had another discussion with Mr. Aguirre on July 16, 2024, reminding him of the limitations of his work and that he was not to be doing anything an attorney would do; he reassured me that he was not doing such work, and was simply assisting individuals and their families with information through the process, but wasn't representing them in Court. This Officer noticed that there were frequent charges for the Clerk of Superior Court and MCJustice Court starting in February 2024. When asked about these charges on September 17, 2024, Mr. Aguirre stated that he was paying for filing client's paperwork or their summons, but that he wasn't filing or preparing it himself. This Officer was still under the impression that Mr. Aguirre was working through a law office primarily.

In an effort to ensure better transparency with Mr. Aguirre regarding his business activity, this Officer reviewed a Behavior Agreement with him on November 5, 2024, that he is to obtain written permission before opening any LLC and before opening any business bank accounts. However, on April 16, 2025, this Officer was notified that the State Bar of Arizona was pursuing a case against Mr. Aguirre for Unauthorized Practice of Law, and on May 8, 2025, a prosecutor from a municipal Court contacted this Officer with concerns that he was acting beyond the scope of an advocate for a victim in one of his cases. This Officer spoke to Mr. Aguirre about his business activity on May 20, 2025, and he stated that he still did the work through Gaxiola's law firm, however he said he also has contracts with clients individually. This Officer had additional concerns regarding the nature of his business when on July 15, 2025, Mr. Aguirre made mention that he was interviewed by CNN as an expert in matters regarding undocumented individuals. This was furthered, when on August 24, 2025, this Officer received a link from an individual in the community to a video posted on a social media account where Mr. Aguirre was being interviewed by a community member. The video was in Spanish, but after being translated by a Spanish-speaking Officer, the video appeared to outline that Mr. Aguirre was offering services to undocumented individuals; specifically, he was offering the ability to protect these individuals' assets, property, bank accounts, through his company "El Jefe Legal", in the form of a property trust or power of attorney under Mr. Aguirre's name.

On September 3, 2025, this Officer did an extensive investigation of Mr. Aguirre's online presence, businesses, and other public websites. A couple of notable things were located that appear to strongly contradict his prior reports of his services. This Officer located multiple liens against properties that Mr. Aguirre submitted claiming he was owed money for services, including one lien in the total amount of $136,291 against a client. Mr. Aguirre had opened multiple LLCs without permission, including two new LLCs in February and March 2025. He also created and

*Exhibit UST-U*

**The Superior Court of Arizona in Maricopa County**
**Adult Probation Department**
*Chief Probation Officer Michael P. Cimino*

STATE OF ARIZONA v.                                    New Case(s): **None**
**Francisco Aguirre**                                 PV Case(s): **CR2017001272-001**

named himself the statutory agent of a non-profit in March 2025. More concerningly, one of the questions in the paperwork he completed for creating the non-profit was whether he had ever been found guilty of a financial offense such as fraud, and Mr. Aguirre answered "No" to that question. Upon reviewing Mr. Aguirre's multiple business websites, it appears he is claiming to have an office in Los Angeles, even though he has never obtained permission to travel there for any work purposes. Although Mr. Aguirre was explicitly directed not to file any Court documents, his website states that they assist with filing motions, specifically "Any Motion filed. Any country. Any Court in Arizona or in the USA" and a client review from November 2023 stated that he drove to Prescott to file paperwork for them. His website also offers services under "Benevest LLC" for cash advances to individuals who are in the process of divorce in Arizona and are entitled to a share of property. Lastly, he offers services to undocumented individuals on his website for "El Jefe Legal" where he states that he offers services to protect assets, including properties, from being seized by the government and that this service is offered in all of the United States and Puerto Rico. "El Jefe Legal" also has a TikTok social media account where Mr. Aguirre is advertising his services. Mr. Aguirre did not request permission to offer any of the above services, and these clearly extend beyond the potential offerings as a legal consultant, and extend beyond what he had permission to engage in. They specifically seem to heavily involve real estate, potentially mortgages, and a very vulnerable population, which are all things he had been directed to multiple times not to engage with. This Officer attempted to give Mr. Aguirre the opportunity to be forthcoming with this information during an Office visit on September 3, 2025, and Mr. Aguirre did admit that he had opened two LLCs without permission, and that he had opened a bank account for Benevest LLC about 6 months ago, but that the business wasn't active and he wasn't utilizing it. This contradicted the information found on Mr. Aguirre's own business websites. This Officer directed Mr. Aguirre to submit in writing all LLC's that he has opened or have been active since his placement on probation. He submitted this statement via email on September 7, 2025, however, continues to state that "Benevest LLC" is inactive, and that his only operational business is "Beyond Attorneys LLC" and it is used for legal consulting and paralegal work. This again doesn't truly reflect the services Mr. Aguirre's own website states that he offers. Additionally, the indications given by the videos posted on social media, the liens filed, and the statements on his business websites indicate that he is involved in real estate and property in a way that he is not permitted to be per his conditions of probation.

