## Exhibit B

## Rule 2004 Requests For Production

**MCDERMOTT WILL & SCHULTE LLP**
Charles R. Gibbs (TX Bar No. 7846300)
Marcus A. Helt (TX Bar No. 24052187)
Grayson Williams (TX Bar No. 24124561)
2801 North Harwood Street, Suite 2600
Dallas, Texas 75201
Telephone: (214) 295-8000
E-mail: crgibbs@mcdermottlaw.com
       mhelt@mcdermottlaw.com
       gwilliams@mcdermottlaw.com

**MCDERMOTT WILL & SCHULTE LLP**
Darren Azman (admitted *pro hac vice*)
Jared M. Gerber (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
E-mail: dazman@mcdermottlaw.com
       jmgerber@mcdermottlaw.com

Julia M. Beskin (admitted *pro hac vice*)
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
E-mail:jbeskin@mcdermottlaw.com

*Counsel to the Chapter 7 Trustee*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| TRICOLOR HOLDINGS, LLC, *et al.*,[1] | Case No. 25-33487 (MVL) |
| Debtors. | (Jointly Administered) |

**REQUESTS FOR PRODUCTION ON MAURICIO DELGADO**

Please take notice that, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, Anne Elizabeth Burns, Chapter 7 Trustee for the above-referenced Chapter 7 bankruptcy case ("Trustee"), hereby serves the following requests for production on Mauricio

---

[1]   The Debtors in these Chapter 7 cases are as follows: Tricolor Holdings, LLC, TAG Intermediate Holding Company, LLC, Tricolor Auto Group, LLC, Tricolor Auto Acceptance, LLC, Tricolor Insurance Agency, LLC, Tricolor Home Loans LLC dba Tricolor Mortgage, Tricolor Real Estate Services, LLC, TAG California Holding Company, LLC, Flexi Compras Autos, LLC, TAG California Intermediate Holding Company, LLC, Tricolor California Auto Group, LLC, Tricolor California Auto Acceptance, LLC, Risk Analytics LLC, Tricolor Tax, LLC, Tricolor Financial, LLC, Tricolor Auto Receivables LLC, TAG Asset Funding, LLC, and Apoyo Financial, LLC.

Delgado ("Delgado"), to be produced to the Trustee within thirty (30) days, or some such date otherwise agreed upon by the Trustee and Delgado, and in accordance with the Definitions and Instructions below ("Request(s)").

**DEFINITIONS**

1.      "Communication(s)" means any written or oral communication of any kind or character, including, by way of example and without limitation, e-mails, instant messages, text messages, voicemail or voice messages, audio recordings, recordings, transcripts or notes of in-person, video or telephone conversations, letters, meetings, memoranda, telegraphic and telex communications or transmittals of Documents, whether such communication was sent, received, or created, in final or in draft, and all Documents concerning or memorializing such written or oral communications.

2.      "Concerning" means consisting of, reflecting, referring to, concerning, related to, involving, evidencing, constituting, or having any legal, logical, evidential, or factual connection with (whether to support or rebut) the subject matter designated in any of these Requests.  A request for Documents "concerning" a specified subject matter always shall include Communications, notes, and memoranda (whenever prepared) concerning the subject matter of the request.

3.      "Debtor" or "Tricolor" means Tricolor Holdings, LLC, TAG Intermediate Holding Company, LLC, Tricolor Auto Group, LLC, Tricolor Auto Acceptance, LLC, Tricolor Insurance Agency, LLC, Tricolor Home Loans LLC dba Tricolor Mortgage, Tricolor Real Estate Services, LLC, TAG California Holding Company, LLC, Flexi Compras Autos, LLC, TAG California Intermediate Holding Company, LLC, Tricolor California Auto Group, LLC, Tricolor California Auto Acceptance, LLC, Risk Analytics LLC, Tricolor Tax, LLC, Tricolor Financial, LLC, Tricolor Auto Receivables LLC, TAG Asset Funding, LLC, Apoyo Financial, LLC, and any direct or

3

indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, executives, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

4.      "Document(s)" means, without limitation, the original and all copies, prior drafts, and translation of information in any written, typed, printed, recorded or graphic form, however produced or reproduced, of any type or description, regardless of origin or location, including without limitation, all electronically stored information, Communications, records, tables, charts, analyses, graphs, schedules, reports, memoranda, notes, lists, calendar and diary entries, letters (sent or received), contracts, statements, bills, checks, vouchers, video tapes, photographs, tape recordings, other mechanical records, transcripts or logs of any such recordings, and all other data compilations from which information can be obtained.  The term "Document(s)" is intended to be at least as broad in meaning and scope as the usage of the term in or pursuant to the Federal Rules of Civil Procedure.

