# EXHIBIT A

## GROUND LEASE

THIS GROUND LEASE ("Lease") is made as of the 13th day of May 2019, between Landlord and Tenant, as identified below (the "Execution Date").

### ARTICLE 1
### BASIC PROVISIONS

A.  **Landlord:** 3330 FREMONT STREET LLC

B.  **Tenant:** TRICOLOR AUTO GROUP, LLC, a Delaware limited liability company. GANAS HOLDINGS, LLC, a Delaware limited liability company, ("Guarantor") shall guarantee all payments and obligations due and owing under this Lease by Tenant to Landlord.

C.  **Premises Address:** 3330 -3340 FREMONT STREET: APNs: 162-01-801-008; 009; 010 & 011 ("Premises")

D.  **Premises:** Approximately 2.81 acres comprising that certain real property having the address and Assessor's Parcel Number set forth above (the "Premises")

E.  **Commencement Date:** June 1, 2019. Notwithstanding anything contained herein to the contrary, neither Tenant nor Guarantor shall have any obligations to the Landlord or any other person with regard to this Lease, including, but not limited to, the obligation to make any payments of Rent or otherwise until such time as the Tenant receives all necessary permits to construct a modular building on the Premises. Tenant will immediately apply for and diligently prosecute the building permit process. If Tenant has not obtained the required permits within 120 days, Landlord, on thirty days written Notice, if Tenant fails to cure the Default or commence paying rent during the 30 day cure period, may elect to terminate the Lease.

F.  **Rent Commencement Date:** August 1, 2019.

G.  **Expiration Date:** Five (5) years after the Rent Commencement Date ("Initial Term").

H.  **Permitted Use:** Tenant shall be permitted to use the Premises for the purposes of owning and operating a used car dealership and related servicing of vehicles.

I.  **Minimum Rent:**

| Lease Months | Monthly Rent |
|---|---|
| 8/1/2019-7/31/2020 | $6,000.00 |
| 8/1/2020-7/31/2021 | $6,500.00 |
| 8/1/2021 -7/31/2022 | $7,000.00 |
| 8/1/2022-7/31/2023 | $7,500.00 |
| 8/1/2023 -7/31/2024 | $8,000.00 |

J.        **Security Deposit:** $15,000.00 (the "Deposit")

K.        **Rent Payment Address:** Tenant shall forward all Rent and insurance certificates to Landlord at the following address, or such other address or addresses as to which Landlord shall provide advance notice:

> 3330 Fremont Street, LLC
> c/o Ghassan Merhi, its Manager
> 2711 E Sahara
> Las Vegas, Nevada 89104

L.        Option to Extend. One (1) option to extend the Term of this Lease on the same terms, conditions and provisions as contained in this Lease, except as otherwise provided herein, for one period of five (5) years.

M.        Free Rent. Tenant's obligation to pay Base Rent will be conditionally abated during (i) the period from the date of this Lease until the date that the Tenant receives its approval of building permit to erect a modular building or (ii) June and July 2019, whichever ends sooner ("Free Rent Period"). Commencing with the first month after the Free Rent Period, Tenant will pay Base Rent. Regardless of the abatement of Base Rent during the Free Rent Period. Tenant must pay NNN charges during the Free Rent Period. The abatement of Base Rent described in clause (c) above is expressly conditioned on Tenant's fulfilling Tenant's obligations under the Lease throughout the Term.

### ARTICLE 2
### PREMISES, TERM AND COMMENCEMENT DATE

A.        **Premises.** The premises leased hereunder (hereinafter referred to as the "Premises") are described on Exhibit A.

B.        **Parking and Access.** N/A

C.        **Improvements.** Tenant acknowledges that it shall only be entitled to construct improvements as approved by Landlord in writing in advance.

D.        **Initial Term.** Landlord hereby leases to Tenant and Tenant hereby leases from Landlord the Premises for a term commencing on the Commencement Date and ending on the Expiration Date set forth in Article 1 ("Initial Term"), unless sooner terminated as provided herein.

E.        **Extended Term.** Landlord hereby grants to Tenant one (1) "Option" to extend the Initial Term for an additional consecutive term of five (5) years per option (each, an "Extended Term"), beginning on the expiration of the Initial Term, on all of the same terms and conditions as set forth in this Lease, but at an increased Minimum Rent based on the then fair market value, as determined in Landlord's sole and absolute discretion, but in no event less than 6% greater than the prior year for each year of the option term (Annual Increase) to be determined as of anniversary date of the Lease (and without any additional Option to further extend the Lease Term after the expiration of the second Extended Term). The Option may be exercised by Tenant only by delivery of written notice to Landlord, which notice must be received by Landlord at least six (6) months but no more than nine (9) months before the expiration of the Initial Term. If Tenant fails to timely deliver such written notice, or if this Lease is terminated pursuant to any other terms or provisions of this Lease prior to the expiration of the Initial Term or first Extended Term, as may be the case, the Option shall lapse, and Tenant shall have no right to extend the Lease Term. Each Option shall be exercisable by Tenant on the express conditions that (i) at the time of delivery of Tenant's notice of its election to exercise the Option, and at all times prior to the commencement of the Extended Term, no Events of Default have occurred and remain uncured, (ii) no previous Events of Default (whether or not the same have been timely cured) shall have occurred on more than two (2) occasions during the Lease Term, and (iii) Tenant has not assigned this Lease nor sublet all or any part of the Premises, it being understood

that the Option is personal to the original named Tenant under this Lease. In the event of any such assignment or sublease, the Option shall lapse and shall be null and void and of no further force or effect. The Initial Term and any Extended Term shall be collectively referred to herein as the "Lease Term."

**ARTICLE 3**
**MINIMUM RENT, ADDITIONAL RENT, AND**
**OTHER SUMS TO BE PAID BY TENANT**

**A.** **Minimum Rent.** Beginning on the Rent Commencement Date, Tenant shall pay Landlord the monthly Minimum Rent set forth in Article 1 in advance on or before the first day of each calendar month during the Lease Term. The Minimum Rent and additional rent as set forth in this Article 3 shall be collectively referred to as the "Rent." Tenant shall deliver to Landlord upon Lease execution the sum of SIX THOUSAND DOLLARS **$6,000.00**, representing the initial Minimum Rent for the first month of the Term, and pending the Rent Commencement Date, such sum shall be held by Landlord in the same manner as the Deposit. Upon the Rent Commencement Date, such sum shall be applied by Landlord toward Tenant's first month Minimum Rent.

