**Exhibit B**

**Requests for Production**

**FBT GIBBONS LLP**
Rebecca L. Matthews (TX Bar No. 24062776)
2101 Cedar Springs Road, Suite 900
Dallas, TX 75201
Telephone: (214) 580-8608
Email: rmatthews@fbtgibbons.com

**GOLDBERG KOHN LTD.**
Danielle W. Juhle (admitted *pro hac vice*)
Randall L. Klein (admitted *pro hac vice*)
Nicole P. Bruno (admitted *pro hac vice*)
55 East Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 201-4000
Email: danielle.juhle@goldbergkohn.com
         randall.klein@goldbergkohn.com
         nicole.bruno@goldbergkohn.com

*Attorneys for Fifth Third Bank, N.A.*


**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| TRICOLOR HOLDINGS, LLC, et al.,[1] | : | Case No. 25-33487-MVL |
| | : | |
| Debtors. | : | (Jointly Administered) |


**FIFTH THIRD BANK N.A.'S RULE 2004 REQUESTS FOR PRODUCTION OF**
**DOCUMENTS TO THE CHAPTER 7 TRUSTEE**

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, Fifth Third Bank,

N.A. ("**Fifth Third**"), through its undersigned counsel, hereby serves the following requests for

---

[1] The Debtors in these chapter 7 cases are as follows: Tricolor Holdings, LLC, TAG Intermediate Holding Company, LLC, Tricolor Auto Group, LLC, Tricolor Auto Acceptance, LLC, Tricolor Insurance Agency, LLC, Tricolor Home Loans LLC dba Tricolor Mortgage, Tricolor Real Estate Services, LLC, TAG California Holding Company, LLC, Flexi Compras Autos, LLC, TAG California Intermediate Holding Company, LLC, Tricolor California Auto Group, LLC, Tricolor California Auto Acceptance, LLC, Risk Analytics LLC, Tricolor Tax, LLC, Tricolor Financial, LLC, Tricolor Auto Receivables LLC, TAG Asset Funding, LLC, and Apoyo Financial, LLC.

production of documents (the "**Requests**") to Anne Elizabeth Burns, the trustee appointed to oversee the liquidation of the above-captioned Debtors (the "**Trustee**"). The Trustee is to produce all documents and communications responsive to these Requests to Fifth Third in accordance with the Definitions and Instructions below.

## DEFINITIONS

1.    "**Tricolor**" or "**Debtors**" means Tricolor Holdings, LLC, TAG Intermediate Holding Company, LLC, Tricolor Auto Group, LLC, Tricolor Auto Acceptance, LLC, Tricolor Insurance Agency, LLC, Tricolor Home Loans LLC dba Tricolor Mortgage, Tricolor Real Estate Services, LLC, TAG California Holding Company, LLC, Flexi Compras Autos, LLC, TAG California Intermediate Holding Company, LLC, Tricolor California Auto Group, LLC, Tricolor California Auto Acceptance, LLC, Risk Analytics LLC, Tricolor Tax, LLC, Tricolor Financial, LLC, Tricolor Auto Receivables LLC, TAG Asset Funding, LLC, Apoyo Financial, LLC, and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, employees, representatives, agents, advisors, attorneys, and all other Persons and entities acting or purporting to act on behalf of any of the foregoing.

2.    "**Chapter 7 Cases**" means the above-captioned jointly administered chapter 7 cases of the Debtors, pending in the United States Bankruptcy Court for the Northern District of Texas under the caption *Tricolor Holdings, LLC, et al.*, Case No. 25-33487-MVL.

3.    "**And**" and "**or**" shall each be individually interpreted in every instance as meaning "**and/or**" and shall not be interpreted disjunctively to exclude any information otherwise within the scope of any specification.

4.    "**Any**" means "**all**" and vice versa.

5.    "**Collateral**" refers to the collateral described in Section 3.01 of the SPV 6 Credit Agreement (as defined below).

-2-

6.      "**Communication(s)**" means any transmission of information in the form of facts, ideas, inquiries, photographs, drawings, or otherwise, and shall include, without limitation, any oral, written, or electronic transmission of information, including but not limited to correspondence, facsimile transmissions, electronic mail, all attachments and enclosures thereto, recordings in any medium of oral Communications, telephone logs, message logs, and notes and memoranda concerning written or oral Communications, and any translations thereof. All written Communications shall include, without limitation, electronic, printed, typed, handwritten or other readable Documents, correspondence, memos, reports, diaries, logbooks, minutes, notes, studies, forecasts, emails, text messages, and instant messages.