Upon review of his bank statements, where it was noted that there were multiple cash or check deposits, Mr. Aguirre reported that these were payments made from clients or attorneys to him. On November 14, 2023, he was directed to submit all client invoicing moving forward to pair up with these deposits. Mr. Aguirre failed to submit any invoicing or documentation regarding client payments from December 2023 to October 2024 and just continued to report that these deposits were from clients or attorneys. On November 5, 2024, Mr. Aguirre was reminded that he was to be submitting business documentation to this Officer monthly, and he had failed to do so. He then sent one client contract in the month of November 2024. In May 2025, this Officer again noted that no client contracts or invoicing had been received since then. He failed to submit any client

*Exhibit UST-U*

**The Superior Court of Arizona in Maricopa County**
**Adult Probation Department**
*Chief Probation Officer Michael P. Cimino*

STATE OF ARIZONA v.                                         New Case(s): **None**
**Francisco Aguirre**                            PV Case(s): **CR2017001272-001**

---

contracts from December 2024 through April 2025. During a meeting on May 20, 2025, he should've sent all documentation to this Officer monthly and directed him to send all client contracts immediately. He emailed thirteen contracts to this Officer on May 23, 2025, but many of these contracts were undated or unsigned, and therefore difficult to verify if all contracts had been received. He again submitted no contracts in June 2025, and was reminded on July 15, 2025, that he was to submit these. He sent three more contracts on August 1, 2025, and three more on September 3, 2025. Upon reviewing these contracts, they appeared to have a similar payment structure to an attorney, with him being paid a percentage of any settlement received in civil matters. The contracts submitted on September 3, 2025, also had a clause stating that he will submit a lien on a client's property or wage garnishment if not paid, and included a monthly interest rate on any outstanding balance. This again appears to be outside the scope of what he initially reported he was offering, involves real estate, and appears to involve a very vulnerable population of clients. Additionally, this Officer noted that there were bank transfers being made from his personal checking account to an unknown bank account. On September 3, 2025, when this Officer inquired about the account, Mr. Aguirre admitted that this was a bank account for his business "Beyond Attorneys LLC". This Officer stated that he was directed to submit all bank accounts, including any business accounts, and had failed to do so for this account since December 2023. He was directed to submit all bank statements for this account dating back to when it was opened; however, no business bank statements were submitted by September 15, 2025, as directed. He was also directed to submit his bank statements for "Benevest LLC" even though he reported there was no activity, but failed to do so.

Mr. Aguirre was directed to obtain permission before obtaining any loans, including any auto or mortgage loans. During a visit to Mr. Aguirre's residence in September 2024, this Officer noted two new vehicles on the property, and upon running the license plates, learned that Mr. Aguirre had purchased two brand new vehicles with auto loans in March 2024. On September 17, 2024, this Officer addressed that he not only obtained these auto loans without permission but then didn't report them to probation for many months after that. Upon sending me his auto loan statement, these vehicles cost him an additional $2,000 a month.