5.      "You" or "Your" means the entity or person responding to these Requests, and, if an entity, any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of any such entity, and any and all partners, officers, directors, executives, shareholders, members, employees, representatives, agents, advisors attorneys, and all other persons and entities acting or purporting to act on behalf of any of the foregoing.

## **INSTRUCTIONS**

1.      Unless otherwise indicated, all Documents shall be produced for the relevant time period, which shall be from January 1, 2018, including any Documents having an earlier origin, if in use during the relevant time period.

2.      To the extent that a Request could be construed as seeking Communications in the possession, custody, or control of the estate, those Communications are excluded from the below Requests.

3.      The obligation to produce Documents responsive to these Requests shall be continuing in nature, and a producing party is required promptly to produce any Documents requested herein that it locates or obtains after responding to these Requests, up to the conclusion of the above-captioned Chapter 7 case.

4.      You are requested to produce not only those Documents in Your physical possession, but also those Documents as to which have the legal right and/or practical ability to obtain (and that are thus within your custody and/or control), including, without limitation, Documents in the possession of Your agents, employees, affiliates, advisors, or consultants and any other person or entity acting on Your behalf.

5.      If You have no Documents responsive to a particular Request, or if for some other reason You are unable to produce responsive Documents, Your response to that Request should specifically so state.  You must respond to each and every Request herein.  Any objection to a Definition, Instruction or Request shall state with specificity all grounds for the objection.  If You have certain Documents that are responsive to a Request, but believe that additional Documents not now available to You would also be responsive, You should provide the Documents You now have and specifically state when the remainder of the Documents will be provided.

6.      Where a claim of privilege is asserted in objecting to the production of any Document and a Document called for by these Requests is withheld on the basis of such assertion, the objecting party shall identify the nature of the privilege (including work product) that is being claimed.  In addition, the objecting party shall provide the following information with respect to

any Document so withheld on its privilege log: (i) type of Document, *e.g.*, letter or memorandum; (ii) general subject matter of the Document and basis for privilege; (iii) date of the Document; and (iv) author, addressee(s) or recipient(s) of the Document. Attachments to privileged emails shall be independently assessed for privilege claims and logged individually (*i.e.*, separately from the email).

7.      In the event that a requested Document has been lost, destroyed, discarded and/or otherwise disposed of, You shall identify the Document by identifying: (i) its author or preparer; (ii) all persons to whom it was distributed or shown; (iii) date; (iv) subject matter; (v) attachments or appendices; (vi) date, manner, and reason for destruction or other disposition; (vii) person authorizing destruction or other disposition; and (viii) the Document Request or Requests to which the Document is responsive.

8.      Instructions regarding the production of documents and electronically stored information are attached as Appendix I.

9.      The singular form of a word should be interpreted to include the plural as well. Any pronoun shall be construed to refer to the masculine, feminine, or neutral gender.

## DOCUMENTS REQUESTED

1.      All Documents and Communications between or among You and Daniel Chu, Jerome Kollar, David Goodgame, or Ameryn Seibold Concerning Tricolor.

2.      All Documents and Communications produced to any federal regulator, prosecutor, or administrative agency in connection with any civil or criminal investigation of Tricolor or any of its officers, executives, board members, or employees at any point during the relevant time period.

Dated: New York, New York
       April 24, 2026

**MCDERMOTT WILL & SCHULTE LLP**

*/s/ Julia M. Beskin*
Charles R. Gibbs (TX Bar No. 7846300)
Marcus A. Helt (TX Bar No. 24052187)
Grayson Williams (TX Bar No. 24124561)
2801 North Harwood Street, Suite 2600
Dallas, Texas 75201-1664
Telephone: (214) 295-8000
Fax: (972) 232-3098
E-mail: crgibbs@mcdermottlaw.com
       mhelt@mcdermottlaw.com
       gwilliams@mcdermottlaw.com

-and-

Darren Azman (admitted *pro hac vice*)
Jared M. Gerber (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone: (212) 547-5400
Fax:  (212) 547-5444
E-mail: dazman@mcdermottlaw.com
       jgerber@mcdermottlaw.com

Julia M. Beskin (admitted pro hac vice)
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
E-mail: jbeskin@mcdermottlaw.com

*Counsel to the Chapter 7 Trustee*

7

## APPENDIX I

## TECHNICAL SPECIFICATIONS FOR PRODUCTION

PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

For documents that have originated in paper format, the following specifications should be used for their production.