**B.** **Additional Rent Based Upon Reimbursement to Landlord.** If Tenant shall fail to comply with or to perform any of the terms, conditions and covenants of this Lease, Landlord may (but with no obligation to do so) carry out and perform such terms, conditions and covenants, at the expense of Tenant, which expense shall be payable by Tenant, as additional rent, upon the demand of Landlord, together with interest at the Default Rate, which interest shall accrue from the date of Landlord's demand.

**C.** **Additional Rent Based Upon Late Payment.** If Tenant defaults for more than five (5) days in the payment of any monthly installment of fixed annual rent, additional rent or any of the sums required of Tenant under the Lease, or if Tenant, within five (5) days after demand from Landlord, fails to reimburse Landlord for any expenses incurred by Landlord pursuant to the Lease, together with interest, then Tenant shall pay Landlord, as additional rent, a late charge of five (5%) percent of the rent or expense.

**D.** **Additional Rent Based Upon Landlord's Legal Expenses in Enforcing Lease.** As additional rent, Tenant shall pay Landlord, all reasonable attorneys' fees that may be incurred by Landlord in enforcing Tenant's obligations under this Lease; provided, however, that in the event Landlord commences a suit against Tenant to enforce Tenant's obligations under this Lease, and such suit is tried to conclusion and judgment is entered in favor of Tenant, then in that event Tenant shall not be under any obligation to pay Landlord the attorneys' fees that Landlord may have incurred.

**E.** **Taxes.** Tenant shall be required to pay Landlord any real property taxes levied and assessed during the term of this Lease upon any land, buildings, and personal property comprising the Premises. Tenant shall pay before delinquency any and all taxes, assessments, license fees and public charges levied, assessed or imposed at any time and which become payable during the term of this Lease upon the leasehold improvements, fixtures, equipment, furniture, inventories or merchandise and any other personal property installed or located on the Premises whether or not such assessment is made against Tenant and whether installed by Landlord or Tenant.

**F.** **No Setoff and Application.**

(i) **No Setoff.** Tenant shall pay Landlord all fixed annual rent, additional rent and other sums required of Tenant under the Lease, without abatement, deduction or setoff, and irrespective of any claim Tenant may have against Landlord; and this covenant shall be deemed independent of any other terms, conditions or covenants of this Lease.

(ii)     **Application.** No payment by Tenant or receipt by Landlord of an amount less than the full fixed annual rent, additional rent, or other sums required of Tenant under the Lease, shall be deemed anything other than a payment on account of the earliest fixed annual rent, additional rent, or other sum due from Tenant under the Lease. No endorsements or statements on any check or any letter accompanying any check or payment of fixed annual rent, additional rent, or other sum due from Tenant under the Lease, shall be deemed an accord and satisfaction of Landlord. Landlord may accept any check for payment from Tenant without prejudice to Landlord's right to recover the balance of fixed annual rent, additional rent, or other sum due from Tenant under the Lease, or to pursue any other right or remedy provided under this Lease.

G.     **Deposit.**

(i)     Tenant covenants and agrees that upon execution and delivery of this Lease to Landlord, Tenant shall also deliver the Deposit to Landlord, as a deposit to secure the faithful performance by the Tenant of the covenants, conditions, and agreements of this Lease.  Tenant agrees that if the Tenant fails to pay the Rent when due, the Deposit may, at the option of the Landlord exercisable in its sole discretion (and Landlord shall not be required to) be applied to any Rent due and unpaid, to the extent of the amount due and unpaid. Tenant agrees that if the Tenant violates any of the other covenants, conditions, and agreements of this Lease, the Deposit may at the option of the Landlord exercisable in its sole discretion (and Landlord shall not be required to) be applied to any damage suffered by Landlord as a result of Tenant's default, to the extent of the amount of the damages suffered.  The remedies provided for in this section shall be cumulative with and not in substitution for any other rights or remedies which may be available to Landlord pursuant to this Lease or applicable law.

(ii)     Landlord shall not be required to keep the deposit separate from its general funds, and Tenant shall not be entitled to interest on the Deposit. Should Tenant comply with all of the terms, covenants, and conditions of this Lease and promptly pay all the rent as the same shall fall due, then the Deposit shall be returned to Tenant thirty (30) days after the end of the Term, or after receipt by Landlord of the last payment due from Tenant to Landlord, whichever occurs last.  In the event of sale, transfer, or the making of a master lease of the Property or of any portion thereof containing the Premises, if Landlord transfers the Deposit to the purchaser, lessee, or transferee for the benefit of Tenant, or if such purchaser, lessee, or transferee assumes all liability with respect to the Deposit, then Landlord shall be considered released by Tenant from all liability for the return of the Deposit.  No mortgagee or beneficiary holding a lien on the Premises or any portion thereof shall be liable to Tenant for the Deposit unless the Deposit has actually been delivered to such mortgagee or beneficiary.  Tenant shall have no right or privilege to mortgage, encumber, transfer, or assign the Deposit without the prior written consent of Landlord. Tenant may not deduct the amount of the Deposit, or any portion thereof, from Rent, and Landlord's right to possession of the Premises or to take appropriate action for non-payment of Rent or for any other reason shall not be affected by the fact that Landlord holds the Deposit.

## ARTICLE 4
## PRORATIONS

If the Initial Term or any Extended Term commences on a day other than the first day of a calendar month or ends on a day other than the last day of a calendar month, the Rent shall be prorated on a per diem basis for such partial calendar months. In the event of a Commencement Date occurring on a day other than the first day of a calendar month, Tenant shall pay such prorated amount on the first day of the following month in addition to (i) other Rent due for such following month. In the event of an Expiration Date occurring on a day other than the first day of a calendar month, Tenant shall pay such prorated amount on the first day of the month of expiration.

## ARTICLE 5

## CONDITION OF PREMISES

Tenant agrees to accept the Premises in "AS-IS, WHERE IS" condition.

## ARTICLE 6
## IMPROVEMENTS AND LIENS

**A.    Construction of Improvements.** At Tenant's sole cost and expense, Tenant shall cause any improvements to be constructed on the Premises in accordance with the Site Plan ("Tenant's Work"), conforming in all respects with local building code requirements, zoning requirements, and this Lease.

**B.    Approval.** Tenant's Work shall require the prior written consent of Landlord, which consent may not be unreasonably withheld. All alterations, additions or improvements and systems installed in or attached to the Premises by Tenant including, but not limited to, any modular or other structures and buildings shall, at the option of Landlord, upon the expiration or earlier termination of the Lease, belong to and become the property of Landlord without any payment from Landlord and if such option is exercised, shall be surrendered by Tenant in good order and condition as part of the Premises upon the expiration or sooner termination of the Lease Term whether or not the modular or similar structure is a fixture, a trade fixture, unattached or removable.