7.      "**Concerning**" means in any way relating to, referring to, reflecting, recording, memorializing, showing, mentioning, supporting, regarding, describing, evidencing, or constituting, either directly or indirectly.

8.      "**Document(s)**" is synonymous in meaning and equal in scope to the usage of the term under the Federal Rules of Civil Procedure and includes, but is not limited to, any written or graphic matter of any kind or character however produced or reproduced; any electronically or magnetically recorded matter of any kind or character, however produced or reproduced; and any other matter constituting the recording of data or information upon any tangible thing by any means, as well as any tangible thing on which information is recorded in writing, sound, electronic or magnetic impulse, or in any other manner, including but not limited to paper, cards, tapes, film, electronic facsimile, computer storage devices, video discs, or any other media. For the purpose of this definition, "matter" shall include, but shall not be limited to bank account statements, letters of credit, loan documentation, account assignments, deposit account control agreements, paper, cards, tapes, film, electronic facsimile, electronic mail in any form, electronic notes, spreadsheets,

computer storage devices, video discs, memoranda, notes, minutes, records, photographs, correspondence, telegrams, diaries, bookkeeping entries, financial statements, tax returns, checks, check stubs, reports, studies, charts, graphs, statements, notebooks, handwritten notes, applications, agreements, contracts, letters of intent, books, pamphlets, periodicals, appointment calendars, records and recordings of oral conversations, and work papers, and shall also include, but shall not be limited to, originals plus all copies which are different in any way from the original whether by handwritten notes, interlineations, receipt stamp notation, indication of copies sent or received, or otherwise, as well as all preliminary versions, drafts or revisions of any of the foregoing and any supporting, underlying or preparatory material.

9. "**Floor Plan Lender**" means any lender that provided financing to any Debtor prior to the Petition Date (as defined below) for the acquisition of vehicle inventory, including ACV Capital LLC and TBK Bank, SSB.

10. "**Including**" means "including but not limited to," and is not restrictive or limiting.

11. "**Noteholders**" refers to all holders of notes issued pursuant to the Securitizations (as defined below).

12. "**Person**" or "**Persons**" means any individual, natural person or business, legal, or governmental entity or association.

13. "**Petition Date**" means September 10, 2025.

14. "**Securitizations**" refers to the issuance of notes by the Trusts.

15. "**SPV 4**" refers to Tricolor Funding SPV 4 LLC, a non-Debtor special purpose vehicle.

16. "**SPV 6**" refers to Tricolor Funding SPV 6 LLC, a non-Debtor special purpose vehicle.

17. "**SPV 4 Credit Agreement**" means the agreement dated November 13, 2020, which includes SPV 4 as the borrower, JPMorgan Chase Bank, N.A. as the administrative agent, and certain lenders from time to time.

18. "**SPV 6 Credit Agreement**" means the agreement dated August 31, 2022, which includes SPV 6 as the borrower, Wilmington Trust, National Association as account bank, Tricolor Auto Acceptance, LLC as servicer, Fifth Third as the administrative agent, and certain lenders from time to time.

19. "**TAA**" refers to the Debtor entity Tricolor Auto Acceptance, LLC.

20. "**Trustee**" or "**You**" or "**Your**" means Anne Elizabeth Burns in her capacity as Trustee of the Debtors' estates in these Chapter 7 Cases, and any agent, attorney, consultant, or representative of the Trustee, including any third party purporting to act on behalf of the Trustee.

21. "**Trusts**" means Tricolor Auto Securitization Trust 2018-2, Tricolor Auto Securitization Trust 2021-1, Tricolor Auto Securitization Trust 2022¬1, Tricolor Auto Securitization Trust 2023-1, Tricolor Auto Securitization Trust 2024-1, Tricolor Auto Securitization Trust 2024-2, Tricolor Auto Securitization Trust 2024-3, Tricolor Auto Securitization Trust 2024-4, Tricolor Auto Securitization Trust 2025-1, Tricolor Auto Securitization Trust 2025-2, Tricolor Auto Securitization Trust 2025-3, and Tricolor Auto Securitization Trust 2025-4.