Outside of White-Collar violations, Mr. Aguirre also violated multiple very clear and concise conditions of his probation. Upon reviewing his bank statements between April 2025 and June 2025, this Officer noted that there were multiple transactions in Palm Springs, CA between April 19, 2025, through April 22, 2025. Additionally, there were credit card transactions in Puerto Penasco, Mexico on three occasions: May 16, 2025, to May 19, 2025, June 3, 2025, to June 4, 2025, and June 27, 2025. During an Office visit on September 3, 2025, this Officer confronted him about this travel, as he did not have any travel permits nor Court permission for the travel. He initially tried to claim that he didn't travel and that someone else had his credit card but then admitted he had travelled without permission. He admitted to travelling to Mexico three times without permission and admitted to travelling to Palm Springs, CA without permission as well. This Officer had him complete a Behavior Report regarding the travel without permission. Mr. Aguirre was very familiar with the travel permit policy, and had been issued multiple before, and

*Exhibit UST-U*

**The Superior Court of Arizona in Maricopa County**
**Adult Probation Department**
*Chief Probation Officer Michael P. Cimino*

STATE OF ARIZONA v.                              New Case(s): **None**
**Francisco Aguirre**                    PV Case(s): **CR2017001272-001**

therefore he knew he was not permitted to travel outside the state without permission and proceeded to do so anyways.

Mr. Aguirre was contacted by a Special Victims Unit Detective with Scottsdale PD on August 8, 2025, and proceeded to be interviewed by the detective. Mr. Aguirre failed to report the police contact within 72 hours as required. Additionally, he sent this Officer an email on August 25, 2025, regarding the situation he was involved in, but explicitly stated that there had been no police contact. When this Officer asked him about the unreported police contact during an office visit on September 3, 2025, he said he forgot. This Officer had him complete a Behavior Report regarding this as well.

**Additional Assessment and Screenings**

| Addendums for Programs | Meets Program Criteria | Recommended | Additional Screening Comments |
|---|---|---|---|
| Drug Court | No | No | Nature of offense |
| DUI Court | No | No | Nature of offense |
| DV | No | No | Nature of offense |
| IPS | No | No | Risk score |
| JTOP | No | No | The defendant's age |
| Mental Health | No | No | Nature of offense |
| Sex Offender | No | No | Nature of offense |
| Veterans Court | No | No | No known prior military service |

**Discussion and Evaluation**

At 64 years old, Mr. Aguirre is before the Court for his first revocation in CR2017-001272-001.

The defendant is currently on probation for Theft (Count 8), a Class 2 Felony, and two counts of Forgery (Count 9 & 15), a Class 4 Felony, and served an initial DOC term for Fraudulent Schemes (Count 1), a Class 2 Felony. The offense involved Mr. Aguirre providing false information and documentation to obtain mortgages for victims, then taking their down payments and mortgage payments, which resulted in a loss of over 1.7 million dollars across 55 victims. Due to the nature of the offense, the defendant was ordered to comply with White Collar conditions and has been supervised on a white-collar caseload since November 2023.

*Exhibit UST-U*

**The Superior Court of Arizona in Maricopa County**
**Adult Probation Department**
*Chief Probation Officer Michael P. Cimino*

STATE OF ARIZONA v.                                                    New Case(s): **None**
**Francisco Aguirre**                                          PV Case(s): **CR2017001272-001**

Mr. Aguirre has served a probation grant for a white-collar offense in Maricopa County prior and although he completed his probation in October 2012, he then began committing the current offense in January 2013. Despite his initial prison term in this case, Mr. Aguirre appears to continue to be involved in concerning white collar behavior and is not being transparent with probation regarding his business activities. When afforded the opportunity to be transparent with this Officer, he continued to not disclose the extent of his business activity. Additionally, Mr. Aguirre's advertising and services are aimed towards a vulnerable population in the community, with these clients potentially having no legal recourse against him. This Officer has concerns that he is continuing to create new victims in the community for his own financial gain. Additionally, he engages in blatant disregard for his most clear conditions of probation, by failing to report police contact and travelling for leisure outside of both the state and the country on numerous occasions without permission. Additionally, Mr. Aguirre obtained large financial encumbrances, including his $2,000 a month auto loan, when he could have chosen to prioritize his restitution payments. Mr. Aguirre has only been paying $100-$250 towards his restitution monthly, despite this Officer encouraging him to pay closer to 10% of his income monthly. However, this Officer has been unable to get a full picture of his income given his lack of submitting business records as directed.