- Images should be produced as single page TIFF group IV format imaged at 300dpi.

- Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

- Media may be delivered on CDs, DVDs, or External USB hard drives. Each media volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

- Each delivery should be accompanied by an image cross reference file that contains document breaks.

- A delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian, and Number of Pages. The delimiters for that file should be:

  Field Separator, ASCII character 020: "¶"
  Quote Character, ASCII character 254 "þ"

  Multi-Entry Delimiter, ASCII character 059: ";"

- To the extent that documents have been run through an Optical Character Recognition (OCR) software in the course of reviewing the documents for production, full text should also be delivered for each document. Text should be delivered on a document level in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document.

- A text cross reference load file should also be included with the production delivery that lists the beginning Bates number of the document and the relative path to the text file for that document on the production media.

<u>PRODUCTION OF EMAIL AND ELECTRONIC DOCUMENTS</u>

Electronic documents should be produced in such fashion as to identify the location (*i.e.*, the network file folder, hard drive, back-up tape or other location) where the documents are stored and, where applicable, the natural person in whose possession they were found (or on whose hardware device they reside or are stored).  If the storage location was a file share or work group folder, that should be specified as well.

Attachments, enclosures, and/or exhibits to any parent documents should also be produced and proximately linked to the respective parent documents containing the attachments, enclosures, and/or exhibits.

For standard documents, emails, and presentations originating in electronic form, documents should be produced as tiff images using the same specifications above with the following exceptions:

- Provide a delimited text file (using the delimiters detailed above) containing the following extracted metadata fields where they exist in the file being produced:

  Beginning Production
  Number Ending Production
  Number Beginning
  Attachment Range Ending
  Attachment Range Custodian

  Custodian_ALL
  Confidentiality
  Designation Original
  Location Path Email
  Folder Path Document
  Type Edoc_Author

  Edoc_Title
  Page Count
  File Name
  File
  Extension
  File Size
  MD5 Hash

  Date Last Modified

  Time Last Modified
  [HH:MM:SS] Date Created

Time Created [HH:MM:SS]
Date Last Accessed

Date Sent

Time Sent [HH:MM:SS]
Date Received

Time Received
[HH:MM:SS] From

Recipients
Copyees

Blind Copyees
Email Subject
Path to Native
File

Calendar Start Date
Calendar End Date

- Images shall be produced revealing any hidden text/content.

- Extracted full text (not OCR text) should also be delivered for each electronic document. The extracted full text should be delivered on a document level according to the specifications above similar to paper documents.

- Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.

- All spreadsheets should be produced in their native format and in the order that they were stored in the ordinary course of business, *i.e.*, emails that attach spreadsheets should not be separated from each other and should be linked using the Attachment Range fields above. The extractable metadata and text should be produced in the same manner as other documents that originated in electronic form. A placeholder TIFF image shall be created, Bates numbered, and the produced Excel chart shall be renamed to match the Bates number on its corresponding placeholder page. The exception shall be for redacted spreadsheets which shall be produced in TIFF format. Images for the redacted spreadsheets shall display the content in the same manner as if it were printed. The parties agree to work out a future protocol governing the use and format of documents produced pursuant to this paragraph at trial, depositions, or hearings (such as converting to tiff images in accordance with the above protocol).

- Upon review, the requesting party may ask for certain other documents and/or databases that were initially produced in their tiff or pdf format to be produced

10

in their native format in the event that the tiff or pdf version is not reasonably usable. If this is the case, the requesting party will submit a list of Bates numbers identifying the documents.  The documents should be produced in their unaltered native format with an accompanying text delimited text file (using the delimiters above) that contains the following fields:


Beginning Production
Number Ending Production
Number Beginning
Attachment Range Ending
Attachment Range Path to
Native File

MD5 Hash Value

<u>PRODUCTION OF DATABASES AND OTHER STRUCTURED DATA</u>

Generally, databases should be produced in a mutually agreeable data exchange format. To determine the data that is relevant to the document requests, a list of databases and systems used to manage relevant data should be provided with the following information:


Database Name

Type of Database

Software Platform

Software Version

Business Purpose Users

Size in Records Size in Gigabytes

A List of Standard Reports

Database Owner or Administrator's Name Field List

Field Definitions (including field type, size, and use)


Upon review of the list, the parties agree to meet and confer regarding the data to be produced from each source, if any, and the form(s) of the production thereof.