**C.    Conditions.** As a condition of Landlord's consent of Tenant's Work, Tenant shall (i) submit for Landlord's prior written approval detailed plans and specifications prepared by licensed and competent architects and engineers, (ii) submit for Landlord's prior written approval the names, addresses and background information concerning all contractors, subcontractors and suppliers, (iii) obtain and post permits, bonds, and additional insurance, (iv) submit contractor, subcontractor and supplier lien waivers, and (v) comply with such other requirements as Landlord may impose concerning the manner and times in which Tenant's Work shall be done and other aspects of the Work. Landlord may require that all of Tenant's Work be performed under Landlord's supervision. If Landlord consents or supervises, or recommends any suppliers, contractors, architects, or engineers, the same shall not be deemed a warranty as to the adequacy of the design, workmanship or quality of materials, or compliance of the Tenant's Work with any Laws.

**D.    Performance of Work.** All of Tenant's Work shall be performed: (i) in a thoroughly first class, professional and workmanlike manner, (ii) only with materials that are new, high quality, and free of material defects, (iii) strictly in accordance with plans and specifications approved by Landlord in advance in writing, (iv) not to adversely affect the structure of the Premises, and (v) in compliance with all Laws and other provisions of this Lease. If Tenant fails to perform Tenant's Work as required herein or the materials supplied fail to comply herewith or with the specifications approved by Landlord, and Tenant fails to cure such failure within 48 hours after notice by Landlord (except that notice shall not be required in emergencies), Landlord shall have the right to stop Tenant's Work until such failure is cured (which shall not be in limitation of Landlord's other remedies and shall not serve to abate the Rent or Tenant's other obligations under this Lease).

**E.    Liens.** Tenant shall keep the Premises and this Lease free from any mechanic's, materialman's or similar liens or encumbrances, and any claims therefor, in connection with any of Tenant's Work. Tenant shall give Landlord notice at least ten (10) days prior to the commencement of any of Tenant's Work or such additional time as may be necessary under applicable Laws), to afford Landlord the opportunity of posting and recording appropriate notices of non-responsibility. Tenant shall remove any such claim, lien or encumbrance by bond or otherwise within twenty (20) days after notice by Landlord. If Tenant fails to do so, Landlord may pay the amount or take such other action as Landlord deems necessary to remove such claim, lien or encumbrance, without being responsible for investigating the validity thereof. The amount so paid and costs incurred by Landlord shall be deemed additional Rent under this Lease payable upon demand, without limitation as to other remedies available to Landlord. Nothing contained in this Lease shall authorize Tenant to do any act which shall subject Landlord's title to the Premises to any

such notices, liens or encumbrances whether claimed by operation of statute or other Law or express or implied contract. Any claim to a lien or encumbrance upon the Premises arising in connection with any of Tenant's Work shall be null and void, or at Landlord's option shall attach only against Tenant's interest in the Premises and shall in all respects be subordinate to Landlord's title to the Premises. Pursuant to NRS 108.234, Landlord hereby informs Tenant that Tenant must comply with the requirements of NRS 108.2403 with respect to any work or alteration Tenant performs or causes to be performed on or about the Premises. Tenant acknowledges the requirements thereunder with respect to Tenant's recording of a notice of posted security in the Official Records of Clark County, Nevada, in accordance with NRS 108.2403, and either (i) establishing a construction disbursement account pursuant thereto or (ii) furnishing and recording, in accordance therewith, a surety bond for the prime contract for Tenant's work that meets the requirements of NRS 108.2415. The parties acknowledge that Landlord is intended to be a "disinterested owner" as defined in NRS 108.234(7) with respect to all of Tenant's Work or any other work of construction, alteration, or repair of any improvement on the Premises. Accordingly, Tenant shall comply with all requirements set forth in NRS 108.2403 and 108.2407. Without limiting the generality of the forgoing, prior to commencing any of Tenant's Work or any other work of construction, alteration, or repair of any improvement on the Premises, Tenant shall deliver to Landlord (i) a conformed copy of the recorded notice of posted security recorded pursuant to NRS 108.2403(1)(a), containing the information required by NRS 108.2403(2) and showing the County Recorder's applicable recording information; (ii) written evidence confirming that Tenant has either established such construction disbursement account or obtained and recorded such surety bond pursuant to NRS 108.2403(1)(b); and (iii) the name, address, and telephone number of Tenant's prime contractor for such work, which shall be delivered within five (5) days of Tenant and such prime contractor entering into a contract for such work. Tenant may not enter the Premises to begin initial construction on any of Tenant's Work until Tenant has delivered evidence satisfactory to Landlord that Tenant has complied with the terms of this paragraph.

F. **Proof of Compliance/Pre-Commencement Date Access to Premises.** Tenant shall deliver to Landlord, at Tenant's expense, evidence of compliance with all applicable requirements for permits and codes, ordinances, and approvals, including but not restricted to, building permits, zoning and planning requirements, and approvals from various governmental agencies and bodies having jurisdiction, including, without limitation, approval from the Nevada Department of Motor Vehicles and a Certificate of Occupancy from the City of Las Vegas, Clark County, Nevada with respect to any improvements . Once the work is commenced, Tenant shall with reasonable diligence cause the prosecution to completion of any improvements. Conditioned upon due and full execution of this Lease and compliance with this paragraph and the other provisions of this Lease, Tenant shall be entitled to access the Premises prior to the Commencement Date for purposes of constructing any improvements . Access to, and use of, the Premises during such time shall be governed by the terms of this Lease; however, Tenant shall not be required to pay Rent until the Rent Commencement Date.

F. **Landlord's Fees and Costs.** Tenant shall pay Landlord a reasonable fee to cover Landlord's overhead and out-of-pocket costs, including the cost of any outside engineer, architect or consultant, in reviewing Tenant's plans and specifications and performing any supervision of Tenant's Work, and such fees as Landlord may reasonably impose for utilities, trash removal, temporary barricades and other matters in connection with Tenant's Work.

**ARTICLE 7**
**USE, OPERATING REQUIREMENTS, AND SIGNAGE**

A. **Use; Compliance with Laws.** Tenant's use of the Premises shall be exclusively as specified in Article 1, and for no other purpose, and under no other name, and such use shall be in compliance with all other provisions of this Lease. Tenant shall comply with all Laws relating to its particular use of the Premises. Tenant acknowledges that its rights in the Premises are subject to all covenants, conditions, restrictions (and other documents) recorded upon, or affecting, the Premises Tenant covenants and agrees that it will not suffer or permit any person or persons to use the Premises for any purposes in violation of such restrictions. Landlord makes no representations that the Premises are suitable for Tenant's purposes.