## INSTRUCTIONS

1. These Requests are directed to You, and in responding to these Requests, You shall produce all responsive Documents and Communications within Your possession, custody or control. A Document shall be deemed to be within Your control if You can obtain the Document or Communication or a copy of the Document or Communication from another Person having possession or custody of the Document or Communication.

2.      Unless otherwise indicated, the Requests seek information created during, or pertaining to, the period from January 1, 2020, through the present, including any Document or Communication having an earlier origin, if in use during such period.

3.      Whenever these Requests use any word in the plural, You shall understand the word to include the singular as necessary to make the Request inclusive rather than exclusive. Further, whenever these Requests use any word in the singular, You shall understand the word to include the plural as necessary to make the Request inclusive rather than exclusive.

4.      Whenever these Requests use the word "and" or the word "or," You shall understand the word conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive.

5.      You should respond to each Request separately, completely, and fully. You should produce any responsive Documents or Communications as they are kept in the ordinary course of business or organize and label them to correspond with the categories to which they relate.

6.      With respect to Electronically Stored Information ("**ESI**"), corresponding metadata shall be produced to the extent that the requested metadata exists and can be extracted using standard processing tools.

7.      With respect to ESI, You shall confer with Fifth Third to develop parameters, including custodians and search terms, to identify responsive Documents or Communications.

8.      Documents or Communications shall be produced in their entirety, without abbreviation or expurgation, including all attachments, or other matters affixed thereto.

9.      Any Documents or Communications not otherwise responsive to these Requests shall be produced if such Documents or Communications refer to, relate to, or explain the Documents or Communications called for by these Requests or if such Documents or

Communications are attached to Documents or Communications called for by these Requests and constitute transmittal memoranda or letters, comments, evaluations, or similar Documents or Communications.

10.     If any responsive Document or Communication was but is no longer in Your possession or subject to Your control, state whether it is (a) missing or lost, (b) destroyed, (c) transferred voluntarily or involuntarily to others, or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian and the circumstances surrounding such disposition.

11.     If any Document or Communication responsive to these Requests is withheld under a claim of privilege or upon any other ground, please provide in writing: (i) the date the Document or Communication was created, last modified, and/or viewed by You; (ii) the name, position, and address of its author; (iii) the name, position, and address of each Person who received the Document or Communication or copies thereof; (iv) the subject matter and type of Document or Communication; (v) the title of the Document or Communication; and (vi) the nature of the privilege claimed and the grounds therefore. If any portion of any Document or Communication responsive to these Requests is withheld under a claim of privilege pursuant to this Instruction, any non-privileged portion of such Document or Communication must be produced with the portion claimed to be privileged redacted.

12.     If any responsive Document or Communication has been modified or altered in any way, in whole or in part, please identify each such Document or Communication and state how the Document or Communication was modified or altered, the Person who modified or altered it, and why the Document or Communication was modified or altered.

13.   If, in responding to these Requests, You claim any ambiguity in interpreting either the Requests or a Definition or Instruction applicable thereto, such claim shall not be utilized by You as a basis for refusing to respond; instead, You must include, as part of Your response, the language You deem to be ambiguous, and the interpretation You chose or used in responding to these Requests.

14.   If Your response to a particular demand is an objection, You must set forth in Your response the extent of, and the specific ground for, the objection. Any Request to which an objection is made should be responded to insofar as it is not deemed objectionable.

15.   If it is otherwise not possible to produce any Document or Communication called for by these Requests, or if any part of these Requests is objected to, the reasons for the objection or non-production should be stated with specificity as to all grounds.

16.   You shall produce all responsive Documents and Communications available at the time of production. These Requests are continuing in nature. If, after producing any Documents or Communications in response to these Requests, You obtain or become aware of additional responsive information, You are required to provide such Documents or Communications by way of a supplemental production.

17.   Fifth Third reserves the right to serve supplemental Requests.

<b><u>REQUESTS</u></b>

1.   All Documents, including Communications, concerning the origination and servicing of any auto loan, consumer installment contract or other asset that was transferred or purportedly transferred to SPV 6 or that otherwise served as (or purported to serve as) Collateral or constituted part of the borrowing base under the SPV 6 Credit Agreement at any time.