Community supervision is intended for those who are willing to make behavioral changes that lead to successful rehabilitation, and based on the defendant's displayed behaviors, and actions, he has been unwilling to fully engage with Adult Probation and follow the terms and conditions of his probation. Mr. Aguirre has been afforded multiple opportunities to prioritize probation, both through prior terms of probation, and clear directives given by probation. The risk to the community that Mr. Aguirre poses can only be properly monitored if he were to comply with all conditions of probation, and be transparent with probation, which he has failed to do on multiple occasions. Therefore, this Officer believes that the defendant is not amenable to the services provided by the Adult Probation Department, and therefore it is recommended that he be sentenced to the Arizona Department of Corrections, Rehabilitation & Reentry (ADCRR).

If the Court is inclined to reinstate probation in this cause in Count 8, 9, & 15, it should be noted the defendant has previously served 863 days on probation. The defendant will be given credit for all days previously served on probation when the expiration date is determined by APD.

*It should be noted the Court ordered Mr. Aguirre to pay a total of $1,768,420.01 in restitution in this matter, however, the order did not specify which count it was applied to. A memorandum was recently sent to the Court asking for clarification as to which count restitution should be applied to and is awaiting a response. A Criminal Restitution Order (CRO) was previously issued for this amount as well.

*Exhibit UST-U*

## The Superior Court of Arizona in Maricopa County
## Adult Probation Department
*Chief Probation Officer Michael P. Cimino*

STATE OF ARIZONA v.                                          New Case(s): **None**
**Francisco Aguirre**                                     PV Case(s): **CR2017001272-001**

### Recommendations

### CR2017001272-001

### Count 008:

It is respectfully recommended that probation be revoked and the defendant be committed to the Department of Corrections/Arizona State Prison for the presumptive term.

IT IS ORDERED that the Defendant shall pay financial obligations through the Clerk of the Superior Court as directed.

|  | Total | Payment | Begin | Note |
|---|---|---|---|---|
| Victim Rights Enforcement Assessment -Offense Committed before 9/26/25 | $2.00 |  | To be determined |  |
| Criminal Penalty Assessment | $13.00 |  | To be determined | Attorney General's Office |
| Time Payment Fee | $20.00 |  | To be determined |  |
| Probation Assess. | $20.00 |  | To be determined |  |
| Delinquent Probation Service Fee | $1690.00 |  | To be determined |  |
| Other | $263072.37 |  | To be determined | Interest Payment |

### Count 009:

It is respectfully recommended that probation be revoked and the defendant be committed to the Department of Corrections/Arizona State Prison for the term greater than presumptive.

### Count 015:

It is respectfully recommended that probation be revoked and the defendant be committed to the Department of Corrections/Arizona State Prison for the presumptive term.

**Page 8 of 9**

*Exhibit UST-U*

**The Superior Court of Arizona in Maricopa County**
**Adult Probation Department**
*Chief Probation Officer Michael P. Cimino*

STATE OF ARIZONA v.                                    New Case(s): **None**
**Francisco Aguirre**                        PV Case(s): **CR2017001272-001**

Respectfully submitted by:

_____

Madison Officer, Adult Probation Officer

Cell: (602) 619-2355

November 19, 2025

mailto:madison.officer@jbazmc.maricopa.gov

Joseph Coppola, Supervisor
Phone: (602) 619-1643

**Page 9 of 9**

*Exhibit UST-U*

**The Superior Court of Arizona in Maricopa County**
**Adult Probation Department**
*Chief Probation Officer Michael P. Cimino*

**SUPPLEMENTAL REPORT**

STATE OF ARIZONA v.                                    New Case(s): **None**
**Francisco Aguirre**                         PV Case(s): **CR2017001272-001**

DOB: 12-22-1960                              Judge: **Joshua Boyle/MQPV3**

**Supplemental Information**

This Supplemental Report is to provide the Court an update on Mr. Aguirre's progress and regress since the prior report was submitted on October 3, 2025.