B. **Prohibited Uses.**

(i)     Tenant shall not commit or suffer to be committed any nuisance or other act or thing to be done in or about the Premises. Without limiting the generality of the preceding sentence, Tenant shall not: make or permit any noise or odor objectionable to the public or to Landlord

(ii)     Tenant shall not carry any stock or do anything in or about the Premises which increases Landlord's insurance rates on the Facility. Tenant shall pay Landlord upon demand the amount of any increased premiums for insurance carried by Landlord (including casualty, business interruption, and liability insurance) resulting from any such act of Tenant, whether or not Landlord shall have consented to such act. If Tenant installs upon the Premises any electrical equipment which causes or constitutes an overload on the electrical lines of the Premises, Tenant shall at its own expense make whatever changes are necessary to correct such condition and comply with the requirements of the insurance underwrites and any governmental authority having jurisdiction thereover.

(iii)     Without Landlord's prior written consent, Tenant shall not: (a) add or remove fixtures that affect or otherwise alter the Premises or alter any structural, mechanical, or electrical component of the Premises.

(iv)     Tenant shall at all times keep the Premises, the adjacent walkways, and any loading platform, service area, and freight elevators allocated to Tenant's use, whether or not exclusive, clean and free from rubbish and dirt. Tenant shall not burn any trash or garbage of any kind in or about the Premises. Tenant shall not perform any act or carry on any practice that may be a nuisance.

C. **Required Operations.** Tenant agrees to continuously operate and conduct its business during the Initial Term and, as may be applicable, any Extended Term. If Tenant ceases to operate its business and such condition persists for more than three (3) months (except for temporary closures due to repairs or remodeling), Landlord shall thereafter be entitled to terminate this Lease by notice to Tenant, and neither Tenant nor Guarantor shall have any further obligations to the Landlord pursuant to this Lease.

## ARTICLE 8
## UTILITIES AND SERVICES

A. **Utilities and Services.**   At Tenant's sole cost, Tenant shall be responsible for the set-up and separate metering of all necessary utilities for its use of the Premises. Tenant shall obtain in Tenant's own name and pay directly for all such services and shall be responsible for all utility connection charges and non-recurring utility charges including without limitation impact fees and contributions in aid of construction. .

**B.** **Interruptions.** Landlord shall not be liable for damages or otherwise for any failure, variation, shortage or interruption of any utilities or services unless the same result from Landlord's gross negligence or willful misconduct, and Tenant shall not be entitled to terminate this Lease or abate any portion of the Rent due under the Lease as a result of such failure, variation, shortage or interruption.

## ARTICLE 9
## MAINTENANCE AND REPAIR OF PREMISES

**A.** **Condition of the Premises.** Tenant acknowledges examining the Premises prior to the commencement of the Lease Term, that Tenant is fully familiar with the condition of the Premises and that Tenant accepts the Premises "As-Is." Tenant enters into the Lease without any representations or warranties on the part of Landlord, express or implied, as to the condition of the Premises.

**B.** **Tenant's Maintenance.** Tenant agrees that it will, at its own cost and expense, maintain or cause to be maintained the Premises and any other improvements, landscaping, and paved areas thereon and appurtenances thereto and every part thereof, in good order, condition, and repair and in accordance with all applicable laws, rules, ordinances, orders, and regulations of all governmental authorities. In the event any repairs or maintenance required to be made under the provisions of this Lease are not made within thirty (30) days after written notice from Landlord to do so, then Landlord may, at its option, enter upon the Premises and repair or maintain the same, and the cost and expense of such repairs, with interest at the maximum rate then allowed by law, shall be due and paid by Tenant as additional rent to Landlord upon demand.

**C.** **Emergency Repairs.** Notwithstanding the provisions of the preceding Section, in the event of an emergency, Landlord, at its option, may without notice enter on the Premises to effect repairs needed as a result of the emergency. The cost and expense of such repairs shall be due and paid by Tenant to Landlord on demand as additional rent due hereunder.

**D.** **Compliance with Laws.** Tenant will promptly comply with all applicable laws, guidelines, rules, regulations, and requirements, whether of federal, state, or local origin, applicable to the Premises and all other improvements located thereon.

## ARTICLE 10
## INSURANCE, SUBROGATION, AND WAIVER OF CLAIMS

**A.** **Insurance Coverage.** Tenant shall, during the Lease Term, at Tenant's own expense, obtain and keep in force, the following insurance:

(i)    **Fire Insurance.** An All-Risk Insurance policy covering the Premises and all improvements located therein in an amount of one hundred (100%) percent of the replacement value of all improvements on the Premises other than foundations, and with such deductible as Landlord considers appropriate in Landlord's sole discretion. This insurance shall (A) name only Landlord, its agent, , and Landlord's mortgagees, if any, as their respective interests may appear; (B) provide that no act of Tenant shall impede the right of Landlord or Landlord's mortgagees, if any, to receive and collect the insurance proceeds; and (C) provide that the right of Landlord, Landlord's Agent and Landlord's mortgagees, if any, to the insurance proceeds shall not be diminished because of any insurance carried by Tenant for Tenant's own account. Tenant acknowledges that it has no right to receive any proceeds from such insurance policy other than for the replacement of Tenant's improvements through a construction disbursement account. Landlord shall not have to carry insurance of any kind on the Premises or on Tenant's furniture or furnishings, or on any of Tenant's fixtures, equipment, improvements, or appurtenances under this Lease; and Landlord shall not be obligated to repair any damage thereto or replace the same.

(ii)       **Liability Insurance.** Comprehensive general liability insurance coverage (either primary and/or umbrella policies), which shall include personal injury, bodily injury, broad form property damage, operations hazard, owner's protective coverage, contractual liability and products and completed operations liability, in limits not less than One Million Dollars ($1,000,000) per occurrence and Two Million Dollars in the aggregate. This insurance shall insure Landlord and "Landlord's Indemnitees" (as defined below) and Tenant, and such other parties as Landlord may designate, naming each as the insured. Notwithstanding any contrary provisions contained in this paragraph, if any liability insurance policy excludes coverage of any claim made by one insured against another, or any action or suit filed by one insured against another, then Tenant shall deliver to Landlord a separate liability insurance policy, which insures only Landlord and Landlord's Indemnitees and such other parties as Landlord may designate, in accordance with the provisions of this paragraph, and a certificate of insurance evidencing a separate liability insurance policy insuring Tenant in accordance with the provisions of this paragraph. The term "Landlord's Indemnitees" shall mean Landlord's affiliates, mortgagees, if any, and their respective officers, shareholders, directors, employees, agents and representatives, as well as the officers, shareholders, directors, employees, agents and representatives of Landlord.