2.   All Documents, including Communications, reflecting the chain of ownership of each vehicle, auto loan, consumer installment contract or other asset that was transferred or

purportedly transferred to SPV 6 or was included in a borrowing base report or monthly servicer report delivered by TAA or SPV 6, from the purchase of such vehicle, to the origination of a loan with respect thereto, through any actual or purported transfer to SPV 6, and any subsequent transfer or purported transfer to a Securitization, or any repossession, resale or liquidation of any vehicle related to any auto loan transferred or purportedly transferred to SPV 6 and any information reflecting the chain of ownership of each vehicle secured by each auto loan or consumer installment contract, including without limitation all information stored in IDMS, SecureClose, DealerTrack and any other electronic database.

3.      All Documents, including Communications, reflecting any intercompany transfer, debt, or receivable among the Debtors and among the Debtors and non-Debtor affiliates related to the Collateral, including any Documents or Communications relating to any double-pledging of Collateral or transfer or purported transfer of Collateral among the Debtor and non-Debtor affiliate entities.

4.      All Documents, including Communications, concerning any deficiencies, irregularities, duplication, misreporting, fraud, manipulation, misstatements, or errors in recording, tracking, or reporting of any vehicles or consumer auto loans in any borrowing base calculations under the SPV 6 Credit Agreement.

5.      All Documents, including Communications, concerning any deficiencies, irregularities, duplication, misreporting, fraud, manipulation, misstatements, or errors in recording, tracking, or reporting in connection with any of the Securitizations.

6.      All Receivables Files, as defined in the SPV 6 Credit Agreement, and related Documents, including Communications.

7.      All Receivable Receipts, as defined in the SPV 6 Credit Agreement, and related Documents, including Communications.

8.      All Documents, including Communications, concerning the SPV 6 Credit Agreement, including the negotiation, drafting, execution, and any amendments to the SPV 6 Credit Agreement.

9.      All Documents, including Communications, concerning the lending facility contemplated by the SPV 6 Credit Agreement, including any reports, data tapes, borrowing base reports, borrowing base certificates or calculations, funding requests, schedules, certificates, summaries, receivable receipts, or exception reports or related documents submitted by or on behalf of the Debtors in connection with SPV 6.

10.      All Documents, including Communications, concerning the formation and structure of the Trusts and the Securitizations, including the negotiation, drafting, execution, and any amendments to the agreements and written materials concerning the Securitizations, including the Indenture, Sale and Servicing Agreement, Receivables Purchase Agreement, Trust Agreement, offering memoranda, term sheets, investor presentations, and marketing materials.

11.      All Documents, including Communications, concerning the administration, operation, and servicing of the Securitizations and any and all documentation, reporting, data, or other information created or maintained in connection with the Securitizations, including all monthly bank account statements related to each of the Securitizations and reports showing debit and credit detail for each such account.

12.      All Documents, including Communications, concerning transfers of Collateral or assets between SPV 6 and the Debtors.

13.     All Documents, including Communications, concerning the actual or purported collateral of the Floor Plan Lenders and the Securitizations, including any loan agreements, security agreements, and related agreements.

14.     Documents sufficient to identify all Persons holding or purporting to hold a lien or other security interest in any vehicle sold by a Debtor or auto loan originated by a Debtor.

15.     All Documents, including Communications, concerning the Debtors' payments to Floor Plan Lenders and to the Securitizations.

16.     All Documents, including Communications, concerning the structure and operation of the Debtors' cash management system, including as it relates to the Collateral, the flow of cash proceeds of the Collateral and of loans and advances to and from the Debtors' bank accounts.

17.     All Documents and information relating to or constituting the Debtors' accounting systems and financial statements, including any general ledger, work papers and other accounting records of the Debtor.

18.     All Documents constituting or concerning Communications with any rating agency in connection with the Securitizations, including any information concerning the collateral or any collateral performance, data quality, securitization eligibility, collateral composition or related information.

19.     Documents sufficient to identify all payments by the Debtors to senior management employees.

20.     The Debtors' insurance policies and Communications between the Debtors and their insurers or agents concerning claims and coverage.

21.     All Documents, including Communications, concerning any actual or purported collateral of any lenders pursuant to the warehouse financing facility in which SPV 4 is the

borrower, including any Documents and Communications related to JPMorgan Chase Bank, N.A.'s actual or purported collateral.

22.     All Documents, including Communications, concerning any due diligence or analysis performed or obtained by the Debtors in connection with the Securitizations, including any internal memoranda produced and exchanged between the Debtors or shared with third parties.