Mr. Aguirre was released from custody on October 4, 2025. He reported to Adult Probation as directed on October 13, 2025. During that appointment, this Officer directed him to submit all business bank statements dating back to when the accounts were opened, and to submit these by October 21, 2025. Additionally, he was reminded to submit his 2024 tax returns as soon as they were filed, including any profit/loss statements. Mr. Aguirre provided his 2024 tax returns and his bank statements with four (4) of his business accounts to this Officer on October 20, 2025. These bank statements were for "Beyond Attorney's LLC" (from 1/2024-10/2025), "Beyond Legal Solutions LLC"(6/2025-10/2025), "Benevest LLC" (7/2024-10/2025), and "Beyond Law Office LLC"(12/2023-9/2025). All of these bank statements were documents that Mr. Aguirre was aware he was supposed to be submitting to probation on a monthly basis, and yet he had failed to do so for almost two years. Additionally, he was aware he was to request permission before opening any accounts and yet he had opened accounts for all of these businesses without probation's permission and then failed to notify probation that he had done so.  Most alarming, is the fact that these accounts have transactions, including some substantial transactions of both income and expenses; these are not and never were inactive bank accounts. Moreover, on November 5, 2024, this Officer reviewed a Behavior Agreement with Mr. Aguirre that specifically stated that he was to provide all business bank statements to this Officer, and yet at that time, he continued to hide the existence of these accounts and didn't provide them until after a Petition to Revoke was filed in this matter.

This Officer reviewed Mr. Aguirre's 2024 tax returns, and he reported that he had self-employment income of $43,580 under his businesses, however, this Officer reviewed the business bank statements for 2024, which included his "Beyond Law Office LLC" US Bank Account and his "Beyond Attorney's LLC" Desert Financial Account, and he had $143,119.42 in direct client payments made via platforms like Zelle or Square, $98,835.21 in check deposits, and $66,630.00 in cash deposits across just these two accounts in the year 2024. That results in a total of $308,584.63 in potential income that was entirely unreported to this Officer and under-reported in his 2024 tax returns. Per his white-collar conditions, all income is to be reported to Adult Probation, and he failed to report a significant amount of income, only doing so after a Petition to Revoke was filed. He continues to have a substantial level of income, and upon reviewing his most recent business accounts, for October 2025, he has had $42,173.85 in income from clients in that one month alone.

Mr. Aguirre had initially reported to this Officer that he was doing consulting work with attorney's rather than contracting with client's directly, but when he began contracting with clients, he assured me he was not preparing any Court documents and explained that he was just helping families of people who are incarcerated since he has some expertise in that. This seems to be contradicted by multiple of Mr. Aguirre's own documents, including the fact that he has his clients sign a Limited Power of Attorney granting him power of representation in civil matters, and there are multiple references to his fees and costs associated with the preparation of Court motions for clients. Additionally, given the nature of his probation offense, he was ordered on his terms and

**The Superior Court of Arizona in Maricopa County**
**Adult Probation Department**
*Chief Probation Officer Michael P. Cimino*

STATE OF ARIZONA v.                                    New Case(s): **None**
**Francisco Aguirre**                            PV Case(s): **CR2017001272-001**

---

conditions of probation "defendant shall not engage in any mortgage finance related enterprise". However, one of his contracts states he will handle the "Escrow, Recording, Process Serving, and Document Preparation". Many of these contracts were discovered when reviewing lawsuit documentation that Mr. Aguirre has filed against prior clients, or client's family members. These client contracts were not submitted to this Officer, despite Mr. Aguirre being directed to submit them on a monthly basis. Additionally, there are multiple clients listed in his bank statements that he has received payments from that he has not submitted client contracts for. In addition to engaging in work that he has been directed not to engage in, Mr. Aguirre continues to not provide proper employment documentation to this Officer.