(iii)       **Worker's Compensation and Employer's Liability Insurance.** Worker's Compensation and Employer's Liability insurance, in a form and in an amount as required to comply with Nevada law and which shall contain a waiver of subrogation against Landlord.

(iv)       **Additional Insurance.** Any other form or forms of insurance as Landlord or Landlord's mortgagees may reasonably require from time to time, in form and amounts, and for insurance risks against which a prudent tenant of a comparable size and in a comparable business would protect itself.

B.       **Insurance Requirements Generally.** All policies shall be taken out with insurers that are acceptable to Landlord and in form satisfactory to Landlord. Tenant agrees that certificates of insurance, or, if required by Landlord or the mortgagees of Landlord, certified copies of each such insurance policy, will be delivered to Landlord as soon as practicable after the placing of the required insurance. Tenant shall, contemporaneously with the execution of this Lease, provide Landlord with a certificate of insurance as written evidence of the insurance in force, and renewals thereof shall be delivered to Landlord at least thirty (30) days prior to the expiration of the respective policy terms. All policies shall contain an undertaking by the insurers to notify Landlord and the mortgagees of Landlord in writing not less than thirty (30) days before any material change, reduction in coverage, cancellation, or other termination thereof.

C.       **Waiver of Subrogation.** To the extent that the parties may legally so agree, neither Landlord nor Tenant shall be liable by way of subrogation or otherwise to the other party, or to any insurance company insuring the other party for any loss or damage to any of the property of Landlord or Tenant, as the case may be, which loss or damage is covered by any insurance policies carried by the parties and in force at the time of any such damage, even though such loss or damage might have been occasioned by the negligence of Landlord or Tenant, and the party hereto sustaining such loss or damage so protected by insurance waives its rights, if any, of recovery against the other party hereto to the extent and amount that such loss is covered by such insurance. This release shall be in effect only so long as the applicable insurance policies shall contain a clause or endorsement to the effect that the aforementioned waiver shall not affect the right of the insured to recover under such policies; Tenant shall use its best efforts (including payment of any additional premium) to have its insurance policies contain the standard waiver of subrogation clause. In the event Tenant's insurance carrier declines to include in such carrier's policy the standard waiver of subrogation clause, Tenant shall promptly notify Landlord in writing.

**D.    Insurance Policy Forms.** All policies of insurance Tenant is required to maintain pursuant to this Article 10 shall be issued by an insurer qualified to do business in the State of Nevada, with a general policy holder's rating of at least A and a financial rating of at least Class X as rated in the most current available "Best's Key Rating Guide." Such liability policies shall be issued in the name of Tenant and shall name as additional insureds Landlord and such persons and affiliated entities (including, without limitation, Landlord's trust deed holders) as Landlord may reasonably request. Such insurance must be on an "occurrence basis;" "claims made" forms of insurance are not acceptable. Executed copies of such policies of insurance as Tenant is required to maintain pursuant to this Article 10, or certificates thereof, shall be delivered to Landlord on or before the date Tenant first takes possession of the Premises, and thereafter executed copies of renewal policies or certificates thereof shall be delivered to Landlord within thirty (30) days prior to the expiration of the term of each such policy. As often as any policy Tenant is required to maintain shall terminate or expire, Tenant shall obtain renewal or replacement policies in the amounts and with the coverages specified herein. All public liability and property damage policies shall contain a provision that Landlord, although named as an additional insured, shall nevertheless be entitled to recover under said policies for any loss occasioned to it, its servants, agents or employees by reason of Tenant's negligence. All policies of insurance delivered to Landlord must be primary and not contributing with or in excess of any insurance Landlord may carry and must contain a provision that the company writing said policy shall give to Landlord at least fifteen (15) days' notice in writing in advance of any cancellation or lapse of insurance, or material change to coverage. Tenant may provide any insurance policy Tenant is required to maintain pursuant to this Article 10 by bringing the Premises within the coverage of a blanket policy covering Tenant's other locations, provided that such blanket policy is acceptable to Landlord and Landlord's lenders.

**E.    Tenant's Failure to Insure.** In the event that Tenant defaults, for any reason whatsoever, in its obligation to secure and maintain any of the insurance policies Tenant is required to maintain pursuant to this Article 10, Landlord may, but shall not be obligated to, secure and maintain such insurance policies. Upon demand and presentation of a bill therefore, Tenant shall immediately pay the cost of such policies to Landlord.

## ARTICLE 11
## CASUALTY DAMAGE

**A.    Restoration by Landlord.** If Landlord's Parcel shall be damaged by fire or other casualty, Landlord shall use available insurance proceeds to repair Landlord's Parcel to the condition as exists on the Commencement Date. However, Landlord shall not be required to repair or replace any of the Premises, or Tenant's furniture, furnishings, fixtures or equipment, or any alterations or improvements by Tenant, all of which damages shall be Tenant's responsibility under its own insurance policies. Landlord shall not be liable for any inconvenience or annoyance to Tenant or its visitors, or injury to Tenant's business resulting in any way from such damage or the repair thereof.

**B.    Abatement of Rent.** All Rent shall not abate.

**C.    Termination of Lease.** Notwithstanding the foregoing to the contrary, during the last six months of the Lease term, Tenant may elect to terminate this Lease if the Premises are damaged by fire or other casualty or cause such that: (a) more than 50% of the Premises is affected by the damage or (b) in Tenant's reasonable opinion, the cost of the repairs, alterations, restoration or improvement work would exceed 50% of the replacement value of the Premises. In any such case, Tenant may terminate this Lease by notice to Landlord within 60 days after the date of damage (such termination notice to include a termination date providing at least thirty (30) days for Tenant to vacate the Premises) provided Tenant assigns all insurance proceeds to Landlord for the damage to the Premises and any improvements located on the Premises.

## ARTICLE 12
## RETURN OF POSSESSION

At the expiration or earlier termination of this Lease or Tenant's right of possession, Tenant shall surrender possession of the Premises and any improvements constructed on the Premises, and unless otherwise notified by Landlord in writing, shall ensure that any improvements constructed by Tenant during the Term of the Lease, including all signs remain on the Premises. If Tenant shall fail to perform any repairs or restoration required by this Lease, or absent Landlord's authorization, removes any of its improvements from the Premises, Tenant shall pay Landlord the cost thereof upon demand.