23.     All Documents, including Communications, concerning any audits, agreed-upon procedures, reviews, or exams of the Debtors—whether performed by the Debtors or by third parties—that relate in any way to the Collateral, SPV 6, SPV 4, the Securitizations, or to the Debtors' internal controls.

24.     All Documents, including Communications, concerning TAA's role as servicer under the SPV 6 Credit Agreement, including any analysis or diligence performed by TAA or third parties and any information received by TAA in its capacity as servicer.

25.     All Documents, including Communications, concerning TAA's role as servicer, sponsor, and/or administrator for the Securitizations, including any analysis or diligence performed by TAA or third parties and any information received by TAA in its capacity as servicer.

26.     All Documents, including Communications, concerning TAA's role as custodian under the SPV 6 Credit Agreement, including any analysis or diligence performed by TAA or third parties and any information received by TAA in its capacity as custodian.

27.     All Documents constituting or concerning Communications with Wilmington Trust, National Association concerning its role as indenture trustee under the Securitizations.

28.     All Documents constituting or concerning Communications with Wilmington Trust, National Association concerning its role as custodian under the Securitizations and the SPV 4 Credit Agreement.

29.     All Securitization Date Certificates, as defined in the SPV 6 Credit Agreement, and related Documents and Communications.

30.     All Securitization Releases, as defined in the SPV 6 Credit Agreement, and related Documents and Communications.

31.     All monthly servicing reports generated by Tricolor, including, but not limited to any such reports prepared for or submitted to Fifth Third.

32.     All Documents sufficient to reflect any repossessions, and the date(s) of repossessions of vehicles relating to any accounts, collateral IDs, or auto loans that served as (or purported to serve as) Collateral or constituted part of the borrowing base under the SPV 6 Credit Agreement at any time.

33.     All Documents and Communications concerning the Debtors' internal policies and procedures concerning internal controls, data integrity, floor plan lending facilities, warehouse lending facilities, Securitizations, and collateral analysis and reporting.

34.     All Documents and Communications concerning the Debtors' internal policies and procedures with respect to repossession of vehicles, re-titling of vehicles, re-sale of vehicles or charge-off or other liquidation of vehicles.

35.     All Documents and Communications concerning the duties, responsibilities, performance, and conduct of Daniel Chu (Chief Executive Officer) or Jerry Kollar (Chief Financial Officer).

36.     All Documents and Communications concerning any internal or external investigation involving Daniel Chu (Chief Executive Officer) or Jerry Kollar (Chief Financial Officer).

37.     All Documents, including Communications, concerning any actual or alleged misconduct by any employees of the Debtors, including Documents reflecting any audits or investigations of such matters.

38.     All Documents, including Communications, concerning the content of any offering memoranda, marketing materials, and investor presentations utilized in connection with the Securitizations.

39.     All Communications with Noteholders prior to the Petition Date relating to the Securitizations.

40.     All Documents and Communications between the Debtors and CRS Capstone Partners, LLC ("**Capstone**"), including all reports or other work product produced by Capstone with respect to the Collateral or other assets (or purported assets) of the Debtors, SPV 6, SPV 4 or the Trusts.

41.     All Documents and Communications between the Debtors and Veracity Forensics LLC ("**Veracity**"), including all reports or other work product produced by Veracity with respect to the Collateral or other assets (or purported assets) of the Debtors, SPV 6, SPV 4 or the Trusts.

42.     All Documents, including Communications, concerning the Debtors' decision to seek bankruptcy protection.

43.     All Documents, including Communications, produced by the Trustee to the United States Department of Justice relating to the Debtors.

44.     All Documents, including Communications, produced by the Trustee to any other party, including the files previously delivered by Capstone to TBK Bank as referenced in Requests 9, 10 and 26.

-15-

45.      All Documents and Communications between the Debtors and CBIZ, Inc. ("**CBIZ**"), including all reports or other work product produced by CBIZ with respect to the Collateral or other assets (or purported assets) of the Debtors, SPV 6, SPV 4 or the Trusts.

46.      All Documents and Communications between the following custodians: Daniel Chu, Jerry Kollar, David Goodgame, Katie Kollar, and Ameryn Seibold.

47.      All Documents and Communications between the Debtors and Sidley Austin LLP ("**Sidley**") to the extent they are not privileged and relate in any way to the Collateral or other assets (or purported assets) of the Debtors, SPV 6, SPV 4 or the Trusts.