In order to properly supervise an individual who has an extensive history of white-collar offenses, they have to be openly disclosing all financial records, income, and employment records. The information in this case continues to indicate that he has failed to submit financial records in order to be deceptive. Additionally, what Mr. Aguirre has reported does not align with what is being seen in these newly disclosed documents, and therefore this Officer cannot be sure there are no other records or income being withheld by him. There is a large sum of restitution in this matter, with a remaining balance of $1,758,160.69; Mr. Aguirre has only paid a total of $4,958.61 towards that balance since beginning probation on May 21, 2023. Community supervision is intended for those who are willing to make behavioral changes that lead to successful rehabilitation, and based on the client's displayed attitude, behaviors, and actions, he has been unwilling to fully engage with Adult Probation and follow the terms and conditions of his probation. Since beginning probation, Mr. Aguirre has purchased two brand new vehicles, taken multiple vacations without permission to other states or countries, and his bank statements exhibit spending at a variety of luxury stores. Mr. Aguirre has chosen to prioritize his own financial gain and lavish lifestyle over making the victim's whole by hiding a majority of his business activities, income, and financial documents from this Officer. Additionally, he appears to continue to be engaged in concerning white-collar behavior with vulnerable populations in the community, and when this Officer was informed of this behavior, he pursued litigation against those individuals.

There are no changes being requested at this time regarding the sentencing recommendation outlined in the original probation violation report. The risk to the community that Mr. Aguirre poses can only be properly monitored if he were to comply with all conditions of probation, which he has failed to do for almost two years, and therefore this Officer believes that the only proper outcome at this time is for his probation to be revoked to the presumptive term in the Arizona Department of Corrections, Rehabilitation and Reentry (ADCRR).

*Exhibit UST-U*

**The Superior Court of Arizona in Maricopa County**
**Adult Probation Department**
*Chief Probation Officer Michael P. Cimino*

STATE OF ARIZONA v.                                          New Case(s): **None**
**Francisco Aguirre**                                    PV Case(s): **CR2017001272-001**

---

Respectfully submitted by:

_____

Madison Officer, Adult Probation Officer

Cell: (602) 619-2355

November 20, 2025

mailto:madison.officer@jbazmc.maricopa.gov

Joseph Coppola, Supervisor
Phone: (602) 619-1643

*Exhibit UST-U*

**The Superior Court of Arizona in Maricopa County**
**Adult Probation Department**
*Chief Probation Officer Michael P. Cimino*

## SUPPLEMENTAL REPORT

STATE OF ARIZONA v.                                                    New Case(s): **None**
**Francisco Aguirre**                                          PV Case(s): **CR2017001272-001**

DOB: 12-22-1960                                                Judge: **Joshua Boyle/MQPV3**

### Supplemental Information

This Supplemental Report is to provide the Court with an update on Mr. Aguirre's progress and regress since the prior report was submitted on November 19, 2025.

Mr. Aguirre met with this Officer at the office on December 3, 2025. At this meeting, he provided this Officer with a list of things he intended to do, to address the non-compliance allegations that Probation made in the Petition to Revoke. This document outlined his intentions of exiting from all business activities, closing all business accounts, and retiring all together. Since presenting this proposed plan, he has sent documents showing that he removed himself as the statutory agent for his 4 LLC's, and bank statements showing that his business accounts have been closed as of December 18, 2025. He reported that moving forward he intends to register for Social Security Benefits, retire from all work, and would supplement his income with financial support from his family. He said that he would have about $1,525 in Social Security Income and upwards of $12,000 a month in financial support from his family each month. Although these steps appear to potentially address some of the violation allegations moving forward, this Officer continues to have serious concerns about his prior conduct while on probation, and that this conduct will continue in spite of the assurances provided by Mr. Aguirre.