## ARTICLE 13
## HOLDING OVER

Tenant shall pay Landlord 150% of the amount of Minimum Rent then applicable prorated on a per diem basis for each day Tenant shall retain possession of the Premises or any part thereof after expiration or earlier termination of this Lease. The foregoing provision shall not serve as permission for Tenant to hold-over, nor serve to extend the Lease Term (although Tenant shall remain a month-to-month tenant, bound to comply with all provisions of this Lease until Tenant vacates the Premises).

## ARTICLE 14
## SUBORDINATION, ATTORNMENT AND MORTGAGEE PROTECTION

A.      Upon written request of Landlord, or any mortgagee or beneficiary of Landlord, Tenant will in writing, subordinate its right hereunder to the interest of any ground lessor of the land (the "Land") upon which the Premises is situated and to the lien of any mortgage or deed of trust, now or hereafter in force, against the Land and/or structure of which the Premises is a part and to all advances made or hereafter to be made upon the security thereof; provided, however, that the ground lessor, or the mortgagee or trustee, as applicable, named in said mortgage or trust deed shall agree that Tenant's peaceable possession of the Premises and its rights under this Lease will not be diminished on account thereof.

B.      In the event (i) any proceedings are brought for foreclosure, or (ii) of the exercise of the power of sale under any mortgage or deeds of trust, then, upon any such foreclosure or sale, Tenant agrees to recognize such beneficiary or purchaser as Landlord under this Lease, provided that Tenant's right to possession continues unabated and Tenant's rights under this Lease continue undiminished.

## ARTICLE 15
## ESTOPPEL CERTIFICATE

Tenant shall from time to time, within fifteen (15) days after written request from Landlord, execute, acknowledge and deliver a statement: (i) certifying that this Lease is unmodified and in full force and effect or, if modified, stating the nature of such modification and certifying that this Lease as so modified, is in full force and effect (or if this Lease is claimed not to be in force and effect, specifying the ground therefor) and the dates to which the Minimum Rent and other charges hereunder have been paid, and the amount of the Deposit and (ii) acknowledging that there are not, to Tenant's knowledge, any uncured defaults on the part of Landlord hereunder, or specifying such defaults if any are claimed. If Tenant shall fail to execute and return such statement within the time required herein, Tenant shall be in default of this Lease, and such failure shall be deemed an acknowledgment by Tenant that the Lease is in full force and effect, and that there are no uncured defaults on the part of Landlord.

## ARTICLE 16
## ASSIGNMENT AND SUBLETTING

**A.      Transfers.** Tenant shall not, without the prior written consent of Landlord, which consent shall not be unreasonably withheld or delayed: (i) assign, mortgage, pledge, hypothecate, encumber, permit any lien to attach to, or otherwise transfer, this Lease or any interest hereunder, by operation of law or otherwise, (ii) sublet the Premises or any part thereof, or extend, renew or modify any sublease, or (iii) permit the use of the Premises by any parties other than Tenant and its employees, whether as licensee, concessionaire, franchisee or otherwise (all of the foregoing are hereinafter referred to collectively as "Transfers" and any party to whom any Transfer is made or sought to be made is hereinafter referred to as a "Transferee"). Any Transfer made without complying with this Article shall, at Landlord's option, be null, void and of no effect (which shall not be in limitation of Landlord's other remedies).

**B.      Consent.** If Landlord consents to a Transfer: (a) the terms and conditions of this Lease shall in no way be deemed to have been waived or modified, including without limitation, the purposes for which the Premises shall be used under Article 1, (b) Tenant shall remain fully liable for all obligations under this Lease, including without limitation, those obligations arising before and after the Transfer, and any assignee shall expressly assume all of Tenant's obligations, (c) such consent shall not be deemed consent to any further Transfer by either Tenant or a Transferee, and (d) Tenant shall deliver to Landlord promptly after execution, an original executed copy of all documentation pertaining to the Transfer in form reasonably acceptable to Landlord. Any sublease hereunder shall be subordinate and subject to the provisions of this Lease, and if this Lease shall be terminated during the term of any sublease, Landlord shall have the right to: (i) treat such sublease as canceled and repossess the Premises by any lawful means, or (ii) require that such subtenant attorn to and recognize Landlord as its landlord under any such sublease. If Tenant shall Default hereunder, Landlord is hereby irrevocably authorized to direct any Transferee to make all payments under or in connection with the Transfer directly to Landlord (which Landlord shall apply towards Tenant's obligations under this Lease). In the event any sublease provides for rental payments or other payments which exceed the rental rates and other payments required hereunder, Landlord shall be entitled to the excess payments which shall be immediately payable to Landlord as they are received by Tenant.

## ARTICLE 17
## ACCESS BY LANDLORD

Landlord and its authorized representatives may: (i) inspect the Premises in connection with Landlord's required maintenance and repairs or exhibit the Premises to lenders, insurers, governmental authorities, or others, (ii) during the last 180 days of the Lease Term exhibit the Premises to current and prospective tenants, purchasers, and brokers, and (iii) enter or permit entry to the Premises in emergencies or for any other reasonable purpose, or for the purpose of exercising any other rights or remedies expressly granted or reserved to Landlord under this Lease or applicable Law, or to make any repairs, maintenance, improvements or alterations, or other work in or about the Premises. Landlord's entry in the Premises shall, except in the case of emergency, be accompanied by Tenant's representative. All entries by Landlord will be done in such a manner so as to create the least possible disturbance to Tenant. Landlord agrees that it shall provide Tenant with reasonable notice of any entry by Landlord except for emergency situations.

## ARTICLE 18
## LANDLORD'S REMEDIES

**A.      Default.** The occurrence of any one or more of the following events shall constitute a "Default" by Tenant and shall give rise to landlord's remedies set forth in Paragraph (B), below:

(i) failure to make when due any payment of Rent within five (5) days following the date it becomes due; (ii) failure to observe or perform any term or condition of this Lease other than the payment of Rent, unless such failure is cured within fifteen (15) days following written notice from Landlord (or such additional time as may be reasonably required), or (iii) (a) making by Tenant of any general assignment for the benefit of creditors, (b) filing by or against Tenant of a petition to have Tenant adjudged a bankrupt or a petition for reorganization or arrangement under any Law relating to bankruptcy or insolvency (unless, in the case of a petition filed against Tenant, the same is dismissed within ninety (90) days), (c) appointment of a trustee or receiver to take possession of substantially all of Tenant's assets located in the Premises or of Tenant's interest in this Lease, where possession is not restored to Tenant within ninety (90) days, (d) attachment, execution or other judicial seizure of substantially all of Tenant's assets located on the Premises or of Tenant's interest in this Lease, (e) Tenant's convening of a meeting of its creditors or any class thereof for the purpose of effecting a moratorium upon or composition of its debt, (f) Tenant's insolvency or admission of an inability to pay any of its debts as they mature.