Mr. Aguirre stated that he would be exiting from all business activities, including his 4 LLC's, but upon reviewing the documents he submitted to the Arizona Corporation Commission (ACC), these documents are not documents to terminate the LLC, but rather documents to resign as the Statutory Agent and Manager of the LLC, leaving all LLC's active. By doing so, Mr. Aguirre has left open the option for the LLC to continue to operate, without his name attached to it. As of this report, his business website is still active as well, with all prior services advertised, and his contact information is still active. Given the fact that the LLC's are still active, closing the business bank accounts would not prevent him from continuing to do work under the LLC and receive payments from clients directly to any personal accounts, or for a new business account to be opened by another individual, as he has been known to work with multiple co-defendants in this case and prior cases. Mr. Aguirre has been directed before to disclose all civil matters he is involved in and has been directed to provide copies of all filings he makes in those matters. Mr. Aguirre has continued to litigate new matters that he has not made this Officer aware of, including two new civil matters filed on October 27, 2025, and December 1, 2025. This Officer is unaware of what those civil cases are regarding since Mr. Aguirre did not inform this Officer of them or provide any of the filings for them. One of the civil matters that is relevant to Mr. Aguirre's concerning white collar behaviors, is the civil matter in which the State Bar of Arizona has alleged Mr. Aguirre and his LLC, Beyond Attorneys, engaged in Unlawful Practice of Law. Mr. Aguirre provided to Adult Probation a copy of the "Consent Agreement, Tender of Conditional Admissions, and Joint Memorandum in Support of Consent Agreement", in which Mr. Aguirre acknowledges a fact of the case to be that he failed to comply with the "rules, orders, and relevant case law of the Arizona Supreme Court regarding the practice of law and the unauthorized practice of law" and has committed "unauthorized practice of law", signed and dated December 11, 2025.

Mr. Aguirre has an extensive history of white-collar offenses, both in Colorado and Arizona, and his behavior appear to escalate with each offense. In the 2005 matter, he had multiple co-

*Exhibit UST-U*

**The Superior Court of Arizona in Maricopa County**
**Adult Probation Department**
*Chief Probation Officer Michael P. Cimino*

STATE OF ARIZONA v.                                   New Case(s): **None**
**Francisco Aguirre**                          PV Case(s): **CR2017001272-001**

---

defendants, including his ex-wife, and was involved in mortgage fraud against victims who were a vulnerable population, and individuals with little experience speaking English. He had ten individual victims in that case, including his brother. He was sentenced to probation and completed it successfully in October 2012. However, it appears that just two months after completing probation he began defrauding new victims, under an LLC, again with multiple co-defendants, which is the case he is currently on probation for. In this current matter, he continued to commit mortgage fraud dating back to January 2013, resulting in 54 known victims being owed over 1.7 million dollars in restitution. He was sentenced to 7.5 years in prison followed by probation with white collar conditions for this matter. Despite being ordered white collar conditions to better monitor this concerning behavior, Mr. Aguirre was not transparent with probation, hiding business activity, bank accounts, income, and international travel from this Officer for over two years. Additionally, in spite of Mr. Aguirre assuring this Officer that he will be fully transparent moving forward, this Officer has been made aware that he is still in very close and consistent association with a prior co-defendant and this Officer is unsure to the extent at which this co-defendant could be involved in his current business activity.

Mr. Aguirre re-offended just two months after completing probation in 2012, and did so in an even more sophisticated way, creating more victims, despite probation's best efforts at rehabilitation. Despite his assurances that he intends to retire, his history, the severity of the violations over the span of two years, and the vulnerability of the population that he could be continuing to victimize, this Officer will continue to recommend that his probation be revoked, and he be sentenced to the Department of Corrections for the Presumptive term.

Respectfully submitted by:

_____

Madison Officer, Adult Probation Officer
Cell: (602) 619-2355
December 30, 2025
mailto:madison.officer@jbazmc.maricopa.gov
Joseph Coppola, Supervisor
Phone: (602) 619-1643