**B.     Remedies.** If a Default occurs, Landlord may terminate Tenant's right of possession, reenter and repossess the Premises by detainer suit, summary proceedings or other lawful means, with or without terminating this Lease (and if applicable Law permits, and Landlord shall not have expressly terminated this Lease in writing, any such action shall be deemed a termination of Tenant's right to possession only). Alternatively, Landlord may terminate this Lease in which case Landlord may recover from Tenant: (i) any unpaid Rent as of the termination date and (ii) the amount by which: (a) any unpaid Rent that would have accrued after the termination date during the balance of the Lease Term exceeds (b) the reasonable rental value of the Premises under a lease substantially similar to this Lease for the balance of the Lease Term, taking into account among other things, the condition of the Premises, market conditions and the period of time the Premises may reasonably remain vacant before Landlord is able to re-lease the same to a suitable replacement tenant, and the costs of reletting that Landlord may incur in order to enter such replacement lease.

**C.     Late Charges and Interest.** Tenant shall pay, as additional Rent, a service charge of Two Hundred Dollars ($200) for bookkeeping and administrative expenses, if any portion of Rent is not received within five (5) days after it is due. In addition, any Rent not paid when due shall accrue interest from the due date at the Default Rate until payment is received by Landlord.

**D.     Landlord's Cure of Tenant Defaults.** If Tenant fails to perform any obligation under this Lease within the applicable notice and cure period, Landlord shall have the right (but not the duty), to perform such obligation on behalf and for the account of Tenant, and shall have the right to full reimbursement from Tenant with respect to same.

### ARTICLE 19
### INDEMNIFICATION

Tenant shall indemnify and hold harmless Landlord from and against any and all third-party claims arising inside or on the Premises, including any claims arising from Tenant's activities on the Premises prior to the Commencement Date. No indemnity by Tenant shall extend to claims arising by virtue of grossly negligent or wrongful acts or omissions of Landlord or Landlord's employees, agents, contractors. The indemnification provided for in this Article 19 shall survive any termination of this Lease or expiration of the Term. Landlord and its agents shall not be liable for any loss or damage to persons or property resulting from fire, explosion, falling plaster, steam, gas, electricity, water, or rain which may leak from any part of the Premises or from pipes, appliances, or plumbing works therein or from the roof, street, or subsurface or from any other place resulting from dampness or any other cause whatsoever, or for interference with the light, air, gas, water or for any defect on the Premises, unless caused by the gross negligence or willful misconduct of Landlord. Landlord and its agent shall not be liable for interference with the light, air or for any defect on the Premises. Tenant shall give prompt notice to the Landlord in the case of casualty or accidents on or about the Premises.

## ARTICLE 20
## HAZARDOUS MATERIALS

Tenant shall not transport, use, store, maintain, generate, manufacture, handle, dispose, release, discharge or spill any "Hazardous Material" (as defined below), or permit any of the same to occur, or permit any Hazardous Materials to leak or migrate, on or about the Premises. The term "Hazardous Material" for purposes hereof shall mean any flammable, explosive, toxic, radioactive, biological, corrosive or otherwise hazardous chemical, substance, liquid, gas, device, form of energy, material or waste or component thereof, including, without limitation, petroleum-based products, diesel fuel, paints, solvents, lead, radioactive materials, cyanide, DDT, printing inks, acids, pesticides, ammonia compounds and other chemical products, asbestos, polychlorinated biphenyls (PCB's) and similar compounds, and any other items that now or subsequently are found to have an adverse effect on the environment or the health and safety of persons or animals or the presence of which requires investigation or remediation under any Law or governmental policy. Without limiting the generality of the foregoing, "Hazardous Material" includes any item defined as a "hazardous substance," "hazardous material," "hazardous waste," "regulated substance" or "toxic substance" under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. Sections 9601 *et seq.*, Hazardous Materials Transportation Act, 49 U.S.C. Sections 1801 *et seq.*, Resource Conservation and Recovery Act of 1976, 42 U.S.C. Sections 6901 *et seq.*, Clean Water Act, 33 U.S.C. Sections 1251 *et seq.*, Safe Drinking Water Act, 14 U.S.C. Sections 300f *et seq.*, Toxic Substances Control Act, 15 U.S.C. Sections 2601 *et seq.*, Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. Sections 136 *et seq.*, Atomic Energy Act of 1954, 42 U.S.C. Sections 2014 *et seq.*, and any similar federal, state or local Laws, and all regulations, guidelines, directives and other requirements thereunder, all as may be amended or supplemented from time to time. Tenant agrees to indemnify, reimburse, defend, exonerate, pay, and hold harmless: (a) Landlord, its affiliates and any other person or entity which holds or which may hereafter have an interest in this Lease and the Premises, or either of them; and (b) the directors, officers, members, employees, and agents of Landlord and any other person or entity which have or which may hereafter hold an interest in this Lease and the Premises, or either of them, from and against any and all damages and losses arising from the presence of Hazardous Materials, upon, about or beneath the Premises caused directly or indirectly by Tenant, or arising in any manner whatsoever out of the Tenant's violation of this Lease, or the breach by Tenant of any warranty or covenant or the inaccuracy of any representation of Tenant contained in this Lease. This obligation shall include, but not be limited to, the burden and expense of defending all such claims, suits and administrative proceedings (with counsel chosen by Tenant and reasonably approved of by the indemnified parties), even if such claims, suits or proceedings are groundless, false or fraudulent, and conducting all negotiations of any description, and paying and discharging, when and as the same become due, any and all judgments, penalties or other sums due against such indemnified persons.

## ARTICLE 21
## DEFINITIONS

A.    "Default Rate" shall mean eighteen percent (18%) per annum, or the highest rate permitted by applicable law, whichever shall be less.

B.    "Landlord" and "Tenant" shall be applicable to one or more parties as the case may be, and the singular shall include the plural, and the neuter shall include the masculine and feminine; and if there be more than one, the obligations thereof shall be joint and several. For purposes of any provisions indemnifying or limiting the ability of Landlord, the term "Landlord" shall include all of the parties identified in Article 32.

C.    "Law" or "Laws" shall mean all federal, state, county and local governmental and municipal laws, statutes, ordinances, rules, regulations, codes, decrees, orders and other such requirements, applicable equitable remedies and decisions by courts in cases where such decisions are binding precedents in the state in which the Premises is located, and decisions of federal courts applying the Laws of such states, at the time in question.

D.      "Lease Year" shall mean each consecutive twelve-month period commencing on the Commencement Date or such other date as Landlord shall designate by notice to Tenant.

E.      "Lender" shall mean the holder of any Mortgage at the time in question, and where such Mortgage is a ground lease, such term shall refer to the ground lessor.

F.      "Mortgage" shall mean all mortgages, deeds of trust, ground leases and other such encumbrances now or hereafter placed upon the Premises or any part thereof, and all renewals, modifications, consolidations, replacements or extensions thereof, and all indebtedness now or hereafter secured thereby and all interest thereon.

G.      "Rent" shall have the meaning specified therefor in Article 4.

### ARTICLE 22
### CONVEYANCE BY LANDLORD AND LIABILITY

Tenant agrees to look solely to Landlord's interest in the Premises and its rents for the enforcement of any judgment, order or other remedy under or in connection with this Lease or any related agreement, instrument or document of for any other matter whatsoever relating thereto or to the Premises (collectively, the "Landlord Obligations") and Landlord shall not be personally liable for any such judgment, order or other remedy or deficiency after execution thereon. Without limiting the generality of the foregoing, under no circumstances shall any present or future, direct or indirect, principals or investors, general or limited partners, officers, directors, shareholders, trustees, beneficiaries, participants, advisors, managers, employees, agent or affiliates of Landlord, or of any of the other foregoing parties, have any liability for any Landlord Obligations. In case Landlord (or any successor owner of the Premises) shall convey or transfer the Premises or any portion thereof in which the Premises are contained to another party, such other party shall thereupon be and become landlord hereunder and shall be deemed to have fully assumed all Landlord Obligations, including the return of the Deposit. Tenant shall attorn to such other party, and Landlord (or such successor owner) shall, from and after the date of conveyance or transfer, be free of all Landlord Obligations.

### ARTICLE 23
### NOTICES

Except as expressly provided to the contrary in this Lease, every notice, demand or other communication given by either party to the other with respect hereto or to the Premises, shall be in writing and shall not be effective for any purpose unless the same shall be served personally or by national air courier service, or United States registered or certified mail, return receipt requested, postage
prepaid, addressed, if to Tenant or Landlord, at their notice addresses set forth in Article 1, or such other address or addresses as Tenant or Landlord may from time to time designate by notice given as above provided. Notices to Tenant shall also include copies to the following individuals:

Landlord:       3330 Fremont LLC
                2711 E. Sahara Ave.
                Las Vegas, Nevada 89104
                Attn.: Ghassan Merhi, its Manager
                lisa.desantiago@gmail.com
                gusnewport@hotmail.com

Tenant:         Ganas Holdings, LLC
                1111 W. Mockingbird Ln Suite 1500
                Dallas TX 75247
                214-271-0640
                Attn: Daniel Chu

dchu@tricolor.com

Every notice or other communication hereunder shall be deemed to have been given as of the second business day following the date of such mailing or dispatch by national air courier service (or as of any earlier date evidenced by a receipt from such national air carrier service or the United States Postal Service) or immediately if personally delivered. Notices not sent in accordance with the foregoing shall be of no force and effect until received by the foregoing parties at such addresses required herein.

## ARTICLE 24
## REAL ESTATE BROKERS

Landlord and Tenant acknowledge that Joseph Anderson with Mountain West Commercial represents Landlord and Marc Magliarditi with Logic Commercial represents Tenant, and any fees due in connection therewith shall be paid under separate agreement. The parties acknowledge that no other brokers have been used for this Lease. Neither Landlord nor Tenant shall have any obligation to pay any brokerage fees to any party not listed herein, and should a brokerage fee be asserted against any party by a broker alleged to have been engaged by the other party, the party against whom a claim is asserted shall be defended and indemnified by the party who is alleged to have engaged the broker making a claim.

## ARTICLE 25
## COMMON AREAS

A.      N/A

## ARTICLE 26
## MISCELLANEOUS

A.      Each of the terms and provisions of this Lease shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, executors, administrators, guardians, custodians, successors and assigns, subject to the provisions of this Lease respecting Transfers.

B.      Neither this Lease nor any memorandum of lease or short form lease shall be recorded by Tenant.

C.      This Lease shall be construed in accordance with the Laws of the State of Nevada and in the event of a dispute hereunder exclusive venue shall be Clark County, Nevada.

D.      All obligations (including indemnity obligations) or rights of either party arising during or attributable to the period prior to expiration or earlier termination of this Lease shall survive such expiration or earlier termination.

E.      Landlord agrees that if Tenant timely pays the Rent and performs the terms and provisions hereunder, Tenant shall hold and enjoy the Premises during the Lease Term, free of lawful claims by any party acting by or through Landlord, subject to all other terms and provisions of this Lease.

F.      The parties agree that they intend hereby to create only the relationship of landlord and tenant. No provision hereof, or act of either party hereunder, shall be construed as creating the relationship of principal and agent, or as creating a partnership, joint venture or other enterprise, or render either party liable for any of the debts or obligations of the other party, except under any indemnity provisions of this Lease.

H.    This Lease, and any Exhibits hereto, have been mutually negotiated by Landlord and Tenant, and any ambiguities shall not be interpreted in favor of either party. Any printed provisions that have been deleted shall not be used to interpret the remaining provisions.

I.    This Lease, together with its and Exhibits, contains all the terms and provisions between Landlord and Tenant relating to the matters set forth herein and no prior or contemporaneous agreement or understanding pertaining to the same shall be of any force or effect. Neither this Lease, nor any Exhibits referred to above may be modified, except in writing signed by both parties.

F.    Tenant shall provide company prepared financial statements to Landlord within thirty days following request from Landlord, but in no event more than three times within any Lease Year.

[Signature page follows.]

IN TESTIMONY WHEREOF, the parties have caused this Lease to be signed as of the Execution Date.

Tenant: Tricolor Auto Group, LLC

BY: _____

NAME: _____

TITLE: _____

Guarantor: Ganas Holdings, LLC

BY: _____

NAME: _____

TITLE: _____

Landlord: 3330 Fremont LLC

BY: _____

NAME: Ghassan Merhi

TITLE: Manager

## EXHIBIT A

Site Plan

(See attached.)